# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>       Plaintiff,<br><br>v.<br><br>ALEXANDRU BITTNER,<br>       Defendant. | Case No. 4:19-cv-00415 |

## DEFENDANT ALEXANDRU BITTNER'S ANSWER

## [JURY DEMAND]

Defendant, Alexandru Bittner ("Bittner"), by his undersigned counsel, answers plaintiff, the United States' complaint as follows:

1. Admits, but denies the Court has jurisdiction to impose criminal penalties against Bittner.

2. Admits and alleges that Bittner resides in this district.

3. Admits.

4. Admits first and second sentence. Denies third sentence with respect to the year his wife and daughter moved. Alleges Bittner moved back to Romania in 1990 and that his wife and daughter moved back to Romania in 1991. Admits the remainder of paragraph 4.

5. Admits that Bittner did not file Forms TD F 90-22.1, *Report of Foreign Bank and Financial Accounts* ("FBARs") prior to May 21, 2012. Denies the remainder of paragraph 5. Denies any implication that the failure to file FBARs was intentional or knowing.

6. Denies that Bittner intentionally or knowingly failed to disclose that he had foreign bank accounts on his 2007 through 2011 original Form 1040 federal income tax returns filed in

May 2012. Admits the remainder of paragraph 6, but alleges that he engaged CPA Jeff Beckley ("CPA Beckley") to prepare any required tax returns and FBARs; that CPA Beckley prepared tax returns and FBARs for 2007 through 2011and filed them on Bittner's behalf in May of 2012; that CPA Beckley nevertheless checked the "no" box on the income tax returns filed simultaneously with the FBAR filings and that Bittner did not notice that CPA Beckley had checked that box.

7. Admits, and alleges that the FBARs were prepared by CPA Beckley who incorrectly advised Bittner about his reporting obligations with respect to those FBARs.

8. Denies. Alleges that the original 2009 FBAR identified one account ending 0320 at UnitCredit Tiriac Bank in Romania with a max value of $333,333. Further alleges that the FBAR forms were prepared by CPA Beckley who incorrectly advised Bittner about his reporting obligations with respect to those FBARs.

9. Admits.

10. Admits. Alleges Bittner did not have any knowledge regarding the existence of FBARs or his obligation to file them until after he returned to the United States from Romania in 2011, and that upon learning of his obligation he promptly took steps to file any required forms. Further alleges that any mistakes made with respect to the FBARs are attributable to the negligence of CPA Beckley.

11. Admits first sentence of paragraph 11. Denies second sentence. Alleges Bittner did not have any knowledge regarding the existence of FBARs or his obligation to file them until after he returned to the United States from Romania in 2011, and that upon learning of his obligation he promptly took steps to file any required forms. Alleges that any mistakes made with respect to the FBARs are attributable to the negligence of CPA

Beckley. Further alleges that Bittner was required to file a single FBAR for each year at issue stating that he had a financial interest in 25 or more accounts and stating the number, but was instructed by Part I, section 14 of the form not to complete Parts II or III of the form.

12. Admits that Bittner had signature authority or control over and an interest in the accounts listed in paragraph 12 in his name. Denies that he had signature authority or control over the accounts listed in the names of entities. Admits that he had a "financial interest" as defined for purposes of FBAR forms in the accounts of the listed entities with the exception of the following entities as to which he owned 50 percent or less of the outstanding stock in 2007:

        Ecofish SRL

        Gama Mac Grup SRL

        Aquarom Elite SRL

        Hotel Venetia SRL

        LCA Service SRL

        Piscicola Murghiol SRL

        Piscicola Jurilovca SA

Denies that all the accounts listed are necessarily separate accounts.

13. Denies the first and final sentences of paragraph 13. Admits the second sentence.

14. Denies that Bittner was required to file FBARs for 2007 reporting his signature authority or control over, or interest in, all of the foreign accounts listed in paragraph 12.  Alleges that Bittner was required to file a single FBAR for 2007 stating that he had a financial interest in 25 or more accounts and stating the number, but was instructed by Part I, section 14 of the form not to complete Parts II or III of the form.  Alleges Bittner did not have any knowledge regarding the existence of FBARs or his obligation to file them until after he returned to the United States from Romania in 2011, and that upon learning of his obligation he promptly took steps to file any required forms.

