IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>　　　　Plaintiff, )<br>　　　　　　　　　　　　　　　　)<br>v. 　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>ALEXANDRU BITTNER, 　　　　)<br>　　　　Defendant. 　　　　　　　)<br>_____ ) | Case No. 4:19-cv-00415 |

## UNITED STATES' MOTION TO STRIKE THE EXPERT TESTIMONY AND REPORT OF SCOTT D. MICHEL

The United States objects to and moves the Court to strike the expert testimony and report of Defendant's expert Scott D. Michel, ("Michel"). As explained below, Michel's proposed expert testimony consists of nothing more than legal conclusions that do not help the trier of fact, and his personal opinion on how this Court should determine the facts of this case. As such, it usurps the role of this Court. Furthermore, Michel's testimony lacks any probative value as it is not based on any verifiable methods or principles.

By way of short background, this is a suit by the United States collect penalties assessed against Defendant Bittner for failure to file reports that disclosed his interest in numerous foreign bank accounts as required by federal law. Bittner has hired an attorney to defend him, and has hired another attorney to act as an "expert witness." The second attorney, Michel, has prepared a report based on his, and his firm's, practice of law in the tax controversy field, their experiences with other unidentified taxpayers, and his discussions with unidentified "colleagues,"[1] wherein he purports to

---

[1] It is unclear whether these "colleagues" are members of Michel's firm or members of the private bar at large with an interest in advocating for reduced penalties on behalf taxpayers they may be defending in active cases.

explain published U.S. statutory, regulatory and case law to this Court, purports to explain published IRS programs and published IRS guidance to its employees. Then, after relying on extensive assumed facts about Bittner, Michel opines that: (1) The penalties imposed in this case are inconsistent with penalties asserted against similarly situated taxpayers; (2) and the IRS did not follow its procedures in assessing FBAR penalties in this case. More specifically, Michel opines that the IRS abused its discretion by assessing a penalty of $10,000 per account per year. However, this assessment is expressly permitted by the relevant statute. 31 U.S.C. § 5321(a)(5)(B); *United States v. Boyd*, No. 2:18-cv-00803, 162019 WL 1976472 (C.D. Cal., April 23, 2019), appeal filed, No. 19-55585 (9th Cir.). Further, Michel's own report admits that IRS's internal guidance gives the IRS examiners "the discretion to determine that the facts and circumstances should result in no penalty, a single penalty not to exceed $10,000 for one year only, *or a separate penalty for each account and for each year*." Gov. Ex. A, Michel's Report at p. 15 (emphasis added). The problem is that Michel does not provide any specialized knowledge or skill needed by the Court to understand any facts applicable to an abuse of discretion determination. Instead, he merely recites a series of alleged facts about Bittner and the IRS that require no specialized knowledge or expertise to understand, and then he attempts to usurp the Court's role of determining the reasonableness of the IRS's decision by substituting his own conclusions on reasonableness. Relatedly, Michel opines that that the IRS treated Bittner differently than other similarly situated taxpayers, but he does not identify those other taxpayers or explain how their facts were similar. Again, he offers no specialized knowledge or skill to support this opinion. In sum, Michel has written an editorial suitable for a newspaper, or at best, a legal brief - but not an expert opinion admissible under the Federal Rules of Evidence. Accordingly, Michel's report and related testimony must be stricken.

### A. Michel's Report and Accompanying Testimony Should be Stricken Because He Improperly Attempts to Present Legal Conclusions and Legal Opinions to the Court.

The Federal Rules of Evidence limit admissibility of expert testimony to situations where the expert's testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue."[2] If a witness has specialized knowledge that will be *helpful to the trier of fact* to understand the evidence or determine a fact in issue, and he qualifies as an expert, then the witness may testify to his specialized knowledge "in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."[3] Thus, "under the Rules the trial judge must ensure that any and all scientific testimony is or evidence admitted is not only relevant but reliable."[4] The trial judge's "basic gatekeeping obligation," however, applies to "all expert testimony," and not only to scientific testimony.[5] The burden to show that an expert witness should not be excluded is on the party offering the expert.[6] As explained in more detail below, Michel's report and opinions undoubtedly fail the requirements of Rule 702.

