**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,          )<br>                                      Plaintiff,     )<br>                                                            )<br>v.                                                        )<br>                                                            )     Case No. 4:19-CV-00415<br>ALEXANDRU J. BITTNER,                   )<br>                                                            )<br>                                      Defendant   )<br>                                                            ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE THE EXPERT TESTIMONY AND REPORT OF SCOTT D. MICHEL**

Defendant submits this response to Plaintiff's Motion to Strike the Expert Testimony and Report of Scott D. Michel ("Motion to Strike"). Defendant requests this Court deny Plaintiff's Motion to Strike because: (1) the report is not an improper legal conclusion; (2) the report is substantially probative and it will aid the trier of fact in their determination of key issues in the case; and (3) Mr. Michel is highly qualified to be an expert in this case based on his thirty-eight years of experience in tax controversies, specifically with taxpayers who have failed to disclose foreign financial accounts. In support thereof the Defendant will respectfully show the Court as follows:

## I.     ARGUMENT AND AUTHORITES

The government seeks to collect from Defendant $2.7 million dollars for his non-willful failure to file 5 information forms ("FBARs"). Defendant is a dual citizen and lived in his birth country for over 20 years. He did not know FBARs existed or that he had any obligation to file them. Upon returning to the United States and learning of his filing obligations, Defendant acted in good faith and took prudent steps to remedy his prior reporting failures. Corrected FBARs

1

were supplied to Plaintiff on September 25, 2013, before an examination commenced, and those forms voluntarily reported more information than was required.

Imposition of such massive fines for someone who acted non-willfully and corrected his omissions after discovery, is not only contrary to the statute,[1] a prohibited excessive fine, a violation of due process and the government's discretion; it is also contrary to how the IRS treats other similarly situated taxpayers. Put simply, Mr. Michel who has spent years representing taxpayers who have failed to comply with their reporting obligations as to foreign income and assets, will testify that, in his experience and knowledge, the fines imposed against Mr. Bittner are astronomically greater than any fines imposed on similarly situated taxpayers and violate IRS practice and procedure. Mr. Michel's testimony is critical to Defendant's case and the government should not be permitted to keep his testimony from the trier of fact.

### A. Mr. Michel's Opinion is Based on IRS Practices and Procedures, is Not an Improper Legal Opinion, and is Helpful to the Trier of Fact

Plaintiff argues that Mr. Michel's report is nothing more than an improper legal opinion. However, Mr. Michel's report does not give an improper legal opinion; to the contrary, it evaluates the factual manner in which the IRS treated the Defendant in comparison to other similarly situated taxpayers and discusses whether the IRS followed its general practices and procedures in the handling of Defendant's case.

Indeed, experts are often permitted to evaluate the practices and procedures of various industries. *See Kreit Mechanival Associates, Inc. v. Commissioner*, 137 T.C. 123, 132 (2011)

---

[1] The Government states (page 2) that "this assessment is expressly permitted by the relevant statute." That is not correct, and Defendant is the process of finalizing a motion for partial summary judgment that the statute permits at most a fine of $10,000 per year or $50,000 total here, far less than the $2.7 million they have assessed. The case cited by the government, *United States v. Boyd*, is on appeal, and Defendant contends it was incorrectly decided. *See United States v. Boyd*, No. 2:18-cv-00803, 2019 WL 1976472 (C.D. Cal. Apr. 23, 2019), *appeal docketed*, No. 19-55585 (9th Cir. May 23, 2019).

(admitting an expert report because it [was] helpful to the Court in understanding the IRS's administrative procedures); *Austin v. Commissioner*, T.C. Memo. 1997-157, at *12 (1997) ("Although [the expert] did not submit a written report, we allowed him to testify as an expert with respect to industry practice."); *see also U.S. ex rel. Barron v. Deloitte & Touche, LLP*, CIVA SA-99-CA-1093-F, 2008 WL 7136868, at *2 (W.D. Tex. Sept. 26, 2008) ("In this case, expert testimony regarding Medicaid rules and regulations in general will likely assist the trier of fact . . .").

Here, Mr. Michel opines on the treatment of Defendant based on his experience with similarly situated taxpayers. Furthermore, testimony about the Plaintiff's conduct related to customary IRS practices and procedures is not an improper legal conclusion—instead, it helps the trier of fact understand Plaintiff's standard application of its administrative practices and procedures and whether those procedures were properly applied in this case.

Plaintiff also claims that Mr. Michel's expert report must be excluded as it will not assist the trier of fact. However, the report will assist the jury or the Court in its determination of whether the IRS properly applied its practices and procedures and whether Defendant was treated differently than similarly situated taxpayers. These areas are of significant consequence in this action and the expert report will be helpful for the jury or the Court to understand the issues of the case.

### B. Mr. Michel is Qualified Based on His 38 Years of Experience and His Report is Based on Reliable Principles and Methods

The trial court has broad discretion regarding the admissibility of expert testimony. Indeed, "Rule 702 is generally construed liberally." *U.S. v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); *see also Karlo v. Pittsburg Glass Works, LLC*, 849 F.3d 60, 80-81 (3d Cir. 2017) ("The standard for reliability is not that high"); *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d

Cir. 2008) (noting that Rule 702 is liberally construed and "a broad range of knowledge, skills, and training qualify an [individual as an] expert"); *Dukatt v. United States*, EP-99-CA-339-DB, 2000 WL 33348770, at *2 (W.D. Tex. Dec. 8, 2000) ("The qualifications requirement of Rule 702 has been interpreted liberally."); Fed. R. Evid. 702, advisory committee's note to 2000 amendments ("A review of caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule.").

