Strasburger    9/12/2013 4:30:07 PM   PAGE   4/007   Fax Server

Alexandru Bittner / SSN   0102
Sherry Bittner / SSN   6797

Exhibit 3

## Statement of Reasonable Cause Per FS-2011-13

Alexandru Bittner was born in Romania in 1957. He attended high school in Romania and served one mandatory year in the Army. After his military service, he obtained a Master's degree in mechanical engineering, specializing in chemistry.

Because Mr. Bittner did not like the communist regime, and since he was of Jewish origin and his sister had already immigrated to Israel (in 1977), he felt heavily discriminated against so he decided to leave Romania. He received support for a visa as well as financial support from the Hebrew Immigrant Aid Society ("HIAS") and he legally arrived in the USA in December of 1982. In 1987, he became a naturalized United States citizen. Mr. Bittner met his wife, Sherry, in 1984. Sherry was a legal Chinese immigrant to the United States who, independently of Mr. Bittner, obtained her naturalization as well. Sherry received no formal higher education and may have obtained only a high school diploma. Sherry speaks very little English. They were married in 1985 and had a daughter in 1987.

In 1989, Mr. Bittner was employed as a plumber for the Los Angeles School District. After the December 1989 revolution and the fall of communism in Romania, Mr. Bittner returned to Romania in January, 1990. Over the years, Mr. Bittner became a successful businessman in Romania and invested in numerous and diverse businesses including real estate, telecommunications, tourism, and aquaculture while living there. In the mid-2000s, Mr. Bittner's business interests suffered and he sustained substantial losses.

While living in Romania, Mr. Bittner complied with Romanian tax laws and hired Romanian accountants to keep records and assist with tax compliance. He had no awareness during that time that he was obligated to file United States tax returns simply because he had become a naturalized US citizen. Nor did his accountants inform him of that fact. Mr. Bittner had severed his connections with the United States and reasonably believed he had no further United States tax obligations. He was unaware that the United States, unlike most countries (including Romania), taxes citizens on their worldwide income. During his 22 years of living in Romania, Mr. Bittner was registered as a US citizen with the US embassy in Romania. During all that time, he was never contacted by the embassy about any tax returns due. He had no reason to believe that the taxing jurisdiction of the United States differed from other foreign countries that tax earnings only in the jurisdiction where the income was generated. He had no US source income.

Mr. Bittner and his wife returned to the United States from Romania in late 2011. After returning to the United States, Mr. Bittner learned that he had been required to file tax returns in the United States because he was a naturalized citizen. He engaged a CPA, a solo practitioner, to prepare his tax returns. Mr. Bittner mistakenly understood that he

1344087.2/SPSA/26861/0101/091213



GOVERNMENT EXHIBIT 38

DOJ 000273

needed to file tax returns for all years he had been absent from the United States. Additionally, after reading the United States-Romania Tax Treaty, Mr. Bittner believed that, because he was exclusively a Romanian resident during those years, only Romania could tax his income. He discussed this with his tax return preparer who agreed with this conclusion. Mr. Bittner and the CPA prepared and filed 22 years of tax returns. Because Mr. Bittner had a mistaken understanding of the United States – Romania Tax treaty, which on its face appears to limit taxation to the country of residency, and because of the CPA's advice, Mr. Bittner mistakenly understood that the filing of the back returns was simply a formality. As a result, in preparing those returns he simply estimated his income from each year based on his recollection as to the large income events that had occurred. He did not consult his financial records, nor did he claim any business deductions, losses or expenses on those returns. Following the accountant's advice, he excluded the entire amount of the reported income, expressly relying on the United States-Romania tax treaty.

Mr. Bittner never understood, until he returned to the United States, that he was required to file U.S. tax returns for every year, including the years he lived exclusively in Romania. Nor did he understand that his and the CPA's interpretation of the United States-Romania tax treaty was incorrect (i.e., it did not exclude his Romanian income from U.S. taxation). Indeed, the treaty's "savings clause", which allows the United States to tax its citizens' income despite the treaty, is an obscure provision. Even experienced tax lawyers who have not specifically studied tax treaties often will misread the savings clause.

Throughout the entire time he lived exclusively in Romania, Mr. Bittner was simply unaware, as many other United States citizens in similar circumstances, that he had any United States filing obligations whatsoever. Although Mr. Bittner dealt routinely with foreign accountants, he was never informed that he had any United States tax obligations. Upon returning to the United States and discovering the facts, he immediately attempted to correct his mistakes and acted in good faith to comply with his tax obligations. In so doing, he overreacted and filed many more returns than would ever be required in similar circumstances.

As we have discussed, F.S. 2011–13 specifically covers this type of situation, involving United States persons that are dual citizens and living abroad. In such circumstances, the Internal Revenue Service has recognized the basic fact that such dual citizens often are not aware that the United States still taxes their worldwide income despite the fact that they have no connection with the United States. This is especially true in circumstances like Mr. Bittner, where an individual has returned to and is living in his country of origin.

F.S. 2011–13 summarizes the accepted rule and practice that, in these circumstances, a dual citizen should, upon discovering his legal obligations, file the last six years of tax returns. It further recognizes that, in such circumstances, dual citizens who have reasonable cause, and act appropriately, may not be subject to penalties (e.g. negligence, failure to file, failure to pay, failure to make estimated tax payments, or

1344087.2/SPSA/26861/0101/091213

DOJ 000274

Strasburger          9/12/2013 4:30:07 PM    PAGE   6/007    Fax Server

failure to file information returns). Mr. Bittner's case is a typical situation covered by F.S. 2011-13. He simply and reasonably had no awareness of his United States tax obligations and upon returning to the United States and becoming aware of those obligations, acted promptly and in good faith to rectify his omissions.

Under these circumstances, Mr. Bittner did not act negligently and had reasonable cause for not filing his returns and information forms. The Service accordingly should not apply any penalties.

1344087.2/SPSA/26861/0101/091213

DOJ 000275