Items 34-42. Provide the name, address, and identifying number of the owner of a foreign financial account for which the individual has signature authority but no financial interest. If there is more than one owner of the account for which the individual has signature authority, provide the information in Items 34-42 for the principal joint owner (excluding the filer). If account information is completed for more than one account of the same owner, identify the owner only once and write "Same Owner" in Item 34 for the succeeding accounts of the same owner.

Item 43. Enter filer's title for the position that provides signature authority (e.g., treasurer).

A United States person who is employed in a foreign country and who has signature authority over a foreign financial account that is owned or maintained by the individual's employer should only complete Part 1 and Part IV, Items 34-43 of the FBAR. Part IV, Items 34-43 should only be completed one time with information about the individual's employer.

**Part V-Consolidated FBAR**
Enter information in the applicable parts of the form only. If there is not enough space to provide all account information, copy and complete additional pages of the required Part as necessary. Do not use any attachments.

Who Can File a Consolidated FBAR. An entity that owns directly or indirectly more than a 50 percent interest in a legal entity that is required to file an FBAR is permitted to file a consolidated FBAR on behalf of itself and such other legal entity. Check box "d" in Part I, Item 2 and complete Part V. If filing a consolidated FBAR and reporting 25 or more financial accounts, complete only Items 34-42 for each person included in the consolidated FBAR.

For Items 15-23, see Part II.

Items 34-42. Provide the name, taxpayer identification number, and address of the owner of the foreign financial account as shown on the books of the financial institution. If account information is completed for more than one account of the same owner, identify the owner only once and write "Same Owner" in Item 34 for the succeeding accounts of the same owner.

**Signatures**
Items 44-46. The FBAR must be signed by the filer named in Part I. If the FBAR is being filed on behalf of a partnership, corporation, limited liability company, trust, estate, or other legal entity, it must be signed by an authorized individual. The authorized individual's title is entered in Item 45. An authorized official of the person filing the consolidated FBAR must sign the FBAR.

An individual must leave "Filer's Title" blank, unless the individual is filing an FBAR due to the individual's signature authority. If an individual is filing because the individual has signature authority over a foreign financial account, the individual should enter the title upon which his or her authority is based in Item 45.

A spouse included as a joint owner, who does not file a separate FBAR in accordance with the instructions in Part III, must also sign the FBAR (in Item 44) for the jointly owned accounts. See the instructions for Part III.

**Penalties**
A person who is required to file an FBAR and fails to properly file may be subject to a civil penalty not to exceed $10,000. If there is reasonable cause for the failure and the balance in the account is properly reported, no penalty will be imposed. A person who willfully fails to report an account or account identifying information may be subject to a civil monetary penalty equal to the greater of $100,000 or 50 percent of the balance in the account at the time of the violation. See 31 U.S.C. § 5321(a)(5). Willful violations may also be subject to criminal penalties under 31 U.S.C. § 5322(a), 31 U.S.C. § 5322(b), or 18 U.S.C. § 1001.

[FR Doc. 2010-4042 Filed 2-25-10; 8:45 am]

BILLING CODE 4810-02-P

Footnotes

1     The House report states:
Considerable testimony was received by the Committee from the Justice Department, the United States Attorney for the Southern District of New York, the Treasury Department, the Internal Revenue Service, the Securities and Exchange Commission, the Defense Department and the Agency for International Development about serious and widespread use of foreign financial facilities located in secrecy jurisdictions for the purpose of violating American law. Secret foreign bank accounts and secret foreign financial institutions have permitted proliferation of 'white collar' crime; have served as the financial underpinning of organized criminal operations in the United States; have been utilized by Americans to evade income taxes, conceal assets illegally, and purchase gold; have allowed Americans and others to avoid the law and regulations governing securities and exchanges; have served as essential ingredients in frauds including schemes to defraud the United States; have served as the ultimate depository of black market proceeds from Vietnam; have served as a source of questionable financing for conglomerate and other corporate stock acquisitions, mergers and takeovers; have covered conspiracies to steal from the U.S. defense and foreign aid funds; and have served as the cleansing agent for 'hot' or illegally obtained monies. H.R. Rep. No. 975 91st Cong. 2d Sess. 12 (1970).
FN2 See Tax Haven Banks and U.S. Tax Compliance, Staff Report, Permanent Subcommittee on Investigations, Senate Comm. on Homeland Security and Governmental Affairs, (July 17, 2008); Tax Haven Abuses: The Enablers, the Tools and Secrecy, Staff Report, Permanent Subcommittee on Investigations, Senate Comm. on Homeland Security and Governmental Affairs, (Aug. 1, 2006).

3     See 31 U.S.C. 5312(a)(1) which excepts from the definition of financial agency a person acting for a country, a monetary or financial authority acting as a monetary or financial authority or an international financial institution of which the United States government is a member.

4     This notice of proposed rulemaking would not amend sections 103.27 and 103.32.

5     The FBAR form currently available on both the FinCEN and IRS Web sites allows users to complete the form electronically and then print a PDF document that can be mailed to the address on the form.

6     See 31 CFR 103.56(g).

7     31 U.S.C. 5314.
FN8 Announcement 2009-51, 2009-25 I.R.B. 1005.

9     In crafting the proposed rule, FinCEN reviewed the public comments received in response to Notice 2009-62.

10     See Tax Haven Banks and U.S. Tax Compliance, Staff Report, Permanent Subcommittee on Investigations, Senate Comm. on Homeland Security and Governmental Affairs at 8 (July 17, 2008).

11     See 31 U.S.C. 5312(a)(2)A.

12     See 31 U.S.C. 5312(a)(2)I.

13     Concerns about the use of hedge funds to evade taxes is discussed in The Report of the President's Working Group on Financial Market, Hedge Funds, Leverage, and the Lessons of Long-Term Capital Management (April 1999). "In the tax area, the fact that a significant number of hedge funds are established in offshore financial centers that are tax havens has focused attention on whether offshore hedge funds are associated with illegal tax avoidance and are taking advantage of their offshore situs for other inappropriate purposes." Id. at 4. FinCEN is also aware of pending legislative proposals that would require United States individuals to annually report to the IRS with respect to foreign hedge funds and private equity funds, for example.

14     As described by the Senate Permanent Subcommittee on Investigations (PSI), Committee on Homeland Security and Governmental Affairs, in its 2006 report, Tax Haven Abuses: the Enablers, the Tools and Secrecy, Senate Hearing 109-797, 109th Cong., 2d Sess. (August 1, 2006), arrangements such as "trust protectors" have been employed by United States taxpayers to achieve substantial control over assets held in offshore trusts. In some cases trust protectors serve to safeguard trust assets from misappropriation. However, many offshore trusts are established with the intention of maintaining client control. In such cases trust protectors can serve as conduits of the client's instructions to the trustees, with the trustees merely rubber stamping the protectors' directions. Such an arrangement permits greater client control while maintaining the appearance of trustee independence.

15     The PSI reported the use of transfer companies, single purpose companies used solely to disguise the transfer of funds from an entity controlled by a taxpayer to the account of another entity controlled by the taxpayer. See Tax Haven Banks and U.S. Tax Compliance, Staff Report, Permanent Subcommittee on Investigations, Senate Comm. on Homeland Security and Governmental Affairs, at 4, 65 (July 17, 2008).