**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:19-cv-00415 |
| | ) | |
| ALEXANDURE BITTNER | ) | |
| Defendant. | ) | |

**DEFENDANT ALEXANDRU BITTNER'S**
**<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

I. STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................................1

II. STATEMENT OF THE ISSUE ...........................................................................................4

III. LEGAL STANDARD.........................................................................................................4

IV. ARGUMENT AND AUTHORITIES...................................................................................5

      A.      The Statutory and Regulatory Schemes Regarding FBARs ....................................5

              1.      Overview.......................................................................................................5

              2.      Specific Statutes and Regulations .............................................................6

              3.      Application to Mr. Bittner.........................................................................8

      B.      The Maximum Penalty Under the Statute for a Non-Willful Failure
              to Timely File an FBAR is $10,000 per Form ........................................................9

      C.      The Legislative History of Section 5321 Supports Mr. Bittner's
              Position that the Maximum Penalty is $10,000 per Form .....................................11

      D.      The Non-Willful Failure to Timely File an FBAR Is Not Multiple
              Violations of the Law, Thus, Mr. Bittner Committed Only Five
              Violations from 2007-2011, Not 272 Separate Violations ....................................12

      E.      A "Per Account" Penalty Stands at Odds with the Actual Filing
              Threshold and the Government's Own Authorities ...............................................14

      F.      The Government's Interpretation of the Non-Willful Failure to File
              Penalties is at Odds with its Interpretation of the Criminal Penalties...................16

      G.      The Government's Position Will Lead to Absurd Results and
              Inconsistent Treatment of Similarly Situated Taxpayers – As is
              Clearly Demonstrated in this Case........................................................................17

      H.      Statutes Imposing Penalties Are Strictly Construed Against the
              Government and the Rule of Lenity Requires that any Ambiguity
              be Resolved in the Defendant's Favor ..................................................................19

      I.      The Government's Position is Contrary to Analogous Cases in
              Federal Criminal Law ...........................................................................................21

      J.      *Boyd v. United States*, Case No. CV 18-803-MWF (JEMx), 2019
              WL 1976472 (C.D. Cal. Apr. 23, 2019) was Wrongly Decided...........................24

V. CONCLUSION AND PRAYER .........................................................................................28

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:19-cv-00415- |
| | ) | |
| ALEXANDURE BITTNER | ) | |
| Defendant. | ) | |

**DEFENDANT ALEXANDRU BITTNER'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Alexandru Bittner ("Defendant" or "Mr. Bittner") submits his Motion for

Partial Summary Judgment and would respectfully show the Court as follows:

This case arises out of Mr. Bittner's failure to file an annual *Report of Foreign Bank and*

*Financial Accounts* ("FBAR" or "FBAR form") for the years 2007-2011.  Although the

government determined that Mr. Bittner's failure to timely file FBARs was non-willful, it

ignored the plain language of the statute capping the maximum non-willful penalty at $10,000

per year and assessed $2,700,000 in FBAR penalties for Mr. Bittner's innocent or, at worst,

negligent failures.

## I.  STATEMENT OF UNDISPUTED MATERIAL FACTS

Mr. Bittner was born in Romania in 1957 where he lived until 1982 during the

communist era.  In early 1982, he immigrated to the United States to escape the communist

regime and discrimination against Jews.  Mr. Bittner became a naturalized citizen in 1987.

While living in the United States, Mr. Bittner worked as a dishwasher and a plumber, eventually

earning his master plumbing certificate.  In 1990, the Romanian Revolution occurred and the fall

of communism there.  After living in the United States for eight years (three as a naturalized

citizen), Mr. Bittner returned to Romania believing there would be an opportunity for a better life

1

in his home country.  Mr. Bittner remained in Romania until 2011.  **Exhibit A**, *Bittner Declaration* at ¶1.

During the two decades Mr. Bittner lived in Romania he visited the United States on a few occasions to see family and to celebrate his 50th birthday.  Mr. Bittner had never heard of FBAR forms, much less that as a naturalized U.S. citizen living abroad he was required to file them.[1]  In the 1990s, when Mr. Bittner resided in Romania, his sister, or his brother-in-in law, sent him some Form 1040 tax returns to sign, reporting small amounts of U.S. source income from a minority interest in a restaurant they owned.  *Id.* at ¶2.

Shortly after Mr. Bittner returned to the United States, he discovered that he had been required to file tax returns reporting income earned abroad.  As a result, he searched for an accountant who had experience with U.S. citizens living and earning money abroad.  This search led him to hire Mr. Jeff Beckley ("Beckley"), a CPA whose website stated that he had expertise to advise individuals in situations such as Mr. Bittner's, to regain compliance with U.S. law.  Mr. Bittner told Beckley that he had foreign income, bank accounts, and business interests and provided Beckley with all the information and documents he requested.  Beckley prepared Form 1040, tax returns, for the years 1990-2011.  Beckley also told Bittner that he needed to file FBARs reporting certain foreign bank accounts, and Beckley prepared those for 1996-2011.  Mr. Bittner signed the Form 1040s and FBARs, and Beckley filed them on his behalf.  *Id.* at ¶*3*.

Unknown to Mr. Bittner at the time, Beckley made numerous errors in preparing the tax returns and FBARs. Beckley mistakenly determined that under the United States/Romania Tax Treaty (the "Treaty"), Mr. Bittner's income in Romania was taxable only by Romania, not the United States.  Accordingly, Beckley reported Mr. Bittner's gross income, but backed that

---

[1] The IRS acknowledged as much when it determined that Mr. Bittner's failure to file the FBARs was non-willful.

amount out of the returns, attaching a statement that the income was not taxable in the United States under the Treaty.  In addition, even though Mr. Bittner provided Beckley with a schedule of all personal bank accounts he had in Romania, Beckley prepared FBARs disclosing only the bank account with the highest balance for each year.  Beckley never explained to Bittner that he was treated as having a "financial interest" in bank accounts held by foreign corporations for which he owned more than 50 percent of the stock.  Beckley made these grossly negligent errors, as he was not competent to provide Bittner the services he advertised.  *Id.* at *¶4*.

When the tax returns were filed, the IRS disallowed the claimed Treaty exclusion and assessed and billed Bittner $6,042,878 in taxes, penalties and interest.  He then engaged tax counsel and a new CPA firm.  On September 12, 2013, Mr. Bittner filed amended tax returns for the years 2006-2011, which took nearly 9 months to prepare because of their complexity. Primarily because of foreign tax credits and capital losses, those tax returns showed total tax due of $625, which Mr. Bittner paid at that time.  On September 25, 2013, Mr. Bittner filed corrected FBARs prepared by the new CPA, who checked the box that he had a financial interest in 25 or more foreign accounts, which were his personal accounts and accounts held by corporations which he owned more than 50 percent of.  As Mr. Bittner was just an investor, he did not have signatory authority over any of the corporate accounts.  Although the FBAR instructions required that Mr. Bittner only state the number of accounts for which he had financial interest in, he also attached a schedule disclosing all foreign bank account information and balances on advice of his undersigned counsel.  Many of the bank accounts disclosed had balances well below $10,000, including some with as little as $1.  The IRS found that Mr. Bittner's failure to file FBARs was non-willful, which means such failures were innocent or, at worst, negligent.  *Id.* at *¶5*.

