Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:19-cv-00415 |
| | § | |
| ALEXANDRU BITTNER, | § | |
| Defendant. | § | |

### DECLARATION OF ALEXANDRU BITTNER

My name is Alexandru Bittner. I am over 21 years of age, of sound mind, capable of making this Declaration and I have personal knowledge of the following facts:

1. I was born in Romania in 1957 where I lived until 1982 during the communist era. In early 1982, I immigrated to the United States to escape the communist regime and discrimination against Jews. I became a naturalized citizen in 1987. While living in the United States, I worked as a dishwasher and a plumber, eventually earning my master plumbing certificate. In 1990, the Romanian Revolution occurred and the fall of communism there. After living in the United States for eight years (three as a naturalized citizen), I returned to Romania believing there would be an opportunity for a better life in my home country. I remained in Romania until 2011.

2. During the two decades I lived in Romania, I visited the United States on a few occasions to see family and to celebrate my 50th birthday. I had never heard of FBAR forms, much less that as a naturalized U.S. citizen living abroad I was required to file them. While in Romania, in the 1990s, my sister, or my brother-in-in law, sent me some Form 1040 tax returns for me to sign, reporting small amounts of U.S. source income from a minority interest in a restaurant they owned.

1

3. Shortly after I returned to the United States, I discovered that I had been required to file tax returns reporting income I earned abroad. As a result, I searched for an accountant who had experience with U.S. citizens living and earning money abroad. This search led me to hire Mr. Jeff Beckley ("Beckley"), a CPA whose website stated that he had expertise to advise individuals in situations such as mine, to regain compliance with U.S. law. I told Beckley that I had foreign income, bank accounts, and business interests and provided Beckley with all the information and documents he requested. Mr. Beckley prepared Form 1040, tax returns, for the years 1990-2011. He also told me that I needed to file FBARs reporting certain foreign bank accounts, and he prepared those for 1996-2011. I signed the Form 1040s and FBARs, and Beckley filed them on my behalf.

4. Unknown to me at the time, Beckley made numerous errors in preparing the tax returns and FBARs. Beckley mistakenly determined that under the United States/Romania Tax Treaty (the "Treaty"), my income in Romania was taxable only by Romania, not the United States. Accordingly, he reported my gross income, but backed that amount out of the returns, attaching a statement that the income was not taxable in the United States under the Treaty. In addition, even though I provided Beckley with a schedule of all personal bank accounts I had in Romania, he prepared FBARs disclosing only the bank account with the highest balance for each year. He never explained to me that I was treated as having a "financial interest" in bank accounts held by foreign corporations for which I owned more than 50% of the stock. Beckley made these grossly negligent errors, as he was not competent to provide the services he advertised.

5. When the tax returns were filed, the IRS disallowed the claimed Treaty exclusion and assessed and billed me $6,042,878 in taxes, penalties and interest. I then engaged tax

counsel and a new CPA firm. On September 12, 2013, I filed amended tax returns for the years 2006-2011, which took nearly 9 months to prepare because of their complexity. Primarily because of foreign tax credits and capital losses, those tax returns showed total tax due of $625, which I paid at that time. On September 25, 2013, I filed amended FBARs prepared by the new CPA, who checked the box that I had a financial interest in 25 or more foreign accounts, which were my personal accounts and accounts held by corporations which I owned more than 50 percent of. As I was just an investor, I did not have signatory authority over any of the corporate accounts. Although the FBAR instructions required that I only state the number of accounts for which I had financial interest in, I also attached a schedule disclosing all foreign bank account information and balances on advice of my tax attorney. Many of the accounts had balances well below $10,000, including some with as little as $1. The IRS found that my failure to file FBARs was non-willful, which I understand means innocent or, at worst, negligent.

      6. The IRS issued me a notice of deficiency in response to which I filed a petition in the United States Tax Court. That petition was assigned docket number 19894-17. An agreed decision was entered in that case on November 12, 2019. With respect to the years for which the IRS seeks to impose FBAR penalties (2007-2011), the agreed decision found no income tax deficiencies for the years 2008, 2009 and 2010, and tax deficiencies of $46,385.88 for 2007 and $127,000 for 2011, all of which I paid.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

    Executed on this 6 day of March, 2020

_____
Alexandru Bittner

3