UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 4:19-cv-00415 |
| ALEXANDRU BITTNER, | ) | |
| Defendant. | ) | |
| | ) | |

**MOTION FOR LEAVE TO FILE AN AMICUS BRIEF IN SUPPORT OF ALEXANDRU BITTNER'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND FOR LEAVE TO EXCEED THE PAGE LIMITS**

## TABLE OF CONTENTS

I. DISTRICT COURTS HAVE AUTHORITY TO ACCEPT AMICUS BRIEFS..........................2

II. INTEREST OF THE PATELS.................................................................................................3

III. THE PATELS' PROPOSED AMICUS BRIEF IS TIMELY....................................................4

IV. THE PATELS' BRIEF IS USEFUL TO THE DISPOSITION OF THE ISSUE......................4

    A.  The First Piece to the Puzzle—Section 5314.................................................................5

    B.  The Second Piece of the Puzzle—the Secretary's Implementing Regulations..............6

        1.   A Summary of the Secretary's Reporting Requirements.......................................6

        2.   Penalties Attach Upon Violations of the Secretary's Regulations.........................7

                Legal Admissions in *Patel*...........................................................................8

        3.   Reg. 1010.350(a)—It's Bifurcated Nature.............................................................9

            a.   The Title 26 Language.............................................................................9

            b.   The Title 31 Language...........................................................................10

                Legal Admissions in *Patel*.........................................................................12

    C.  The Third Piece of the Puzzle—the Penalty Provision (Section 5321(a)(5))..............12

V.  MOTION FOR LEAVE TO EXCEED PAGE LIMITS.........................................................15

VI. CONCLUSION....................................................................................................................15

CERTIFICATE OF SERVICE..................................................................................................16

CERTIFICATE OF CONFERENCE..........................................................................................16

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

UNITED STATES OF AMERICA, )
        Plaintiff, )
         )
        v. )
         )   Case No. 4:19-cv-00415
ALEXANDRU BITTNER, )
        Defendant. )
_____ )

**MOTION FOR LEAVE TO FILE AN AMICUS BRIEF IN SUPPORT OF DEFENDANT ALEXANDRU BITTNER AND FOR LEAVE TO EXCEED PAGE LIMITS**

Laxman Patel, Jashu Patel, Hiten Patel, and Anita Patel (the "Patels") respectfully move this Court for leave to participate as amici curiae and file a brief in support of Defendant's Motion for Partial Summary Judgment.  The Patels' proposed brief provides information not provided in the parties' respective motions that will assist this Court in having "a complete and plenary presentation of the difficult issues before it so that [this] [C]ourt may reach a proper decision." *N.A.A.C.P. v. Town of Harrison*, 940 F.2d 792, 808 (3d Cir. 1991).  The information provided relates solely to the issue of whether penalties under section 5321(a)(5)[1] for violations of the provisions of section 5314 as implemented in the Treasury Secretary's (the "Secretary") regulations apply per report-filing violation or per offshore account.  This issue is one of first impression in this District Court and the Fifth Circuit, and a case of great public interest as thousands of U.S. persons have been, and are being, assessed unauthorized penalties.  Like Bittner, the Patels have been assessed incredulous $10,000 non-willful penalties on accounts with nominal balances, i.e., $30, $50, $64, $83, $393, and $437, to name a few.

---

[1] Section and regulation references are to Title 31 of the U.S. Code and the Code of Federal regulations, respectively.

1

The Patels also seek leave to exceed applicable page limits.  This first impression issue requires significant additional detail to assist this Court in reaching the proper decision.

## I. DISTRICT COURTS HAVE AUTHORITY TO ACCEPT AMICUS BRIEFS

Federal district courts possess the inherent authority to accept amicus briefs.  Unlike the Supreme Court Rules and the Federal Rules of Appellate Procedure, the Federal Rules of Civil Procedure do not specifically provide for the filing of amicus curiae briefs at the district court level.  Nevertheless, "district courts possess the inherent authority to appoint 'friends of the court' to assist in their proceedings."  *In re Bayshore Ford Truck Sales, Inc.*, 471 F.3d 1233, 1249 n.34 (11th Cir. 2006); *United States ex rel. Gudur v. Deloitte Consulting LLP*, 512 F. Supp. 2d 920, 927 (S.D. Tex. 2007) ("The extent to which the court permits or denies amicus briefing lies solely within the court's discretion.").  "No statute, rule, or controlling case defines a federal district court's power to grant or deny leave to file an amicus brief, . . . and in the absence of controlling authority, district courts commonly refer to [Federal Rule of Appellate Procedure] 29 for guidance."  *Gudur*, 512 F. Supp. 2d at 927.  "Factors relevant to the determination of whether amicus briefing should be allowed include whether the proffered information is 'timely and useful' or otherwise necessary to the administration of justice."  *Id*.  Amici's role is to assist the court "in cases of general public interest by making suggestions to the court, by providing supplementary assistance to existing counsel, and by insuring a complete and plenary presentation of difficult issues so that the court may reach a proper decision."  *Town of Harrison*, 940 F.2d at 808.  This authority supports the Court's exercise of its discretion to accept this amici brief.

