UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 4:19-cv-00415 |
| ALEXANDRU BITTNER, | ) | |
| Defendant. | ) | |
| _____ | ) | |

**AMICUS BRIEF IN SUPPORT OF ALEXANDRU BITTNER'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

I.   INTEREST OF *AMICUS CURIAE*........................................................................1

II.   INTRODUCTION.................................................................................................2

III.  THE STATUTORY AND REGULATORY FRAMEWORK..................................3

   A.  The Supreme Court's First Piece to the Puzzle—Section 5314.........................3

   B.  The Supreme Court's Second Piece to the Puzzle—the Secretary's
      Implementing Regulations.................................................................................5

     1.  A Summary of the Secretary's Reporting Requirements..............................5

     2.  A Harmonious Nod to Section 5314's Burden Provision............................5

        i.    ONE FBAR Filed Per Year..............................................................5

        ii.   Trigger to File is an Aggregate Balance Exceeding $10,000..........6

        iii.  U.S. Persons, Like Bittner, Need Only List the Number of Accounts
             on the FBAR if the Aggregate Balance is Held in 25 or More Accounts........6

     3.  Penalties Attach Upon Violations of the Secretary's Regulations..............7

        Legal Admissions in *Patel*...................................................................8

     4.  The Meaning of the Phrase "Reporting Requirements"..............................8

     5.  The BSA's Big Four—Sections 5313, 5314, 5316 and 5331......................9

        i.    Section 5313...................................................................................10

        ii.   Section 5316...................................................................................10

        iii.  Section 5331...................................................................................10

        iv.   The Pattern Emerges......................................................................11

        v.    If the Secretary Wanted to Require a Separate FBAR for "Each"
             Account He Would Have Said So..................................................12

        Legal Admissions in *Patel*.................................................................12

     6.  Reg. 1010.350(a)—Its Bifurcated Nature.................................................13

        i.    The Title 26 Language....................................................................13

        ii.   The Title 31 Language....................................................................14

        Legal Admissions in *Patel*.................................................................16

C. The Supreme Court's Third Piece to the Puzzle—the Penalty Provision
(Section 5321(a)(5))..........................................................................................................16

1. The IRS Erroneously Maintains the Penalty Applies Per Account
on Two Specious Grounds...........................................................................................17

2. How Section 5321(a)(5) Operates to Ensure the Terms "Violation" and
"Violating" As They Appear in the Statute Are Not Rendered Meaningless.............19

i. The Reasonable Cause Exception...................................................................19

A Reasonable Cause Example.............................................................................21

A Reasonable Cause Example for Exempt Persons.............................................23

i. The Enhanced Willful Penalties.....................................................................24

A Willful Example..............................................................................................25

A Willful Example for Exempt Persons.............................................................26

III. CONSENT TO THE FILING OF THIS BRIEF....................................................................27

A. The IRS's Position.............................................................................................................27

B. Bittner's Position...............................................................................................................28

IV. REQUEST TO PARTICIPATE IN ORAL ARGUMENT......................................................28

V. CONCLUSION.........................................................................................................................29

## I.    INTEREST OF *AMICUS CURIAE*[1]

The Patels filed a lawsuit alleging the IRS had unlawfully assessed penalties per offshore

account for filing the Title 31 calendar year report, the *Report of Foreign Bank and Financial*

*Accounts* ("FBAR"),[2] late for each of years 2010-2013.  *Patel, et al. v. U.S.*, 8:18-cv-238 (C.D.

Ca. Feb. 12, 2018).  Prior to the instant case, on information and belief, Laxman Patel was not

only the recipient of the largest standard audit non-willful penalty ever assessed under Title 31—

$440,000 in the aggregate for committing four report-filing violations (filing the FBAR after

June 30th in violation of reg. 1010.306(c) for years 2010-2013), he was also the recipient of the

largest penalty assessed for a single report-filing violation—$130,000 for filing the FBAR late

for year 2013.  Those assessments include $10,000 non-willful penalties on accounts with

balances of $30, $50, $64, $83, $393, $437, $816, $1,776, $2,589, $4,574, $4,708, and $7,480.

Following the completion of substantial discovery in *Patel*, the IRS expressed concerns over

potential jurisdictional defects in the complaint.  To quell those concerns, the Patels agreed to

dismiss their case after the IRS filed its own suit to reduce the assessments to judgment.  The

parties agreed to have discovery in the original action carried over to the new action.  *U.S. v.*

*Patel, et al.*, 8:19-cv-792 (C.D. Ca. Apr. 30, 2019).  <u>Legal admissions highly relevant to the</u>

<u>novel issue before this Court were made by the IRS and are attached as exhibits to this motion</u>.

The Patels' case was stayed just before their summary judgment hearing on this issue because

another U.S. person unsuccessfully raised the same issue in the Central District of California.

---

[1] *Amici Curiae* certify this brief was not written in whole or in part by counsel for any party, and no person or entity other than Amici Curiae and their counsel has made a monetary contribution to the preparation and submission of this brief.

[2] During the years in issue here, the Title 31 report was referred to as "TD F 90-22.1".  Congress refers to the Title 31 report as "FinCEN Report 114" today.  Surface Transportation and Veterans Health Care Choice Improvement Act of 2015, Pub. L. 114-41, 129 Stat. 443, 458, 2006(b)(11).

*U.S. v. Boyd*, 8:19-cv-803, 2019 WL 1976472 (C.D. Ca. Apr. 23, 2019).  Ms. Boyd appealed the decision to the Ninth Circuit.  The Patels sought to file an amicus brief with the Ninth Circuit to provide legal arguments and context not advanced in the district court.  Ms. Boyd, as well as the IRS, readily consented to the Patels filing as amici curiae.

## II.    INTRODUCTION

The Patels' proposed brief provides information not provided in the parties' respective motions that will assist this Court in having "a complete and plenary presentation of the difficult issues before it so that [this] [C]ourt may reach a proper decision." *N.A.A.C.P. v. Town of Harrison*, 940 F.2d 792, 808 (3d Cir. 1991).  The information provided relates solely to the issue of whether penalties under section 5321(a)(5)[3] for violations of the provisions of section 5314 as implemented in the Treasury Secretary's (the "Secretary") regulations apply per report-filing violation or per offshore account.  This issue is one of first impression in this District Court and the Fifth Circuit, and a case of great public interest as thousands of U.S. persons have been, and are being, assessed unauthorized penalties.  Like Bittner, the Patels have been assessed incredulous $10,000 non-willful penalties on accounts with nominal balances, i.e., $30, $50, $64, $83, $393, and $437, to name a few.

The Secretary requires U.S. persons who maintain an aggregate offshore bank account balance exceeding $10,000 at any time during a calendar year to file a single annual Title 31 report, the FBAR, by June 30th of the following year.  When filed, the FBAR must be in all ways materially accurate in describing the whereabouts of the aggregate foreign bank account balance, including bank names, addresses, account numbers, balances, and the name of any individual

---

[3] Section and regulation references are to Title 31 of the U.S. Code and the Code of Federal regulations, respectively.

who may also have an ownership interest or signature authority over any of the accounts.[4]  The potential penalty exposure for the failure to satisfy those reporting requirements is a matter of statutory and regulatory construction now before this Court.  The content of this amicus brief is comprised of critical Supreme Court precedent, legal admissions, and statutory context that will ensure that this Court reaches a fully informed and proper decision.

