IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 4:19-cv-00415 |
| ALEXANDRU BITTNER, | ) | |
| Defendant. | ) | |
| _____ | ) | |

## UNITED STATES' RESPONSE TO DEFENDANT'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

I.    OVERVIEW ……………………………………………………………………1

II.   OBJECTIONS TO PROPOSED FINDINGS OF FACT……………………………………2

III.  STATEMENT OF ISSUE BY DEFENDANT: "DOES 31 U.S.C. § 5321(A)(5)(B)(I) LIMIT THE MAXIMUM PENALTY THAT CAN BE ASSESSED FOR A NON-WILLFUL FAILURE TO TIME FILE AN FBAR TO $10,000?.............................................................……..4

A.   Statutory and Regulatory Schemes of Sections 5314, 5321 and their implementing Regulations. ……………………………………………………………………….,,,,,..5

B.   A violation of Section5314 for FBARs relates to a single account and the $10,000 maximum penalty for a non-willful violation therefore may be imposed on a per-account basis …………………………………………………………………………………..6

C.   The legislative history supports that the statutory maximum penalty under Section 5321(a)(5)(A) for a non-willful violation is a $10,000 per each financial account not reported. ………………………………………………………………………………12

D.   Bittner's failure to timely report his interest in all foreign accounts on the FBAR is a violation for each account not reported.     …………………………………………………14

E.   Per account violation is not at odd with odd with the government's authorities because the government is relying on the statute and regulations thereunder.   ……………………………15

F.   A non-willful penalty of $10,000 per account is not limited by the criminal FBAR statute...17

G.   The government's position does not lead to absurd results, but it does create compliance and full disclosure of a taxpayer's interest in all his foreign accounts.     ……………………18

H.   Rule of Lenity does not apply to the interpretation of Section 5321(a)(5)   ……………20

I.   Defendant's cites to criminal cases are not applicable in this case.   ……………………21

J.   The Court in Boyd was correct in that a violation of Section 5314 for FBARs relates to a single account and that the penalty for a non-willful violation therefore may be imposed on a per-account basis. ………………………………………………………………………22

      1.    Not sole Authority     ………………………………………………………22
      2.    The penalty for a non-willful violation of Section 5314, properly considered in light of statutory context, may be imposed on a per-account basis.   …………………………23
      3.    The related subparagraphs within Section 5321(a)(5) should be considered to determine that the non-willful penalty is a per account violation………………………………..24
      4.    The use of "account" and "balance" support the Government's position.,,,,,..,....26

CONCLUSION     …………………………………………………………………......…27

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ASARCO, LLC. v. Celanese Chemical Co.*,
  792 F.3d 1203 (9th Cir. 2015) ...............................................................23

*Bell v. United States*,
  349 U.S. 81 (1955)......................................................................21, 22

*Chubb Custom Ins. Co. v. Space Sys./Loral Inc.*,
  *710 F.3d 946, 958 (9th Cir. 2013)* .......................................................23

*Commissioner of IRS v. Driscoll*,
  669 F.3d 1309 (11th Cir. 2012) ...........................................................27

*Commissioner v. Acker*,
  361 U.S. 87 (1959)...............................................................................27

*CSX Transp. Inc. v. Island Rail Terminal Inc.*,
  879 F.3d 462 (2d Cir. 2018)..................................................................24

*Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000)..............................................................................23

*Gale v. First Franklin Loan Servs.*,
  701 F.3d 1240 (9th Cir. 2012) .........................................................21, 25

*Hibbs v. Winn*,
  542 U.S. 88 (2004)................................................................................23

*Joffe v. Google, Inc.*,
  746 F.3d 920 (9th Cir. 2013) ...............................................................24

*Kimble v. United States*,
  141 Fed. Cl. 373 (2018), appeal pending, Fed. Cir. No. 19-1950 .........25

*Renz v. Grey Advert., Inc.*,
  135 F.3d 217 (2d Cir. 1997)..................................................................26

*United States v. Boyd*,
  Case No. 19-55585, United States Court of Appeals for the Ninth Circuit..............................7

*United States v. Boyd*,
  No. 18-cv-803, 2019 WL 1976472 (C.D. Cal. Apr. 23, 2019)........7, 11, 21, 22, 23, 24, 26, 27

*United States v. Chrane*,
    529 F.2d 1236 (5th Cir. 1976) .......................................................................21, 22

*United States v. Deaton*,
    468 F.2d 541 (5th Cir. 1972) .........................................................................21, 22

*United States v. Gardner*,
    No. 2:18-cv-03536-CAS-E, 2019 WL 1767120 (C.D. Cal. April 22, 2019)................9, 21, 23

*United States v. Markus*,
    Civil No. 16-2133, 2018 WL3435068 (D. N.J., July 17, 2018................................8

*United States v. McBride*,
    908 F. Supp. 2d 1186 (D. Utah 2012)...................................................................25

*United States v. Ott*,
    No. 18-cv-12174, 2019 WL 3714491 (E.D. Mich. Aug. 7, 2019)...............................9, 21, 23

*United States v. Shinday*,
    No. 2:18-cv-06891-CAS-Ex, 2018 WL 6330424 (C.D. Cal. Dec. 3, 2018)....................10, 11

*United States v. Williams*,
    No. 1:09-CV-00437, 2014 WL 3746497 (E.D. Va. June 26, 2014) ........................................26

**Statutes**

31 C.F.R. § 1010.350(a).............................................................................................7, 8, 22

31 C.F.R. § 1010.350(g) ...........................................................................................10

31 C.F.R. § 1010.420 ...............................................................................................10

26 U.S.C. § 7203 .....................................................................................................21

31 U.S.C § 5314.........................................2, 4,5, 6, 7, 8, 9,11, 12, 15, 16, 17, 22, 23, 24, 25, 26, 27

31 U.S.C. § 5314(a) .............................................................................................7, 8, 10, 24

31 U.S.C. § 5314(a)(1)-(3).........................................................................................7, 8

31 U.S.C. § 5321 ...................................................................................................5, 16, 22

31 U.S.C. § 5321(a)(5)...............................................................2, 5, 12, 15, 20, 21, 23, 24, 26, 27

31 U.S.C. § 5321(a)(5)(A) .................................................................2, 4, 5, 6, 12, 13, 24, 25

31 U.S.C. § 5321(a)(5)(A)-(B) ...................................................................................5

31 U.S.C.§ 5321(a)(5)(B) .......................................................................................16

31 U.S.C. § 5321(a)(5)(B)(i)..........................................................1, 2, 4, 5, 6, 7, 11, 20, 22, 23, 24

31 U.S.C. § 5321(a)(5)(B)(ii) ..............................................................2, 11, 12, 15, 24, 25

31 U.S.C. § 5321(a)(5)(C) ............................................................................18, 24

31 U.S.C. § 5321(a)(5)(C)(i)(II) ..................................................................25

31 U.S.C. § 5321(a)(5)(C)-(D) ....................................................................20, 24

31 U.S.C. § 5321(a)(5)(D)(ii) ...........................................................18, 21, 25, 26

31 U.S.C. § 5321(a)(B)(i) .................................................................................4, 7

31 U.S.C. § 5321(a)(B)(ii) ..................................................................................5

31 U.S.C. § 5321(B)(i)................................................................................27

31 U.S.C. § 5321(D)(ii) ..........................................................................20, 28

31 U.S.C. § 5322.......................................................................................17

31 U.S.C. § 5322(a) .................................................................................17

31 U.S.C. § 5322(b) .................................................................................17

American Jobs Creation Act of 2004, Pub. L. No. 108-357, 118 Stat. 1418 (2004) ....................13

