IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|     Plaintiff, ) | |
| v. ) | |
| ALEXANDRU BITTNER, ) | Case No. 4:19-cv-00415 |
|     Defendant. ) | |

**UNITED STATES' REPLY ON ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Bittner's Response (ECF 47) to the United States' Motion fails to establish a question of material fact or an issue of law regarding the United States' prima facie case against him for the 2007-2010 FBAR penalties.  Instead, Bittner's Response turns to several of his alleged affirmative defenses to suggest that because the United States sought "partial" summary judgment, it's Motion was limited to the defenses specifically discussed therein.  The Motion was "partial" only because summary judgment was not requested on the 2011 FBAR penalties.  However, the Motion requested full summary judgment on Bittner's liability for the 2007 - 2010 FBAR penalties on the accounts he admits he was legally required to report. *(ECF 29 at 1, and ¶ 28).*  Although Bittner has the burden of proof on his alleged affirmative defenses, his Response fails to demonstrate a question of material fact or a legal reason why several of those alleged defenses prevent summary judgment on the 2007 -2010 FBAR penalties.  Instead, the Response only discusses his alleged defenses of reasonable cause, Eighth Amendment, unconscionable punishment, and violation of the Administrative Procedures Act (APA).  This reply addresses the prima facie case and the alleged defenses raised in the Response.

**I.     The United States has established its prima facie case for the 2007-2010 penalties.**

Bittner's Response fails to properly dispute any of the facts or legal authorities that establish a prima facie case for the application of the FBAR penalties for 2007 - 2010.  Bittner does not dispute or object to the facts listed in ¶¶ 1-10 and 12-46 of the United States' Statement

1

of Undisputed Material Facts. Instead, Bittner merely disagrees with the inferences and conclusions suggested by the United States from these undisputed facts. *See ECF #47 at pgs. 6-10*. However, he does not state that these underlying facts are incorrect or offer summary judgment evidence to dispute them. Where a party fails to properly address another party's assertion of facts as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of a motion for summary judgment. Fed. R. Civ. P. 56(e)(2).

The only fact Bittner appears to dispute is ¶11,[1] which states, "During 1990-2011 in Romania, Bittner generated some **$70,537,310** of income through his foreign businesses and investments." Bittner argues this figure is not the exact amount of his income during those years, and it does not reflect his U.S. taxable income for those years. For purposes of this FBAR penalty case, it is not material whether Bittner had income of exactly $70,537,310 during the years he lived in Romania or that his U.S. income tax for those years ended up being modest after the IRS determined he was entitled to certain adjustments and credits for tax paid to Romania. What is material is that Bittner had a large number of undisclosed foreign bank accounts, large amounts held in those accounts and large amounts of income during those years that was potentially subject to U.S. tax and a requirement to file U.S. tax returns and FBARS – neither of which were filed timely because Bittner made no effort to determine obligations despite being a U.S. citizen subject to its laws.

**II.** *Bittner's failure to timely file 2007-2010 FBARs was not due to reasonable cause.*

A. *FS 2011-13 is not law and confers no rights on taxpayers*.

Bittner improperly relies on an IRS publication, FS 2011-13, to establish an alleged legal test

---

[1] ECF #47 at pg. 7, objecting to United States' Statement of Undisputed Facts ("U.S. SOF"), ¶ 11. (continued...)

for reasonable cause.[2] IRS publication FS 2011-13 is entitled "Information for U.S. Citizens or Dual Citizens Residing Outside the U.S." and specifically states "**[t]his fact sheet is provided for information purposes only**, and the topics discussed may or may not apply to a particular taxpayer's situation."[3] Moreover, FS-2011-13, along with the IRS Streamlined Compliance Procedures[4] and the Internal Revenue Manual, ("IRM") provisions cited by Bittner do not have the force of law, and the confer no rights on Bittner. The IRM contains internal operating procedures for the IRS and is not legally binding and "do[es] not create rights in the taxpayer." *Estate of Duncan v. Comm'r of Internal Revenue*, 890 F.3d 192, 200 (5th Cir. 2018). Likewise, "general statements of policy and rules governing internal agency operations or 'housekeeping' matters, which do not have the force and effect of law, are not binding on the agency issuing them and do not create substantive rights in the public*." Capitol Fed. Sav. & Loan Association v. Comm'r*, 96 T.C. 204, 216–217, 1991 WL 16490 (1991) (citing *United States v. Will*, 671 F.2d 963, 967 (6th Cir.1982); *Einhorn v. DeWitt*, 618 F.2d 347, 349–350 (5th Cir.1980); *Smith v. United States*, 478 F.2d 398 (5th Cir.1973).

