Certification by U.S. Person Residing Outside of the United States
for Streamlined Foreign Offshore Procedures

Name(s) of taxpayer(s):  Alexandru Bittner and Sherry Bittner

TIN(s) of taxpayer(s):  ▆▆▆-▆▆-0102 and ▆▆▆▆▆▆▆▆▆

Note: Spouses should submit a joint certification if they are submitting joint income tax returns under the Streamlined Foreign Offshore Procedures. If this certification is a joint certification, the statements will be considered made on behalf of both spouses, even though the pronoun "I" is used. If spouses submitting a joint certification have different reasons for their failure to report all income, pay all tax, and submit all required information returns, including FBARs, they must state their individual reasons separately in the required statement of facts.

Certification:

I am providing delinquent or amended income tax returns, including all required information returns, for each of the most recent 3 years for which the U.S. tax return due date (or properly applied for extended due date) has passed. The tax and interest I owe for each year are as follows:

| Year<br>List years in order | Amount of Tax I Owe<br>(Form 1040, line 76,<br>or<br>Form 1040X, line 19) | Interest | Total |
|---|---|---|---|
| 2010 | $0 | $0 | $0 |
| 2011 | $0 | $0 | $0 |
| 2012 | $0 | $0 | $0 |
| Total | $0 | $0 | $0 |

Note: Your payment should equal the total tax and interest due for all three years. You may receive a balance due notice or a refund if the tax or interest is not calculated correctly.

I failed to report income from one or more foreign financial assets during the above period.

I meet the non-residency requirements for the Streamlined Foreign Offshore procedures.

Note: Both spouses filing a joint certification must meet the non-residency requirements.

I meet all the other eligibility requirements for the Streamlined Foreign Offshore procedures, with the exception that my returns for 2006 through 2011 are currently under examination; however, I requested that exemption in connection with my attempts to address my mistake of filing 22 delinquent returns.

If I failed to timely file correct and complete FBARs for any of the last six years, I have now filed those FBARs.

I agree to retain all records related to my income and assets during the period covered by my delinquent or amended returns until three years from the date of this certification. If I was required to file delinquent FBARs in accordance with these procedures, I also agree to retain all records (including, but not limited




GOVERNMENT EXHIBIT 40

Certification by U.S. Person Residing Outside of the United States for Streamlined Filing Compliance Procedures

Page 2

to, account statements) related to my foreign financial accounts until six years from the date of this certification. Upon request, I agree to provide all such records to the Internal Revenue Service.

My failure to report all income, pay all tax, and submit all required information returns, including FBARs, was due to non-willful conduct. I understand that non-willful conduct is conduct that is due to negligence, inadvertence, or mistake or conduct that is the result of a good faith misunderstanding of the requirements of the law.

I recognize that if the Internal Revenue Service receives or discovers evidence of willfulness, fraud, or criminal conduct, it may open an examination or investigation that could lead to civil fraud penalties, FBAR penalties, information return penalties, or even referral to Criminal Investigation.

In the space below (or on an attached page), provide specific reasons for your failure to report all income, pay all tax, and submit all required information returns, including FBARs. If you relied on a professional advisor, provide the name, address, and telephone number of the advisor and a summary of the advice. If married taxpayers submitting a joint certification have different reasons, provide the individual reasons for each spouse separately in the statement of facts.

See attached Statement.

Under penalties of perjury, I declare that I have examined this certification and all accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete.

_____    09/19/2014
Signature of Taxpayer         Date
Alexandru Bittner

_____    09/19/2014
Signature of Taxpayer [if joint certification]   Date
Sherry Bittner

Alexandru Bittner / SSN ████ 0102
Sherry Bittner / SSN ████

## Attachment to Certification by U.S. Persons Residing Outside of the United States for Streamlined Filing Compliance Procedures

I was born in Romania in 1957. I attended high school in Romania and served one mandatory year in the Romanian Army. Following my military service, I obtained a Master's degree in mechanical engineering, specializing in chemistry.