15. Admits that Bittner had signature authority or control over and an interest in the accounts listed in paragraph 15 in his name.  Denies that Bittner had signature authority or control over the accounts listed in the names of entities.  Admits that he had a  "financial interest" as defined for purposes of FBAR forms in the accounts of the listed entities with the exception of the following entities as to which he owned 50 percent or less of the outstanding stock in 2008:

        Ecofish SRL

        Gama Mac Grup SRL

        Aquarom Elite SRL

        Hotel Venetia SRL

        LCA Service SRL

        Piscicola Murghiol SRL

Denies that all the accounts listed are necessarily separate accounts.

16. Denies the first and final sentences of paragraph 16. Admits the second sentence.

17. Denies that Bittner was required to file FBARs for 2008 reporting his signature authority or control over, or interest in, all of the foreign accounts listed in paragraph 15. Alleges that Bittner was required to file a single FBAR for 2008 stating that he had a financial interest in 25 or more accounts and stating the number, but was instructed by Part I, section 14 of the form not to complete Parts II or III of the form. Alleges Bittner did not have any knowledge regarding the existence of FBARs or his obligation to file them until after he returned to the United States from Romania in 2011, and that upon learning of his obligation he promptly took steps to file any required forms.

18. Admits that Bittner had signature authority or control over and an interest in the accounts listed in paragraph 18 in his name. Denies that he had signature authority or control over the accounts listed in the names of entities. Admits that he had a "financial interest" as defined for purposes of FBAR forms in the accounts of the listed entities with the exception of the following entities as to which he owned 50 percent or less of the outstanding stock in 2009:

        Ecofish SRL

        Gama Mac Grup SRL

        Aquarom Elite SRL

        Hotel Venetia SRL

        LCA Service SRL

        Piscicola Murghiol SRL

    Denies that all the accounts listed are necessarily separate accounts.

19. Denies the first and final sentences of paragraph 19. Admits the second sentence.

20. Denies that Bittner was required to file FBARs for 2009 reporting his signature authority or control over, or interest in, all of the foreign accounts listed in paragraph 18. Alleges that Bittner was required to file a single FBAR for 2009 stating that he had a financial interest in 25 or more accounts and stating the number, but was instructed by Part I, section 14 of the form not to complete Parts II or III of the form. Alleges Bittner did not have any knowledge regarding the existence of FBARs or his obligation to file them until after he returned to the United States from Romania in 2011, and that upon learning of his obligation he promptly took steps to file any required forms.

21. Admits that Bittner had signature authority or control over and an interest in the accounts listed in paragraph 21 in his name. Denies that he had signature authority or control over the accounts listed in the names of entities. Admits that he had an "interest" as defined for purposes of FBAR forms in the accounts of the listed entities with the exception of the following entities as to which he owned 50 percent or less of the outstanding stock in 2010:

        Gama Mac Grup SRL

        Aquarom Elite SRL

        Hotel Venetia SRL

        LCA Service SRL

        Piscicola Murghiol SRL

        Comprest SA

        Top Invest SRL

Denies that all the accounts listed are necessarily separate accounts.

22. Denies the first and final sentences of paragraph 22. Admits the second sentence.

23. Denies that Bittner was required to file FBARs for 2010 reporting his signature authority or control over, or interest in, all of the foreign accounts listed in paragraph 21. Alleges that he was required to file a single FBAR for 2010 stating that he had a financial interest in 25 or more accounts and stating the number, but was instructed by Part I, section 14 of the form not to complete Parts II or III of the form. Alleges Bittner did not have any knowledge regarding the existence of FBARs or his obligation to file them until after he returned to the United States from Romania in 2011, and that upon learning of his obligation he promptly took steps to file any required forms.

24. Admits that Bittner had signature authority or control over and an interest in the accounts listed in paragraph 21 in his name. Denies that he had signature authority or control over the accounts listed in the names of entities. Admits that he had an "interest" as defined for purposes of FBAR forms in the accounts of the listed entities with the exception of the following entities as to which he owned 50 percent or less of the outstanding stock in the year at issue:

        Aquarom Elite SRL

        LCA Service SRL

        Piscicola Murghiol SRL

       Comprest SA

Denies that all the accounts listed are necessarily separate accounts.

25. Denies the first and final sentences of paragraph 25. Admits the second sentence.

26. Denies that Bittner was required to file FBARs for 2011 reporting his signature authority or control over, or interest in, all of the foreign accounts listed in paragraph 24. Alleges that Bittner was required to file a single FBAR for 2011 stating that he had a financial interest in 25 or more accounts and stating the number, but was instructed by Part 1, section 14 of the form not to complete Parts II or III of the form. Alleges that Bittner did not have any knowledge regarding the existence of FBARs or his obligation to file them until he returned to the United States from Romania in 2011, and alleges that upon learning of his obligation he promptly took steps to file any required forms.