---

[2] Fed. R. Evid. 702.

[3] *Id.* (emphasis added).

[4] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

[5] *Kuhmo Tire Co., v. Carmichael*, 526 U.S. 137, 147 (1999).

[6] *See, e.g., Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 276 (5th Cir. 1998).

This Court may "exclude expert opinion evidence about the law that would impinge on the roles of the judge and the jury."[7] Experts are supposed to interpret and analyze factual evidence and not testify about the law because the judge's special knowledge is presumed to be sufficient.[8] Testimony "which articulates and applies the relevant law . . . circumvents the [fact finder's] decision-making function by telling it how to decide the case."[9] As stated by the court in *Specht*

> A witness cannot be allowed to give an opinion on a question of law. . . . In order to justify having courts resolve disputes between litigants, it must be posited as an a priori assumption that there is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge. . . . *To allow anyone other than the judge to state the law would violate the basic concept*.[10]

Here, the "expert legal opinions" of Michel clearly impinge on the role of this Court, and should be excluded.[11] Michel is to opine on whether the IRS properly assessed FBAR

---

[7] *Pelletier v. Main St. Textiles, LP*, 470 F.3d 48, 54-55 (1st Cir. 2006). *See also, Abbott Labs. v. Brennan*, 952 F.2d 1346, 1352 (Fed. Cir. 1991) (trial court has broad discretion to admit or exclude expert testimony).

[8] *United States v. Curtis*, 782 F.2d 593, 599 (6th Cir. 1986).

[9] *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988).

[10] *Id*. at 807 (emphasis added; citation omitted). *See also*, *Sparton v. United States*, 77 Fed. Cl.1, 9 (Fed. Cl. 2006), where the Court of Federal Claims held that the sole purpose of a law professor's proposed testimony was to advise the court on how to interpret procurement regulations and how to apply a doctrine set forth in the case law. The court held that such legal conclusions were in the province of the court. Significantly, the court emphasized that "Expert testimony is an improper mechanism for offering legal arguments to the Court. Plaintiff's counsel can make each of the arguments proffered by Professor Nash during the trial. It would be unfair to Defendant for the Court to award Plaintiff's legal arguments the elevated stamp of 'expert.'" *Id* at 9.

[11] See Gov. Ex. A, Expert Report of Scott D. Michel.

penalties against Bittner.[12] Michel is to further opine on the reasonableness of the IRS decision to assess FBAR penalties in the amounts that were assessed.[13] Michel states it's his opinion that the IRS's determination to assess FBAR penalties was incorrect.[14] All to reach his conclusion, that the FBAR penalty assessments were excessive and the IRS erred.[15] It also appears that Michel wants to compare this case to other reported cases, which is clearly a function of the Court.[16] Courts have precluded the exact expert testimony that the Defendant seeks from Michel a determination of– the "reasonableness" of the IRS's and Defendant's actions as they relate to the IRS penalties" [17] based on his analysis of his cases, other practitioners' views and the Bar's views. The issues for the Court in the present case are whether Bittner had a duty to file FBAR reports and failed to do so, whether IRS violated the law, whether IRS abused its discretion in assessing the FBAR Penalties, and the reasonableness of Bittner's actions. These are issues to be decided by the Court, in its roles of deciding the law and as the fact finder. It is the Court's function and role to determine if amount of the FBAR penalty assessments is within the

---

[12] Gov. Ex. A, at pg. 3 under B. Assignment.

[13] Gov. Ex. A, at pg. 3 under B. Assignment and Section IV, pgs. 16 -24.

[14] Gov. Ex. A, at pgs. 16-17, 19.

[15] Gov. Ex. A, at pg. 3 under B. and pgs. 16, 19, 21, 23, 24.

[16] See Gov. Ex. A, Section IV, at pg. 18, fn. 20.

[17] *Bemont Investments, LLC v. United States*, No. 4:07-cv-9 [Docket #216] (E.D. Tex. March 5, 2010) (precluding expert testimony about whether the taxpayers' actions were reasonable as "[t]his is a matter reserved for the Court."). *Bemont Investments, LLC v. United States*, 2010 WL 1286547.

law. Against the backdrop of well- established and universally[18] applied legal precedent, the soundest path for the Court is to exclude Michel's legal opinions from the trial.