Plaintiff argues that Mr. Michel's report is not based on reliable principles or methods and must be excluded. Plaintiff then mechanically lists the relevant *Daubert* factors. However, each *Daubert* factor is not required to be applied in every case and, in any event, should not be mechanically applied. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) ("[T]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."); Fed. R. Evid. 702, advisory committee's note to 2000 amendments ("Other cases have recognized that not all of the specific *Daubert* factors can apply to every type of expert testimony.").

Indeed, many of the factors Plaintiff cites all relate to scientific and experimental testimony such as "whether the expert's technique or theory can be or has been tested," or "the known or potential rate of error of the technique or theory when applied" or "the existence and maintenance of standards and controls." It is disingenuous to contend that an expert's testimony as it relates to IRS practices and procedures or treatment of similarly situated taxpayers does not meet the above-mentioned scientific standards.

In fact, when an expert's testimony is derived largely from industry-related practical experience, courts have found the *Daubert* factors unhelpful. *See First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (finding the *Daubert* factors unhelpful for

4

"testimony that derived largely from [expert's] own practical experiences throughout forty years in the banking industry"); *see also Krauskopf v. Commisioner*, T.C. Memo 1984-386 (1984) ("Our only concern in determining the qualification of an expert is whether his knowledge of the subject matter will assist us in arriving at the truth.").

Here, Mr. Michel has nearly forty years of experience focusing "particularly on cases involving taxpayers who have failed to disclose foreign assets to the Internal Revenue Service, with an emphasis on the failure to disclose foreign financial accounts." *Expert Report of Scott D. Michel*, at p.1. Mr. Michel's specialized knowledge and vast experience with taxpayers who failed to report foreign financial accounts will be helpful to the trier of fact in this case, which specifically involves the Defendant's untimely reported foreign bank accounts. *See Krauskopf*, T.C. Memo 1984-386 ("The critical factor in determining the admissibility of his testimony is his actual experience and the expected probative value of his opinion."). Moreover, reliance on Plaintiff's published guidance and policies to evaluate whether Plaintiff violated its own procedures in dealing with Defendant is clearly reliable.

Furthermore, "the fact that [Mr. Michel's] opinions may not have been subjected to the crucible of peer review, or that their validity has not been confirmed through empirical analysis, does not render them unreliable and inadmissible." *First Tennessee Bank*, 268 F.3d at 344. Mr. Michel's thirty-eight years of experience in field provides the necessary qualifications and reliability. *See id.* at 335 (noting that opinions based on the expert's own practical experiences from forty years in the banking industry "do not easily lend themselves to scholarly review or traditional scientific evaluation"); *Hankey*, 203 F.3d at 1169 ("The *Daubert* factors . . . simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it."). If Plaintiff does

5

not agree with Mr. Michel's report and testimony, Plaintiff's counsel has the right to question him on cross-examination. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993).

Plaintiff next complains that Mr. Michel's report does not specifically list the similarly situated taxpayers his report relies on or provide the outcome of their cases. However, as Mr. Michel noted in his report, many FBAR cases are settled outside of the public eye and there are very few filed cases in which the government seeks to collect non-willful FBAR violations. *Expert Report of Scott D. Michel*, at p.18. Indeed, Mr. Michel is aware of only four filed cases in which the government has sought to collect non-willful FBAR penalties. *Id.* Mr. Michel relied on the information available to him and the public. If the government has statistics that refute this information, it is more than welcome to present those statistics as evidence in this case. In fact, Defendant will formally request that the government do just that by way of interrogatories.

Finally, Plaintiff alleges that the expert report does not state clearly state what technical or specialized area in which Mr. Michel is being offered as an expert witness. In fact, the report states that Mr. Michel will opine as to: "(1) whether the IRS has complied with its published procedures in administering this penalty, and (2) whether the RIS has treated the taxpayer consistently with similar matters that I have participated in or observed in my law practice." *Expert Report of Scott D. Michel*, at p.3.

In sum, Mr. Michel's nearly forty years of personal experience in the field of tax controversy relating to taxpayers who failed to disclose foreign accounts establishes the reliability of his opinions this case. Thus, Plaintiff's Motion to Strike should be denied.

## II. <u>CONCLUSION</u>

For these reasons, Defendant Alexandru Bittner respectfully requests that the Court deny Plaintiff's Motion to Strike the Expert Testimony and Report of Scott D. Michel.

Respectfully Submitted,

**CLARK HILL STRASBURGER**
2301 Broadway St.
San Antonio, Texas 78215
(210) 250-6000
(210) 250-6100 (Fax)

By: */s/ Farley P. Katz*
    FARLEY P. KATZ
    LEAD ATTORNEY
    State Bar No. 11108790
    fkatz@clarkhill.com
    RACHAEL RUBENSTEIN
    State Bar No. 24073919
    rrubenstein@clarkill.com
    FORREST M. "TEO" SEGER III
    Texas Bar No. 24070587
    tseger@clarkhill.com

**ATTORNEYS FOR DEFENDANT
ALEXANDRU BITTNER**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 2, 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

>Herbert W. Linder
>Attorney, Tax Division
>United States Department of Justice
>717 N. Harwood, Suite 400
>Dallas, Texas 75201
>Herbert.W.Linder@usdoj.gov
>*Attorney for Plaintiff,*
>*United States*

>*/s/ Farley P. Katz*
>FARLEY P. KATZ