B6544\A63010\4828-7219-8835.v6-3/11/20

The IRS issued Mr. Bittner a notice of deficiency regarding his proposed income tax liabilities. In response, he filed a petition in the United States Tax Court.  That petition was assigned docket number 19894-17.  An agreed decision was entered in that case on November 12, 2019.  With respect to the years for which the IRS seeks to impose FBAR penalties (2007-2011), the agreed decision found no income tax deficiencies for the years 2008, 2009 and 2010, and tax deficiencies of $46,385.88 for 2007 and $127,000 for 2011, all of which Mr. Bittner has paid.  *Id.* at *¶6.*

On June 8, 2017, the IRS assessed FBAR penalties against Mr. Bittner totaling $2,720,000, computed on a *per account* basis for Mr. Bittner's non-willful failure to timely file FBARs for 2007-2011.  Dkt. 1, *Complaint* at ¶¶27–31.  In calculating the penalty assessments, the IRS examining agent relied solely upon bank account information and corrected FBARs voluntarily supplied by Mr. Bittner in 2013.  **Exhibit B**, *Excerpt of Deposition of Anh Reach*, at p. 26-27, 35-36, and 40-42.  On June 6, 2019 the government filed the instant lawsuit in an attempt to collect against Mr. Bittner the *nearly $3,000,000* of assessed FBAR penalties (plus accrued interest) for his *non-willful* and *innocent* failure to timely file 5 FBAR forms.  *See* Dkt. 1, *Complaint* at ¶¶27–31.

## II.  <u>STATEMENT OF THE ISSUE</u>

Does 31 U.S.C. 5321(a)(5)(B)(i) limit the maximum penalty that can be assessed for a non-willful failure to timely file an FBAR to $10,000?  Resolution of this issue will limit the government's claim in this suit to a maximum of $50,000 instead of $2,700,000.

## III.  <u>LEGAL STANDARD</u>

Rule 56(c) of the Federal Rules of Civil Procedure requires the granting of summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)).

## IV.  ARGUMENT AND AUTHORITIES

### A.   The Statutory and Regulatory Schemes Regarding FBARs

#### 1.  Overview

The Bank Secrecy Act ("the BSA") was enacted by Congress in 1970. Pub. L. 91-508, 84 Stat. 1114 and amendments (31 U.S.C. §§ 5311–5325).  The BSA and its regulations, promulgated by the Department of Treasury, require individuals to report certain foreign bank accounts on an annual Report of Foreign Bank and Financial Accounts – commonly known as an "FBAR."  *See* 31 U.S.C. § 5314(a); 31 C.F.R. § 1010.350(a).  The FBAR reporting form was designated TD F 90-22.1.  *See id.*  A copy of the applicable Forms TD F 90-22.1 and accompanying instructions are attached as **Exhibit C** (Rev. July 2000), **Exhibit D** (Rev. October 2008), and **Exhibit E** (Rev. January 2012). [2]  In general, the applicable FBAR rules require citizens and residents who have a financial interest in, or signature or other authority over, one or more bank accounts in a foreign country with an aggregate balance exceeding $10,000 (at any point in the year) to file an annual FBAR form, identifying specific information for each account or, if the person has 25 or more reportable accounts he is required to simply state the number of

---

[2] Effective October 1, 2013, the FBAR form was changed to FinCEN Form 114, which requires substantially the same information.  A copy of FinCEN Form 114 (OMB No. 1506-0009, Effective October 1, 2013) is attached as **Exhibit F**.  Mr. Bittner's late FBARs for the years at issue were filed on Form TD F 90-22.1 (Rev. January 2012).  If filed timely, Mr. Bittner's 2007 FBAR would have been filed on **Exhibit C**, Form TD F 90-22.1 (Rev. July 2000); his 2008-2010 would have been filed on **Exhibit D**, TD F 90-22.1 (Rev. October 2008); and his 2012 FBAR would have been filed on **Exhibit E**, Form TD F 90-22.1 (Rev. January 2012).

B6544\A63010\4828-7219-8835.v6-3/11/20

accounts and to retain the account-related information.[3]  Prior to the 2016 reporting year, FBARs were due on June 30th of the following year.[4]

Before 2004 only *willful* failures to file an FBAR were penalized.  The penalty was the greater of $25,000 or half the amount in the account, but not more than $100,000.  31 U.S.C. § 5321(a)(5), amended by Pub. L. No. 108-357 (2004).  There was no penalty at all for a *non-willful* failure to file, whether innocent or negligent.  In 2004, Congress increased the willful penalty to the greater of $100,000 or 50 percent of the balance in the reportable account(s) at the time of the violation, with no cap.  *See* American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 821(a), 118 Stat. 1418 (2004).  In addition, Congress added, for the first time, a penalty for non-willful violators, stating that "the amount of any civil penalty imposed under subparagraph (A) [non-willful violations] *shall not exceed $10,000*."  *Id.* (emphasis added).  That express limitation, along with the fact that Congress intentionally distinguished willful violations, evidences that the purpose of adding a non-willful penalty provision was to promote greater FBAR compliance and deter unintentional mistakes but not to "throw the book" at persons who made such mistakes.

## 2.  Specific Statutes and Regulations

The BSA directed the Secretary of the Treasury to promulgate regulations imposing reporting requirements on U.S. citizens and residents who maintain foreign bank accounts, among other things:

> Considering the need to avoid impeding or controlling the export or import of monetary instruments and the need to avoid burdening unreasonably a person making a transaction with a foreign financial agency, the Secretary of the

---

[3] The 2008 and 2012 versions of Form TD F 90-22.1 also instructed that the filer check a yes or no box to indicate whether he had a financial interest in 25 or more financial accounts.  *See* **Exhibits D** and **E**.

[4] 31 C.F.R. § 1010.306(c), amended by Surface Transportation and Veterans Health Care Choice Improvement Act of 2015, Pub. L. 114-41, § 2006(b)(11), 129 Stat. 443 (2015) (changing the FBAR due date to April 15th of each year with a sixth month extension allowed).

B6544\A63010\4828-7219-8835.v6-3/11/20

> Treasury shall require a resident or citizen of the United States or a person in, and doing business in, the United States, to keep records, *file reports*, or keep records and *file reports*, when the resident, citizen, or person makes a transaction or maintains a relation for any person with a foreign financial agency.