## II. INTEREST OF THE PATELS

The Patels filed a lawsuit alleging the IRS had unlawfully assessed penalties per offshore account for filing the Title 31 calendar year report, the *Report of Foreign Bank and Financial Accounts* ("FBAR"),[2] late for each of years 2010-2013.  *Patel, et al. v. U.S.*, 8:18-cv-238 (C.D. Ca. Feb. 12, 2018).  Prior to the instant case, on information and belief, Laxman Patel was not only the recipient of the largest standard audit non-willful penalty ever assessed under Title 31— $440,000 in the aggregate for committing four report-filing violations (filing the FBAR after June 30th in violation of reg. 1010.306(c) for years 2010-2013), he was also the recipient of the largest penalty assessed for a single report-filing violation—$130,000 for filing the FBAR late for year 2013.  Those assessments include $10,000 non-willful penalties on accounts with balances of $30, $50, $64, $83, $393, $437, $816, $1,776, $2,589, $4,574, $4,708, and $7,480.

Following the completion of substantial discovery in *Patel*, the IRS expressed concerns over potential jurisdictional defects in the complaint.  To quell those concerns, the Patels agreed to dismiss their case after the IRS filed its own suit to reduce the assessments to judgment.  The parties agreed to have discovery in the original action carried over to the new action.  *U.S. v. Patel, et al.*, 8:19-cv-792 (C.D. Ca. Apr. 30, 2019).  Legal admissions highly relevant to the novel issue before this Court were made by the IRS and are attached as exhibits to this motion.

The Patels' case was stayed just before their summary judgment hearing on this issue because another U.S. person unsuccessfully raised the same issue in the Central District of California. *U.S. v. Boyd*, 8:19-cv-803, 2019 WL 1976472 (C.D. Ca. Apr. 23, 2019).  Ms. Boyd appealed the decision to the Ninth Circuit.  The Patels sought to file an amicus brief with the Ninth Circuit to

---

[2] During the years in issue here, the Title 31 report was referred to as "TD F 90-22.1".  Congress refers to the Title 31 report as "FinCEN Report 114" today.  Surface Transportation and Veterans Health Care Choice Improvement Act of 2015, Pub. L. 114-41, 129 Stat. 443, 458, 2006(b)(11).

provide legal arguments and context not advanced in the district court.  Ms. Boyd, as well as the IRS, readily consented to the Patels filing as amici curiae.

## III. THE PATELS' PROPOSED AMICUS BRIEF IS TIMELY

Pursuant to the Federal Rules of Appellate Procedure, an "amicus curiae must file its brief, accompanied by a motion for filing when necessary, no later than 7 days after the principal brief of the party being supported is filed."  Rule 29(a)(6).  Bittner filed his Motion for Partial Summary Judgment, after his motion for leave to exceed the page limits was granted, on March 11, 2020.  The Patels' motion for leave to file an amicus brief in support of Bittner and their proposed amicus brief were timely filed on March 18, 2020, 7 days after Bittner's motion was deemed filed.

## IV. THE PATELS' BRIEF IS USEFUL TO THE DISPOSITION OF THE ISSUE

The Secretary requires U.S. persons who maintain an aggregate offshore bank account balance exceeding $10,000 at any time during a calendar year are to file a single annual Title 31 report, the *Report of Foreign Bank and Financial Accounts*, by June 30th of the following year. When filed, the FBAR must be in all ways materially accurate in describing the whereabouts of the aggregate foreign bank account balance, including bank names, addresses, account numbers, balances, and the name of any individual who may also have an ownership interest or signature authority over any of the accounts.  The potential penalty exposure for the failure to satisfy those reporting requirements is a matter of statutory and regulatory construction now before this Court. The content of the proposed amicus brief is comprised of information not provided to this Court or the district court in *Boyd*, and has been provided in substantial part to the Ninth Circuit in the Patels' Ninth Circuit amicus brief.

At first look, the intricacies of Title 31's offshore bank reporting requirements appear daunting and complex.  However, the Supreme Court has made the resolution of this first impression issue—whether penalties apply per report-filing violation or per offshore account—a much easier task.  To best understand how section 5314, its implementing regulations, and the penalty statute work in harmony, we must take the Supreme Court's lead, examining the issue as three pieces to a puzzle, each dependent upon the other, all working to ensure that all words in the statutory and regulatory scheme matter.  In doing so, the answer to the issue before this Court will be readily apparent—penalties attach to report-filing violations, not accounts.