At first look, the intricacies of Title 31's offshore bank reporting requirements appear daunting and complex.  However, the Supreme Court has made the resolution of this first impression issue—whether penalties apply per report-filing violation or per offshore account—a much easier task.  To best understand how section 5314, its implementing regulations, and the penalty statute work in harmony, we must take the Supreme Court's lead, examining the issue as three pieces to a puzzle, each dependent upon the other, all working to ensure that all words in the statutory and regulatory scheme matter.  In doing so, the answer to the issue before this Court will be readily apparent—penalties attach to report-filing violations, not accounts.

## III.     THE STATUTORY AND REGULATORY FRAMEWORK

### A.  The Supreme Court's First Piece to the Puzzle—Section 5314

Section 5314 provides, in relevant part, provides as follows:

> (a)  Considering the need ... <u>to avoid burdening unreasonably</u> a person making a transaction with a foreign financial agency, the Secretary of the Treasury shall require a resident or citizen ... ***to file reports***

---

[4] As set forth more fully below, for those U.S. persons, like Bittner, who maintain the aggregate balance in 25 or more accounts, they need only provide an accurate number of the accounts in which the aggregate balance is maintained on the FBAR.  Reg. 1010.350(g).  The Secretary was acting well within his authority to *exempt* those individuals from listing detailed information on each account as required in regs. 1010.350(a) and 1010.306(d), discussed *infra*, given the burden U.S. persons would incur providing information on voluminous accounts.  Section 5314(b)(1).  However, when requested to do so, those U.S. persons must still provide all the information requested as to each account.  What will be shown below is that whether an individual has 25 or more accounts or not, the application of penalties is the same, including the availability of the reasonable cause exception for a non-willful violation.

when the resident or citizen maintains a relation with a foreign
financial agency.

The ... reports shall contain the following information in the way
and to the extent Secretary prescribes:

1.  the identity and address of participants in a ... relationship.
2.  the legal capacity in which a participant is acting.
3.  the identity of real parties in interest.
4.  a description of the transaction.

(b) The Secretary may prescribe –

1.  a reasonable classification of persons subject to or exempt
    from a requirement under this section or a regulation under
    this section;
2.  the magnitude of transactions subject to a requirement or a
    regulation under this section;
    . . .
5.  other matters the Secretary considers necessary to carry out
    this section or a regulation under this section.  (Emphasis added).

In *California Bankers Association v. Shultz*, 416 U.S. 21 (1974), the Court examined various

challenges to the constitutionality of sections 5313, 5314, and 5316 of the Bank Secrecy Act (the

"BSA"), and in doing so, made a critical observation relevant to the disposition of the novel issue

before this Court.  The BSA "is not self-executing ..."  *Id*. at 64.  Specifically, the Court noted

that "the Act's civil and criminal penalties attach only upon violations of regulations

promulgated by the Secretary; if the Secretary were to do nothing, the Act itself would impose

no penalties on anyone."  *Id.* at 26.  The Court also recognized "the impressive sweep of

authority conferred upon the Secretary by the Bank Secrecy Act of 1970."  *Id.* at 30.

Section 5314 is the first piece of the puzzle, which instructs the Secretary to require a U.S.

person to "*file* reports" when he or she maintains an offshore bank account, and to provide

certain information in those reports when filed.  Whether a separate Title 31 report is required to

be filed for each offshore bank account, or each withdrawal or deposit transaction, or that one

4

Title 31 report be filed per year was a matter Congress left to the Secretary.  In other words, "[t]he question is not what sort of reporting requirements might have been imposed by the Secretary under the broad authority given him in the Act, but rather what sort of reporting requirements he did in fact impose under that authority". *Id.* at 64.

### B.  The Supreme Court's Second Piece of the Puzzle—the Secretary's Implementing Regulations

#### 1.  A Summary of the Secretary's Reporting Requirements

The Secretary's regulations provide that the Title 31 report "prescribed under 31 U.S.C. 5314 to be *filed* ... is the Report of Foreign Bank and Financial Accounts [(the FBAR)]," and that the person *filing* "shall provide such information as shall be specified in" the FBAR when filed. Reg. 1010.350(a).  The trigger *to file* the calendar year report, due June 30th of the following year, is the maintenance of an aggregate offshore account balance greater than $10,000.  Reg. 1010.306(c).  Finally, the Secretary reiterates the informational mandate for a filed report in reg. 1010.350(a), stressing that "[a]ll information called for in [the FBAR] shall be furnished."  Reg. 1010.306(d).  The information specified, or called for, in the FBAR reveals the whereabouts of the aggregate offshore balance, i.e., bank names in which accounts are held, bank addresses, account numbers, account balances, etc.[5]

#### 2.  A Harmonious Nod to Section 5314's Burden Provision

#### i.  ONE FBAR Filed Per Year

The Secretary, in exercising his broad authority in requiring a single calendar year Title 31 report be filed, regardless of the number of foreign accounts holding the aggregate balance,

---

[5] Bittner was exempt from the requirement to provide detailed information on the FBAR.  Reg. 1010.350(g).  To satisfy regs. 1010.350(a) and 1010.306(d)'s information requirements, Bittner need only provide the number of accounts on the FBAR, which is the only information specified for an exempt filer.

represents an appropriate implementation of section 5314 as well as a "matter the Secretary consider[ed] necessary to carry out . . . section [5314]." Section 5314(b)(5).  It also represents a harmonious nod to the burden provision of section 5314 because it serves Congress' directive of not unduly burdening U.S. persons who legitimately engage in relations with foreign banks with the onerous task of *filing* a separate Title 31 report for each bank account.

### ii. Trigger to File Is an Aggregate Balance Exceeding $10,000

The Secretary further reduced the potential burden on U.S. persons with offshore accounts by requiring only those U.S. persons maintaining an aggregate foreign account balance greater than $10,000 to *file* an FBAR.  Again, the Secretary was acting well within the authority vested in him by Congress in determining "the magnitude of transactions subject to a requirement or a regulation under this section."  Section 5314(b)(2).  It is not the foreign accounts that trigger the report-filing requirement, but the aggregate balance of the foreign account(s) that requires a U.S. person to *file* an FBAR.[6]

### iii. U.S. Persons, Like Bittner, Need Only List the Number of Accounts on the FBAR if the Aggregate Balance Is Held in 25 or More Accounts

The Secretary promulgated reg. 1010.350(g), a special rule designed for U.S. persons holding 25 or more foreign bank accounts.  Section 1010.350(g) relieves such U.S. persons from the arduous, time consuming task of listing all of their accounts and information related thereto in their filed Title 31 report, providing that:

> A United States person having a financial interest in 25 or more financial accounts need only provide the number of financial accounts and certain other basic information on the report, but will be required to provide detailed information when so requested by the Secretary or his delegate.