American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 821(a), 118 Stat.
   1418, 1586...........................................................................................16

Bank Secrecy Act, 31 U.S.C. §§ 5311–5325 ...................................8, 15, 17, 18, 22, 24

Dictionary Act, 1 U.S.C. § 1 ......................................................................, 27

Mann Act ..................................................................................................21

**Other Authorities**

Amendment to the Bank Secrecy Act Regulations 75 FR 8844-01, 2010 WL
   667290 at *8852..................................................................................15

H.R. Conf. Rep. 108-755 at *1667-68 ........................................................12

S. Rep. No. 108-192 (2003), 2003 WL 22668223(Nov. 7, 2003) .....................13, 18, 25

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 4:19-cv-00415 |
| ALEXANDRU BITTNER, | ) | |
| Defendant. | ) | |
| | ) | |

## UNITED STATES' RESPONSE[1] TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The United States responds to Defendant's Motion for Partial Summary Judgment (ECF 28), and would show that it should be denied for the following reasons:

## I.     OVERVIEW

The single issue raised in the Defendant's Motion is a legal question of statutory interpretation regarding whether the non-willful FBAR penalty under 31 U.S.C. §§ 5321(a)(5)(A) and (a)(B)(i) for failure to report a financial interest in a foreign bank account is a per account violation or a per year (annual form) violation?

Defendant Bittner's (Bittner) contention that the United States assessed almost $3,000,000 in FBAR penalties for failing to timely file five annual FBAR forms during the years at issue is a conceptual misstatement of the law, the government's position and facts in this case. The United States assessed Bittner $2,720,000 in non-willful FBAR penalties for his failure to

---

[1] Pursuant to Court's Order, ECF #27, the page limit for this response is 30 pages.

(continued...)

timely report his financial interest in 51 to 61 foreign accounts, each year,[2] with aggregate balances between $3 million and $16 million over the five-year period from 2007-2011.[3]  While Bittner may have only been required to file one annual FBAR form during each of the years 2007-2011, the statutory language of Section 5321(a)(5)(B)(i) when read in context of Section 5321(a)(5)'s interrelated subparagraphs and other related statutes and regulations, creates a maximum non-willful penalty of $10,000 for each foreign account not reported rather than his mere failure to file a single prescribed annual form.[4]

## II.    OBJECTIONS TO PROPOSED FINDINGS OF FACT.

1.    The United States objects to Bittner's factual contention that, "On June 6, 2019 the government filed the instant lawsuit in an attempt to collect against Mr. Bittner the *nearly $3,000,000* of assessed FBAR penalties (plus accrued interest) for his *non-willful* and *innocent* failure to timely file 5 FBAR forms." *See ECF #28 at pg. 4.*  The United States did not state anywhere in its complaint that Bittner's conduct was innocent. See ECF # 1.  Although this claim of "innocence" is not material to Bittner's Motion,[5] the United States offered numerous summary judgment facts and supporting evidence in its Motion for Partial Summary Judgment that dispute

---

[2] The assessment is based on 272 separate violations of Section 5314 that resulted from a failure to report these 51 to 61 accounts in each of five years.  See ECF # 29, p.6 at ¶ 25.

[3] See ECF # 29, p.6 at ¶ 23.

[4] The same legal question is an issue in the United States' Motion for Partial Summary Judgment (ECF 29). The United States also moved for partial summary judgment on several of Bittner's other affirmative defenses and on Bittner's liability for $1.77 million of the $2.72 million in penalties based on the foreign accounts that Bittner freely admits he was required to report.  See ECF#29, Statement of Undisputed Facts No. 28 and Gov. Ex. 60, to ECF#29.  Bittner disputes whether he was required to report a small number of other foreign accounts during the years in question, and the United States did not move for summary judgment on those account violations.  See Gov. Ex. 50 and ECF#29, Statement of Undisputed Facts ¶ 28.  Bittner also contends that he is entitled to a reasonable cause defense under Section 5321(a)(5)(B)(ii) to all penalties that might otherwise apply to him.  The United States has moved for summary judgment on the issue of reasonable cause for the 2007-2010 assessments.  See ECF # 29 at pgs. 13-16.

[5] Bittner's reasonable cause defense under Section 5321(a)(B)(ii) is not presented in his Motion.

this claim of "innocence" and that strongly suggest that Bittner may have been willful, or was at least reckless and failed to exercise ordinary business care and prudence.  What is material to Bittner's Motion is that the United States assessed non-willful penalties in the aggregate of $2,720,000 against Bittner for his failure to timely report his financial interest in 51 to 61 foreign accounts containing between $3 million and $16 million during each of the 2007-2011 years. *See ECF. #1 at ¶ 29* and ECF #29, Statement of Undisputed Facts ¶ ¶ 22, 23 and 25.

2.      The United States objects to Bittner's factual contention that, "The IRS found that Mr. Bittner's failure to file FBARs was non-willful, which means such failures were innocent or, at worst, negligent." See *ECF #28, pg. 3.*   However, nowhere in the record does the United States conclude or agree that "non-willful means innocent or at worst, negligent."   Again, this argument of innocence is not material to Bittner's Motion, and should be struck as a contention of fact because it is an unsupported legal conclusion and argumentative.

3.      The United States objects to Bittner's factual contention that, "[m]any of the bank accounts disclosed had balances well below $10,000, including some with as little as $1."  ECF 28, p. 3.   The term "many" is undefined.  In fact, see attached Government Exhibit 71, which is Defendant's list of alleged accounts with balances less than $10,000.

4.      The United States objects to Bittner's factual contention that the IRS acknowledged that Mr. Bittner had never heard of FBAR forms, much less that as a naturalized U.S. citizen living abroad he was required to file them, when it determined that Mr. Bittner's failure to file the FBARs was non-willful.   See *ECF 28 at pg. 2, fn.1 and accompanying sentence.*   Nowhere in the record does the IRS acknowledge, admit or agree that Bittner never heard of FBAR forms or the requirement to file them. See also, the United States' Response Denying Defendant's Request for Admission, ¶ 80. *Government Ex. 72.*

5.      The United States objects to Bittner's factual contention regarding Bittner's Agreed Tax Court decision on rule of completeness.  See *ECF #28 at pg. 4 and pg.14 fn. 10.*  Attached as Government Exhibit 70 is Bittner's Agreed Tax Court Decision in Dkt. 19894-17, setting forth Bittner's tax liabilities, tax deficiencies and penalties for 2002-2011.

6.      The United States objects to Bittner's factual contention that, in the 1990s, when Mr. Bittner resided in Romania, his sister, or brother in law, sent him some Form 1040 returns to sign, reporting "small amounts" of U.S. source income from a minority interest in a restaurant they owned.  Small is not defined and there are more accurate amounts available.  *ECF #28 at pg. 2, first full paragraph*. See United States' Statement of Undisputed Facts, *ECF #29, ¶¶* 10-11.