      B.     *No special treatment for dual citizens under 31 U.S.C. § § 5314 or 5321*

Bittner incorrectly contends he is excused of his U.S. reporting obligations because of his dual citizen status.[5] However, dual citizenship is legally irrelevant to the filing requirements of FBARs and to the imposition of FBAR penalties. The provisions of 31 U.S.C. §§ 5314, 5321 and 31 C.F.R. § 1010.350 make no exceptions for dual citizens or dual citizens living abroad. Nor does the legislative history suggest any exception for dual citizens living abroad. Bittner offers no legal authority for the proposition that a "dual citizen who lived abroad for many years" is excused for his failure to

---

[2] ECF #47 at pgs. 13 - 15.
[3] See ECF #47-6, Defendant's Ex. F, at 3rd. ¶ on first page, (Emphasis added).
[4] Bittner was not eligible for Streamlined Compliance Procedures, which he admits. Gov. Ex. 40.
[5] Bittner did not renounce his U.S. citizenship when he moved to Romania. *See U.S' SOF ¶ 4, ECF #29*.

3

investigate his legal obligations to file U.S. tax returns and disclose his interests in foreign accounts to U.S. authorities. Nor does the IRM or FS 2011-13 create special legal rights or relax the legal requirements for a dual citizen to timely file FBARs. Finally, Bittner's alleged reliance on Beckley is irrelevant for the 2007-2010 years because the FBARs for 2007-2010 would have been due on or before June 30, 2011, and Bittner did not meet with Beckley until January 2012. *See United States' SOF, ¶ 46, ECF #29.*

> C. Bittner's alleged lack of knowledge of the law does not establish reasonable cause because he took no steps to learn of his U.S. reporting obligations

Bittner argues he should be relieved of the FBAR penalties because he allegedly did not know he had an obligation to report his interests in his foreign accounts. However, even if true, this alleged lack of knowledge does not establish the reasonable cause defense he seeks. Instead, he must show that he took reasonable actions to become aware of his FBAR reporting requirements. A taxpayer is generally charged with the knowledge of the law, such that ignorance of the law may not be a defense since the taxpayer must take reasonable steps to determine the law and apply it. *Jarnagin v. United States*, 134 Fed. Cl. 368, 376 (Fed. Cl. 2017). Failing to seek professional advice and **take steps** to learn about the requirement to report foreign financial accounts, does not constitute ordinary business care and prudence, and does not establish reasonable cause under 31 U.S.C. § 5321(a)(5)(B)(ii). *United States v. Ott*, 2019 WL 3714491, at *2 (E.D. Mich., 2019); *Jarnagin*, 134 Fed. Cl. at 378-79. Bittner must offer evidence that he took at least some steps to learn about these reporting requirements in order establish a material question of fact and avoid summary judgment on this alleged defense. See *Ott*, 2019 WL 3714491, at *2. However, he fails to cite a single step, activity or action that he undertook to learn of his FBAR filing requirements from 1990-2011 before they were due. *[entire record].* Bittner made no attempt to learn this on his own and made no inquiries of ANYONE

4

regarding FBARs, reporting foreign accounts from 1990 until he engaged Beckley in early 2012. *See U.S.' SOF, ¶¶ 36, 37, 39, 40, and 46, ECF #29*. Bittner simply did not "feel like" understanding or inquiring about his U.S. foreign bank reporting obligations. *See U.S.' SOF, ¶¶ 38, 40, ECF #29*. He thought it was more important to make money than inquire about his U.S. tax obligations. Bittner did not want to waste his breath on asking someone in Romania about American tax or bank reporting laws. *See U.S's SOF, ¶¶ 36, 37, 39, 40, ECF #29*.