Because I did not like the communist regime, and because I am of Jewish origin and my sister had already immigrated to Israel (in 1977), I felt heavily discriminated against so I decided to leave Romania. I received support for a visa as well as financial support from the Hebrew Immigrant Aid Society ("HIAS") and I legally arrived in the USA in December of 1982. In 1987, I became a naturalized United States citizen. I met my wife, Sherry, in 1984. Sherry was a legal Chinese immigrant to the United States who, independently, obtained her naturalization as well. Sherry received no formal higher education and may have obtained only a high school diploma. Sherry speaks very little English. We were married in 1985 and had a daughter in 1987.

In 1989, I worked as a plumber for the Los Angeles School District. After the December 1989 revolution and the fall of communism in Romania, I returned to Romania in January of 1990. Over the years, I became a successful businessman in Romania and invested in numerous and diverse businesses including real estate, telecommunications, tourism, and aquaculture. In the mid-2000s, my business interests suffered and I sustained a number of substantial losses.

While living in Romania, we complied with all Romanian tax laws and hired Romanian accountants to keep records and assist with tax compliance. We were not aware during that time that we had to file United States tax returns simply because we had become naturalized US citizens. Nor did our accountants inform us of that fact. We reasonably believed that we had no US tax obligations for income from Romania when we were living in Romania and paid taxes to Romania.

Up to about 2000, I had some US source income from an S corporation. I was issued a K-1 and I filed returns reporting that income and paying any tax which I understood was my only obligation under US tax laws. During my 22 years of living in Romania, we were registered with the US embassy in Romania. During all that time, the US embassy never contacted us about any tax returns due. We had no reason to believe that the taxing jurisdiction of the United States differed from other foreign countries that tax earnings only in the jurisdiction where the income was generated.

Based on the English grammar that I learned in school, when you balance the conflicting paragraphs from the US-Romania tax treaty: A "art4-3 a contracting state MAY tax its citizens" and B "art 7-1 business profits: Industrial or commercial profits of a

RESIDENT of one of one of the Contracting states SHALL BE EXEMPT from tax by the other Contracting state" the latter prevails.

My wife and I returned to the United States from Romania in late 2011. After returning to the United States, we learned that we should have filed US tax returns while we were living in Romania because we are naturalized citizens. We engaged a CPA to prepare our tax returns. After reading the United States-Romania Tax Treaty, I believed that, because we were exclusively Romanian residents during those years, only Romania could tax our income. I discussed this with my CPA and he agreed with this conclusion. Because I had a mistaken understanding of the United States – Romania Tax treaty, which on its face appears to limit taxation to the country of residency, and because of the CPA's advice, I mistakenly understood that the filing of the back returns was simply a formality. As a result, in preparing those returns I estimated my income from each year based on my recollection which amounts I believed were approximately correct. I did not consult any financial records (which they were all in Romania), nor did I claim any business deductions, losses or expenses on those returns. Following the accountant's advice, I excluded the entire amount of the reported income, expressly relying on the United States-Romania tax treaty.

We never understood, until we returned to the United States, that we were required to file US tax returns for the Romanian income. Nor did I understand that the CPA's and my interpretation of the United States-Romania tax treaty was incorrect (i.e., it did not exclude my Romanian income from U.S. taxation). Indeed, the treaty's "savings clause", which allows the United States to tax its citizens' income despite the treaty, is an obscure provision.

We were also completely unaware that we had to file Forms 5471, Information Return of U.S. Persons with Respect to Certain Foreign Corporations with our US tax returns. My CPA was aware that we had interests and stock ownership in several Romanian companies. However, he failed to advise us that we had to complete any additional forms concerning my ownership of these foreign companies. Also, we were unaware of the requirement to file FBARs concerning our accounts in Romania and in Europe. Our advisors did not inform us of the FBAR filing requirement and it was only until we came back to the U.S. that we learned of the requirement to file these forms.

My wife, Sherry Bittner, relied entirely upon me to handle obligations, such as filing tax returns and had no awareness of any obligation to file U.S. tax or information returns.