27. Denies. Alleges that 31 U.S.C. § 5321(a)(5)(B)(i) imposes a maximum penalty of $10,000 per form for non-willful violations.

28. Admits that Bittner did not timely file FBARs for 2007 through 2011, but denies that he had "signatory authority" or "financial interest" in all the accounts listed in paragraphs 12, 15, 18, 21 and 24. Further denies that Bittner was obligated to provide specific account information of the nature described in paragraphs 12, 15, 18, 21 and 24 (name on the account; the name of the bank; account number; or bank location) for any foreign bank account for which he had a FBAR filing obligation. Alleges that Bittner was required to file a single FBAR in each year at issue stating that he had a financial interest in 25 or more accounts and stating the number, but was instructed by Part I, Section 14 of the form not to complete Parts II or III of the form. Admits the second sentence of paragraph 28. Alleges that any failure to file FBARs was unintentional and due to

reasonable cause, as Bittner did not have any knowledge regarding the existence of FBARs or his obligation to file them until he returned to the United States from Romania in 2011, and alleges that upon learning of his obligation he promptly took steps to file any required forms.

29. Denies for lack of sufficient knowledge to form a belief as to the truth of the allegations described in paragraph 29.

30. Admits the first sentence of paragraph 30 as to receipt of notice and demand for the years at issue but denies the remainder of the sentence for lack of sufficient knowledge to form a belief as to the truth of the allegations described therein. Admits the second sentence. Denies the third sentence. Alleges that Bittner is not liable for the underlying non-willful FBAR penalties pursuant to 31 U.S.C. § 5321(a)(5)(B)(i)(ii) and thus no interest or other statutory additions are applicable.

31. Denies.

32. Denies the first sentence of paragraph 32 for lack of sufficient knowledge to form a belief as to the truth of the allegations described therein. The remaining sentences in paragraph 32 are statements of law as to which no response is required.

33. Admits the first sentence of paragraph 33 as to the fact that Mr. Bittner signed several consents but denies the remainder for lack of sufficient knowledge to form a belief as to the truth of the allegations regarding the date of the extended statute of limitation for the 2007 through 2009 years. Denies the second sentence for lack of sufficient knowledge to form a belief as to the truth of the allegations described therein. Denies the third sentence for lack of sufficient knowledge to form a belief as to the truth of the allegations described therein.

34. Admits the first two sentences of paragraph 34. Denies the final sentence for lack of sufficient knowledge to form a belief as to the truth of the allegations described therein.

35. Denies for lack of sufficient knowledge to form a belief as to the truth of the allegations described in paragraph 35 as to the "date of assessment" for purposes of the two year rule for filing suit.

36. Bittner denies each and every allegation not specifically admitted to above.

WHEREFORE, having answered the Plaintiff's compliant, Bittner raises the following defenses, and further alleges:

**First Defense – Reasonable Cause**

37. Bittner had reasonable cause for failing to file any required FBAR forms.

38. Bittner incorporates all prior responses and allegations.

39. Bittner was born in Romania in 1957 where he lived until 1982 during the communist era.

40. Bittner attended a high school in Romania that emphasized technical education, and after his second year he opted into mathematics for his curriculum track. At the Politehnica University of Bucharest, Bittner studied mechanical and chemical engineering. He also served in the army for 9 months, as required. Bittner obtained a Master's degree in chemical engineering in 1981.

41. In early 1982, he immigrated to the United States with the assistance of the Hebrew National Aid Society. Bittner learned English as a second language. He became a naturalized citizen in 1987 and resided in the United States until 1990. His first job in the U.S. was a dishwasher. He then became a plumber's apprentice. Later, he obtained a

master plumbing certificate. Bittner then worked as a plumber with various employers until he moved back to Romania while also fixing up houses on the side.

42. Bittner has never taken any educational courses in accounting, law, or taxation.

43. Bittner moved back to Romania in 1990 where he lived until late 2011. He returned following the revolution and fall of communism because he believed there would be opportunity for a better life in his home county. Upon his return, he registered with the United States embassy.

44. During those two decades in Romania, he made only 3–4 short trips back to the United States to visit family, primarily his older sister and brother-in-law.

45. During the long period Bittner lived in Romania, he had no awareness that FBAR forms existed or that, as a naturalized US citizen who resided in Romania, he was obligated to file such forms.