Furthermore, Michel's expert testimony does not aid the fact finder. Instead, he attempts to replace the fact finder. Not surprisingly, the Tax Court, in a case involving Bittner's income tax liabilities on some of the years at issue in this case, excluded an almost identical expert report of Scott D. Michel.[19] There, Bittner attempted to use Michel to opine that:

> (a) That, "the IRS has conducted an unnecessarily aggressive examination of Mr. and Mrs. Bittner's returns as compared to its treatment of similarly-situated taxpayers and violated certain longstanding principles governing IRS conduct in the course of an examination of a taxpayer."[20]

The Tax Court excluded the Michel's expert report and his testimony because it found that the testimony was about the law and directed the finder of fact on how to apply the law.[21] Likewise, in the present case, Michel's report is nothing more than a legal analysis opining on the facts this Court should find, and how the Court should apply the law to those facts. As such, Michel's opinion is wholly improper in this case. Michel

---

[18] "Every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law." *In re Initial Pub. Offering Sec. Litig*., 174 F. Supp.2d 61, 64 (D.N.Y. 2001) (citing numerous cases).

[19] *Alexandru Bittner and Sherry Bittner v. Commissioner of Internal Revenue*, Docket No. 19894-17.

[20] See Gov. Ex. B, Petitioners' Expert Report of Scott D. Michel in Docket No. 19894-17 at pg. 3.

[21] See Gov. Ex. B, Petitioners' Expert report and Gov. Ex. C, Tax Court order in Docket No. 19894-17.

### B.     Michel's Opinion Testimony Will Not Assist the Court

The Court should exclude Michel's testimony on the law since it will not assist the trier of fact.[22] Michel opines that the IRS assessments are excessive - basically instructing the Court to find that assessments are invalid under the law.[23] Yet, Michel, being a trained lawyer, is smart enough to not state a final opinion. Instead, he attempts to disguise it with statements such as "facts of this case warrant treatment in accordance with IRM [Internal Revenue Manual]" or excessive penalties that what should have been assessed. However, no matter how articulated, a review of Michel's report its entirety reveals that that Michel is instructing the fact finder to determine the IRS penalties are excessive because he thinks so. Thus, Michel's report reads more like a legal brief to reach a final conclusion rather than independent expert analysis on an issue of fact that could possibly assist the Court, as required by Rule 702. Bittner is free to advocate, through arguments of counsel and briefs, his perceived view of the law, the Internal Revenue Manual, and how his view could have any possibly bearing on determining whether the IRS's assessment of FBAR penalties against him was within the law. Bittner is also free to argue through counsel and briefs that the IRS abused its discretion and assessed penalties in violation of the law. However, expert witness reports and testimony are not the vehicles through which those arguments can be made. Besides the obvious prejudice to the United States from allowing this improper testimony, we should not lose sight of a larger issue. If courts start allowing lawyers to testify as witnesses at trial on their view and application of the law, notwithstanding

---

[22] *See* Fed. R. Evid. 702.

[23] Gov. Ex. A, at pg. 3, under heading "B. Assignment and pg. 24.

the problematic precedent, then there will be an inevitable "arms race" as litigants start hiring their stables of attorney expert witnesses in an attempt to secure favorable results while ignoring the court's role. If so, should the government now hire an attorney or bring in an IRS attorney to opine that the IRS did not abuse its discretion and that the FBAR penalties assessed against Bittner were not excessive under the law.[24] No! These decisions are for the Court to decide, not attorneys testifying as disguised expert witnesses. Accordingly, Michel's expert testimony should be excluded.