31 U.S.C. § 5314(a) (emphasis added).  The corresponding regulation provides:

> Each United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country shall report such relationship to the Commissioner of Internal Revenue for each year in which such relationship exists and shall provide such information as shall be specified in *a reporting form* prescribed under 31 U.S.C. 5314 to be filed by such persons. The *form* prescribed under section 5314 is the Report of Foreign Bank and Financial Accounts (TD-F 90-22.1), or any successor form.

31 C.F.R. § 1010.350(a) (emphasis added).

The BSA regulations further explain, "Reports required to be filed by § 1010.350 shall be filed with FinCEN . . . with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year."  31 C.F.R. § 1010.306(c).  Although this regulation refers to "foreign financial *accounts* exceeding $10,000," the FBAR form instructions clarify that this $10,000 or more threshold is not determined on a per account basis, but, rather, on an aggregate value basis, considering all foreign accounts for which a person has a financial interest in, or signature or other authority over.  *See* **Exhibits C, D**, and **E** (Instructions).  Whether an individual has multiple foreign bank accounts with a total balance over $10,000 or only one account with such balance, all reportable accounts are included on a single annual FBAR form. *See id.*; *see also* 31 C.F.R. §§ 1010.350(a); 1010.306(c).

In general, the FBAR rules require that the filer include specific information about each reportable foreign account including, the name and address of the financial institution; the account number; and the highest USD balance during the year.  *See* **Exhibits C, D**, and **E** (Instructions).  However, a special rule modifies those general information reporting obligations where a person has "a financial interest in 25 or more accounts."  31 C.F.R. § 1010.350(a).  In

B6544\A63010\4828-7219-8835.v6-3/11/20

that event, the filer is only required to identify himself and the number of reportable accounts, without any additional details regarding the bank accounts, which information shall only be provided upon specific request by the Secretary:

> (1) Financial interest in 25 or more foreign financial accounts. A United States person having a financial interest in 25 or more foreign financial accounts need only provide the number of financial accounts and certain other basic information on the report, but will be required to provide detailed information concerning each account when so requested by the Secretary or his delegate.

31 C.F.R. § 1010.350(g)(1).

Form TD F 90-22.1 asks whether the filer has "a financial interest in 25 or more financial accounts." **Exhibits D** and **E**. If the answer is "yes," the form instructions provide that the box should be checked, but the filer should "not complete Part II or Part III" of the form, in which parts, the detailed information over the bank accounts is ordinarily provided, but should merely "retain records of this information:"

**14**   Does the filer have a financial interest in 25 or more financial accounts?

☐ Yes   If "Yes" enter total number of accounts _____

**(If "Yes" is checked, do not complete Part II or Part III, but retain records of this information)**

☐ No                                                                                                      5

The instructions provide that a filer has a financial interest in an account held by a corporation if the filer owns more than 50 percent of the corporation's stock. *See* **Exhibits D** and **E** (Instructions).

### 3.   Application to Mr. Bittner

Since Mr. Bittner had financial interests in 25 or more accounts in each of the years at issue, he should have timely filed a single Form TD F 90-22.1 FBAR for each year at issue, providing information regarding himself and identifying the number of accounts he had. *See id.*

---

[5] **Exhibit D**, Form TD F 90-22.1 (Rev. October 2008) and **Exhibit E**, Form TD F 90-22.1 (Rev. January 2012).

B6544\A63010\4828-7219-8835.v6-3/11/20

and **Exhibit C**.  For the years 2008-2011, the applicable Form TD F 90-22.1 also required him to check a box indicating that he had a financial interest in 25 or more accounts.  *See* **Exhibits D and E**.  The Form TD F 90-22.1 instructions for all years at issue provided that he was just to enter the number of accounts but he was *not* to complete the sections of the form that include account specific information.[6]  However, in addition to filing corrected FBARs in September of 2013 for reporting years 2007-2011, Mr. Bittner also voluntarily reported specific information for each account in which he had a financial interest.  *See* **Exhibit A** at ¶5; **Exhibit B** at p. 35-36, 40-42.

**B.     The Maximum Penalty Under the Statute for a Non-Willful Failure to Timely File an FBAR is $10,000 per Form**

Mr. Bittner was required to file a single FBAR each year for the 2007-2011 reporting years, simply identifying the number of foreign bank accounts he had a financial interest in.  He non-willfully failed to timely file such Forms.  Each failure to file an annual FBAR was a single "non-willful act" for which the maximum penalty was up to $10,000, with a maximum aggregate penalty of $50,000.[7]  *See United States v. Shinday*, Case No. 2:18-cv-06891-CAS-Ex, 2018 WL 6330424, at *2 (C.D. Cal. Dec. 3, 2018) (assessing a penalty of $10,000 per year for 2007-2011 for non-willful failures to file an FBAR despite the defendants having "as many as twenty-nine

---

[6] See **Exhibits C, D,** and **E**.  Mr. Bittner filed corrected FBARs for 2007-2011 in September of 2013, which was approximately one month before FinCEN Form 114 was released.  *See* **Exhibit E**.  The 2013 FinCEN Form 114, contained identical instructions with respect to a filer who had a financial interest in 25 or more accounts, but it also asked if the filer had "signature authority" but not a financial interest in 25 or more accounts, in which case he would be required to provide account information for such accounts.  See *id.*  Had Mr. Bitter completed the 2013 FinCEN Form 114 for his late filed FBARs, his limited reporting duties would have been identical because he did not have signatory authority over any accounts in which he did not also have a financial interest.

[7] This issue appears to be a matter of first impression in this Court and the Fifth Circuit.  However, the same issue is on appeal in the Ninth Circuit in *Boyd v. United States*, 2019 WL 1976472 (C.D. Cal. Apr. 23, 2019), *on appeal* (9th Cir. No. 19-55585).

B6544\A63010\4828-7219-8835.v6-3/11/20

and as few as seven fixed deposit accounts at the State Bank of India from the years 2005 to 2011") (internal citations and quotations omitted).

Indeed, 31 U.S.C. Section 5321(a)(5) is entitled "Foreign Financial Agency Transaction Violation," and authorizes the Secretary of the Treasury to "impose *a* civil monetary penalty on any person who violates, or causes any violation of, any provision of section 5314." Emphasis added.  In the case of non-willful violations, "the amount of any civil penalty imposed under subparagraph (A) shall not exceed $10,000." 31 U.S.C. § 5321(a)(5)(B)(i).  For willful violations, the penalty is the greater of $100,000 or 50 percent of the balance in the reportable account(s), with no cap.  *See* 31 U.S.C. § 5321(a)(5)(C).