**A.  The First Piece to the Puzzle—Section 5314**

Section 5314 provides, in relevant part, provides as follows:

> (a)  Considering the need ... to avoid burdening unreasonably a person making a transaction with a foreign financial agency, the Secretary of the Treasury shall require a resident or citizen ... ***to file reports*** when the resident or citizen maintains a relation with a foreign financial agency.
>
> The ... reports shall contain the following information in the way and to the extent Secretary prescribes:
>
> > 1.  the identity and address of participants in a ... relationship.
> > 2.  the legal capacity in which a participant is acting.
> > 3.  the identity of real parties in interest.
> > 4.  a description of the transaction.
>
> (b)  The Secretary may prescribe –
>
> > 1.  a reasonable classification of persons subject to or exempt from a requirement under this section or a regulation under this section;
> > 2.  the magnitude of transactions subject to a requirement or a regulation under this section;
> > . . .
> > 5.  other matters the Secretary considers necessary to carry out this section or a regulation under this section.

In *California Bankers Association v. Shultz*, 416 U.S. 21 (1974), the Court examined various challenges to the constitutionality of sections 5313, 5314, and 5316 of the Bank Secrecy Act (the "BSA"), and in doing so, made a critical observation relevant to the disposition of the novel issue before this Court. The BSA "is not self-executing ..." *Id*. at 64. Specifically, the Court provided "that the Act's civil and criminal penalties attach only upon violations of regulations promulgated by the Secretary; if the Secretary were to do nothing, the Act itself would impose no penalties on anyone." *Id.* at 26. The Court also noted that "there is no denying the impressive sweep of authority conferred upon the Secretary by the Bank Secrecy Act of 1970." *Id.* at 30.

Section 5314 is the first piece of the puzzle, which instructs the Secretary to require a U.S. person to "*file* reports" when he or she maintains an offshore bank account, and to provide certain information in those reports when filed. Whether a separate Title 31 report is required to be filed for each offshore bank account, or each withdrawal or deposit transaction, or that one Title 31 report be filed per year was a matter Congress left to the Secretary. In other words, "[t]he question is not what sort of reporting requirements[3] might have been imposed by the Secretary under the broad authority given him in the Act, but rather what sort of reporting requirements he did in fact impose under that authority." *Id.* at 64.

### B. The Second Piece of the Puzzle—the Secretary's Implementing Regulations

#### 1. A Summary of the Secretary's Reporting Requirements

---

[3] The phrase "reporting requirements" in the context of the BSA refers to the report-filing requirements of sections 5313, 5314, 5316, and 5331. Congress as well as courts employ the phrase when referring to failures *to file* required reports, or *filing* same containing material omissions or misstatements. By way of example, the Court is *Schultz*, while discussing the potential violations of the "reporting requirements" of section 5316 and the penalty exposure for those violations, highlighted that "[m]onetary instruments which are transported without the filing of the required report, or with a materially erroneous report" are subject to penalties. *Shultz*, 416 U.S. at 36. The proposed amicus brief provides a myriad of examples.

The Secretary's regulations provide that the Title 31 report "prescribed under 31 U.S.C. 5314 to be *filed* ... is the Report of Foreign Bank and Financial Accounts [(the FBAR)]," and that the person *filing* "shall provide such information as shall be specified in" the FBAR when filed. Reg. 1010.350(a).  The trigger *to file* the calendar year report, due June 30th of the following year, is the maintenance of an aggregate offshore account balance greater than $10,000.  Reg. 1010.306(c).  Finally, the Secretary reiterates the informational mandate for a filed report, stressing that "[a]ll information called for in [the FBAR] shall be furnished."  Reg. 1010.306(d). The information specified, or called for, in FinCEN Report 114 reveals the whereabouts of the aggregate offshore balance, i.e., bank names in which accounts are held, bank addresses, account numbers, account balances, etc.[4]

The Secretary, in exercising his broad authority in requiring a single calendar year Title 31 report be filed, regardless of the number of foreign accounts holding the aggregate balance, represents an appropriate implementation of section 5314 as well as a "matter the Secretary consider[ed] necessary to carry out . . . section [5314]."  Section 5314(b)(5).  It also represents a harmonious nod to the burden provision of section 5314 because it serves Congress' directive of not unduly burdening U.S. persons who legitimately engage in relations with foreign banks with the onerous task of *filing* a separate Title 31 report for each bank account.

## 2.  Penalties Attach Upon Violations of the Secretary's Regulations

Recall that the BSA's "civil and criminal penalties attach only upon violations of the regulations promulgated by the Secretary, if the Secretary were to do nothing, the BSA itself

---

[4] The Secretary exempted U.S. persons who maintain the aggregate balance in 25 or more accounts from having to provide detailed information on each account in the FBAR at the time of filing. Reg. 1010.350(g); section 5314(b)(1).  Bittner fell under that exemption for the years in issue, but he must provide those details if they are requested by an examiner.

would impose no penalties on anyone." *Shultz*, 416 U.S. at 26.  From the regulations promulgated by the Secretary, the potential report-filing violations of section 5314 are readily ascertainable—the failure to *file* the FBAR when a U.S. person maintains an aggregate offshore balance exceeding $10,000, regs. 1010.350(a) & 1010.306(c) (**failure-to-file violation**), *filing* the FBAR after the June 30th deadline, reg. 1010.306(c) (**delinquency violation**), and *filing* the FBAR containing a material omission or misstatement, i.e., failing to accurately supply information as to the whereabouts of the aggregate offshore account balance, regs. 1010.350(a) and 1010.306(d) (**accuracy violation**).