---

[6] The IRS agrees.  See IRM 4.26.16.3.6(1) ("The final criterion triggering the *FBAR filing requirement* is the aggregate value of all foreign financial accounts ... must be greater than $10,000 ...") (emphasis added).

### 3.   Penalties Attach Upon Violations of the Secretary's Regulations

Recall that the BSA's "civil and criminal penalties attach only upon violations of the

regulations promulgated by the Secretary, if the Secretary were to do nothing, the BSA itself

would impose no penalties on anyone." *Shultz*, 416 U.S. at 26.   From the regulations

promulgated by the Secretary, the potential report-filing violations of section 5314 are readily

ascertainable—the failure to *file* the FBAR when a U.S. person maintains an aggregate offshore

balance exceeding $10,000, regs. 1010.350(a) & 1010.306(c) (**failure-to-file violation**), *filing*

the FBAR after the June 30th deadline, reg. 1010.306(c) (**delinquency violation**), and *filing* the

FBAR containing a material omission or misstatement, i.e., failing to accurately supply

information as to the whereabouts of the aggregate offshore account balance, regs. 1010.350(a)

and 1010.306(d) (**accuracy violation**).

The IRS has come to the same conclusion as to what constitutes potential violations of the

provisions of section 5314 as implemented in the Secretary's regulations, concluding that a

violation "not only includes a complete *failure to file a report*, it also includes a *failure to timely*

*file a report* and *filing a report with material false statements or omissions*."   IRM 4.26.5.4(5).

In discussing potential civil penalties for report-filing violations of section 5314, the IRS posits

that "[a] person who . . . *fails to file [an FBAR]* or *files [an FBAR] with a material omission or*

*misstatement* . . . may be assessed a penalty. ."   The IRS specifically recognizes that "[*a*] *filing*

*violation* occurs at the end of the day on June 30th of the year following the calendar year to be

reported (the *due date for filing the FBAR*)."   IRM 4.26.16.6.2(2).   And the IRS reaffirms the

timeliness requirement while highlighting that, when filed, the FBAR must be accurate.   "It

remains the responsibility of the filer to ensure that *filing* takes place timely and the report is accurate."  IRM 4.26.16.4.5(2) (emphasis added to all of the foregoing IRM sections).[7]

### Legal Admissions in *Patel*

IRS admissions in *Patel* are consistent with the aforementioned sections in its IRM.  For instance, the IRS admitted that *filing* the FBAR late is a violation of the provisions of section 5314.  Appendix ("App."), Exh. B, pg. 2-5, UF 28.  The IRS further admitted that the accurate listing of accounts is part of the information required to be provided *in a filed FBAR*; the failure to satisfy that requirement is a violation of the provisions of section 5314, namely regs. 1010.350(a) and 1010.306(d) (**accuracy violation**).[8]  *Id*., pg. 2-5, UF 31.

### 4.   The Meaning of the Phrase "Reporting Requirements"

The phrase "reporting requirements" in the context of the BSA refers to the report-filing requirements of sections 5313, 5314, 5316, and 5331 (the "Big Four").  Congress as well as courts employ the phrase when referring to failures to file required reports, or filing same containing material omissions or misstatements.  See sections 5324(a)(1) & (2) (no person shall for purposes of evading the "reporting requirements" of section 5313 cause a bank to "fail to file a report" or "file a report ...that contains a material omission or misstatement of fact"; sections 5324(b)(1) and (2) (section 5331) (same); and section 5324(c)(1) & (2) (section 5316) (same)).  The Court in *Schultz*, while discussing the potential violations of the "reporting requirements" of section 5316 and the penalty exposure for those violations, highlighted that "[m]onetary

---

[7] The IRM reflects the IRS's interpretation of statutes and regulations and can be used as an interpretative tool by courts.  *U.S. v. Boyle*, 469 U.S. 241, 243 n.1 (1985).

[8] For Bittner, and other filers qualifying for the reg. 1010.350(g) exemption, the failure to accurately list the number of accounts in which the aggregate balance is maintained would be a violation of the reporting requirements of section 5314, namely regs. 1010.350(a) and 1010.306(d) (accuracy violation).

instruments which are transported without the *filing* of the required report, or with a materially erroneous report" are subject to penalties.  *Shultz*, 416 U.S. at 36.  The Court more recently recognized that the BSA imposes "report-filing requirement[s]," a phrase it uses interchangeably with "reporting requirement."  See *Ratzlaf v. U.S.*, 510 U.S. 135, 138-139, fn. 3 (1994) (discussing report-filing requirements under section 5313) and *U.S. v. Bajakajian*, 524 U.S. 321, 328, fn. 3 (1998) (in discussing the report-filing requirements of section 5316, the Court referred to a report-filing violation—"failure to file the required report"—as a "reporting offense").  See also *U.S. v. Ibarra-Alcarez*, 830 F.2d 968, 971-72 (9th Cir. 1987) (section 5316's implementing regulations require that "every person who transports more than $10,000 in currency in or out of the United States must *file* a report...any person who knowingly violates this *reporting requirement*" is subject to a penalty) (emphasis added).

### 5.  The BSA's Big Four—Sections 5313, 5314, 5316 and 5331

For all of the Big Four sections of the BSA, Congress plainly and unambiguously directs that the Secretary "shall" require the *filing* of a Title 31 report.  The Secretary has specifically acknowledged his construal of the congressional mandates in the Big Four, without objection from Congress, providing that the BSA authorizes it "to issue regulations requiring financial institutions and other persons *to ... file reports* that are determined to have a high degree of usefulness in criminal, tax, regulatory, intelligence, and counter-terrorism matters."[9]  A review of the Big Four's reporting requirements reveals that the term violation in the context of the BSA means the same thing—the failure to file a report, filing a report late, or filing a report containing a material omission or misstatement.  As set forth above, the IRS comes to the same conclusion

---

[9] Treasury, "*A Report to Congress in Accordance With Section 361(b) of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (USA Patriot Act)*," at 3 (Apr. 26, 2002) (hereinafter "2002 Report").

in discussing BSA reporting requirements for financial institutions and individuals, providing

that "failure to report, not only includes a complete failure to file a report, it also includes a

failure to timely file a report and filing a report with material false statements or omissions."

IRM 4.26.5.4(5).  It comes as no surprise that the potential civil penalty exposure for those filing

"violations" of the Big Four are set forth in the same penalty statute, section 5321(a).

### i.      Section 5313

The Secretary's regulations require banks to *file* a report [FinCEN Report 112] of each

deposit greater than $10,000, reg. 1010.311 (**failure-to-file violation**), within 15 days, reg.

1010.306(a)(1) (**delinquency violation**).  The report must be *filed* with FinCEN, and "all

information called for in [FinCEN Report 112] shall be furnished" in the filed report.  Regs.

1010.306(a) and (d) (**accuracy violation**).  Congress expressly acknowledges those potential

report-filing violations in the BSA's structuring statute.  Sections 5324(a)(1) & (2).