7.      Finally, the United States objects to Bittner's assertion that, "to Defendant's knowledge, the government has never criminally charged an individual based on the number of foreign accounts the individual failed to disclose on an FBAR."  *ECF 28 at p. 16*.  Although not material to Defendant's Motion as a factual contention, Bittner provides no summary judgment evidence to support this assertion about his knowledge or the government's charges in other cases.

III.    **Statement of Issue by Defendant: "Does 31 U.S.C. § 5321(a)(5)(B)(i) limit the maximum penalty that can be assessed for a non-willful failure to time file an FBAR to $10,000?**

Defendant's framing of the issue does not fully apprise the Court as to the issue in this case.  The issue for the Court is whether statutory maximum penalty under 31 U.S.C. §§ 5321(a)(5)(A) and (a)(B)(i) for a non-willful violation of 31 U.S.C § 5314 is $10,000 per each financial account not reported or per each annual FBAR form not timely filed.  Stated more simply, is the $10,000 maximum non-willful FBAR penalty under 31 U.S.C. §§ 5321(a)(5)(A) and (a)(B)(i) a per account or a per year?

As explained in the United States' Motion for Partial Summary Judgment and in our response to the points raised in Bittner's Motion below, the $10,000 maximum penalty for a non-willful FBAR penalty violation under 31 U.S.C. § 5321(a)(5)(A)-(B), is a per account violation and not a per year or per annual form violation.

### A. Statutory and Regulatory Schemes of Sections 5314, 5321 and their implementing Regulations.

The United States has previously set forth the statutory framework of the Bank Secrecy Act ("BSA"), 31 U.S.C. §§ 5311–5325, its implementing regulations and legislative history in its own Motion for Partial Summary Judgment on this issue.[6]   Contrary to Bittner's arguments, nothing in the BSA, the 2004 amendments to Section 5321, the legislative history, or the Internal Revenue Manual suggests that when Congress extended the Secretary's authorization to impose a penalty in Section 5321(a)(5)(A) for non-willful violations, it intended the $10,000 maximum penalty under Section 5321(a)(5)(B)(i) for those violations to apply on a per-form basis.

In the present case, Bittner failed to timely file FBARs reporting his interest in 61, 51, 53, 53 and 54 separate foreign financial accounts in 2007, 2008, 2009, 2010 and 2011, respectively.[7] During those same years, those accounts had high balances of between $3 million and $16 million.[8]   Accordingly, the IRS assessed a maximum non-willful $10,000 penalty per account violation against Bittner under 31 U.S.C. § 5321(a)(5) for the following total penalties:

| Tax Year | FBAR Account Violations | Aggregate Amount of Assessments |
| --- | --- | --- |
| 2007 | 61 | $610,000 |
| 2008 | 51 | $510,000 |
| 2009 | 53 | $530,000 |

---

[6] *See ECF #29, at pgs. 17-25.*
[7] See ECF #29, Statement of Undisputed Facts ¶ ¶ 22 and 25.  The United States is only moving for summary judgment on the accounts Bittner admits he failed to timely report.  Id. at ¶ 28.
[8] See ECF #29, Statement of Undisputed Facts ¶ 23.

| Tax Year | FBAR Account Violations | Aggregate Amount of Assessments | |
|----------|------------------------|--------------------------------|---|
| 2010 | 53 | $530,000 | |
| 2011 | 54 | $540,000 | |
| | | Total: | $2,720,000 |

*Gov. Ex. 61 and Gov. Ex. 62 at pgs. DOJ 2583 – 2584, and ECF #29 Statement of Undisputed Facts ¶ ¶ 22,24, and 25.*

These FBAR penalties assessed against Bittner do not exceed the maximum amount that

Congress prescribed to ensure foreign account reporting, and therefore, the IRS is not improperly

"throwing the book" at Bittner - as he incorrectly suggests.  See *ECF # 28, p. 6.*

**B.     A violation of Section 5314 for FBARs relates to a single account and the $10,000 maximum penalty for a non-willful violation therefore may be imposed on a per-account basis.[9]**

When read in the context of its related subparagraphs, related statutes and implementing

regulations, the $10,000 maximum penalty in Section 5321(a)(5)(B)(i) is a per account not

reported violation rather than a per annual form violation.  As explained above, Section

5321(a)(5)(A), authorizes the Secretary to impose "a civil money penalty on any person who

violates, or causes any violation of, any provision of [31 U.S.C. § ] 5314." Congress did not

expressly define a "violation" of Section 5314 for purposes of the penalty provisions in Section

5321(a)(5)(A). But as we will show, Section 5314 and its implementing regulations create a

reporting requirement that extends to each foreign account.  It necessarily follows that each

account that is not reported in compliance with those requirements represents a separate violation

for which either a non-willful or a willful penalty is authorized in Section 5321(a)(5)(A).  Not

surprisingly, one of the courts which has already addressed the same question correctly held that

a violation relates to a single account and that the penalty for a non-willful violation in Section

---

[9] United States Response' to Section B of Defendant's Motion, ECF #28 pgs. 9-11.

(continued...)

5321(a)(5)(B)(i) therefore may be imposed on a per-account basis.  *United States v. Boyd*, No. 18-cv-803, 2019 WL 1976472 (C.D. Cal. Apr. 23, 2019).[10]

Section 5314(a) provides that the Secretary of the Treasury "shall require" a U.S. citizen or resident to file reports when he or she "makes a transaction or maintains a relation for any person with a foreign financial agency." While Congress did not define what constitutes a "relation" with a foreign financial agency, the implementing regulations make clear that a "relationship" is a U.S. person's "financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country." 31 C.F.R. § 1010.350(a).

Although Congress granted the Secretary broad authority to determine how a U.S. person must comply with the reporting obligation set forth in Section 5314, it indicated that reporting of foreign accounts (i.e., relations) is to occur on an account-by-account basis. Congress directed that the report must contain the identity and address of participants in a "relationship," the legal capacity in which a participant is acting, and the identity of the real parties in interest. 31 U.S.C. § 5314(a)(1)-(3).

Compliance with Congress's directive could not occur except by reporting the required information on a per-account basis.  That Congress contemplated reporting on a per-account basis is seen most clearly where a U.S. person has multiple foreign accounts, with a different relationship to different accounts. For example, a U.S. person may have three accounts at one foreign bank, with one account owned individually, one account owned jointly, and one for which she has signature authority.  Or a person may own two accounts, each held at a different foreign bank. In such circumstances, anything less than reporting on a per-account basis would be wholly inadequate to disclose the participants in a given relationship, the legal capacity in

---

[10] On appeal.  *See United States v. Boyd*, Case No. 19-55585, United States Court of Appeals for the Ninth Circuit.

which the U.S. person is acting with respect to the account, or the real parties in interest. 31 U.S.C. § 5314(a).

The regulations promulgated by the Secretary also implement Congress's directive that reporting occur on an account-by-account basis.  The regulations provide that "[e]ach United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country shall report such relationship to the Commissioner of Internal Revenue for each year in which such relationship exists and shall provide such information as shall be specified in a reporting form prescribed under 31 U.S.C. 5314 [i.e., the FBAR] to be filed by such persons." 31 U.S.C. § 1010.350(a) (emphasis added). Thus, the regulations make explicit what was implicit in Section 5314(a), that is, that the "relationship" (*id.*) pertains to each foreign account with respect to which the U.S. person has the requisite financial interest or authority.  The U.S. person must disclose, or "provide . . . information" (*id.*) about, these relationships on the FBAR form. *Id.*  In turn, the information required to be disclosed through the FBAR includes the information Congress directed be reported about each account. *See* 31 U.S.C. § 5314(a)(1)-(3).