Although Bittner's failure to investigate his legal obligations to report his interests in foreign accounts is by itself fatal to his reasonable cause defense, he also failed to investigate his legal obligations to file U.S. federal income tax returns during that same time he was living in Romania. As a result, Bittner failed to file federal timely U.S. income tax returns for 22 years reporting all his income.[6] From 1993-2011, Bittner had dividends in each year exceeding $400 dollars. *See Gov. Ex 31 to ECF #29.* Had he filed those U.S. tax returns and reported all his income as required, he would have also reported dividend income on Schedule B and had to check a box disclosing whether he had foreign accounts. In doing so, he would have been directed to read the instructions for Schedule B that in turn would have told him of his obligation to file FBARs for his foreign accounts. Thus, Bittner's assertion that he never prepared U.S. federal income returns with a Schedule B and thus, was never put on notice about his FBAR filing requirements rings hollow because it is nothing more than a convenient ignorance of his own making. *See ECF #47, at pgs. 17-18, and 26.*

However, even if lack of knowledge of the law were a defense, Bittner's alleged lack notice of the law is simply not true. In 1989 and 1990, Bittner filed U.S. federal income tax

---

[6] Bittner filed 1990, 1991, 1997-2000 returns but failed to report any income earned from Romania on those returns. See ECF #29 at ¶ 10, and Gov. 63, at pg. DOJ 000252.

returns for tax years 1988 and 1989 to report the income he earned while living in the U.S. during those years. During each of those years, he earned sufficient interest income to require him to file a Schedule B. In 1988 and 1989, taxpayers with more than $400.00 in interest income were required to fill out and attach a Schedule B to their Form 1040 return. *See Gov. Exs. 76 and 77.* Schedule B for both 1988 and 1989 contained a check the box question in Part III on Line 10a which requires a taxpayer to state whether he had an interest in or signature or other authority over a financial account in a foreign country, specifically referencing the FBAR form TD F 90.22.1. *See Gov. Exs. 78 and 79, respectively; Gov. Ex. 81, at DOJ 5041; Gov. EX. 82 at 5107.* For 1988 and 1989, Bittner timely filed Form 1040 federal income tax returns reporting interest income of $486 and $531, respectively. *See Gov. Ex. 75, at DOJ 5009 and 5007, respectively.* Bittner filed his 1989 tax return in April of 1990. *Gov. Ex. 75, at DOJ 5008.* Bittner also had a foreign bank account in Romania in 1990. *See Gov. 31 at pg. DOJ 2747, and Gov. Ex. 80 at DOJ 003598.* Bittner either filed, or should have filed, Schedule Bs for those years that would have put him on notice of the requirement to report of foreign accounts. However, even without this earlier notice of the law, Bittner's ignorance of the law and reasonable cause defense must be rejected as a matter of law. As a U.S. citizen, Bitter had a duty to take reasonable steps to learn of his legal reporting obligations regardless of where he lived and his dual citizen status. It is undisputed that Bittner failed to take any actions or steps to learn those obligations in a timely manner. Thus, a reasonable cause defense is not available.

   d.  *Bittner did not have reasonable cause for failing to file income tax returns.*

  Bittner's Response interjects his Tax Court Decision into this FBAR case. *(ECF 47, at 4,5, 9, 15 and 26).* However, despite raising the same arguments regarding lack of knowledge in that case, Bittner agreed to income tax penalties that he could have avoided if those facts were legally sufficient to create a reasonable cause defense. There, Bittner asserted that he was not liable for any penalties

under 26 U.S.C. § 6651(a)(1), for late filing of returns or negligence penalties under 26 U.S.C. § 6662 due to reasonable cause under 26 U.S.C. §§ 6651(a)(1) and 6664. As in the present case, Bittner claimed he was a dual citizen living abroad, had no knowledge that he was required to file U.S. income tax returns or pay tax on income earned outside of the U.S. However, Bittner agreed to a Tax Court decision that included penalties under 26 U.S.C. § 6651(a)(1), for late filing of returns and negligence penalties under 26 U.S.C. § 6662 for the 2004, 2006, 2007 and 2011 years. *See Defendant's Exhibit E, ECF #47-5, and Gov. Ex. 70*. Although no penalties were imposed for the 2008-2010, this was only because Section 6651(a)(1) and 6662 penalties are calculated as a percentage of the tax due on the return, and there was no additional tax due for those years. Bittner's facts in this case are no different. Lack of knowledge is a not a defense unless some effort to learn of one's obligations is undertaken, and here the Court need not decide whether such inquiry requires seeking professional advice or whether self-conducted research might be adequate. Bittner offers neither.