46. While in Romania, Bittner did file some Form 1040 tax returns in the 1990s reporting U.S. sourced income from his minority interest in a restaurant operated by his sister and brother-in-law. His brother-in-law prepared those returns on his behalf.

47. After returning to the United States and discovering he had been required to file tax returns (reporting worldwide income) and FBARs, Bittner hired CPA Beckley with the goal of getting into compliance with those filing obligations. Bittner found CPA Beckley from looking online for a local accountant who had experience with people in his situation. CPA Beckley advertised on his website that he had the expertise to advise U.S. citizens who earned money from outside the country.

48. Bittner informed CPA Beckley that he had foreign income; bank accounts; and business interests, and he supplied CPA Beckley with information requested of him about those

items.  Mr. Beckley prepared Forms 1040 for the years 1990 to 2011 and FBARs for the years 1996 through 2011.  Bittner reviewed and signed those forms, and CPA Beckley filed them on his behalf.  Unknown to Bittner, Mr. Beckley made many errors in the preparation of those forms, including advising Bittner that the annual FBARs only required disclosure of his bank account with the highest balance.  Although he prepared and filed the Forms 1040 and the FBARs simultaneously, CPA Beckley checked the "no" box on Schedule B of all the Forms 1040 to the question regarding whether Bittner had foreign bank accounts.  CPA Beckley did so due to gross negligence, and Bittner did not catch that the wrong boxes had been checked on Schedule B of all the Forms 1040.

49. After discovering that a myriad of compliance issues had emerged from the tax returns prepared by CPA Beckley, Bittner engaged tax counsel and a new CPA.  On September 25, 2013, Bittner filed amended FBARs, disclosing all bank accounts and balances.

50. Title 31 U.S.C. Section 5321(a)(5)(B) provides that no FBAR penalty shall be imposed if the violation was due to reasonable cause and the balance in the account was properly reported, i.e., is subsequently reported.

### Second Defense – Penalty Exceeds the Amount Authorized by Statute

51. Plaintiff has asserted FBAR penalties that far exceed the amount allowable under the statute.

52. Bittner incorporates all prior responses and allegations.

53. Under 31 U.S.C. § 5321(a)(5) a non-willful FBAR penalty cannot exceed $10,000 per form.

54. For each year 2007 through 2011, Bittner had 25 or more accounts in which he had a "financial interest."  The applicable FBAR forms and accompanying instructions state

that persons who have financial interests in 25 or more bank accounts are to file a single FBAR form stating that fact and stating the number of accounts, but are specifically not to complete Parts II or III of the form. Bittner thus was required only to file one FBAR annually with limited information, and his innocent failure to timely file that annual FBAR constitutes only a single violation of the statute, punishable at most by $10,000.

55. Plaintiff's imposition of $2,720,000 in FBAR penalties is an erroneous computation and inconsistent with 31 U.S.C. § 5321(a)(5), the corresponding regulations, and the FBAR instructions. The maximum non-willful FBAR penalty is $10,000 per violation (FBAR form) for a total of $50,000 for the years at issue in this case.

### Third Defense – Arbitrary and Capricious

56. Plaintiff acted arbitrarily and capriciously in assessing the FBAR penalty.

57. Bittner incorporates all prior responses and allegations.

58. For reasons unknown, Bittner was singled out for excessively harsh treatment far greater than similarly situated persons.

59. Under the IRS Streamlined Filing Compliance Procedure, persons who resided outside the United States for at least one of the three prior years, and who non-willfully failed to report income from a foreign financial asset and pay tax as required by U.S. law and failed to file FBARs with respect to a foreign financial account may file three years of delinquent returns, six years of FBARs, and pay any tax and interest due, but will not be subject to failure-to-file and failure-to-pay penalties, accuracy-related penalties, information return penalties, or FBAR penalties.

60. On September 24, 2014, Bittner formally requested treatment under the IRS Streamlined Filing Compliance Procedure, but even though he qualified, he was arbitrarily and capriciously denied such treatment.

61. In addition, even outside of the IRS Streamlined Filing Compliance Procedure, individuals who in similar circumstances innocently fail to file FBARs on foreign bank accounts are typically subject to maximum penalties of $10,000 per year and often less or nothing.  IRM 4.26.16.6.4.1(1); IRS FS 2011-13.