### C. Michel's Opinions Are Not Based on Reliable Principles and Methods

Expert witnesses are commonly used in cases with scientific, technical, or other specialized subject matters, which are typically beyond the common knowledge of the trier of fact. Testimony based on scientific, technical, or other specialized knowledge is subject to the Court's gatekeeping function, which forecloses expert testimony that does not "rest on a reliable foundation" or is not "relevant to the task at hand."[25] Opinion testimony of experts is useful to the trier of fact if it is based upon the informed and unbiased opinion of a qualified expert arriving at a reasoned conclusion. And, to be admissible, it fundamentally must also assist the trier of fact to understand the factual evidence or to determine a fact in issue.[26]

---

[24] Likewise, it would be improper for the undersigned government's attorney to opine that he his opinion based on his experience that FBAR penalties are property; again no that is the court's job.

[25] *Daubert*, 509 U.S. at 597. *See also*, *Kumho Tire Co. v. Carmichael*, 526 U.S. at 149 (extending the principles of *Daubert* to all expert testimony).

[26] Fed. R. Evid. 702; *Daubert*, 509 U.S. at 591.

Fed. Rul. Evid. 702 provides that a witness who is qualified as an expert may testify in the form of an opinion if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

However, Michel's opinions are not based on reliable principles and methods as required by Fed. Rul. Evid. 702. Michel's report does not clearly state what technical or specialized area in which Michel is being offered as a witness. It appears that Michel's specialized training is attending law school and practicing law.[27] In fact, the sole qualifications and professional background set out in Michel's report are his 38-year long career as an attorney "in the area of tax controversy.... particularly on cases involving taxpayers who have failed to disclose foreign assets to the Internal Revenue Service, **with an emphasis on the failure to disclose foreign financial accounts."**[28]

The following factors are relevant to whether an expert's principles and methods are reliable:

(a) whether the expert's technique or theory can be or has been tested--that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability;
(b) whether the technique or theory has been subject to peer review and publication;

---

[27] See Gov. Ex. A, Michel's Report at exhibit A Curriculum Vitae of report.

[28] See Gov. Ex. A, at pg. 1, report background and qualifications. See also, Gov. Exs. B and C, Michel's expert report filed and excluded from the Tax Court, it appear he added the bolded language to his report.

      (c)      the known or potential rate of error of the technique or theory when applied;
      (d)      the existence and maintenance of standards and controls; and
      (e)      whether the technique or theory has been generally accepted in the scientific community."[29]

In the present case, the method employed by Michel throughout his report is argumentative, and anecdotal. The report reads more like a legal brief than an objective analysis of facts. The report compiles no data, and provides no testable analysis. For example, Mr. Michel writes that he has advised "over 1,500 companies and individuals with offshore tax noncompliance through voluntary disclosures, civil examination, and criminal tax investigations, **often involving previously unreported foreign financial accounts."**[30] The report contains no data with regard to how many of these companies and individuals filed returns outside of the voluntary disclosure program, which are the facts of this case, and what the results of those cases were.

      Michel's conclusion that the penalties imposed on Bittner are inconsistent with penalties asserted against similar situated taxpayers is "based on my and my firm's experience, and my understanding of similar cases handled by colleagues…."[31] Yet, there are no details, facts or any discussion about his firms' experience". Likewise, there are no details or facts as to what colleagues or cases Michel is referring. How many taxpayers? What are their names so we can

---

[29] Fed. R. Evid. 702 advisory committee's note (re-iterating the list of non-exclusive factors set forth in *Daubert).*

[30] Page 1 report background and qualifications. See also, Michel's expert report filed and excluded from the Tax Court, it appears he added the bolded language to his report. The Court should also be concerned whether Michel is truly an independent witness, or is merely advocating for his other clients who may have similar issues by trying to improperly influence the outcome of this case.

[31] Gov. Ex. A., report at page 17, 1st full paragraph. See also, Gov. Ex. A., report at pgs. 16-17, but here Michel admits there are few such cases which is in stark contrast to thousands and tens of thousands of taxpayers Michel alludes to in other parts of his report.

test his purported comparisons? How many taxpayers have been in this exact situation? What was the outcome of each case? Such questions are not answered and are likely unanswerable.

Michel also states that the assessed non-willful FBAR penalties against Bittner are "extraordinary" in "stark contrast to the cases that I and my frim have handled, read about, or heard about."[32] Again, what cases handled? What cases were read about and in what publication? What cases were heard about and from whom? Clearly, these questions are unanswerable and Michel's statements are unverifiable.