Further, the statute explicitly provides that the non-willful penalty of up to $10,000 may not be imposed if the person had "reasonable cause" for the violation and "the amount of the transaction or the balance in the account at the time of the transaction was properly reported." 31 U.S.C. § 5321(a)(5)(B)(ii).  Thus, if an individual innocently or negligently fails to file an FBAR, he can avoid any penalty if he had reasonable cause and subsequently reports the account(s), as Mr. Bittner did here.  *See* **Exhibit A** at ¶5.[8]

As shown above, the plain language of the statute imposes "*a* civil monetary penalty on any person who violates, or causes any violation of, any provision of section 5314." 31 U.S.C. § 5321(a)(5)(A) (emphasis added).  Therefore, "a penalty" can be imposed for "any violation" of Title 31, Section 5314, whether that violation be filing a false report or failing to file a report at all.  The amount of the authorized penalty depends on whether the violation was willful or non-willful.  *Compare* 31 U.S.C. § 5321(a)(5)(B) *with* 31 U.S.C. § 5321(a)(5)(C).

---

[8] Although we contend that Mr. Bittner is not liable for any penalty because of the reasonable cause safe harbor, that factual issue is not raised in this motion.

B6544\A63010\4828-7219-8835.v6-3/11/20

Mr. Bittner non-willfully failed to timely file 5 FBARS for the years 2007-2011.  Those violations are subject to a maximum penalty of up to $10,000 per year, or a $50,000 maximum penalty in the aggregate.  The government, however, contends that the penalty for non-willful failure to timely file an FBAR form is based on the number of accounts not reported, and it has levied a penalty of $10,000 for each account Mr. Bittner failed to timely report. Dkt. 1, *Complaint* at ¶¶27–31.  The government is wrong.  This extreme interpretation led to the imposition of *nearly $3,000,000* in penalties for innocent failures to timely file 5 FBARs;[9] forms which only required Mr. Bittner to identify himself and report the number of accounts he had a financial interest in.

## C.    The Legislative History of Section 5321 Supports Mr. Bittner's Position that the Maximum Penalty is $10,000 per Form

As noted above, prior to 2004, no penalty was imposed for non-willful failures to file an FBAR.  Only "willful" violations were penalized, allowing the government to impose "a civil penalty" on any person who willfully violated this reporting requirement, with a minimum penalty of $25,000 and "a maximum" penalty of $100,000.  31 U.S.C. § 5321(a)(5), amended by Pub. L. No. 108-357 (2004).  As stated in the 2004 House Report:

> The Secretary may impose a civil penalty on any person who willfully violates this reporting requirement.  The civil penalty is the amount of the transaction or the value of the account up to a maximum of $100,000; the minimum amount of the penalty is $25,000…

H.R. REP. 108-548(I), at 275 (2004).  The individual could also be criminally charged for such willful conduct.  *Id.*

---

[9] Mr. Bittner denies that he had signature authority, a financial interest in, or control over many of the bank accounts alleged by the government.  *See* Dkt. 13, *Defendant Alexandru Bittner's First Amended Answer*, at ¶¶12–28. Further, as a result of accruing interest the amount at issue is currently well over three million dollars.

Thus, before the 2004 Act, an individual who willfully violated the reporting requirements, whether that be by willfully filing a false report or willfully failing to file a report, would be subject to a single penalty of $25,000 to $100,000.  Non-willful failures to file, however, were not subject to any civil penalty.

The House Committee in 2004, after discussing the proliferation of various abusive tax schemes, including "taxpayers with offshore bank accounts attempting to conceal income from the IRS," stated:

> Adding *a new civil penalty* that applies without regard to willfulness will improve compliance with this reporting requirement.
>
> **Explanation of Provision**
> The provision adds *an* additional civil penalty that may be imposed on any person who violates this reporting requirement (without regard to willfulness).  *This new civil penalty is up to $5,000…*

H.R. REP. 108-548(I), at 275 (2004) (emphasis added).  Ultimately, the Conference Committee increased the maximum civil penalty for a non-willful act up to $10,000. H.R. CONF. REP. NO. 108-755, at 1668 (2004).

In short, the legislative history of the 2004 Act demonstrates that Congress intended to provide a modest penalty for non-willful conduct, to encourage compliance, but not, as the government now argues, to increase the penalty from nothing to an unlimited amount.

**D.**     **The Non-Willful Failure to Timely File an FBAR Is Not Multiple Violations of the Law; Thus Mr. Bittner Committed Only Five Violations from 2007-2011, Not 272 Separate Violations**

Admittedly, Mr. Bittner was required to file an annual FBAR for 2007-2011.  His failure to file that Form in each year was a single "non-willful act," violating a single regulation, resulting in only *one annual violation* for each of the five years at issue – not *272 separate violations* as the government asserts. Dkt. 1, *Complaint* at ¶29.  Thus, Mr. Bittner is liable for a

B6544\A63010\4828-7219-8835.v6-3/11/20

*maximum* penalty of $10,000 per year for each of the five years at issue, an aggregate maximum of $50,000.

The government's position is that a person who fails to timely file an FBAR has failed to timely disclose the existence of his reportable foreign bank accounts to the government and thus has committed a separate "violation" of the law for each reportable account.  This position is directly contrary to the statutory language which, as detailed above, imposes "*a civil monetary penalty*" – in the singular – on any person who violates "any provision of section 5314."  31 U.S.C. § 5321(a)(5) (emphasis added).  Moreover, "the amount of any civil penalty imposed … [for a non-willful violation] *shall not exceed $10,000.*"  *Id*. (emphasis added).

The government's position is also in conflict with the legislative history, which shows that Congress was concerned there was no penalty at all for non-willful FBAR compliance failures and intended to impose a modest penalty to encourage compliance.  Congress viewed non-willful failures to file FBAR forms as relatively minor infractions, appropriately so, and directed the Secretary to treat them as such by limiting the total assessable penalty to $10,000.

Rather than follow the plain language of the statute and the legislative history, the government now seeks to multiply 5 non-willful reporting violations – 5 instances of not timely filing an annual FBAR – into 272 distinct acts by arguing that each bank account not reported was a separate act and therefore separately punishable.  This is not only legally wrong, it is absurd.  The government admits that Mr. Bittner's conduct was non-willful.  That means it was innocent or, at very worst, negligent.  He, like many other dual citizens living abroad, was unaware of any obligation to file FBAR forms – indeed, he had never heard of those forms until he returned to the United States in 2011.  Yet, the IRS imposed 272 distinct $10,000 penalties on Mr. Bittner for his unintentional failure to file annual FBARs for the years at issue, amounting to

*almost $3,000,000*, using information he voluntarily supplied to IRS in an effort to come into compliance with his FBAR obligations before he was formally asked to do so by any government agency.[10]  *See* **Exhibit A** at ¶5; **Exhibit B** at p. 35-36, 40-42.  This situation cannot be reconciled with Congress' conclusion that "the maximum additional civil penalty for a non-willful act is up to $10,000." H.R. CONF. REP. NO. 108-755, at 1668 (2004).