The IRS has come to the same conclusion as to what constitutes potential violations of the provisions of section 5314 as implemented in the Secretary's regulations, concluding that a violation "not only includes a complete *failure to file a report*, it also includes a *failure to timely file a report* and *filing a report with material false statements or omissions*."  IRM 4.26.5.4(5). In discussing potential civil penalties for report-filing violations of section 5314, the IRS posits that "[a] person who . . . *fails to file [an FBAR]* or *files [an FBAR] with a material omission or misstatement* . . . may be assessed a penalty. ."  The IRS specifically recognizes that "[a] *filing violation* occurs at the end of the day on June 30th of the year following the calendar year to be reported (the *due date for filing the FBAR*)."  IRM 4.26.16.6.2(2).  And the IRS reaffirms the timeliness requirement while highlighting that, when filed, the FBAR must be accurate.  "It remains the responsibility of the filer to ensure that *filing* takes place timely and the report is accurate."  IRM 4.26.16.4.5(2) (emphasis added to all of the foregoing IRM sections).

## Legal Admissions in *Patel*

IRS admissions in *Patel* are consistent with the aforementioned sections in its IRM.  For instance, the IRS admitted that *filing* the FBAR late is a violation of the provisions of section

5314. Appendix ("App."), Exh. B, pg. 2-5, UF 28. The IRS further admitted that the accurate listing of accounts is part of the information required to be provided *in a filed FBAR*; the failure to satisfy that requirement is a violation of the provisions of section 5314, namely regs. 1010.350(a) and 1010.306(d) (**accuracy violation**). *Id*., pg. 2-5, UF 31.

Critical legal admissions in *Patel* also confirm the IRS's understanding of the Secretary's implementing regulations. The IRS admits the FBAR is a Title 31 report, App., Exh. B, pg. 2-4, UF 21; pg. 2-3, UF 14, and that U.S. persons maintaining the aggregate threshold in multiple accounts are required to sign and file ONE FBAR per year by June 30th. *Id*. at pg. 2-4, UFs 18-20, 23; pg. 2-5, UFs 25-27.

### 3. Reg. 1010.350(a)—It's Bifurcated Nature

Reg. 1010.350(a)'s language is oft-misunderstood because it sets forth the Title 26 requirement to report offshore relationships to the Commissioner of Internal Revenue on Schedule B of yearly federal income tax returns, as well as the Title 31 requirement to *file* the FBAR and to provide all information requested in the report when filed. *Shultz,* 416 U.S. at 37, recognized the bifurcated nature of the regulation.

> The regulations require each person subject to the jurisdiction of the [U.S.] to make a report <u>on yearly tax returns</u> of any "financial interest in ... a bank ... account in a foreign country." [reg. 1010.350(a)]. [**Title 26**] Violations of the reporting requirement(s) of [section 5314] as implemented by the regulations are also subject to civil and criminal penalties. [**Title 31**]  (Text; Emphasis added).

#### a. The Title 26 Language

The Title 26 directive in section 1010.350(a) the Court in *Shultz* described reads as follows:

> In general. Each United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country *shall report such relationship to the Commissioner of Internal Revenue for each year in which such relationship exists* . . (Emphasis added).

To satisfy this Title 26 requirement, a U.S. person must check "Yes" on his tax return next to

Question 7a on Schedule B, whether he has 1 account or 100.  This must be done whether the account or accounts generated taxable income or not, and even if a U.S. person maintained an aggregate offshore balance less than $10,000.

The failure to report offshore relationships on a tax return is not a violation of Title 31.  The *Shultz* Court recognized, however, that "[v]iolations of the reporting requirement[s] of [section 5314] as implemented by the regulations are . . . subject to [Title 31] civil and criminal penalties."  Those "reporting requirement[s]" the Court is referring to, which are distinct from the Title 26 requirement to report offshore relationships on Schedule B of a tax return, are the aforementioned Title 31 mandates that the FBAR be *filed* with FinCEN by June 30th of the year following the year a $10,000 aggregate offshore balance was maintained, and, that the *filed* report be materially accurate as to the whereabouts of the aggregate offshore balance.[5]

### b.  The Title 31 Language

The Title 31 language of section 1010.350(a) reads as follows:

> In general.  Each United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country[6]. . . *shall provide such information as shall be specified in a [Title 31 report] prescribed under 31 U.S.C. 5314 to be **filed** by such persons.  The [Title 31 report] prescribed under section 5314 is the Report of Foreign Bank and Financial Accounts ([FinCEN Report 114]) . . .* (Emphasis added to the Title 31 language).

The information provided in a *filed* FinCEN Report 114 is far different than that provided by a check mark on a tax return.  A *filed* FinCEN Report 114, if less than 25 accounts are to be listed,

---

[5] Exempted filers need only accurately state the number of accounts maintaining the aggregate balance, a nod to the burden provision of section 5314.  Reg. 1010.350(g).