### ii.      Section 5316

The Secretary requires a person who transports more than $10,000 in currency in or out of the

U.S. or receives more than $10,000 in cash from a place outside the U.S. to file FinCEN Report

105, regs. 1010.340(a) and (b) (**failure-to-file violation**), upon entry into the U.S. or at the time

of departure, mailing or shipping from the U.S., or within 15 days of receiving the currency from

outside of the U.S.  Regs. 1010.306(b)(1) & (2) (**delinquency violation**).  If filed, FinCEN

Report 105 must contain all information specified.  *Id*. at (d) (**accuracy violation**).  Congress's

affirmation of those report-filing violations is expressly provided in section 5321(a)(2) and the

BSA's structuring statute.  Sections 5324(c)(1) & (2).

### iii.        Section 5331

This section instructs the Secretary to require the "filing of a report" when a person engaged in a non-financial trade or business receives more than $10,000 in cash.  This reporting requirement is nearly identical to that found in 26 U.S.C. § 6051I.  Under the regulations, this dual reporting requirement (Title 26/Title 31), unlike reg. 1010.350(a) discussed *infra* (which requires reporting on a tax return (Title 26) and the filing of an FBAR (Title 31)), is discharged with the filing of a single report, FinCEN Form 8300.  Reg. 1010.330(a)(1) (**failure-to-file violation**).  The report must be filed within 15 days of the payment exceeding $10,000.  *Id*. at (b)(1) & (2) (**delinquency violation**).  If filed, Form 8300 must contain all information specified. *Id*. at (e)(1) (**accuracy violation**).  Congress acknowledges those potential report-filing violations in its structuring statute, sections 5324(b)(1) & (2), as well as section 5331's companion statute (26 U.S.C. 6051I(f) (failure-to-file return or file an inaccurate return)).

### iv.        The Pattern Emerges

For all the Big Four sections, the Secretary requires the filing of a requisite report, the trigger being an amount greater than $10,000 in each context (**failure-to-file violation**), by a fixed due date (**delinquency violation**), and when filed, the report must be materially accurate (**accuracy violation**).  Unlike sections 5313, 5316, and 5331 however, Congress cautioned the Secretary in section 5314 it did not want his reporting requirements to unduly burden U.S. persons who comply with offshore bank reporting.  Section 5314 is the only section in the BSA with a burden provision, which tempered the Secretary's sweeping authority and resulted in the Secretary requiring a single FBAR be filed per calendar year, not a separate FBAR for *each* account.

### v.      If the Secretary Wanted to Require a Separate FBAR for "Each" Account He Would Have Said So

The Secretary's implementing regulations make clear when he requires a separate Title 31 report be filed for each transaction.  For example, to implement the report-filing requirements of 31 U.S.C. § 5313, the Secretary instructs that "[e]ach financial institution . . . shall file a report for *each* deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $10,000 . . ." Casinos have a similar report-filing requirement ("[e]ach casino shall file a report of *each* transaction in currency, involving either cash in or cash out, of more than $10,000").  Section 5316 directs the Secretary to require a U.S. person to file a Title 31 report when he transports cash in excess of $10,000 in or out of the U.S.  The Secretary instructs that a separate report-filing requirement is triggered *each* time that happens, providing that "[a] report . . . shall be filed at the time of entry into the United States or at the time of departure, mailing or shipping from the United States . . . "

Unlike the foregoing sampling, the Secretary did not require a separate report-filing requirement for "each" offshore bank account.  Instead, he determined that a single calendar year report was "prescribed under section 5314 to be filed"—the FBAR.  That, in conjunction with the aggregate report-filing threshold, minimized the undue hardship Congress wanted the Secretary to avoid in implementing section 5314.

### Legal Admissions in *Patel*

The IRS admits the FBAR is a Title 31 report, App., Exh. B, pg. 2-4, UF 21; pg. 2-3, UF 14, and that U.S. persons maintaining the aggregate threshold in multiple accounts are required to sign and file ONE FBAR per year by June 30th.  *Id*. at pg. 2-4, UFs 18-20, 23; pg. 2-5, UFs 25-27.

12

### 6.   Reg. 1010.350(a)—It's Bifurcated Nature

Reg. 1010.350(a)'s language is oft-misunderstood because it sets forth the Title 26 requirement to report offshore relationships to the Commissioner of Internal Revenue on Schedule B of yearly federal income tax returns, as well as the Title 31 requirement to *file* the FBAR and to provide all information requested in the report when filed.  *Shultz,* 416 U.S. at 37, recognized the bifurcated nature of the regulation.

> The regulations require each person subject to the jurisdiction of the [U.S.] to make a report <u>on yearly tax returns</u> of any "financial interest in ... a bank ... account in a foreign country." 31 CFR s 103.24.[10] [**Title 26**] Violations of the reporting requirement(s) of [section 5314] as implemented by the regulations are also subject to civil and criminal penalties. [**Title 31**]  (Text; Emphasis added).

**i.**      **The Title 26 Language**

The Title 26 directive in section 1010.350(a) the Court in *Shultz* described reads as follows:

> In general.  Each United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country *shall report such relationship to the Commissioner of Internal Revenue for each year in which such relationship exists* . . (Emphasis added).

To satisfy this Title 26 requirement, a U.S. person must check "Yes" on his tax return next to Question 7a on Schedule B, whether he has 1 account or 100.  This must be done whether the account or accounts generated taxable income or not, and even if a U.S. person maintained an aggregate offshore balance less than $10,000.

The failure to report offshore relationships on a tax return is not a violation of Title 31.  The *Shultz* Court recognized, however, that "[v]iolations of the reporting requirement[s] of [section 5314] as implemented by the regulations are . . . subject to [Title 31] civil and criminal penalties."  Those "reporting requirement[s]" the Court is referring to, which are distinct from

---

[10] "31 CFR s 103.24" is now reg. 1010.350(a).

the Title 26 requirement to report offshore relationships on Schedule B of a tax return, are the aforementioned Title 31 mandates that the FBAR be *filed* with FinCEN by June 30th of the year following the year a $10,000 aggregate offshore balance was maintained, and, that the *filed* report be materially accurate in all respects.

### ii.     The Title 31 Language

The Title 31 language of section 1010.350(a) reads as follows:

> In general.  Each United States person having a financial interest in, or signature other authority over, a bank, securities, or other financial account in a foreign country[11]. . . *shall provide such information as shall be specified in a [Title 31 report] prescribed under 31 U.S.C. 5314 to be **filed** by such persons.  The [Title 31 report] prescribed under section 5314 is the Report of Foreign Bank and Financial Accounts ([FinCEN Report 114]) . . .*  (Emphasis added to the Title 31 language).