Section 5314 and 31 C.F.R. § 1010.350(a) therefore create a substantive reporting requirement with respect to each foreign account.  Necessarily, then, a violation of the reporting requirements in Section 5314 and its implementing regulations relates to a single account and not to the annual FBAR form as a whole.  Thus, a person submitting a timely FBAR form that accurately reports some accounts while omitting others is noncompliant with reporting requirements with respect to the omitted accounts. *See United States v. Markus*, Civil No. 16-2133, 2018 WL3435068 (D. N.J., July 17, 2018) (granting government's motion for summary judgment regarding, inter alia, assessment of a penalty for defendant's willful omission of one

8

account from timely 2008 FBAR).  Bittner does not contend, nor could he, that a timely FBAR

that omits accounts does not violate reporting requirements.

It is equally true that when a person files untimely but accurate FBARs, as Bittner did

here[11], he has violated the reporting requirements with respect to each account required to be

reported by the deadline. *See United States v. Ott*, No. 18-cv-12174, 2019 WL 3714491 (E.D.

Mich. Aug. 7, 2019) (upholding assessment of non-willful penalties for each of two accounts

untimely reported over three years, and stating that when noncompliance with reporting

requirements is non-willful, "the Secretary may impose a penalty of up to $10,000 per account

per year"); *United States v. Gardner*, No. 2:18-cv-03536-CAS-E, 2019 WL 1767120 (C.D. Cal.

April 22, 2019) (granting government's motion for default judgment in suit to reduce

assessments to judgment where IRS assessed $10,000 for each account reported on non-willfully

delinquent FBARs over four years and stating that "the IRS is authorized to assess an FBAR

penalty not exceeding $10,000 for each foreign account [Gardner] failed to disclose"). Thus, the

statute and regulations require the reporting of a U.S. person's interests in foreign financial

accounts.  The FBAR is mechanism or form for reporting an individual's interest foreign

accounts. The Secretary's determination to require U.S. persons to report foreign accounts on a

single FBAR form each year casts no doubt on the principle that a violation relates to each

unreported account.

Nothing in Section 5314 prescribes the number of forms the Secretary may use to carry

out Congress's directives. Congress granted the Secretary broad discretion on that score,

---

[11] In May, 2012, Bittner first filed his FBARs for 2007-2011 only reporting 1 foreign account
and then he amended his FBARs after their respective annual due dates.  See Gov. Ex. 35 at pgs.
DOJ 000894-898 and ECF #29 Statement of Undisputed Facts   ¶ 22. The FBARs for 2007-2010
were not timely filed.

directing that reporting occur "in the way and to the extent the Secretary prescribes." 31 U.S.C. §

5314(a). The Secretary's choice of the less burdensome means of a single, annual FBAR for the

reporting of foreign accounts therefore does not change the nature of a violation of the reporting

requirements, which relates to each unreported account.  Here it should be noted that while the

FBAR forms for 2007 through 2011 allowed Bittner to check a box that he had a reportable

interest in more than 25 foreign accounts and to then state the total number of such accounts

rather than listing extensive details about each account does not in any way change the statutory

method of computing the maximum penalty based on the number of undisclosed interests in

foreign accounts.  In fact, the reporting individual must still maintain the detailed information on

those accounts and make it available to the Secretary if requested. 31 C.F.R. §§ 1010.350(g) and

1010.420 (recordkeeping requirements).  Such reporting provides new information to the

Secretary that was previously unknown and allows the Secretary to request additional details

directly from such person.

Additionally, the *Shinday* case Bittner relies on does not demonstrate that only a single

non-willful penalty may be imposed even where multiple noncompliant accounts are at issue.[12]

In *United States v. Shinday*, No. 2:18-cv-06891-CAS-Ex, 2018 WL 6330424 (C.D. Cal. Dec. 3,

2018), a husband and wife owned or controlled numerous foreign accounts over several years,

but they did not file FBARs reporting the accounts.  The IRS imposed a single $10,000 non-

willful penalty against the wife for each of five years the accounts went unreported. *Id.* at *2.

The district court denied the defendants' motion to dismiss the government's suit for a judgment

on the penalty. *Id*. at *5. Nothing in *Shinday* indicates that the district court or the IRS believed

that only a single $10,000 non-willful penalty could have been imposed. And the "shall not

---

[12] See ECF # 28, Defendant's Motion at pgs. 9-10.

exceed" language of Section 5321(a)(5)(B)(i) plainly gives the government the discretion to assess less than the $10,000 maximum penalty per account – as it did in *Shinday and it also did in Boyd*, 2019 WL 1976472 (upholding IRS assessment of non-willful penalties on a per account basis but where IRS chose to assess less than $10,000 per account).

Furthermore, Bittner's position that a violation of Section 5314 and its implementing regulations relates to the FBAR form in toto or the "filing" of it, and therefore that only a single, $10,000 maximum penalty under Section 5321(a)(5)(B)(i) may apply to his non-willful failure to file the 2007-2011 FBAR forms, cannot be reconciled with the operation of the reasonable cause exception in subparagraph (B)(ii) and the willful penalty in subparagraphs (C) and (D) of that same Section. The incompatibility of Bittner's position respect to the operation of the reasonable cause exception in subparagraph (B)(ii) is most clearly seen where different factual bases support non-willful failures to comply with the reporting requirements.  For example, suppose a U.S. person timely files a FBAR reporting one foreign account accurately, but non-willfully omitting three foreign accounts.  For the omitted accounts, suppose that the person did not know that she was a co-owner of the first account, that her accountant advised her she did not have to report the second account, and that she did not tell her accountant about the third account because it generated no income and she mistakenly believed that such accounts did not have to be reported. Whether any of those proffered explanations would satisfy the reasonable cause exception is beyond the scope of Bittner's Motion.  It is clear, however, that the U.S. person in that scenario would have to prove reasonable cause separately with respect to each of the three omitted accounts because satisfying reasonable cause for one of the omitted accounts would not satisfy reasonable cause with respect to the other two omitted accounts.

If a non-willful violation of Section 5314 were a single, annual form-based violation even where multiple noncompliant accounts are at issue, then it would be unnecessary that the person in the scenario above must prove three separate reasonable cause defenses to avoid a single maximum $10,000 non-willful penalty.  Instead, the more natural interpretation of the reasonable cause exception in Section 5321(a)(5)(B)(ii) is that it applies on a per-account basis because a violation of Section 5314 relates to one account.

Bittner's position also does not provide a resolution when an FBAR presents both willful and non-willful noncompliance with reporting requirements. For example, suppose a U.S. person files a timely FBAR accurately reporting one account, non-willfully omitting a different second account for which she was not able to show reasonable cause, and willfully omitting a third account she wanted to conceal.  If a violation of Section 5314 and its implementing regulations were related to the FBAR form itself, instead of to each account required to be reported on it, then it is unclear which penalty – and therefore which statutory maximum – would apply in that scenario.  Bittner's per form approach creates an unworkable interpretation of Section 5321(a)(5).