### III. The FBAR penalty assessments do not violate the Eighth Amendment.

#### A. *Civil FBAR Penalty Is Not a Fine Within the Eighth Amendment.*

The FBAR penalties assessed against Bittner are not "fines" covered by the Eighth Amendment, because they do not arise from a criminal conviction and are not punishment for an offense. They are remedial civil penalties, therefore not a "fine" subject to Eighth Amendment scrutiny. *Cole v. United States Dep't of Agriculture*, 133 F.3d 803, 807 (11th Cir. 1998). The Court in *Helvering v. Mitchell*, 303 U.S. 391, 401 (1938), determined that civil tax penalties are remedial and thus not Eighth Amendment fines. Likewise, an "FBAR penalty is primarily remedial with incidental penal effects". *United States v. Green*, Case No. 19-cv-24026, 2020 WL 1980859, at *7 (S.D. Fla., 2020). The FBAR penalty is not conditioned on conviction of an underlying offense and the FBAR penalty serves the remedial purpose of compensating the U.S. for a loss, the "heavy expense of investigation. *United States v. Estate of Schoenfeld*, 344 F.

Supp.3d 1354, 1374 (M.D. Fla., 2018).

### B. The FBAR Penalties at Issue are Not Constitutionally Excessive

#### 1. The FBAR penalties were assessed within statutory limits.

Even if the civil FBAR penalties were a fine, the FBAR penalties assessed against Bittner would not be excessive. As briefed in the Motion, the $10,000 maximum penalty for a non-willful FBAR penalty violation is a per account violation and not a per year or per annual form violation.[7] If this Court determines that the statutory $10,000 maximum penalty is a per account violation, then regardless of whether the penalty is considered a fine under the Eighth Amendment, the FBAR assessments against Bittner are within that statutory maximum do not violate the excessive fines clause. *Newell Recycling Co., Inc. v. U.S. E.P.A.*, 231 F.3d 204, 210 (5th. Cir. 2000); *Cripps v. Louisiana Dept. of Agriculture and Forestry*, 819 F.3d 221, 234 (5th Cir. 2016) (a fine does not violate the Eighth Amendment—no matter how excessive the fine may appear—if it does not exceed the limits prescribed by the statute authorizing it).

#### 2. The FBAR penalties assessed against Bittner do not violate the APA.

Bittner's Response asserts that the IRS' agent, did not have sufficient facts to assert a $10,000 per account penalty violation and had already reached a predetermined decision to assert the maximum penalty. He also attacks the IRS's reasoning for the assessments. *(ECF 47 at 25-28)*. In doing so, Bittner has raised his alleged violation of the APA defense.

Under the APA, a court may reverse a final decision of an administrative agency where the final action is arbitrary, capricious, or an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). The court must assure itself that the agency considered the

---

[7] Defendant contends otherwise and the parties have filed cross motions for summary judgment and responses to the respective motions on this legal issue. See ECF ## 28, 29 and responses ECF ## 42, 47.

relevant factors in making the decision, its action bears a rational relationship to the statute's purposes, and there is evidence in the record to support it; but the court cannot substitute its judgment for that of the agency. *Texas Oil & Gas Ass'n v. EPA*, 161 F.3d 923, 934 (5th Cir. 1998). The agency's decision does not have to be ideal so long as the agency gave at least minimal consideration to relevant facts contained in the record. *Wright v. United States*, 164 F.3d 267, 268–69 (5th Cir. 1999) (per curiam). So long as a rational basis for the agency's decision exists, it is not considered an abuse of discretion. *Id.* Moreover, the agency's decision is presumed to be valid and the burden to overcome that presumption is on the party challenging the agency's decision. *La. Pub. Serv. Comm'n v. F.E.R.C.,* 761 F.3d 540, 558 (5th Cir. 2014).

Here, contrary to Bittner's argument, the IRS's decision to assess these non-willful FBAR penalties against him for 2007 through 2011 was not an individual agent's decision but, rather the collective decision of the Agent, Group Manager and FBAR Penalty Coordinator, and the FBAR Coordinator Specialist. *See Gov. Ex.73 at ¶ 10 and Gov. Ex 74 at ¶ 9. See also ECF #47-14.* The IRS provided a detailed explanation of the facts and circumstances that support its decision. The following a summary of citations to the IRS's administrative record containing numerous facts supporting its rational decision to assess these FBAR penalties.