62. Such treatment is prescribed in the IRS's Internal Revenue Manual (IRM").  Under the IRM, examiners typically will recommend one FBAR penalty per open year, regardless of the number of unreported accounts.  IRM 4.26.16.6.4.1(1).   The IRS arbitrarily and capriciously denied such treatment. The IRS arbitrarily and capriciously failed to apply its FBAR penalty mitigation guidelines under IRM Exhibit 4.26.16-1, even though Mr. Bittner clearly qualified for such.  The IRS provided no evidentiary basis to deny penalty mitigation, other than unsupported factual assertions by the examiner.  The IRS engaged in no reasoned decision making in not applying its mitigation guidelines.

## Fourth Defense – Excessive Fines

63. The FBAR penalties asserted in the Complaint violate the Excessive Fines Clause of the Eighth Amendment to the Constitution.

64. Bittner incorporates all prior responses and allegations.

65. The Eighth Amendment requires that any fine be "proportionate" to the conduct it seeks to punish.

66. Plaintiff's assessment of astronomical penalties of nearly $3 million against Bittner for not timely filing 5 FBAR forms is far in excess of any appropriate punishment for his non-willful conduct with respect to those statutory violations.

67. Bittner is a dual citizen, who resided in Romania for all years at issue.

68. Bittner had no knowledge that the FBAR forms even existed or that he was required to file them.

69. Bittner's failure to timely file FBARs was not connected with any avoidance of income tax.  The total tax due shown on Mr. Bittner's amended income tax returns for the years at issue was $625, which he paid.

70. Between 11 and 18 of the bank accounts each year had balances below $10,000 and as little as $1.

71. Bittner acted in good faith.  Once he discovered that he should have filed the forms, he promptly engaged CPA Beckley with the goal of getting into compliance with his filing obligations.

### Fifth Defense – Improper Criminal Sanction

72. Imposing nearly a $3 million cumulative penalty against Bittner for non-willful information reporting violations constitutes a criminal sanction as opposed to a civil penalty.

73. Such amount bears no relationship to any legitimate basis for a civil penalty and is necessarily criminal punishment.

74. Before a criminal sanction may be imposed, Bittner must first be charged with a crime by indictment or information, neither of which has happened.

**Sixth Defense – Unconscionable Punishment**

75. It is unconscionable for Plaintiff to assess and now seek to collect fines of nearly $3 million against Bittner for innocent conduct that the government admits was entirely non-willful and was voluntarily disclosed to the government.

76. Bittner incorporates all prior responses and allegations.

77. For the years at issue, Bittner was technically required to file 5 FBARs simply stating limited filer information and the number of foreign accounts in which he had a financial interest.  Nothing further was required.

78. Bittner is a dual citizen, who lived in Romania for over 20 years before returning to the U.S.  He had no knowledge that FBAR forms existed or that he had any obligation to file them during the years at issue.

79. As soon as Bittner returned to the United States in late 2011 and discovered that he had been required to file these forms, he promptly engaged CPA Beckley with the goal of getting into compliance with his filing obligations, and has voluntarily disclosed the accounts.

80. Bittner acted innocently and in good faith and the government admits that any failure with respect to his FBAR obligations were non-willful.

81. There is no legitimate basis to impose a civil fine of nearly $3 million against a citizen under these circumstances.

**Jury Demand**

82. Bittner demands a trial by jury on all issues triable by a jury.

WHEREFORE, Plaintiff should take nothing request in its prayer for relief, and the complaint should be dismissed with PREJUDICE.

Dated: July 30, 2019                    Respectfully submitted,

                                        CLARK HILL STRASBURGER

                                        By:  /s/  Farley P. Katz
                                        FARLEY P. KATZ, LEAD ATTORNEY
                                        State Bar No. 11108790
                                        2301 Broadway St.
                                        San Antonio, Texas 78209
                                        210-250-6007 ph.
                                        210-258-2702 fax
                                        farley.katz@clarkhillstrasburger.com

                                        RACHAEL RUBENSTEIN
                                        State Bar No. 24073919
                                        210-250-6006 ph.
                                        rachael.rubenstein@clarkillstrasburger.com

                                        THEODORE JOSHUA ("JOSH") WU
                                        State Bar No. 24110746
                                        210-250-6078 ph.
                                        josh.wu@clarkhillstrasburger.com

                                        ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on July 30, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

            Holly M. Church
            Herbert W. Linder
            Attorneys, Tax Division
            United States Department of Justice
            717 N. Harwood, Suite 400
            Dallas, Texas 75201
            Holly.M.Church@usdoj.gov
            Herbert.W.Linder@usdoj.gov
            *Attorneys for Plaintiff,*
            *United States*

                                           /s/Rachael Rubenstein
                                          Rachael Rubenstein