Michel further states that the assessed FBAR penalties against Bittner are "in excess of amounts imposed on thousands of other taxpayers...."[33] Michel further states that the IRS's penalty assessments are "out of line with the result experienced by tens of thousands of other taxpayers"[34] Thousands and tens of thousands of taxpayers; did Michel do a survey? Did he contact tens of thousands of taxpayers? Tens of thousands even conflicts with his statement that he has represented some 1,500 clients. This is the not the type of reliable method contemplated by Fed. R. Evid. 702, but merely statements made unfairly influence the fact finder. As such, it is impossible to test whether principles and methods were reliably applied to the facts of this case as required by Fed. Rul. Evid. 702, because there are essentially no testable principles and

---

[32] Gov. Ex. A., report at page 22, 1st full paragraph.

[33] Gov. Ex. A., report at pg. 16, 1st full paragraph under IV. Opinion.

[34] Gov. Ex. A., report at pg. 24.

methods other than the Michel's say-so. Such testimony is typically excluded as inappropriate *ipse dixit*.[35] Accordingly, Michel's expert report and testimony should be excluded.

Furthermore, Michel states "the penalties sought in this case are so far off the spectrum of what I and other practitioners in my firm have seen, and even so inconsistent with oft-applied principles of sound tax administration…."[36] Again, no data about which practitioners or cases. Does Michel's firm represent all the U.S. taxpayers who have been assessed FBAR penalties? What "oft applied principles of sound tax administration is Michel referring." In fact, the concepts of sound tax administration should include that in 2004, Congress enacted new penalties for non-willful failure to report foreign accounts.[37] In 2004, Congress was concerned about the number of individuals using offshore bank accounts to engage in abusive tax scams had grown significantly in recent years.[38] Congress believed that improving compliance with the FBAR reporting requirements was vitally important to **sound tax administration**, combating terrorism, and preventing the use of abusive tax schemes and scams.[39] Thus, Congress believed that increasing the prior-law penalties for willful noncompliance with the reporting requirements **and imposing a new civil penalty that applies without regard to willfulness in such**

---

[35] *See GE v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either Daubert or the federal rules of evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert"); *Oddi v. Ford Motor Co.*, 234 F.3d 136, 158 (3d Cir. 2000) (noting that an expert's "ipse dixit does not withstand Daubert's scrutiny").

[36] Gov. Ex. A., report at pg. 23.

[37] *See* 31 U.S.C. § 5321.

[38] Joint Committee on Taxation, General Explanation of Tax Legislation enacted in the 108th Congress, JCS- 5-05 NO 32 (I.R.S.), 2005 WL 5783636 at *34–35.

[39] *Id*. (emphasis added).

**noncompliance would improve the reporting of foreign financial accounts**.[40]　However, Michel does not mention these considerations as part of sound tax administration. It is clear, Michel's expert testimony is a legal opinion, unhelpful to the trier of fact, and should be excluded.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court strike the report and testimony of proposed expert witness Scott D. Michel in this case.

> RICHARD E. ZUCKERMAN
> Principal Deputy Assistant Attorney General
>
>  /s/ Herbert W. Linder
> HERBERT W. LINDER
> Ohio Bar No. 0065446
> Attorney, Tax Division
> U.S. Department of Justice
> 717 N. Harwood St., Suite 400
> Dallas, Texas 75201
> Phone: (214) 880-9754
> Fax (214) 880-9741
> herbert.w.linder@usdoj.gov
>
> ATTORNEYS FOR UNITED STATES

---

[40] *Id.* *See* 31 U.S.C. § 5321 of American Jobs Creation Act of 2004, § 821, Pub. L. No. 108-357, 118 Stat. 1418 (2004), emphasis added.

## **CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that service of the foregoing motion has been made on February 8, 2020, by the Clerk's ECF filing system to:

CLARK HILL STRASBURGER
Farley P. Katz
Rachael Michel
2301 Broadway St.
San Antonio, Texas 78209

                                          /s/ Herbert W. Linder
                                          HERBERT W. LINDER