**E.**     **A "Per Account" Penalty Stands at Odds with the Actual Filing Threshold and the Government's Own Authorities**

A "per account" penalty is especially absurd in Mr. Bittner's case, since he was required only to file a single FBAR annually, checking a box on line 14 of the Form and stating the number of reportable accounts he had.  The Form instructed him to only to enter the number of accounts and not to report any other account information or balances.

As explained above, the number of foreign bank accounts held by a person is irrelevant for purposes of determining whether that person is required to file an FBAR. An individual could have 25 foreign bank accounts in a given year, but if the aggregate value of those foreign accounts never exceeded $10,000, that person is not required to file an FBAR.  An FBAR is required to be filed only if the *aggregate* value of the foreign accounts exceeds $10,000 – the filing requirement is not triggered based on the number of accounts the individual holds.  *See* 31 C.F.R. §1010.306(c); **Exhibits C**, **D**, and **E** (Instructions).  There is no logical basis for imposing a "per account" penalty when the number of accounts bears no significance in determining

---

[10] In a Tax Court case alleging total tax deficiencies for the years here in issue, the IRS agreed that Mr. Bittner's tax liabilities ultimately owed for the years at issue in this suit were (all of which has been paid):

| Tax year | Deficiency |
| --- | --- |
| 2007 | $46,386 |
| 2008 | 0 |
| 2009 | 0 |
| 2010 | 0 |
| 2011 | $127,000 |

*See* **Exhibit A** at ¶6.

B6544\A63010\4828-7219-8835.v6-3/11/20

whether an FBAR is even required to be filed.  This is particularly true in the absence of any statutory language which allows a penalty for a non-willful failure to timely file an FBAR to be penalized "per account."

Moreover, several of the government's own pronouncements support Mr. Bittner's position, in accordance with the statute, that the maximum civil penalty for a non-willful failure to timely file an accurate FBAR is $10,000.  FBAR guidance provided by FinCEN states, "A person who is required to file an FBAR and [non-willfully] fails to properly file may be subject to a civil penalty not to exceed $10,000."  **Exhibit G**, *Financial Crimes Enforcement Network*; *Amendment to the Bank Secrecy Act Regulations-Reports of Foreign Financial Accounts*, 75 FR 8844-01, 2010 WL 667290, at *8854 (Feb. 26, 2010).  The Form TD F 90-22.1 FBAR instructions also provide: "A person who is required to file an FBAR and fails to properly file may be subject to a civil penalty not to exceed $10,000 per violation."  **Exhibit D**; *see also* **Exhibit H**, IRS Fact Sheet 2014-7, *Offshore Income and Filing Information for Taxpayers with Offshore Accounts*, (June 2014), which states:

> Failure to report the existence of offshore accounts or pay taxes on these accounts can lead to civil and criminal penalties.
> …
> For the FBAR, the penalty may be up to $10,000, if the failure to file is non-willful …

*Id.*

Congress knows how to draft a penalty imposed on a per item basis.  *See e.g.,* 26 U.S.C. § 6699 (imposing a penalty for failure of an S Corporation to file a timely income tax return (From 1120S), which is an information return similar to an FBAR, computed by multiplying $195 by the number of shareholders in the S Corporation during any part of the taxable year); 26 U.S.C. § 6704 (imposing a penalty for failure to keep records computed by multiplying $50 by the number of persons for whom records are required to be kept).

In the case of willful conduct, Congress expressly tied the willful penalty to "accounts," imposing "in the case of a violation involving a failure to report the existence of an account or any identifying information required to be provided with respect to an account," a penalty of 50 percent of "the balance in the account at the time of the violation."  31 U.S.C. § 5321(a)(5)(D).

Here, Congress, as it has done in the past, could have chosen to impose a non-willful penalty for the failure to timely file an FBAR that is computed based on the number of foreign accounts an individual maintains or their balances in those accounts.  However, Congress did not do that.  There is simply no support in the statute, regulations, forms or other IRS documents that a non-willful penalty is based on the number of accounts involved.  Congress did not include in 31 U.S.C. §5321(a)(5)(A) and (B) any language that is comparable to the explicit language contained in the "per item" violation statutes noted above, or in 31 U.S.C. § § 5321(a)(5)(C) and (D).  The absence of any such language strongly indicates that a non-willful penalty for a failure to timely file an FBAR is not computed on a "per account" basis.

## F.    The Government's Interpretation of the Non-Willful Failure to File Penalties is at Odds with its Interpretation of the Criminal Penalties

The failure to file an FBAR can also lead to criminal penalties under 31 U.S.C. § 5322.  A willful failure to file an FBAR can lead to a fine of not more than $250,000 or imprisonment for not more than five years, or both. 31 U.S.C. § 5322(a).  A willful violation, coupled with a pattern of illegal activity, can lead to a fine of not more than $500,000 or imprisonment for not more than ten years, or both. 31 U.S.C. § 5322(b).  However, to Defendant's knowledge, the government has never criminally charged an individual based on the number of foreign accounts the individual failed to disclose on an FBAR.  Instead, the government routinely asserts that each year in which an FBAR was not filed constitutes a single "violation" under §5322 – even if the criminal defendant failed to disclose more than one foreign account.  It defies logic that a non-

willful civil penalty is assessed against each unreported account while the criminal penalty is

based on a single FBAR form.

**G.     The Government's Position Will Lead to Absurd Results and Inconsistent Treatment of Similarly Situated Taxpayers – As is Clearly Demonstrated in this Case**

This case is a disturbing example of a worst-case scenario that results under the

government's overly broad interpretation of 31 U.S.C. § 5321(a)(5)(B)(i).  Here, the government

alleges that Mr. Bittner owes nearly *three million* dollars in civil penalties for his non-willful

failure to timely file a *single* FBAR form in each of the years at issue.  An FBAR form, as

described above, where Mr. Bittner was not required to disclose the details of any of his

reportable foreign accounts.  Instead, he was simply to check a box on the annual FBAR form

indicating that he had 25 or more reportable accounts and state the number.  Consequently, had

Mr. Bitner timely filed FBARs, they would have been of no practical value to the government

unless he was audited under Title 31 and asked to produce the underlying account-related

information. Indeed, Mr. Bittner voluntarily provided such information in September of 2013,

prior to any such audit.  Of course, application of this logic does not, on its own, mean that Mr.

Bittner is not subject to any penalties under the statute for his late filed FBARs; however, it

further highlights the dramatically disproportionate punishment imposed upon him compared to

the nature of any theoretical harm.  This point is particularly relevant when considering that Mr.