[6] The language of the regulation preceding the footnote is applicable to both the Title 26 and Title 31 portion of the regulation and is a requisite for each obligation—an offshore bank account.  The Title 31 mandate, however, requires the maintenance of the requisite offshore account balance to trigger the requirement to *file* FinCEN Report 114

includes all bank names, locations, account numbers, account balances, etc. (a person with more than 24 accounts need only list the number of accounts on the FBAR, but is still on the hook to provide detailed information on all accounts when requested).  To close that drastic informational gap, the Secretary, as of 2011, requires taxpayers who maintain certain offshore aggregate balances to file Form 8938, Statement of Specified Foreign Financial Assets, <u>with their yearly tax returns</u>.  Form 8938 asks for essentially the same information that is provided in FinCEN Report 114.  The IRS, cognizant of the bifurcated nature of offshore reporting, stresses in the instructions to Form 8938 that "[f]iling Form 8938 does not relieve you of the *requirement to file [the FBAR] ... if you are otherwise required to file the FBAR*."  (Emphasis added).

Should there be any doubt as to section 1010.350(a)'s dual mandates, FinCEN, the bureau tasked with drafting the Secretary's implementing regulations, recently proposed the following changes be made to section 1010.350(a), in line with the Court's exposition in *Shultz*.

> In general.  Each United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country *shall report such relationship to the Commissioner of Internal Revenue **on a return for each year in which such relationship exists*** and shall provide **the Financial Crimes Enforcement Network, through BSA E-Filing**, with such information as shall be specified in [the FBAR, the Title 31 report] prescribed under 31 U.S.C. 5314 *to be filed* by such persons.  The [Title 31 report] prescribed under section 5314 is the Report of Foreign Bank and Financial Accounts ([the FBAR]).  (Emphasis added to proposed changes; Title 26 mandate italicized).  App., Ex. A, pg. 1-1.

The Secretary provided an identical explanation of the oft-misunderstood bifurcated nature of reg. 1010.350(a) in his 2002 Report to Congress.[7]

> The FBAR is not a tax return, but a report *filed* with the Secretary stating that the person *filing* has a financial interest in, or signature authority over, financial accounts in a foreign country with an aggregate value exceeding $10,000 at any time during

---

[7] A Report to Congress in Accordance with §361(b) of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (USA Patriot Act), April 26, 2002, at 5 ("2002 Report").

the calendar year.  Filing an FBAR is a two-part reporting process.  Form 1040 Schedule B, Part III, instructs a taxpayer to indicate an interest in a financial account in a foreign country by checking "Yes" or "No" in the appropriate box.  Form 1040 then refers the taxpayer to Form 90-22.1, the FBAR, which provides that it should be used to report a financial interest in or authority over bank accounts, securities accounts, or other financial accounts in a foreign country.  The FBAR's instructions provide more detail on when the [Title 31 report] must be *filed*.  The *deadline for filing an FBAR* for each calendar year is on or before June 30th of the following year.

The IRS has explicitly confirmed its understanding of the bifurcated process, in language tracking the regulation and wholly consistent with FinCEN's proposed change to the regulation and both the Supreme Court and the Secretary's plain read:

### Reporting and Filing Information

*The reporting obligation is met by answering questions on a tax return about foreign accounts (for example, the questions about foreign accounts on Form 1040 Schedule B)* **and** by filing an FBAR.  App., Exh. D, pg. 4-2.

### Legal Admissions in *Patel*

The IRS admitted in *Patel* that the above-referenced excerpt from its website was describing the two-part reporting process the Secretary highlighted in his 2002 Report, App., Exh. C, pg. 3-3, RFA 19.  The IRS further admitted that the italicized language refers to the Title 26 obligation that U.S. persons must report their offshore bank relationships to the Commissioner of Internal Revenue on their Federal income tax returns, *id*., Exh. B, pg. 2-2, RFA 10, and that the italicized language was consistent with FinCEN's proposed change to the regulation adding "on a return" to read "shall report such relationship to the Commissioner of Internal Revenue **on a return** for each year in which such relationships exists ..."  *Id*., Exh. B, pg. 2-3, RFA 12.

### C.  The Third Piece of the Puzzle—the Penalty Provision (Section 5321(a)(5))

Section 5321(a)(5)(A) authorizes the Secretary to impose a civil money penalty on any person "who violates ... any provision of section 5314" as implemented in his regulations.  Section 5321(a)(5)(B)(i) provides that "the amount of any civil penalty imposed under subparagraph (A)

shall not exceed $10,000." *Shultz* makes clear that "[v]iolations of the reporting requirement[s] of [section 5314] as implemented by the regulations are...subject to...penalties." 416 U.S. at 37. In implementing the provisions of section 5314, the Secretary requires a U.S. person who maintains an aggregate offshore account balance greater than $10,000 at any time during a calendar year to file ONE Title 31 report, the FBAR, by June 30th of the following year.  The Secretary further mandates that all information specified in the FBAR be furnished when the report is filed.[8]  The Secretary, in exercising his broad authority, does not require a separate report-filing requirement for each bank account.  Thus, the failure to comply with any of those provisions of section 5314—failure to *file* the FBAR at all, regs. 1010.350(a) and 1010.306(c) (**failure-to-file violation**), *filing* the FBAR late, reg. 1010.306(c) (**delinquency violation**), or *filing* the FBAR containing a material omission or misstatement, regs. 1010.350(a) and 1010.306(d) (**accuracy violation**)—subjects a U.S. person to a potential non-willful penalty of $10,000.