The information provided in a *filed* FinCEN Report 114 is far different than that provided by a check mark on a tax return.  A *filed* FinCEN Report 114, if less than 25 accounts are to be listed, includes all bank names, locations, account numbers, account balances, etc. (a person with more than 24 accounts, like Bittner, need only list the number of accounts on the FBAR, but is still on the hook to provide detailed information on all accounts when requested).  To close that drastic informational gap, the Secretary, as of 2011, requires taxpayers who maintain certain offshore aggregate balances to file Form 8938, Statement of Specified Foreign Financial Assets, with their yearly tax returns.  Form 8938 asks for essentially the same information that is provided in FinCEN Report 114.  The IRS, cognizant of the bifurcated nature of offshore reporting, stresses in the instructions to Form 8938 that "[f]iling Form 8938 does not relieve you of the *requirement to file [the FBAR] ... if you are otherwise required to file the FBAR*."  (Emphasis added).

---

[11] The language of the regulation preceding the footnote is applicable to both the Title 26 and Title 31 portion of the regulation and is a requisite for each obligation—an offshore bank account.  The Title 31 mandate, however, requires the maintenance of the requisite offshore account balance to trigger the requirement to *file* FinCEN Report 114

Should there be any doubt as to section 1010.350(a)'s dual mandates, FinCEN, the bureau

tasked with drafting the Secretary's implementing regulations,[12] recently proposed the following

changes be made to section 1010.350(a), in line with the Court's exposition in *Shultz*.

> In general.  Each United States person having a financial interest in, or signature or
> other authority over, a bank, securities, or other financial account in a foreign country
> *shall report such relationship to the Commissioner of Internal Revenue* **on a return**
> *for each year in which such relationship exists* and shall provide **the Financial**
> **Crimes Enforcement Network, through BSA E-Filing**, with such information as
> shall be specified in [the FBAR, the Title 31 report] prescribed under 31 U.S.C. 5314
> *to be filed* by such persons.  The [Title 31 report] prescribed under section 5314 is the
> Report of Foreign Bank and Financial Accounts ([the FBAR]).  (Emphasis added to
> proposed changes; Title 26 mandate italicized).  App., Ex. A, pg. 1-1.

The Secretary provided an identical explanation of the oft-misunderstood bifurcated nature of

reg. 1010.350(a) in his 2002 Report to Congress.[13]

> The FBAR is not a tax return, but a report *filed* with the Secretary stating that the
> person *filing* has a financial interest in, or signature authority over, financial accounts
> in a foreign country with an aggregate value exceeding $10,000 at any time during
> the calendar year.  Filing an FBAR is a two-part reporting process.  Form 1040 Schedule
> B, Part III, instructs a taxpayer to indicate an interest in a financial account in a foreign
> country by checking "Yes" or "No" in the appropriate box.  Form 1040 then refers
> the taxpayer to Form 90-22.1, the FBAR, which provides that it should be used
> to report a financial interest in or authority over bank accounts, securities accounts,
> or other financial accounts in a foreign country.  The FBAR's instructions provide
> more detail on when the [Title 31 report] must be *filed*.  The *deadline for filing an*
> *FBAR* for each calendar year is on or before June 30th of the following year.

The IRS has explicitly confirmed its understanding of the bifurcated process, in language

tracking the regulation and wholly consistent with FinCEN's proposed change to the regulation

and both the Supreme Court and the Secretary's plain read:

### Reporting and Filing Information

> *The reporting obligation is met by answering questions on a tax return about*
> *foreign accounts (for example, the questions about foreign accounts on Form*

---

[12] The Secretary delegated the authority to administer Title II of the BSA (sections 5311-5314
and 5316-5332) to the director of FinCEN.  Treasury Order 180-01 (Sept. 26, 2002).
[13] 2002 Report at 5.

*1040 Schedule B)* <u>and by filing an FBAR</u>.  App., Exh. D, pg. 4-2.

**Legal Admissions in *Patel***

The IRS admitted in *Patel* that the above-referenced excerpt from its website was describing

the two-part reporting process the Secretary highlighted in his 2002 Report, App., Exh. C, pg. 3-

3, RFA 19.  The IRS further admitted that the italicized language refers to the Title 26 obligation

that U.S. persons must report their offshore bank relationships to the Commissioner of Internal

Revenue on their Federal income tax returns, *id*., Exh. B, pg. 2-2, RFA 10, and that the italicized

language was consistent with FinCEN's proposed change to the regulation adding "on a return"

to read "shall report such relationship to the Commissioner of Internal Revenue **on a return** for

each year in which such relationships exists ..."  *Id*., Exh. B, pg. 2-3, RFA 12.

### C.   The Supreme Court's Third Piece to the Puzzle—the Penalty Provision (Section 5321(a)(5))[14]

Section 5321(a)(5)(A) authorizes the Secretary to impose a civil money penalty on any person

"who violates ... any provision of section 5314" as implemented in his regulations.  Section

5321(a)(5)(B)(i) provides that "the amount of any civil penalty imposed under subparagraph (A)

shall not exceed $10,000."  *Shultz* makes clear that "[v]iolations of the reporting requirement[s]

of [section 5314] as implemented by the regulations are...subject to...penalties."  416 U.S. at 37.

In implementing the provisions of section 5314, the Secretary requires a U.S. person who

maintains an aggregate offshore account balance greater than $10,000 at any time during a

calendar year to file ONE Title 31 report, the FBAR, by June 30th of the following year.  The

---

[14] Unlike section 5314, section 5321(a)(5) is self-executing.  "Nothing in [Shultz] suggests that the Secretary must take some formal regulatory action before the penalty provisions of the BSA acquire the force of law."  *U.S. v. Schoenfeld*, 396 F.Supp.3d 1064, 1071 (2019); see also *Kimble v. U.S.*, 141 Fed. Cl. 373, 388 (2018) (section 5321(a)(5) is self-executing) and IRM 4.26.16.4.5.1(4) (July 1, 2008) (same).

Secretary further mandates that all information specified in the FBAR be furnished when the report is filed.  The Secretary, in exercising his broad authority, does not require a separate report-filing requirement for each bank account.  Thus, the failure to comply with any of those provisions of section 5314—failure to *file* the FBAR at all, regs. 1010.350(a) and 1010.306(c) (**failure-to-file violation**), *filing* the FBAR late, reg. 1010.306(c) (**delinquency violation**), or *filing* the FBAR containing a material omission or misstatement, regs. 1010.350(a) and 1010.306(d) (**accuracy violation**)[15]—subjects a U.S. person to a potential non-willful penalty of $10,000.

Bittner non-willfully filed accurate FBAR's late for years 2007-2011, reg. 1010.306(c) (**delinquency violation**).  He committed one report-filing violation of the Secretary's regulations (i.e., the provisions of section 5314) for each year in issue.  Congress plainly authorized the Secretary to impose a maximum discretionary penalty of $10,000 to attach to each of those delinquent report-filing violations.  Sections 5321(a)(5)(A) & (B).