## C. The legislative history supports that the statutory maximum penalty under Section 5321(a)(5)(A) for a non-willful violation is a $10,000 per each financial account not reported. [13]

Contrary to Bittner's assertion, nothing in the statute or legislative history suggests that the non-willful penalty was intended by Congress to be a "modest penalty."  Moreover, nothing in the BSA or its legislative history suggests that Congress intended to distinguish non-willful violations from willful ones, in terms of the conduct is being penalized.  *See* H.R. Conf. Rep. 108-755 at *1667-68.

---

[13] United States' Response to Section C of Defendant's Motion, ECF #28 at pgs. 11-12.

Before 2004, civil penalties were authorized only with respect to willful violations of the FBAR reporting requirements. Congress added a non-willful variant of the penalty after receiving estimates that "hundreds of thousands of taxpayers with offshore bank accounts [were] attempting to conceal income from the IRS." S. Rep. 108-192 at *108.  By removing the government's burden of demonstrating an accountholder acted willfully, Congress intended to "improve compliance with [the FBAR] reporting requirement."  *Id.*; *see* American Jobs Creation Act of 2004, Pub. L. No. 108-357, 118 Stat. 1418 (2004). Nothing in the 2004 amendments suggests that in Congress extending the Secretary's authorization to impose the penalty in Section 5321(a)(5)(A) to include non-willful violations, it intended subparagraph (B)(i) to apply on a per-form basis, while the willful penalty described in subparagraphs (C) and (D) applies to each unreported account and increases the maximum amount of the penalty directly referred to in subparagraph (B)(i).  Full disclosure of all foreign accounts in which a taxpayer has an interest is what Congress sought when it enacted this non-willful penalty.  As noted above, it is important for a taxpayer to accurately report his interests in foreign accounts – even if it is just disclosing that he has more than 25 of them and specifying the number of such accounts.  Taxpayers reporting an interest in more than 25 foreign accounts are still required by law to maintain records on those accounts and provide them upon request to the Secretary.  Applying the penalty for a non-willful violation to each undisclosed interest in a financial account incentivizes taxpayers to properly report all their foreign accounts as Congress intended.

**D.**     **Bittner's failure to timely report his interest in all foreign accounts on the FBAR is a violation for each account not reported.[14]**

Bittner basically argues that because only one FBAR form per year is required to be filed, then his failure to timely file an accurate FBAR is a single violation of the reporting requirements, regardless of how many foreign accounts are involved.  If violations of the reporting requirements were form-based rather than account-based, as Bittner contends, then a U.S. person who fails to report one account on an FBAR form has committed the same violation as someone who fails to report 61 accounts on an FBAR.  For that matter, under Bitter's position, if a U.S. person does not file an FBAR at all regarding 61 accounts, that, too, would be a single violation of the reporting requirements. Bittner's position cannot be correct.  The BSA requires taxpayers to annually disclose the existence of all reportable financial interests in foreign accounts – not just file a single annual form which discloses only some of those accounts.  The BSA also imposes penalties to ensure that taxpayers comply with these reporting requirements, and Bittner's suggestion to cap that penalty at $10,000 year regardless of the number of unreported accounts encourages the very gamesmanship that Congress sought to eliminate with the BSA and its 2004 amendment.

Bittner was required to timely file an FBAR report for each of the years 2007 through 2011 identifying and stating **total number** of all foreign accounts in which he had a financial interest.  Not some, but the total number of foreign accounts must be listed.  Even for a FBAR filer like Bittner with more than 25 accounts, the filer (Bittner) still must still state the number of foreign accounts in which he had a reportable financial interest during that year.[15]  Each reportable financial interest in a foreign account that is not reported by the filing deadline is an

---

[14] United States' Response to Section D of Defendant's Motion, ECF # 28 at pgs. 12-14.
[15] See ECF # 28-3, Defendant's Ex. C, line 20 and ECF # 28-3, Defendant's Ex. D, line 14.

account the IRS (and other federal agencies) lacks information about, and each account may represent thousands or even millions of dollars in unreported income, or other illegal activities. Bittner's position obscures or renders the FBAR reporting requirement meaningless.

Bittner failed to timely file FBARs reporting his interest in 61, 51, 53, 53 and 54 separate foreign financial accounts in 2007, 2008, 2009, 2010 and 2011, respectively.  These accounts had aggregate high balances between $3 million and $16 million.  Each account that Bittner failed to timely list on his FBARs is a separate and distinct violation.  Because Bittner failed to timely file FBARs for the 2007-2011 years stating the total number of foreign accounts in which he had a reportable interest, he committed a combined 272 non-willful violations of the BSA during the 2007 through 2011 period.

**E.      Per account violation is not at odd with odd with the government's authorities because the government is relying on the statute and regulations thereunder.[16]**

Bittner's reliance on the FBAR instructions, Defendant's Exhibits C, D, E, G, and the IRS FS 2014 are misplaced.  Defendant's Exhibit G is not a type of special guidance.  It is simply the draft instructions for the Report of Foreign Bank and Financial Accounts-Form TDF90-22.1(FBAR).[17]  Nevertheless, none of these secondary sources states that only a single $10,000 penalty for a non-willful violation may be imposed per FBAR.  None of the sources cited by Bittner purport to be comprehensive or to define what constitutes a violation for purposes of 31 U.S.C § 5314.  Further, three of these documents either restate, or refer to, the

---

[16] United States' Response to Section E of Defendant's Motion, ECF #28 at pgs. 14-16. "Per Account" Penalty Stands at Odds with the Actual Filing Threshold and Government's Own Authorities.

[17] Financial Crimes Enforcement Network; Amendment to the Bank Secrecy Act Regulations-Reports of Foreign Financial Accounts, 75 FR 8844-01, 2010 WL 667290 at *8852, the citation to page 8854 is merely a part of these draft instructions to filling out an FBAR form.

(continued...)

reasonable cause exception established in subparagraph (B)(ii) of Section 5321(a)(5), which, as explained above, indicates that the non-willful penalty may be imposed on a per-account basis. [18]

These FBAR instructions and FS 2014 are not law or a pronouncement of the government's position on per account violation.  The government's position that the non-willful penalties being a per account violation has been clear since the new statute was enacted. In 2004, Congress amended Section 5321 to cover all failures to comply with the reporting requirement in Section 5314, whether willful or not.  In doing so, Congress increased the maximum penalty for willful violations and created a penalty for non-willful violations. *See* American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 821(a), 118 Stat. 1418, 1586;  31 USC 5321(a)(5)(B).  In response to the change in law and Congress' directive, the IRS, who is responsible for assessing civil FBAR penalties, began to apply the new provisions of Section 5321 to violations occurring after October 23, 2004.  The IRS updated its Internal Revenue Manual provisions regarding the FBAR penalties to reflect the change in law, and from the outset has taken the position that the non-willful penalty is based on a per account violation.[19]  IRM 4.26.16.6.4.1(3), 2015 WL 10166916, provides that there are cases where the facts and circumstances may indicate that asserting a separate non-willful penalty for each unreported foreign financial account, and for each year, is warranted.  Mr. Bittner is one of those cases where the IRS believed that the facts and circumstances warranted assessing $10,000 per account violation.[20]

---

[18] See Defendant's Ex, E, ECF #28-5 at pg. 8; Ex. G, ECF # 28-7 and Ex. H, #ECF # 28-8

[19] *See* IRM 4.26.16.4 - FBAR Penalties (07-01-2008), 2008 WL 5900918, "(7) FBAR penalties are determined per account, not per unfiled FBAR, for each person required to file." (in effect until 11/6/2015, *then see* IRM 4.26.16.4.1(3), 2015 WL 10166916).