| Factor/circumstance reviewed or relied on | Evidentiary cite |
|---|---|
| Bittner had numerous foreign accounts, some 50-60 bank accounts during the years at issue. | Gov. 63, at pgs. 246, 269<br>Gov. Exs. 1-5<br>ECF #47-3, Def. Ex. C, pg. 81, lns. 13-23. |
| Bittner had full access, control and economic benefits of accounts at numerous foreign banks; | Gov. 63, at pgs. 246 |
| Bittner had numerous foreign entities (38) that operated numerous types of businesses | Gov. 63, at pgs. 246 -249<br>ECF #47-3, Def. Ex. C, pg. 81, lns. 13-23 |
| Bittner was educated and had Masters Degree in Engineering, indicating high level of education. | Gov. 63, at pgs. 247<br>ECF #47-3, Def. Ex. C, pg. 81, lns. 13-23, and pg. 82, lns. 6-9 and lines15-19. |
| Bittner used nominees to hold assets, failure to list nominee account on FBARs. | Gov. 63, at pgs. 249-250<br>Gov. Ex. 64, pg. 80, ln. 18- pg. 81, ln.23 |
| Bittner had significantly large aggregate balances in his foreign accounts | Gov. Ex. 63 at pgs. 245. 247<br>Gov. Ex. 64, at pg. 100, ln. 24 – pg. 101, ln.,11 |

| The originally filed FBARs were not accurate | Gov. Ex. 63, at pg. 246 |
|---|---|
| Bittner employed professional advisors and accountants to provide services | Gov. EX 63, at 249<br>ECF #47-3, Def. Ex. C, pg. 92, ln. 23 -pg. 93, ln. 3. |
| Bittner filed U.S. tax returns for years 1991, 1997, 1998, 1999 and 2000 while living in Romania. | Gov. EX 63, at 252 |

The IRS agent's Form 886 shows that the IRS extensively examined the facts and circumstances of Bittner's case, including Bittner's statements of reasonable cause. This form supports the IRS Agent's proposal to assess non-willful penalties of $10,000 per account violation. Both the IRS Agent's Manager and FBAR Penalty Coordinator knew the IRS had discretion to propose and assess non-willful FBAR penalties in amounts less than maximum of $10,000 per account violation. *See Gov. Ex.73 at ¶ 3 and Gov. Ex 74 at ¶ 3.* The Agent's Manager and FBAR Penalty Coordinator reviewed and approved the Agent's Form 886 recommending that the FBAR penalty assessments against Bittner should be $10,000 per account for the 2007-2011 years. *See Gov. Ex.73 at ¶ ¶ 6,7 and Gov. Ex 74 at 6.* The Agent's Manager and FBAR Penalty Coordinator agreed with the Agent's recommendation, and they approved of these non-willful FBAR penalty assessments against Bittner. *See Gov. Ex.73 at ¶¶ 8, 9, and Gov. Ex 74 at ¶¶ 7,8.*

The IRS's decision was in accordance with the law. 31 U.S.C. § 5321(a)(5) allows for a $10,000 per account penalty. Furthermore, Bittner was within the class of persons for which the statute was enacted. Bittner was a U.S. person, with foreign accounts exceeding $10,000, and thus, was required to timely file FBARs reporting all his accounts regardless of their balances. There is no exception or defense for dual citizens. Bittner failed to timely file his FBARs reporting his 51-61 accounts during the years at issue. Finally, it was not grossly disproportionate for the IRS to assess FBAR penalties against Bittner that are within the statutory limits set by Congress. In sum, the IRS's decision did not violate the Administrative Procedures Act.

        Respectfully submitted,
        RICHARD E. ZUCKERMAN
        Principal Deputy Assistant Attorney General

        /s/ Herbert W. Linder
        HERBERT W. LINDER
        Ohio Bar No. 0065446
        Attorneys, Tax Division
        U.S. Department of Justice
        717 N. Harwood St., Suite 400
        Dallas, Texas 75201
        Phone: (214) 880-9754
        Fax (214) 880-9741
        herbert.w.linder@usdoj.go
        ATTORNEYS FOR UNITED STATES

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing reply has been made on May 4, 2020, by the Clerk's ECF filing system to:

CLARK HILL STRASBURGER
Farley P. Katz
Rachael Rubenstein
2301 Broadway St.
San Antonio, Texas 78209

        /s/ Herbert W. Linder
        HERBERT W. LINDER