Bittner did not reside in this country for over 20 years and could not be reasonably expected to

know about his FBAR obligations while living in Romania, his country of origin.  When he

returned to live in the U.S., he took prudent steps to address his noncompliance and by

September of 2013 had voluntarily filed corrected FBARs for 2007-2011, identifying the number

of reportable accounts along with the underlying account information.  *See* **Exhibit A** at ¶5;

**Exhibit B** at p. 35-36, 40-42.  Mr. Bitter's case exemplifies the government's limitless

17

opportunity for overreach if it is allowed to continue with its draconian interpretation of 31 U.S.C. § 5321(a)(5)(B)(i).

Additionally, the "per account" penalty has already led to inconsistent treatment of similarly situated taxpayers. This is clear when one compares this case with *United States v. Shinday*, Case No. 2:18-cv-06891-CAS-Ex, 2018 WL 6330424, at *2 (C.D. Cal. Dec. 3, 2018). There, a husband and wife, had a UBS account in Switzerland from 2005-2008. *Id*. at *2. In addition, they also had "as many as twenty-nine and as few as seven fixed deposit accounts at the State Bank of India from the years 2005 to 2011." *Id*. However, they failed to "file FBARs for each of the years 2005 through 2011." *Id*. As a result, the government assessed non-willful FBAR penalties against the wife, Mrs. Shinday, for the years 2007-2011. "Each penalty was $10,000, totaling $50,000." *Id*.  The total penalties that could have been assessed on Mrs. Shinday, according to the government's interpretation, were as much as $300,000 for one year. But, instead, the government applied the statute as it reads.

The years penalized in *Shinday*, 2007-2011, are the same years for which Mr. Bittner was penalized and both cases involve non-willful conduct.  Despite this, Mr. Bittner is being penalized $2.6 million dollars more than Mrs. Shinday. These two starkly different outcomes demonstrate the absurdity of the government's position in this case. Under no circumstances should such a monumental disparity in penalties exist for comparable *non-willful conduct*.

Moreover, under the government's interpretation, an individual who willfully fails to file an FBAR could face lower penalties than one who commits a non-willful violation, even when the aggregate account balance at issue is less for the non-willful person.  For example, consider an individual who maintains a foreign account with $150,000 and willfully fails to file a timely FBAR.  In such instance, the maximum penalty is $100,000.  31 U.S.C. § 5321(a)(5)(C)(i).

18

However, another individual who non-willfully failed to file an FBAR and maintained twenty foreign accounts with a high aggregate balance of $70,000 would face a penalty of $200,000 – *double* the amount of the willful actor – under the government's reasoning.  This cannot be a result Congress intended.

In sum, this Court should not follow the government's illogical interpretation which leads to absurd and unreasonable results.  *See In re Ripley*, 926 F.2d 440, 448 (5th Cir. 1991) ("A leading statutory construction treatise states that unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result."); *Sierra Club v. Train*, 557 F.2d 485, 490 (5th Cir. 1977) ("Proper statutory construction requires more than linguistic examination and review of the rules of statutory construction. The interpretation should be reasonable, and where the result of one interpretation is unreasonable, while the result of another is logical, the latter should prevail.") (citations omitted); *see also* M. Kummer & S. Mezei, *The Non-Willful FBAR Per-Account/Per-Form Issue Deserves Closer Scrutiny*, Tax Notes Federal (July 14, 2019).

## H.   Statutes Imposing Penalties Are Strictly Construed Against the Government and the Rule of Lenity Requires that any Ambiguity be Resolved in the Defendant's Favor

The statute, regulations and form instructions unambiguously impose a maximum penalty of $10,000 for a non-willful failure to file an FBAR form, and not a $10,000 penalty per account or per item of information.  Assuming, *arguendo*, that there were any ambiguity in the statute, the Court should resolve the issue in Mr. Bittner's favor.

As the Supreme Court stated, when considering a tax penalty, "[t]he law is settled that penal statutes are to be construed strictly . . . and that one is not to be subjected to a penalty unless the words of the statute plainly impose it."  *Commissioner v. Acker*, 361 U.S. 87, 91 (1959) (internal quotations and citations omitted).  *Acker* involved a similar situation.  The

taxpayer failed to file a required a form making a declaration of estimated income tax.  *Id.* at 90.

The IRS imposed a penalty for such failure to file a form as prescribed by statute.  *Id*. But the

IRS argued that the failure to file the form constituted an implicit representation that he had no

tax liability and imposed a second penalty under another statute for making a "substantial

underestimate" of his tax.  *Id*.  The Court found that there was nothing in the statute "expressed

or necessarily implied" that "a taxpayer's failure to file a declaration of estimated tax [was] the

equivalent of, a declaration estimating his tax to be zero."  *Id*.  As the Court stated:

> The fact that the section contains no basis or means for the computation of any
> addition to the tax in a case where no declaration has been filed would seem to
> settle the point beyond all controversy. If the section had in any appropriate words
> conveyed the thought expressed by the regulation it would thereby have clearly
> authorized the Commissioner to treat the taxpayer's failure to file a declaration as
> the equivalent of a declaration estimating his tax at zero and, hence, as
> constituting a "substantial underestimate" of his tax. But the section contains
> nothing to that effect, and, therefore, to uphold this addition to the tax would be to
> hold that it may be imposed by regulation, which, of course, the law does not
> permit…

*Id*. at 92.  Here, as in *Acker*, there is nothing "express or necessarily implied" in the statute to

support the government's position that the non-willful failure to file penalty is based on the

number of accounts and that Mr. Bittner's non-willful failure to file 5 FBAR forms consequently

constitutes 272 separate violations.

     The courts have applied similar analysis to hold for taxpayers in cases where the

government interpreted penalty statutes well beyond their language.  For example, in *Rand v.

Commissioner*, 141 T.C. 376 (2013), the Tax Court rejected the IRS's position that accuracy-

based penalties in IRS Code Section 6662 should be imposed on improperly claimed tax credits,

finding that "the words of the relevant statutes do not *plainly* impose [such] a penalty . . ." *Rand*,

141 T.C. at 393 (emphasis added). As the court stated:

> The rule of lenity is an "ancient maxim" that "is perhaps not much less old than
> construction itself. It is founded on the tenderness of the law for the rights of

individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not the Court, which is to define a crime, and ordain its punishment." *United States v. Wiltberger*, 18 U.S. 76, 95 (1820). Thus, under the rule of lenity statutes that impose a penalty are to be construed in favor of the more lenient punishment. Black's Law Dictionary 1449 (9th ed. 2009). And although often considered in the criminal context, the rule of lenity has been applied in the civil context and specifically with regard to civil tax penalties.

*Id*.

Here, the case turns on the interpretation of a tax related act which imposes a penalty, and thus, it must be strictly construed.  31 U.S.C. § 5321.  The government is attempting to collect a non-willful penalty of $10,000 for each account that Mr. Bittner did not timely report.  However, there is simply no language in the statute to support the government's assertion that the non-willful penalty is computed by multiplying the number of foreign accounts by $10,000.  *See* 31 U.S.C. §5321(a)(5)(B)(i).  Application of the rule of lenity requires that the maximum penalty for a non-willful failure to file an FBAR is limited to $10,000 for each year.