Bittner non-willfully filed accurate FBAR's late for years 2007-2011, reg. 1010.306(c) (**delinquency violation**).  He committed one report-filing violation of the Secretary's regulations (i.e., the provisions of section 5314) for each year in issue.  Congress plainly authorized the Secretary to impose a maximum discretionary penalty of $10,000 to attach to each of those delinquent report-filing violations.  Sections 5321(a)(5)(A) & (B).

The IRS erroneously maintains that the penalty applies per account on two specious grounds. The first is effectuated by transmogrifying the Title 26 mandate of reg. 1010.350(a) to "report such relationship to the Commissioner of Internal Revenue" on a return to a Title 31 reporting requirement that a separate Title 31 report be filed for each bank account to which a separate

---

[8] Information specified for Bittner, as an exempt filer, is the number of accounts maintained.

penalty may attach.  IRS Brief, Doc. 29, pg. 11.  That position flies in the face of the Supreme

Court's explicit explanation of the bifurcated nature of the regulation, FinCEN's proposed

change to the Title 26 language to confirm that it relates to reporting relationships "on a return",

the Secretary's explanation in his 2002 report, and the IRS's own statements on its website and

admissions relating thereto.  The Secretary, in exercising his sweeping authority granted under

section 5314, could have required a separate Title 31 report be filed per account.  He did not.

"[T]he question is not what sort of reporting requirements might have been imposed by the

Secretary under the broad authority given him in the Act, but rather what sort of reporting

requirements he did in fact impose under that authority."  *Shultz,* 416 U.S. at 64.

   The second ground is that the phrase "balance in the account"—as it appears in section

5321(a)(5)'s reasonable cause exception for a non-willful filing violation and section

5321(a)(5)(D)(ii), which determines the discretionary ceiling for a penalty for a willful filing

violation—means that Congress intended the penalty to apply not per report-filing violation, but

instead per account.  This position is also untenable.  As the third piece in the puzzle, section

5321(a)(5) authorizes penalties only for "violating" the Secretary's implementing regulations,

i.e., failure to *file* the FBAR, *filing* the FBAR late, or *filing* the FBAR containing a material

omission or misstatement.  The IRS's interpretation would work to render those report-filing

violations meaningless—the terms "violation" and "violating" as the appear in the section

5321(a)(5) would be words of no consequence.

   Put another way, the IRS seeks to remove the implementing piece of the puzzle.  Without it,

section 5314 standing alone with section 5321(a)(5) would not provide the IRS any authority to

impose a penalty because BSA "civil ... penalties attach only upon violation of the regulations

promulgated by the Secretary; if the Secretary were to do nothing, the Act itself would impose

no penalties on anyone." *Shultz*, 416 U.S. at 26.  The phrase "balance in the account," when construed under the singular includes the plural rule to also mean "balance in the accounts" if a person maintains the aggregate balance in more than one account, ensures all pieces to the puzzle work in harmony, that all words in the statutory and regulatory scheme matter, and that penalties imposed for violations of the reporting requirements of section 5314 are constitutionally sound.

## V.  MOTION FOR LEAVE TO EXCEED PAGE LIMITS

Federal Rule of Appellate Procedure 29(a)(5) provides that an amicus brief is to be no longer than one-half the length of the principal brief.  Rule 29(a)(5) further provides that if a court grants a party permission to file a longer brief, as in the instant case (15 pages to 30), that extension does not affect the length of the amicus brief.  Local Civil Rule 7(a)(2) limits the length of a non-dispositive motion to 15 pages, which, if using Fed. R. App. Proc. 29 as a guide, would limit an amicus brief to 7.5 pages.  This issue of first impression requires far more coverage than contained herein to assist this Court in reaching an informed and proper decision. The Patels request that this Court accept their proposed amicus brief in its entirety.

## VI. CONCLUSION

For the foregoing reasons, the Patels respectfully request that this Court grant leave to file their proposed amicus brief and to exceed the page limit.