### 1.  The IRS Erroneously Maintains the Penalty Applies Per Account On Two Specious Grounds

The IRS erroneously maintains that the penalty applies per account on two specious grounds.  The first is effectuated by transmogrifying the Title 26 mandate of reg. 1010.350(a) to "report such relationship to the Commissioner of Internal Revenue" on a return to a Title 31 reporting requirement that a separate Title 31 report be filed for each bank account to which a separate penalty may attach.  IRS Brief, Doc. 29, pg. 11.  That position flies in the face of the Supreme Court's explicit explanation of the bifurcated nature of the regulation, FinCEN's proposed

---

[15] Information "specified" for Bittner is the accurate listing of the number of accounts in which the aggregate balance is maintained because he qualifies for the information exemption.  Reg. 1010.350(g).

change to the Title 26 language to confirm that it relates to reporting relationships "on a return", the Secretary's explanation in his 2002 report, and the IRS's own statements on its website and admissions relating thereto.  The Secretary, in exercising his sweeping authority granted under section 5314, could have required a separate Title 31 report be filed for each account.  He did not.  "[T]he question is not what sort of reporting requirements might have been imposed by the Secretary under the broad authority given him in the Act, but rather what sort of reporting requirements he did in fact impose under that authority."  *Shultz,* 416 U.S. at 64.

The second ground is that the phrase "balance in the account"—as it appears in section 5321(a)(5)'s reasonable cause exception for a non-willful filing violation and section 5321(a)(5)(D)(ii), which determines the discretionary ceiling for a penalty for a willful filing violation—means that Congress intended the penalty to apply not per report-filing violation, but instead per account.  This position is also untenable.  As the third piece in the puzzle, section 5321(a)(5) authorizes penalties only for "violating" the Secretary's implementing regulations, i.e., failure to *file* the FBAR, *filing* the FBAR late, or *filing* the FBAR containing a material omission or misstatement.  The IRS's interpretation would work to render those report-filing violations meaningless—the terms "violation" and "violating" as the appear in the section 5321(a)(5) would be words of no consequence.

Put another way, the IRS seeks to remove the implementing piece of the puzzle.  Without it, section 5314 standing alone with section 5321(a)(5) would not provide the IRS any authority to impose a penalty because BSA "civil ... penalties attach only upon violation of the regulations promulgated by the Secretary; if the Secretary were to do nothing, the Act itself would impose no penalties on anyone."  *Shultz*, 416 U.S. at 26.  The phrase "balance in the account," when construed under the singular includes the plural rule to also mean "balance in the accounts" if a

person maintains the aggregate balance in more than one account, ensures all pieces to the puzzle work in harmony, that all words in the statutory and regulatory scheme matter, and that penalties imposed for violations of the reporting requirements of section 5314 are constitutionally sound.

### 2. How Section 5321(a)(5) Operates to Ensure the Terms "Violation" and "Violating" As They Appear in the Statute Are Not Rendered Inoperative, Void or Insignificant

#### i. The Reasonable Cause Exception

Section 5321(a)(5)(B)(ii) provides relief for U.S. persons who non-willfully violate the provisions of section 5314 as implemented in the regulations.  This section must be read in the context of the BSA's statutory and regulatory scheme to ensure the Secretary's implementing regulations—the second piece of the puzzle—remains operative, i.e., the term "violation" is not rendered meaningless.

The statute provides as follows:

> (ii) Reasonable cause exception.—No penalty shall be imposed under subparagraph (A) with respect to any violation if—
>
> (I)     such violation was due to reasonable cause, and
> (II)    the amount of the transaction or the balance in the account at the time of the transaction was properly reported.

If a U.S. person can establish reasonable cause for his non-willful violation, be it a failure-to-file violation, a delinquency violation, or an accuracy violation, no penalty will be assessed for that violation if the U.S. person either (1) files a delinquent FBAR on which "the balance in the account[s] ... is [are] properly reported"[16] (a requisite for penalty forgiveness for a failure-to-file

---

[16] IRM 4.26.16.6.4(2)(a) & (b) ("[non-willful] penalty should not be imposed if: a. [t]he violation was due to reasonable cause, and b. [t]he person files [his] FBAR and *properly* reports the previously unreported account[s]").  For those who maintain 25 or more accounts, like Bittner, the cure for any of the potential non-willful violations will require that the report be completed as if it was filed *properly* in the first place, i.e., properly listing the number of accounts in which the aggregate balance is held.  The Secretary specifically exempted those individuals from listing the

violation or a delinquency violation) or (2) files an amended FinCEN Report 114 on which "the balance in the account[s] ... is [are] properly reported" (a requisite for penalty forgiveness for an accuracy violation).  The phrase "balance in the account," which must be construed to allow for contextual flexibility, includes the plural "balance in the accounts" if a U.S. person has to list more than one account in response to questions posed in a delinquent or amended FinCEN Report 114.

Congress knew this because the Secretary, in exercising his sweeping authority in promulgating regs. 1010.350(a), 1010.306(c), and 1010.306(d), construed the plain language of section 5314 as authorizing him to require ONE Title 31 report be filed per year, regardless of the number of accounts a U.S. person may have.  Moreover, when the FBAR is filed, a U.S. person must provide all information requested in the report, which includes the balances in all banks holding the aggregate balance during the previous year.  Thus, a U.S. person presenting with more than one bank account holding the aggregate balance necessarily must list the "balance in [all of his] account[s]" in his delinquent or amended FBAR, or else he would be violating the implementing regulations in filing his FBAR containing a material omission or misstatement.   Absent contextual flexibility, i.e., the singular "account" means "accounts," the term "violation," i.e., accuracy violation, would be invalidated.  The singular-plural rule therefore must operate under the reasonable cause exception.  A U.S. person is not authorized to file a separate FBAR for each bank account.  Instead, he must provide the balances of all of his account(s) with a single filing to "cure" the report-filing violation—to do that which he was required to do in the first place.

---

balances of all of their accounts on the filed report.  Reg. 1010.350(g).  The reasonable cause exception must be read in that context so that the information exemption remains operative. Reg. 1010.350(g).

With that plain read, the statutory and regulatory scheme is respected and operates with contextual flexibility as intended.  And it must, because penalties under the BSA attach to report-filing violations of the regulations, not accounts.  The singular-plural rule, 1 U.S.C. § 1, a construction tool Congress is well aware of when it drafts its statutes, ensures the terms "violation" and "violating" are not treated as mere surplusage.

Section 5321(a)(5) is a penalty provision.  It does not prescribe conduct.  It authorizes penalties for violations of the provisions of section 5314 as implemented by the regulations.  The phrase "balance in the account" does not abrogate reg. 1010.350(a)'s requirement that ONE Title 31 report is required to be filed, regardless of the number of accounts in which the requisite balance is maintained, to a requirement that a separate Title 31 report is filed for each account to which a separate report-filing violation occurs.

### A Reasonable Cause Example

In 2013, Mila had 3 offshore accounts in India with an aggregate balance of $120,000 ($40,000 in each account).  Section 5314's implementing regulations required her to file an accurate FBAR by June 30, 2014.  Mila had a stroke in February 2014 and found herself in a coma.  She recovered in July that same year.  Because of her ill health, Mila missed the June 30th filing deadline.  She filed her FBAR in November, providing all information called for in the report, including a proper listing of the balances in her accounts.  She had violated the report-filing requirements of section 5314's regulations (reg. 1010.306(c)) in filing her FBAR late, exposing herself to a maximum discretionary non-willful penalty of $10,000.