[20] See Gov. Ex. 63 pgs. 246 -279 and Ex. 64. *See also* IRM Exhibit 4.26.16-1 FBAR Penalty Mitigation Guidelines for $10,000 per violation when aggregate account balance of all accounts exceeds $250,000.

**F.    A non-willful penalty of $10,000 per account is not limited by the criminal FBAR statute.**[21]

Bittner also errs in asserting a $10,000 per account violation cannot be reconciled with the government's practice of charging a criminal defendant with one count for the failure to file an FBAR under 31 U.S.C. § 5322 even where multiple accounts are involved.  Bittner's assertion that it "defies logic that a non-willful civil penalty is assessed against each unreported account while the criminal penalty is based on a single FBAR form is misguided and ignores the Congressional intent to report foreign accounts.

Section 5322(a) provides a statutory maximum of $250,000 in criminal fines and up to five years' imprisonment for each criminal violation of Section 5314.  *See also*, 31 U.S.C. § 5322(b) (providing higher statutory maximums where the violation is part of a pattern of illegal activity).  Looking to the criminal penalty in Section 5322 to determine how the civil non-willful penalty operates is misdirected.  Nothing in the language of Sections 5314 or 5322 limits the government to one criminal count where a person has willfully failed to report multiple accounts, and to the extent that the government may have as exercised its discretion to charge only one count of a criminal violation in cases not yet identified by Bittner provides no support for his suggestion that the criminal penalty is so limited.  Congress also plainly believed that substantial penalties were warranted in the civil context for willful violations pertaining to each account because it provided for penalties in the maximum amount of 50 percent of the balance in each foreign account or $100,000 per account regardless of the account balance.  Thus, a civil willful FBAR penalty can be asserted upon multiple accounts in the same year.  *See* 31 U.S.C.

---

[21] United States' Response to Section F of Defendant's Motion, ECF #28 at pgs. 16-17.

(continued...)

§§ 5321(a)(5)(C) and (D)(ii).  Likewise, the United States can impose a non-willful FBAR penalty as a per account violation.

**G.  The government's position does not lead to absurd results, but it does create compliance and full disclosure of a taxpayer's interest in all his foreign accounts.**[22]

Limiting the penalty to $10,000 per form, regardless of how many accounts are not reported would drastically limit the deterrent value of the penalty, as it would incentivize accountholders with large amounts of money in multiple overseas accounts to be less diligent in determining their reporting obligations and in timely disclosing all such reportable interests in foreign accounts.  It is not absurd for Congress to have drafted a penalty with adequate teeth to establish the intended reporting of interests in foreign accounts by U.S persons.  Congress intended to promote greater disclosure of all foreign accounts in which a taxpayer has an interest when it enacted the non-willful penalty.[23]  It is important for a taxpayer to accurately report his foreign accounts including the number of accounts (and then maintain records on them) because the IRS lacks the ability to issue summonses to foreign sources for account records in a civil investigation.[24]

In contrast, Bittner argues that the timely reporting of the number of his foreign accounts is insignificant and has no practical value.[25]  Bittner contends there is only "theoretical"[26] or "no"

---

[22] United States' Response to Section D of Defendant's Motion titled "The Non-willful Failure to Timely file an FBAR penalty is not Multiple Violations of the Law, ECF #28 at pgs. 12-14 and Section G of Defendant's Motion, titled "The Government's Position Will Lead to Absurd Results and Inconsistent Treatment of Similarly Situated Taxpayers – As is Clearly Demonstrated in this Case", ECF #28 at pgs. 17-19.

[23] S. Rep. No. 108-192, at 108 (2003), 2003 WL 22668223 (Nov. 7, 2003);
see also Joint Comm. on Taxation, General Explanation of Tax Legislation Enacted in the 108th Congress ("2005 Joint Committee Report"), JCS-5-05 No. 32, 2005 WL 5783636, *34 (May 2005) (same).

[24] *Gov. Ex. 64, Ann Reach Depo. pg. 100, lns. 7-12.  ECF #29, Statement of Material fact No.*

[25] ECF #28 at pg. 17.

[26] Id.

(continued...)

harm to government for failing to timely file FBARs and reporting all his foreign accounts.[27] This position is directly in line with Mr. Bittner's caviler attitude about the FBAR reporting requirements when he readily suggested in his deposition that he considers the FBAR penalty to be unimportant,[28] like jaywalking ticket that he would gladly pay.[29]  Bittner's position and attitude are exactly why the $10,000 maximum non-willful penalty is a per account violation and is exactly what Congress sought to remedy by enacting the non-willful civil penalty.

Here, the IRS assessed Bittner a $10,000 non-willful penalty for failing to timely disclose is reportable interests in each of the 61, 51, 53, 53 and 54 separate foreign financial accounts in 2007, 2008, 2009, 2010 and 2011, respectively, when those accounts contained high balances of $3 million and $16 million.[30]  Thus, the IRS assessed him for 272 violations of the BSA, or $2.72 million in penalties.[31] While his obligation to report some of those accounts remains in dispute and is not the subject of his Motion or the government's Motion for Partial Summary Judgment, Bittner admits to having at least 177 reportable interests in foreign account during that five year period (which is the basis for the government's Motion for Partial Summary Judgment on $1.77 million of the penalties).[32]  Yet, Bittner believes he only has five simple jaywalking tickets for failing to timely file an annual FBAR for five years – or a $50,000 fine he would gladly pay.  In sum, a penalty of no deterrent value in Bittner's case. Bittner's position is also absurd because it penalizes an individual who has only one reportable foreign account with a high balance $10,001 the same as Bittner with more than 50 reportable accounts and millions in them for each year at issue.

---

[27] Gov. Ex. 68, *Depo pg. 264 ln.1 and Depo. pg. 265 lns. 4-10.*
[28] Gov. Ex. 68, *Depo. pg. 265 lns. 4-10.*
[29] Gov. Ex. 68, *Depo pg. 263 ln. 18 pg. 264 ln. 16.; and Depo. pg. 265 lns. 4-10.*
[30] *ECF #29, Statement of Material Facts ¶ ¶ 22-25.*
[31] *ECF #29, Statement of Material Facts ¶ 25.*
[32] *ECF #29, Statement of Material Facts ¶ 28.*

Furthermore, Bittner's example mixes apples and oranges when trying to distinguish between willful and non-willful penalty assessments.  Bittner mixes facts and compares two dissimilar cases to achieve a desired result.  However, one only needs to look at Bittner's own case to see the difference between the non-willful penalty assessments against Bittner compared to potential willful penalties that could have been assessed.  In using an account per violation basis, the results of applying a non-willful $10,000 penalty per account violation and a $100,000 per account willful FBAR penalty[33] are as follows:

| Tax Year | FBAR Account Violations | Aggregate Amount of non-willful Assessments | Potential willful FBAR penalty assessments |
|---|---|---|---|
| 2007 | 61 | $  610,000 | $  6,100,000 |
| 2008 | 51 | $  510,000 | $  5,100,000 |
| 2009 | 53 | $  530,000 | $  5,300,000 |
| 2010 | 53 | $  530,000 | $  5,300,000 |
| 2011 | 54 | $  540,000 | $  5,400,000 |
|  |  | Total:  **$2,720,000** | Total:  **$27,200,000** |

*Gov. Ex. 61 and Gov. Ex. 62 at pgs. DOJ 2583 – 2584 for non-willful assessments and  ECF #29, Statement of Material Facts ¶  25.*

There are not absurd results, the difference between the non-willful and willful penalty assessment is exactly tenfold per account violation as it was intended by Congress and set forth in the 31 U.S.C. § 5321(a)(5).