## I.      The Government's Position is Contrary to Analogous cases in Federal Criminal Law

Analogous situations occur in criminal tax law, which provides authority supporting Mr. Bittner's position that a failure to file a tax-related information reporting form is a single act, subject to a single penalty, and not subject to multiple penalties for omissions of specific items on the reporting form.  For example, 26 U.S.C. § 7203 makes it a misdemeanor if an individual "willfully fails … [to file] a return or … supply … information [on the return], at the time or times required by law…"  26 U.S.C. §7203.  Thus, the willful failure to file a return is a misdemeanor.  But under the government's position here, it could charge separate misdemeanors for each item that should have been provided on a single unfiled return.  For example, if the return required entry of ten items of income, the government could charge ten misdemeanors.

The Fifth Circuit rejected this very position in *United States v. Chrane*, 529 F.2d 1236 (5th Cir. 1976).  There, a taxpayer filed a protest-type tax return that gave his name, address and identifying information, but contained no other information.  *Id*. at 1237.  The government charged him with willful failure to file a tax return under 26 U.S.C. § 7203 as well as a separate willful failure to supply information under the same Code section.  *Id*.

The Fifth Circuit held that Chrane had committed only a single offense and could not be penalized twice.  *Id*. at 1238. The Court stated that "[w]hether Chrane committed one offense or several offenses is a question of legislative intent," and "[t]o determine whether separate offenses may be carved out of a single incident, the offenses should be examined to see whether each requires proof of a fact that the other does not."  *Id*. The Court reasoned that proof that Chrane was required to file a return but willfully filed only a blank form was sufficient to establish either violation, and therefore "[t]his single omission could not have been intended [by Congress] to be two offenses."  *Id*.

The Court pointed out that "[t]he matter hardly seems ambiguous, … but if it is, doubt must be resolved against turning a single transaction into a multiple offense."  *Id*. (citing *Bell v. United States*, 349 U.S. 81 (1955)).  *Bell* involved the Mann Act which prohibited the interstate transportation of "any woman or girl" for immoral purposes. *Bell*, 349 U.S. at 82. Bell drove two women in a single trip across state lines for which he was charged and convicted of two counts of violating the Mann Act.  *Id*. The Supreme Court held that, although Congress could have made transportation of each woman a separately punishable offense, it did not clearly do so and "if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses …."  *Id*. at 84.

B6544\A63010\4828-7219-8835.v6-3/11/20

The Fifth Circuit also cited its earlier opinion in *United States v. Deaton*, 468 F.2d 541 (5th Cir. 1972).  Deaton concealed two escapees for which he was convicted of two violations of 18 U.S.C. §1072, punishing anyone who "conceals any prisoner after his escape from the custody of the Attorney General …" *Id*. at 543 n.1. The Court held that Deaton had committed only a single violation of the statute, quoting the Supreme Court's opinion in *Bell*:

> About only one aspect of the problem can one be dogmatic. When Congress has the will it has no difficulty in expressing it - when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. . . . It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment.

*Id*. at 545 (citing *Bell*, 349 U.S. at 83).

Applying *Bell* and its progeny here, Mr. Bittner's failure to timely file FBARs are single acts subject only to single penalties.  Mr. Bittner, without willfulness, failed to file an FBAR form once a year for five years.  The government alleges he should be punished not for each form, but separately for each bank account that he had a financial interest in (even though he was required only to provide the number of such accounts), resulting in 272 separate penalties. However, the statute at issue simply penalizes "any violation" of the requirement to file an FBAR form. 31 U.S.C. § 5321(a)(5)(B).  Failing to file an FBAR form automatically results in failure to report all the accounts that should have been reported on that form, but does not result in separate "violations."

As the Fifth Circuit explained in *Chrane*, "[t]o determine whether separate offenses may be carved out of a single incident, the offenses should be examined to see whether each requires proof of a fact that the other does not." *Chrane*, 529 F.2d at 1238. In short, there is nothing in the statute that imposes a separate penalty for each account omitted: "if Congress does not fix the

B6544\A63010\4828-7219-8835.v6-3/11/20

punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses …." *Bell*, 349 U.S. at 84.

**J.      *Boyd v. United States*, Case No. CV 18-803-MWF (JEMx), 2019 WL 1976472 (C.D. Cal. Apr. 23, 2019) was Wrongly Decided.**

The sole authority supporting the government's position is the district court opinion in *Boyd v. United States*, 2019 WL 1976472 (C.D. Cal. Apr. 23, 2019), *on appeal* (9th Cir. No. 19-55585).  *Boyd*, however, was wrongly decided.

Boyd was a United States citizen who in 2010 had financial interests in or signatory authority over 14 financial accounts in the U.K.  *Id*. at *1.  She failed to file an FBAR form reporting those accounts.  *Id*. at 1–2. The IRS determined that her failure to file was non-willful, and calculated a penalty based on the number of accounts.  *Id*.  Unlike Mr. Bittner's case where the IRS imposed a flat $10,000 penalty for each account, the IRS applied internal "mitigation" provisions to reduce the individual penalties.  *Id*. at *2. Nevertheless, the IRS imposed a total penalty of $47,279 for Boyd's failure to file a single FBAR.  *Id*.

Boyd argued that the maximum penalty that could be imposed under the statute was $10,000.  *Id*. at *3. The court, however, upheld the imposition of the penalty based on the bank accounts.  The government relied on 31 U.S.C. § 5321(a)(B)(ii), which provides: "No penalty shall be imposed ... with respect to any violation if ... (I) such violation was due to reasonable cause, and (II) the amount of the transaction or the balance in the account at the time of the transaction was properly reported," which it argued "made clear that each violation relates to each 'account,' since Congress used the singular form of the word." *Id*. at *4. The government also noted that a willful "FBAR penalty can be the greater of $100,000 or 50 percent of the 'balance in the account at the time of the violation.'" *Id*. The government argued that, Congress's

24

use of the singular forms of "account" and "balance," indicated that "a violation relates to one, and only one account." *Id.*

The court acknowledged that "section 5321 [is] somewhat unclear as to whether the $10,000 negligence penalty applies per year or per account," and that both were "reasonable interpretations." *Id.* The court agreed with the government's interpretation, however, "in light of the prominence of 'transactions' and 'accounts' in the language of section 5321…" *Id.* at *5.