Respectfully submitted,

/s/  David Michaels
DAVID MICHAELS
Ca. Bar. No. 235985
*Admitted in E.D. Texas
310 Maui Drive
Placentia, CA 92870
Phone:  (714) 742-9561
Fax:  (714) 985-0564
dmichaels0867@hotmail.com

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing Motion was made on March

18, 2020, by the Clerk's ECF filing system to:

CLARK HILL STRASBURGER                    Herbert W. Linder
Farley P. Katz                           Attorney, Tax Division
Rachael Rubenstein                       U.S. Dept. of Justice
2301 Broadway St.                        717 N. Harwood, Suite 400
San Antonio, Texas 78209                 Dallas, Texas 75201

/s/ David Michaels
DAVID MICHAELS


## CERTIFICATE OF CONFERENCE

Counsel for the Patels has complied with the meet and confer requirement in Local Rule 7(h).

### A.  The Government

Counsel contacted Holly Michelle Church who was listed as an attorney for the government

via telephone on March 10, 2020 at 12:01 p.m. Pacific Standard Time.  A request was made for

permission to file an amicus brief in this matter.  Ms. Church explained she was no longer

working on the matter but that she would forward the message to Herbert Linder and have him

call to discuss the filing.  Mr. Linder did not respond.  On March 17, 2020 at 8:26 a.m. Pacific

Standard Time, Counsel left a voicemail with Mr. Linder explaining that he had talked with Ms.

Church and that he needed to speak with him regarding the filing of the Patels' amicus brief.  He

did not return the call.  Not confident that the call was forthcoming, Counsel sent an email

requesting permission to file.

**From:** David michaels <dmichaels0867@hotmail.com>
**Sent:** Tuesday, March 17, 2020 11:11 AM
**To:** Linder, Herbert W. (TAX) <Herbert.W.Linder@tax.USDOJ.gov>
**Subject:** Permission to File Amicus in Bittner in Support of Bittner

16

Mr. Linder:

   I represent the Patels in the Central District of California in a case that presents with the same issue currently being litigated in Bittner--whether penalties apply per report-filing violation or per account.  Our case was stayed just before our summary judgment hearing because of *Boyd*, and we have filed an amicus brief with the Ninth Circuit (your client did not object to filing amicus).  The Patels non-willfully filed late their FinCEN Report 114's for years 2010-2013.  Their assessments include 10,000 penalties on accounts with balances of $30, $50, $64, $83, $393, and $437, to name a few.  The motion for leave to file amicus is due to be filed by tomorrow, 7 days after Bittner filed his motion (Fed. R. App. Proc. 29 is the default guide on timeliness).  The brief contains information not provided in the parties' briefs and will assist the Court in having a complete and plenary presentation of novel issue so that it may reach a proper decision.  Thank you, in advance, for your prompt response.

Respectfully,
David Michaels
714.742.9561


Mr. Linder responded as follows:

**From:** Linder, Herbert W. (TAX) <Herbert.W.Linder@usdoj.gov>
**Sent:** Tuesday, March 17, 2020 10:49 AM
**To:** David michaels <dmichaels0867@hotmail.com>
**Cc:** Sobotka, Andrew L. (TAX) <Andrew.L.Sobotka@usdoj.gov>
**Subject:** RE: Permission to File Amicus in Bittner in Support of Bittner

Dear Mr. Micheals:

I have received you phone call and email.  The United States **does not consent** to the filing of any amicus briefs in the case of United States v. Alexandru Bittner, Case No. 19-cv-415.

The United States **is opposed** to any motion for leave to file amicus brief in the case of United States v. Alexandru Bittner, Case No. 19-cv-415.   The United States believes that Alexandru Bittner is adequately represented in this, you do not have a unique perspective on the issue and will be merely duplicating the current briefing, and he court's decision would not be binding in your jurisdiction.

If you have any questions please contact me.

Herb Linder
United States Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201

214-880-9754   (direct dial)
214-880-9742   (fax)

Counsel had yet to discuss the contents of the amicus or provide a draft to Mr. Linder but he nonetheless objected to its filing on the basis that the Patels do not offer a unique perspective and that they will be only duplicating what was being provided.  That is not true.  Counsel provided the following comprehensive response to substantiate same.

David michaels
Tue 3/17/2020 12:33 PM
Linder, Herbert W. (Tax)

Mr. Linder:

Thank you for your prompt response.  I will note your objections in the motion for leave.  Legal precedent significantly informing how this issue should be addressed (*Shultz)*, legal admissions in *Patel*, and other highly relevant contextual and structural matters pertinent for the Court's determination on this first impression issue (i.e., the bifurcated nature of reg. 1010.350(a)) are not presented at all in Bittner's brief.  Those issues were not covered by representatives in the district court in *Boyd* either.  It is of utmost importance that the district court here have the aforementioned items to consider in rendering its decision.  I do have a very unique perspective that follows the Supreme Court's lead in *Shultz*. . . As we are at an impasse, it will be for the District Court to decide whether it believes the information provided is necessary for the administration of justice on this issue.