At audit, the examiner concluded Mila's delinquency violation was non-willful and proposed a $10,000 penalty.  Mila sought relief in the reasonable cause exception.  She gave the examiner medical documentation substantiating her illness and a copy of her late-filed FBAR.  After a

review of the report, the examiner concluded that Mila "properly reported" the balance in her

"account[s]" and other related information in her delinquent FBAR.  The examiner waived the

penalty for the delinquency violation.  To be clear, the singular "account" in the reasonable cause

exception must necessarily read "accounts" in this situation because Mila was required to

provide the balances of all her accounts in her delinquent FBAR; otherwise, she would violate

section 5314's implementing regulations in filing a report containing a material omission or

misstatement.  Regs. 1010.350(a) & 1010.306(d).

One need only track the language of section 5321(a)(5)(B)(ii) to conclude that Congress

necessarily intended the singular-plural rule to apply in the reasonable cause exception.

Congress gleaned from the 2002 Report, while it was considering amending section 5321(a)(5)

to add a penalty for non-willful violations of the provisions of section 5314, that the Secretary

required that only ONE Title 31 report be filed per calendar year in which the aggregate balance

in all offshore accounts and related information was required to be furnished.  A separate filing

was not authorized for each account, a harmonious nod to the burden provision of section 5314.

Moreover, *Shultz* highlighted that section 5314 is not self-executing—Congress was well aware

when it drafted the reasonable cause exception that "penalties attach only upon violation of

regulations promulgated by the Secretary."  In other words, Congress knew that violations of the

Secretary's regulations to which penalties may attach related solely to report-filing violations

(**failure-to-file**, **delinquency**, **accuracy**), not offshore accounts.

Section 5321(a)(5)(B)(ii) provides that "[n]o penalty shall be imposed...with respect to any

violation [failure-to-file, delinquency, or accuracy] if...(I) such violation was due to reasonable

cause (Mila was very ill, which resulted in her delinquency violation), and (II)...the balance in

the account[s] at the time of the transaction[s] [were] properly reported (Mila filed an accurate

FBAR properly listing the balances in her offshore accounts in response to questions posed in her delinquent FBAR).  Conversely, had Mila held her aggregate offshore account balance in just one account, the statute would take the singular form, providing that "[n]o penalty shall be imposed...with respect to any violation if...(I) such violation was due to reasonable cause, and (II)...the balance in the account at the time of the transaction was properly reported."  In either case, if Mila did not properly "cure" her delinquency violation by accurately listing all of her "account balances" or her "account balance" as the case may be in her late-filed report, she would not qualify for the reasonable cause exception.

### Reasonable Cause Example for Exempt Persons

In 2010, assume Alexandru maintained 54 offshore accounts with an aggregate balance of $2 million.  He fell ill and missed the June 30th, 2011 filing deadline, and non-willfully filed an accurate FBAR late on December 5, 2011 (reg. 1010.306(c)) (**delinquency violation**).  As a U.S. person holding his aggregate balance in 54 accounts, he is exempted from having to list the "balances in all of his accounts" on his filed FBAR.  Reg. 1010.350(g).  Assuming he establishes reasonable cause for his delinquency violation, and he accurately reports the number of accounts he maintained as required under reg. 1010.350(g) on his late-filed FBAR, he will not incur a non-willful penalty.  The IRS agrees.  See IRM 4.26.16.6.4(2)(a) & (b) ("[non-willful] penalty should not be imposed if: a. [t]he violation was due to reasonable cause, and b. [t]he person files [his] FBAR and properly reports the previously unreported account[s]").

Alexandru, as an exempted person, properly reported his previously unreported accounts in accord with reg. 1010.350(g).  The reasonable cause exception must be read in that context so that the information exemption remains operative and the person claiming reasonable cause be held to that standard.  Reg. 1010.350(g).

23

If Alexandru cannot establish reasonable cause, his maximum discretionary penalty exposure would be $10,000 for his delinquency violation.  As *Shultz* makes clear, civil penalties attach only upon violations of the regulations.  416 U.S. at 37.  He committed one violation of the Secretary's regulations—he filed his FBAR late (reg. 1010.306(c)).

If Alexandru filed a timely FBAR but listed 45 accounts instead of 54 (reg. 1010.350(a) and 1010.306(d)) (**accuracy violation**), assuming he can show reasonable cause for the material misstatement, he could cure that accuracy violation by filing an amended FBAR accurately listing the number accounts that held the aggregate balance as he was originally required to do under reg. 1010.350(g).  If not, his maximum penalty exposure for his non-willful violation would be $10,000.

### ii.     The Enhanced Willful Penalties

After a review of the 2002 Report Congress also increased the discretionary ceiling for a willful penalty for violating any of the three mandates in section 5314's implementing regulations at the greater of $100,000 or half the aggregate balance of the account(s) involved in those potential violations.  Section 5321(a)(5)(C).

Since ONE FBAR is filed, regardless of the number of offshore accounts holding the requisite aggregate offshore balance, the potential willful penalty for a failure-to-file violation and a delinquency violation will necessarily be the greater of $100,000 or half the aggregate offshore account balance maintained during the calendar year because both of those "violation[s] involv[e] the failure to report the existence of [all] account[s]."  The singular-plural rule operates here to maintain contextual flexibility depending on whether a U.S. person has one or several accounts to list in response to questions posed in his FBAR when filed ("balance in the account[s] at the time of the [**failure-to-file or delinquency**] violation").

24

For an accuracy violation, the potential willful penalty will be the greater of $100,000 or half the aggregate foreign account balance of the account(s) not properly reported in a filed FBAR because that "violation involv[es] the failure to report the existence of [one or more] account[s], or any identifying information required to be provided with respect to [one or more] account[s]." Again, the singular-plural rule operates to maintain contextual flexibility should a U.S. person file an FBAR omitting information on one or several accounts, or any identifying information regarding one or more accounts ("balance in the account[s] at the time of the [accuracy] violation").

## A Willful Example

Assume Mila had not been critically ill and was found by the examiner to have been willful in failing to file her FBAR by the June 30th deadline.  The reasonable cause exception is unavailable for U.S. persons who willfully violate the report-filing requirements of section 5314's implementing regulations.  Again, the focus must be on the actual report-filing violation committed.  Mila filed her FBAR late, reg. 1010.306(c)) (**delinquency violation**).  Her maximum penalty exposure for that single willful report-filing violation would be $100,000 because that amount is greater than half the balance of the accounts "involv[ed]" in the delinquency violation, or $60,000.  Her single willful "[**delinquency**] violation involv[ed] the failure to report the existence of" three accounts with an aggregate balance of $120,000.  The rules of statutory construction require the statute be read, given that context, using the plural "accounts" (section 5321(a)(5)(D)(ii) "in the case of a violation involving a failure to report the existence of [] account[s]...the balance in the account[s] at the time of the [**delinquency**] violation.").