### H.  Rule of Lenity does not apply to the interpretation of Section 5321(a)(5)[34]

Bittner's suggested use of the rule of lenity has no application in the context of the "civil penalty" authorized by Section 5321(a)(5)(B)(i) because there is no grievous ambiguity and any doubt can be resolved by looking at the same statute. A court "do[es] not resort to the rule of

---

[33] A willful FBAR penalty can be the greater of $100,000 or 50% of the "balance in the account at the time of the violation.  *See* 31 U.S.C. § 5321(a)(5)(C)-(D).  For ease of analysis, the U.S. is only looking at the $100,000 per account violation.

[34] United States Response' to Section H of Defendant's Motion, ECF #28, pgs. 19-21.

lenity every time a difficult question of statutory interpretation arises." even where statutes give rise to criminal penalties. *Joffe v. Google, Inc.,* 746 F.3d 920, 935 (9th Cir. 2013).  "'[T]he rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a 'grievous ambiguity or uncertainty in the statute.'" *Id.* (quoting *Barber v. Thomas*, 560 U.S. 474, 488 (2010)).   There is no need to resort to the rule of lenity where, as here, the question of the statute's application can be fairly resolved. *See Joffe*, 746 F.3d at 936.   While it can be argued, and the district court in *Boyd* concluded, that Section 5321(a)(5) was "somewhat unclear" regarding how the penalty applies to non-willful violations, there is no grievous ambiguity in the statute. *United States v. Boyd,* 2019 WL 1976472, at *7. As set forth previously, a non-willful penalty violation of $10,000 per account is supported by the BSA, its implementing regulations, statute itself, congressional intent and case law.   The words of a statute must be read in their context and with a view to their place in the overall statutory scheme. *Gale v. First Franklin Loan Servs.,* 701 F.3d 1240, 1244 (9th Cir. 2012). As the court in *Boyd*, we must also look to the reasonable cause exception in subparagraph (B)(i) and the willful penalty provisions in subparagraphs (C) and (D)(ii)) of Section 5321(a)(5) to determine that the non-willful violation is a maximum $10,000 per account violation under subparagraph (B)(i).[35]

## I.   Defendant's cites to criminal cases are not applicable in this case.[36]

Furthermore, the criminal progeny *Bell, Chrane* and *Deaton* with the rule of lenity are not applicable to the current case.  *See Bell v. United States*, 349 U.S. 81 (1955) (criminal violations of the Mann Act); *United States v. Chrane*, 529 F.2d 1236 (5th Cir. 1976) (criminal violation of 26 U.S.C. § 7203); *United States v. Deaton*, 468 F.2d 541 (5th Cir. 1972) (harboring of a

---

[35] *See also*, *Ott*, 2019 WL 3714491 and *Gardner*, 2019 WL 1767120, both applying a $10,000 per account violation.
[36] United States Response' to Section I of Defendant's Motion, ECF #28, pgs. 21-24.

prisoner). However, *Bell, Chrane* and *Deaton* are all three criminal cases which involved ambiguity in the criminal statute and looked to the legislative intent and rule of lenity to reach their conclusions.

The statute at issue in this case is the non-willful FBAR penalty under 31 U.S.C. § 5321(a)(5)(B)(i), a purely civil penalty.  Thus, the rule of lenity, as stated previously is not applicable. Bittner's reliance on three criminal cases also begs the question because Bittner contends that he had only a "single incident of failing to file an FBAR report".  However, the FBAR report is used to report accounts and account relationships. Thus, Bittner's violation of Section 5314 was failing to report 272 interests in foreign accounts over a five-year period.  The FBAR report is merely the prescribed mechanism or form for reporting or disclosing those 272 interests.

J.   **The Court in *Boyd* was correct in that a violation of Section 5314 for FBARs relates to a single account and that the penalty for a non-willful violation therefore may be imposed on a per-account basis.[37]**

Finally, it is revealing that Bitter waited until the end of his Motion to suggest that the *Boyd* decision on the same legal question is the "sole authority" supporting the government's position, and that *Boyd* was wrongly decided.  However, for the reasons already discussed *Boyd* is not the sole authority supporting the government's position, and it was correctly decided.

1.   *Not sole Authority*

The *Boyd* case is not the sole authority supporting the United States' position.  As discussed above, Sections 5314 and 5321, the implementing regulations thereunder including 31 C.F.R. § 1010.350(a), and the legislative history are the primary support for the government's position

---

[37] United States Response' to Section J of Defendant's Motion for Partial Summary Judgment ECF #28, pgs. 24-28 claiming the *United States v. Boyd*, 2019 WL 1976472 was wrongly decided.

that the non-willful penalty for a violation of 5314 must be a per account violation under

5321(a)(5)(B)(i).   And, in addition to *Boyd*, other cases have held the same.   *See Ott*, 2019 WL

3714491 (stating that when noncompliance with reporting requirements is non-willful, "the

Secretary may impose a penalty of up to $10,000 per account per year"); and *Gardner*, 2019 WL

1767120 stating that "the IRS is authorized to assess an FBAR penalty not exceeding $10,000 for

each foreign account [Gardner] failed to disclose").

    2.   The penalty for a non-willful violation of Section 5314, properly considered in light of statutory context, may be imposed on a per-account basis.

In interpreting statutory language, courts "start with the premise that the words of a

statute must be read in their context and with a view to their place in the overall statutory

scheme" with the goal of "understand[ing] the statute 'as a symmetrical and coherent regulatory

scheme' and to 'fit, if possible, all parts into a . . . harmonious whole." *Food and Drug Admin. v.*

*Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000).   Courts look first to the

language of the statute to determine whether it has a plain meaning. *ASARCO, LLC. v. Celanese*

*Chemical Co.*, 792 F.3d 1203, 2010 (9th Cir. 2015). Because words "necessarily derive meaning

from their context," however, interpretation of a word or phrase "depends upon reading the

whole statutory text, considering the purpose and context of the statute, and consulting any

precedents or authorities that inform the analysis." C*hubb Custom Ins. Co. v. Space Sys./Loral,*

*Inc.*, 710 F.3d 946, 958 (9th Cir. 2013) (quotation and citation omitted). A statute "should be

construed so that effect is given to all its provisions, so that no part will be inoperative or

superfluous, void or insignificant." *Hibbs v. Winn,* 542 U.S. 88, 101 (2004) (citation omitted).

Section 5314 requires U.S. Persons to report their financial interests in each foreign account, and

Section 5321(a)(5) imposes a civil penalty for violations of that reporting obligation.   Section

5321(a)(5) does not provide two separate penalties. Section 5321(a)(5) provides for one penalty

per "violation" of Section 5314. Subparagraph (B)(i) provides that the amount of the penalty

cannot exceed $10,000, except where the violation is willful.  In that circumstance, the increased

maximum penalty amounts in Section 5321(a)(5)(C) and (D) apply.