Respectfully, the court's reasoning is wrong. To begin with, the court's reasoning that "Congress's use of the singular forms of "account" and "balance," indicated that "a violation relates to one, and only one account" is refuted by the Fifth Circuit's analysis in *Deaton* of similar language in the Mann Act:

> The presence of the adjective "any" and singular nouns in the Mann Act [". . . any woman or girl"] was not used in Bell as a basis for a judicial finding of a clear legislative intent to punish a defendant separately for each woman or girl he transports by his single course of action. In fact that approach was essentially what was unsuccessfully urged by the dissenters. Similarly the use in the instant statute of the adjective "any" and a singular noun and pronoun [". . . conceals any prisoner after his escape"] is not sufficient authority for a judicial pronouncement that Congress clearly intended that the number of sentences a man may be given for a single course of action of concealment could be determined by adding up the number of escapees concealed. Furthermore, as with the Mann Act, the legislative history of Sec. 1072 is silent as to what Congress intended to be the allowable unit of prosecution and punishment.

*Deaton*, 468 F.2d at 545–46

Instead, the court should have looked to the statutory language to see if Congress intended that each specific item omitted from an FBAR form was to be separately punished. The most important provisions to look at are those that impose the penalty and limit the total penalty. Both the willful and non-willful penalty are authorized by 31 U.S.C. §5321(a)(5)(A), which provides that "The Secretary … may impose *a* civil money penalty [in the singular] on any person who violates … section 5314." 31 U.S.C. § 5321(a)(5)(A) (emphasis added). The non-

willful penalty is then limited by section 5321(a)(5)(B)(i), which provides that "the amount of any civil penalty imposed under subparagraph (A) *shall not exceed $10,000*." 31 U.S.C. § 5321(a)(5)(B)(i) (emphasis added).  Both these provisions are written in the singular.  The clearest reading of these statutory provisions is that a non-willful violation of section 5314 is subject to one civil penalty not to exceed $10,000.

Instead of focusing on these operative provisions which support a single form penalty, the government and the court looked to a safe harbor provision that was intended to benefit innocent filers.  It provides there is no penalty if there was reasonable cause and if "the balance in the account at the time of the transaction was properly reported."  31 U.S.C. § 5321(a)(5)(B)(ii).  Since there would be no penalty if the "balance in the account" was timely reported, the phrase "the balance in the account at the time of the transaction was properly reported" is confusing and unclear.  What does "the balance … at the time of the transaction" refer to?  Apparently, this was meant to cover situations where a filer non-willfully failed to file, but later corrects the filing and supplies the information.  Because this provision is poorly written and unclear, the fact that it refers to "the account" in the singular is of little significance.  Certainly, it does not justify ignoring the provisions that actually impose and limit the penalty.  Contrary to the court's statement referring to the "prominence" of the words "transactions" and "accounts" in the section 5321, those words are not in fact "prominent."  The word "account" in the singular appears *only* in the safe harbor, but not in the statutory provisions actually imposing or limiting the non-willful penalty.  *See* 31 U.S.C. § 5321(a)(5)(A) & (a)(5)(B)(ii).

To understand how the willful penalty worked, the government and court did just that – look at the provisions actually imposing that penalty.  There, they found that those provisions expressly tied the willful penalty to "the balance in the account at the time of the violation." 31

U.S.C. § 5321(a)(5)(D)(ii). But no such language appears in the provisions imposing the non-willful penalty.  Congress included the word "account" in the willful penalty provision and omitted it from the non-willful provision for a reason – the number of accounts is irrelevant for determining the amount of the assessible penalty for a non-willful violation.  *See Dept. of Homeland Sec. v. MacLean*, 574 U.S. 383, 134 S.Ct. 913, 919 (2015) ("Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another.").

Moreover, the court's interpretation places far too much emphasis on the use of "account" rather than "accounts."  Congress, in 1 U.S.C. § 1, provided that "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise – words importing the singular include and apply to several persons, parties or things."  Accordingly, when a statute is unclear as to whether the singular or plural applies, the singular shall include the plural.  Thus, in the FBAR context – which requires a single form for all foreign accounts – the language of "account" and "relationship" includes "accounts" and "relationships."

In addition, the court in *Boyd* did not mention, and may have been unaware of, the fact that prior to 2004 there was no penalty whatsoever for a non-willful failure to file an FBAR, which, as discussed above, strongly supports Mr. Bittner's position that the non-willful penalty is per form and limited to $10,000, not per account and unlimited as the government argues.

Finally, the court in *Boyd* misapplied the rule of lenity applied in *Acker*.  The court stated correctly that the rule of lenity "only dictates that the Court should choose the more lenient of two reasonable interpretations."  *Boyd*, 2019 WL 1976472, at *5.  Although the court recognized that "section 5321 [is] somewhat unclear as to whether the $10,000 negligence penalty applies per year or per account," and that both were "reasonable interpretations," it ignored its own statement of the rule of lenity and chose what it felt was "the more reasonable interpretation."

27

*Id*. at *4.  However, the government's position in *Boyd* and here is certainly not the more lenient interpretation, as it results in absurdly disproportionate and punitive penalty assessments.

In short, the *Boyd* court was incorrect. Given the absence of any clear statutory language imposing separate penalties for each item omitted from an FBAR form, the rule of lenity requires that a failure to file such form is subject to a single penalty.

## V.  <u>CONCLUSION AND PRAYER</u>

In sum, the plain language of the statute, supported by the applicable regulations and agency guidance, limits a non-willful penalty to a maximum of $10,000 for the single violation of failing to timely file an annual FBAR – it is not computed on a "per account" basis.  In contrast, the government's interpretation is not in line with principals of statutory construction and leads to absurd and inconsistent results, which have severe implications for Mr. Bittner and all taxpayers.

For the foregoing reasons, Defendant Alexandru Bittner respectfully requests that the Court grant his Motion for Partial Summary Judgment and award Defendant such other relief to which he may be entitled.

B6544\A63010\4828-7219-8835.v6-3/11/20

Respectfully submitted,

**CLARK HILL STRASBURGER**
2301 Broadway St.
San Antonio, Texas 78215
(210) 250-6000
(210) 250-6100 (Fax)

By: /s/ Farley P. Katz
    **FARLEY P. KATZ**
    LEAD ATTORNEY
    State Bar No. 11108790
    fkatz@clarkhill.com
    **RACHAEL RUBENSTEIN**
    State Bar No. 24073919
    rrubenstein@clarkill.com
    **FORREST M. "TEO" SEGER III**
    Texas Bar No. 24070587
    tseger@clarkhill.com

**ATTORNEYS FOR DEFENDANT
ALEXANDRU MR. BITTNER**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 11, 2020 a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Herbert W. Linder
Attorney, Tax Division
United States Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201
Herbert.W.Linder@usdoj.gov
*Attorney for Plaintiff,*
*United States*

/s/ Rachael Rubenstein
**RACHAEL RUBENSTEIN**

B6544\A63010\4828-7219-8835.v6-3/11/20