Ultimately, the Supreme Court, which will have the final say on this issue, has already provided the roadmap on how the statute and regulations work in harmony (section 5314 is not self-executing, "the Act's civil and criminal penalties attach only upon violations of regulations promulgated by the Secretary; if the Secretary were to do nothing, the Act itself would impose no penalties on anyone.").  That is why civil penalties attach only upon report-filing violations of the Secretary's implementing regulations (failure to file FinCEN Report 114, regs. 1010.350(a) & 1010.306(c) (**failure to file violation**), filing the report late, reg. 1010.306(c) (**delinquency violation**), or filing same containing a material omission or misstatement regs. 1010.350(a) & 1010.306(d) (**accuracy violation**).  They do not apply per account as you contend.  The phrase "balance in the account" in section 5321(a)(b) does not work to render the Secretary's implementing regulations meaningless.  It affords contextual flexibility under the singular plural rule of construction depending on whether the U.S. person holds the aggregate balance in one or several accounts ("balance in the account" means "balance in the accounts").

Contextually, the other report-filing provisions of the BSA as implemented by the Secretary, sections 5313 (banks required to file a report if a person deposits more than $10,000 in cash), 5316 (person required to file a report when he transports or receives more than $10,000 in cash from outside of the U.S.), and section 5331 (nonfinancial trades or businesses are required to report payments in cash exceeding $10,000), all have the same report-filing threshold of greater than 10,000 (**failure to file violation**), require the designated Title 31 report be filed by

the time specified by the Secretary (**delinquency violation**), and the report must be materially accurate in all respects when filed (**accuracy violation**).  The Secretary exercised his broad authority under those sections that a separate Title 31 report be filed for "each" transaction when the requisite trigger was met.  Unlike those sections, the Secretary, cognizant of the burden provision contained in section 5314, the only such provision in the BSA, required only that one report be filed when the aggregate balance exceeded $10,000, regardless of the number of accounts holding the aggregate balance.  A separate Title 31 report is not filed for each bank account.  All of those provisions, sections 5313, 5314, 5316 and 5331 (the "Big Four"), specifically direct the Secretary to require financial institutions and individuals to "*file* a report."  And Congress has recognized that violations of the "reporting requirements" of those provisions includes "the fail[ure] to file a report" or "filing a report containing a material omission or misstatement."  See sections 5324(a)(1) & (2) (section 5313) and 5324(c)(1) & (2), to name a few.

The Secretary's sweeping authority allowed him to require that one Title 31 report be filed per calendar year, and only if an aggregate balance exceeded $10,000.  He could have required a separate Title 31 report for each account under section 5314, like he did for each transaction in the other sections of the Big Four.  He did not.  "[T]he question is not what sort of reporting requirements might have been imposed by the Secretary under the broad authority given him in the Act, but rather what sort of reporting requirements he did in face impose under that authority." *Shultz*, 416 U.S. at 64.  The Secretary determined that the accounts themselves are part of the information supplied in a filed report.  You client's IRM and legal admissions in *Patel* confirm same.  Penalties attach to report-filing violations, not accounts.

The foregoing is not presented in Bittner's presentation to the District Court.  We remain hopeful that you will recognize that your position that our brief is duplicative was premature.

Best,
David Michaels

On March 18, 2020, at 8:01 a.m. Pacific Standard Time, Counsel once again contacted Mr. Linder via telephone to discuss the filing of the proposed amicus brief.  Counsel left a voicemail explaining that under the "meet and confer" requirements email exchanges are not sufficient to meet the substantive portion of Local Civil Rule 7(h).  Mr. Linder did not respond.

### B.  Mr. Bittner

Counsel conducted a personal conference via telephone with Farley P. Katz, counsel for Mr. Bittner, on March 11, 2020 at 2:38 p.m. Pacific Standard Time.  Mr. Katz opposes the filing of the amicus brief only on the grounds that the legal matter raised therein, the bifurcated nature of

reg. 1010.350(a), is "too difficult to follow." The Patels respectfully disagree. The nature of that regulation is of <u>paramount importance</u> given that the first of two ways the IRS justifies its position that penalties apply per account is that the regulation requires the reporting of *each* account to the IRS Commissioner. As discussed plainly and clearly in this motion and the proposed brief, the language the government relies upon refers to the Title 26 requirement to report offshore relationships on Schedule B of a tax return. The Supreme Court expressly put forth its understanding of the regulation as having a Title 26 component and a Title 31 component. FinCEN has proposed adding "on a return" after that language to clarify same, and <u>IRS admissions in Patel confirm its understanding of the bifurcated nature of the regulation</u>, admissions they do not want this Court to see. This material must be addressed in the Court's opinion.

Mr. Katz raised no other substantive concerns over the remainder of the contents of the brief and did not contend they were duplicative in any respect. Counsel is confident the Court will agree after reviewing the proposed brief in its entirety that the additional material is highly useful and absolutely necessary.

From the foregoing, it is clear that discussions have ended in an impasse, leaving an open issue for this Court to resolve. The Patels have incurred significant expense in bringing the contents of their proposed brief before this Court and having counsel admitted in the Eastern District to provide additional expertise to ensure this Court, unlike the district court in *Boyd*, is presented with a complete and comprehensive presentation of the material necessary in this highly specialized area of law to resolve this issue of first impression properly.

/s/  David Michaels
DAVID MICHAELS

20