If Mila held her $120,000 in just one account, her maximum penalty exposure would also be $100,000 because that amount is greater than half of the balance in her account. Her single willful "[delinquency] violation involv[ed] the failure to report the existence of an account" with a balance of $120,000. The rules of statutory construction require the statute be read, given that context, using the singular "account" (section 5321(a)(5)(D)(ii) "in the case of a violation involving a failure to report the existence of an account...the balance in the account at the time of the [**delinquency**] violation.").

If Mila had timely filed her FBAR omitting two of her three $40,000 accounts, she would have violated the report-filing requirements of section 5314 in filing an inaccurate report. That accuracy violation would "involv[e] the failure to report the existence of [two] account[s]" such that the penalty will be determined based on the "balance [of those] account[s] at the time of the [**accuracy**] violation," or $80,000. Half that number is less than $100,000, so Mila would be facing a potential willful report-filing violation penalty of $100,000.

Importantly, the statute seeks to find the discretionary ceiling for violations of the reporting requirements of section 5314, with the starting point being $100,000—ten times the penalty for a non-willful report-filing violation penalty. Section 5321(a)(5)(C)(i)(I). If half the balance in the account or accounts involved in the report-filing violation exceeds that amount, the Secretary has congressionally granted discretion to assess a penalty in the greater amount.

### **Willful Example for Exempt Persons**

Assume Alexandru willfully failed-to-file his FBAR, regs. 1010.350(a) and 1010.306(c) (**failure-to-file violation**). The ceiling for the willful discretionary penalty for that single failure-to-file violation would be the greater of $100,000 or half the balance in the accounts involved in the failure-to-file violation, or $2 million (section 5321(a)(5)(D)(ii) "in the case of a

violation involving [the] failure to report the existence of an account[s]...the balance in the

account[s] at the time of the [**delinquency**] violation.").

If Alexandru willfully filed his FBAR containing a material omission by listing that he

maintained only 40 accounts, omitting 14 accounts holding an aggregate balance of $500,000,

reg. 1010.350(a) and 1010.306(d) (**accuracy violation**), that penalty exposure will be the greater

of $100,000 or half the balance in the 14 accounts not counted on his filed FBAR, or $250,000

(section 5321(a)(5)(D)(ii) "in the case of a violation involving [the] failure to report the existence

of an account[s]...the balance in the account[s] at the time of the [**accuracy**] violation.").

### III.   CONSENT TO THE FILING OF THIS BRIEF

#### A. The IRS's Position

As set forth in great detail in the Certificate of Conference in the Patels' motion for leave to

file this brief, the IRS opposes the filing of this motion on the grounds that it will be duplicative

of the legal discussion in Bittner's brief.  That is not the case, and a conclusion reached without

seeing this brief or discussing the content of what is contained here.  After diligent efforts to

meet the substantive requirements of the "meet and confer" requirements of Local Civil Rule

7(h), Counsel for the Patels was unable to have a meaningful conversation to discuss the contents

of this brief with counsel for the IRS.

Insightful analysis by the Supreme Court as to how the BSA operates as a whole, its statement

regarding the bifurcated nature of the regulation, and legal admissions in *Patel* not garnered in

this case or *Boyd* cannot be reconciled with the IRS's legal positions put forth here, in particular

relating to what constitutes filing violations to which penalties may attach and the bifurcated

nature of reg. 1010.350(a).  Those legal admissions will significantly impact how this Court will

view its arguments and greatly assist Mr. Bittner in presenting his case.  The additional

substantive content in this brief is vital to the Court's understanding of the nuances of offshore bank reporting, in particular, the statutory and regulatory framework and how it works harmoniously to ensure the terms "violating" and "violation" are not rendered meaningless.

## B. Bittner

Bittner opposes on the ground that the issue I raise relating to conclusions made by the Supreme Court as to the bifurcated nature of reg. 1010.350(a) "are too difficult to follow." Conceptually, that regulation has been the source of great confusion to the detriment of countless U.S. persons who have been assessed $10,000 penalties on accounts with balances less than $100, as in the instant case and *Patel*.  Without rehashing the argument here, FinCEN's proposed change to the regulation adding "on a return" to reg. 1010.350(a)'s Title 26 language, along with legal admissions in *Patel* regarding same*,* confirm the IRS's understanding of the bifurcated nature of the regulation.  Yet the IRS continues to use that language to support its legal conclusion that penalties apply to accounts, rather than to violations of the Secretary's implementing regulations as made irrefutably clear by the Supreme Court in *Shultz*.  In any event, the coverage of that issue is comprehensive and presented plainly for this Court to digest. Bittner, through his representative, Mr. Katz, did not object on the grounds that the content of this brief is duplicative in any way.

## IV.   REQUEST TO PARTICIPATE IN ORAL ARGUMENT

Federal Rule of Appellate Procedure 29(a)(8) allows Amici Curaie participation at oral argument should the Court permit.  Counsel respectfully requests permission to participate in oral argument.

## V.      CONCLUSION

*Shultz* makes clear BSA penalties attach only upon "violations of the reporting requirement(s) of [section 5314] as implemented by the regulations"—**failure-to-file** (regs. 1010.350(a) and 1010.306(c)), **delinquency** (reg. 1010.306(c)), or **accuracy** (regs. 1010.350(a) and 1010.306(d)). 416 U.S. at 37.  Bittner's exempt status under reg. 1010.350(g) simply altered the informational mandates of regs. 1010.350(a) and 1010.306(d) as what he was required to provide in the FBAR when filed.  In any event, Section 5321(a)(5) plainly authorizes a maximum penalty of $10,000 to attach to any of those report-filing violations, not accounts.

The IRS seeks to have this Court focus on the phrase "balance in the account" in isolation instead of following "the cardinal rule that statutory language must be read in context [since] a phrase gathers meaning from the words around it."  *Hibbs v. Winn*, 542 U.S. 88, 101 (2004).  In other words, the IRS is asking this Court to disassociate the phrase "balance in the account" from the company it keeps ("violating" and "violation"), and in the process, render those terms meaningless.  The singular-plural rule provides the contextual flexibility to ensure that all words in the statutory scheme matter.

Respectfully submitted,

/s/  David Michaels
DAVID MICHAELS
Ca. Bar. No. 235985
*Admitted in E.D. Texas
310 Maui Drive
Placentia, CA 92870
Phone:  (714) 742-9561
Fax:  (714) 985-0564
dmichaels0867@hotmail.com

## <u>CERTIFICATE OF SERVICE</u>

IT IS HEREBY CERTIFIED that service of the foregoing Amicus Brief was made on March

18, 2020, by the Clerk's ECF filing system to:

| | |
|---|---|
| CLARK HILL STRASBURGER | Herbert W. Linder |
| Farley P. Katz | Attorney, Tax Division |
| Rachael Rubenstein | U.S. Dept. of Justice |
| 2301 Broadway St. | 717 N. Harwood, Suite 400 |
| San Antonio, Texas 78209 | Dallas, Texas 75201 |

<u>/s/ David Michaels</u>
DAVID MICHAELS