Section 5321(a)(5)(B)(i) provides that "the amount of any civil penalty" imposed under

Section 5321(a)(5)(A) "shall not exceed $10,000." (*Emphasis added.)*  The use of the indefinite

article "any" (or "a" or "an") before a noun generally indicates that one of multiple potential

items are being referenced. *See CSX Transp. Inc. v. Island Rail Terminal Inc.*, 879 F.3d 462, 471

(2d Cir. 2018) (considering the term "the court" in a state statute and finding that "[t]he use of

the definite article "the" indicates a singular court, whereas the indefinite article "any" or "a"

denotes multiple courts.")  On the same principle, Section 5321(a)(5)(A), which authorizes a

civil penalty against any person who violates Section 5314 or any person who causes "any

violation" of Section 5314, suggests that more than one violation may occur with respect to a

particular "report" (§ 5314(a)) required to be filed.  Because a violation of the reporting

requirements relates to a single account, the language of both Sections 5321(a)(5)(A) and (B)(i)

supports the construction that the IRS may impose the penalty for a non-willful violation on a

per-account basis.

3.  <u>The related subparagraphs within Section 5321(a)(5) should be considered to determine
    that the non-willful penalty is a per account violation.</u>

Furthermore, as the court in *Boyd* did, the rules of statutory construction require us to

consider the related subparagraphs within Section 5321(a)(5) to determine how the penalty

operates.  Boyd, 2019 WL 1976472, at *4.  It is instructive to look to the reasonable cause

exception to the non-willful penalty established in subparagraph (B)(ii), and to the increased

amounts for a willful penalty established in subparagraphs (C) and (D) when determining that a

violation of Section 5314's reporting requirements relates to a single account and that the non-willful penalty therefore applies on a per-account basis. *See Gale,* 701 F.3d at 1244.

The reasonable cause exception to the non-willful penalty provides that "[n]o penalty shall be imposed under Section 5321(a)(5)(A) with respect to any violation if – (I) such violation was due to reasonable cause, and (II) the amount of the transaction or the balance in the account at the time of the transaction was properly reported." 31 U.S.C. § 5321(a)(5)(B)(ii) (emphasis added.) *See also,* S. Rep. No. 108- 192, at 108 (penalty for a non-willful violation "may be waived if any income from the account" was properly reported) (emphasis added). For willful violations of Section 5314, Congress stated that the non-willful penalty established in subparagraph (B)(i) is increased to the greater of $100,000 or, "in the case of a violation involving a failure to report the existence of an account or any identifying information required to be provided with respect to an account," 50 percent of "the balance in the account at the time of the violation." 31 U.S.C. §5321(a)(5)(C)(i)(II), (D)(ii) (emphasis added).  It is instructive to note that Congress did not create new violation, instead, it directly referred to the same statutory structure that creates the $10,000 maximum penalty for non-willful violations in subparagraph (B)(i) and increased the amounts for willful violations in subparagraphs (C) and (D).

The reference to "the balance in the account" in both subparagraphs (B)(ii) and (D)(ii) indicates that they are directed to accounts and not to the form on which accounts are reported. The willful penalty provision makes this reading even more explicit by noting that a violation may involve a "failure to report the existence of an account" or to provide required information "with respect to an account." 31 U.S.C. § 5321(a)(5)(D)(ii).  The penalty for a willful violation may be imposed on a per-account basis. *See Kimble v. United States*, 141 Fed. Cl. 373 (2018), appeal pending, Fed. Cir. No. 19-1950; *United States v. McBride*, 908 F. Supp. 2d 1186 (D. Utah

2012); *United States v. Williams*, No. 1:09-CV-00437, 2014 WL 3746497 (E.D. Va. June 26, 2014) (remand op.). Nothing in the 2004 amendment that added the penalty for non-willful violations suggests that Congress intended to change the internal workings of Section 5321(a)(5) from a per account basis for willful penalties to a per form basis for non-willful penalties.

4.    The use of "account" and "balance" support the Government's position.

The court in *Boyd* also correctly looked at the use of the singular "account" and "balance" in the phrase "the balance in the account" in both provisions indicates that a violation of Section 5314 relates to a single account.  *Id.*  Indeed, "[p]lacing the article 'the' in front of a word connotes the singularity of the word modified," while "[i]n contrast, the use of the indefinite article 'a' implies that the modified noun is but one of several of that kind."  *Renz v. Grey Advert., Inc.*, 135 F.3d 217, 222 (2d Cir. 1997). The same holds true for the term "the violation" in the phrase "the balance in the account at the time of the violation" in the willful penalty provision. 31 U.S.C. § 5321(a)(5)(D)(ii).  In light of that principle, the court in *Boyd* correctly held that a violation of Section 5314 relates to a single account and not to the FBAR form on which foreign accounts are reported.

Boyd also correctly rejected several other arguments that Bittner now tries to adopt.  The court rejected the argument that the IRS could theoretically penalize an account holder for each piece of information he or she fails to disclose about the account.  The court noted that even under the government's position there is only one penalty allowed per account per year.  *Id.*  The court also distinguished the defendant's arguments and authorities regarding the "rule of lenity." *Id.* at *5.

26

Finally, Bittner's assertion that the Dictionary Act, 1 U.S.C. § 1, requires a different result fails because it does not consider the context of the statute. "[I]n determining the meaning of any Act of Congress, unless the context indicates otherwise . . . words importing the singular include and apply to several persons, parties, or things." *Id.* However, the "context indicates otherwise" in this case. *Id. See, e.g., Commissioner of IRS v. Driscoll,* 669 F.3d 1309, 1311 (11th Cir. 2012) (rejecting taxpayer's reliance on Dictionary Act to expand scope of tax exemption beyond what the "context of [the statute] reasonably supports").

Furthermore, Bittner's reliance on *Commissioner v. Acker*, 361 U.S. 87 (1959), is misguided. In *Acker*, the Supreme Court addressed whether a taxpayer's failure to file a declaration of estimated income tax subjected him not only to an addition to tax for the failure to file the declaration, but also to a further addition to tax for a substantial underestimate of tax. *Acker,* 361 U.S. at 87. To be sure, in answering this question in the negative, the Supreme Court noted the established principle that "one is not to be subjected to a penalty unless the words of the statute plainly impose it." *Id*. at 91 (citation omitted), but there is no dispute here that Section 5321(a)(5) provides for a non-willful FBAR penalty.

In sum, *Boyd* correctly held that the penalty for a non-willful violation of Section 5314, properly considered in light of statutory context, may be imposed on a per-account basis.

## CONCLUSION

For these reasons, the United States requests that the Court deny Bittner's Motion for Partial Summary Judgment and grant the United States' Motion for Partial Summary Judgment.

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General


 /s/ Herbert W. Linder
HERBERT W. LINDER
Ohio Bar No. 0065446
Attorney, Tax Division
U.S. Department of Justice
717 N. Harwood St., Suite 400
Dallas, Texas 75201
Phone: (214) 880-9754
Fax (214) 880-9741
herbert.w.linder@usdoj.gov

ATTORNEYS FOR UNITED STATES


### CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing Motion and Declaration of

Herbert W. Linder has been made on April 2, 2020, by the Clerk's ECF filing system to:

CLARK HILL STRASBURGER
Farley P. Katz
Rachael Rubenstein
2301 Broadway St.
San Antonio, Texas 78209

 /s/ Herbert W. Linder
HERBERT W. LINDER

28