UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>      Plaintiff,<br><br>v.<br><br>ALEXANDRU BITTNER,<br>      Defendant. | Case No. 4:19-cv-00415 |

**MOTION FOR LEAVE TO FILE AN AMICUS REPLY BRIEF IN SUPPORT OF DEFENDANT ALEXANDRU BITTNER AND FOR LEAVE TO EXCEED PAGE LIMITS**

Laxman Patel, Jashu Patel, Hiten Patel, and Anita Patel (the "Patels") respectfully move this Court for leave to participate as amici curiae and file an amicus reply brief in support of Defendant's Motion for Partial Summary Judgment. The Patels' proposed amicus reply brief provides information not provided the parties' respective motions that will assist this Court in having "a complete and plenary presentation of the difficult issues before it so that [this] [C]ourt may reach a proper decision." *N.A.A.C.P. v. Town of Harrison*, 940 F.2d 792, 808 (3d Cir. 1991). The information provided relates solely to the issue of whether penalties under section 5321(a)(5)[1] for violations of the provisions of section 5314 as implemented in the Treasury Secretary's (the "Secretary") regulations apply per report-filing violation or per offshore account.

The Patels also seek leave to exceed applicable page limits and have their amicus reply brief accepted in its entirety.

---

[1] Section and regulation references are to Title 31 of the U.S. Code and the Code of Federal regulations, respectively.

1

I. **THE PATELS' PROPOSED AMICUS REPLY BRIEF IS USEFUL TO THE DISPOSITION OF THE ISSUE**

The briefing thus far has failed to adequately acquaint this Court with the nuances of Title 31. Perhaps the best way to explain why this proposed amicus reply brief must be accepted, in concert with the Patels' proposed amended amicus brief, is to set forth the first section in the proposed amicus reply brief, which this Court will find most useful as it will greatly assist this Court in dispensing with the reasonable cause issue and gaining a heightened understanding of section 5321(a)(5) reasonable cause provisions. The first section of the brief provides as follows:

I. **The Ugly Truth—Filing an Inaccurate Delinquent FBAR Forecloses Relief from Penalties Under Section 5321(a)(5)'s Reasonable Cause Exception**

On May 21, 2012, Bittner filed his FBARs for each of years 2007 through 2010 late. Agent's Report, ECF # 29-37, at DOJ 000246. He committed one delinquency violation per year. Reg. 1010.306(c). Bittner's delinquent FBARs were also inaccurate.[2] Specifically, he listed on his delinquent FBARs that he had maintained his aggregate account balance in just one account for years 2007, 2008, 2010, and 2011, and 2 accounts in year 2009. *Id*. at DOJ 000247. In other words, Bittner filed inaccurate FBARs for each of years 2007 through 2010 as well. He committed one accuracy violation per year. Regs. 1010.350(a) & (g)(1), 1010.306(d). On September 17, 2013, Bittner filed amended FBARs for each year in issue, disclosing that he had maintained numerous accounts for each year in issue, i.e., 61, 51, 53, and 53, for years 2007-2010, respectively. *Id.* at DOJ 000247. The IRS assessed penalties for each of years 2007-2010

---

[2] Amici note that in their Amended Amicus Brief they inadvertently erred in stating that "Bittner non-willfully filed *accurate* FBARs late for years 2007-2010" in discussing the proper application of penalties. Amended Amicus Brief, ECF #34, pg. 20. Amici have opted not to file a second amended amicus brief to correct the error. In any event, the text should read "Bittner non-willfully filed FBARs late for years 2007-2010."

against Bittner only for filing his FBARs late.  Reg. 1010.306(c).  See Complaint, ECF #1, pgs. 20-21, paras. 26-29.  <u>The IRS did not assess any penalty for his accuracy violations</u>.

From the briefing put forth thus far, the distinctions made in the previous paragraph would be very difficult for this Court to decipher.  Indeed, the IRS erroneously proffers that Bittner "file[d] untimely but accurate FBARs . . ." U.S. Response Motion, ECF # 42, pg. 14.  That is not true, but it does not affect the analysis as to the proper application of penalties for the actual delinquency violations committed.  In short, the IRS opted not to, or did not understand, that they could have assessed penalties for Bittner's accuracy violations as well.

The takeaway here, which will not be well received by Bittner, is that by filing his delinquent FBARs with material inaccuracies, he cannot raise the reasonable cause defense for those violations.  Specifically, Bittner runs afoul of the second prong of section 5321(a)(5)(B)(ii) because he did not properly report his previously unreported accounts in his delinquent FBARs.  Section 5321(a)(5)(B)(ii)(II) provides that no penalty shall be imposed with respect to any non-willful violation "if—(II) the [] balance in the account[s] at the time of the transaction [were] properly reported."  As set forth in great detail in the Amended Amicus Brief, ECF #34, pgs. 22-27, if a U.S. person can establish reasonable cause for a delinquency violation, no penalty will be assessed for that violation <u>if</u> he files his delinquent FBAR and the aggregate "balance in the account[s] at the time of [delinquent filing] was properly reported."  For Bittner, reg. 1010.350(g) exempted him from having to report "the balance[s] in [all of his] accounts" (the aggregate account balance) in his delinquent report.  Reg. 1010.350(g).  Nonetheless, his delinquent FBARs did not properly report his previously unreported accounts—he listed only one account for three years and only two for another.  See IRM 4.26.16.6.4(2)(a) & (b) ("non-willful penalty should not be imposed if:  a. [t]he violation was due to reasonable cause, and b.

3

[t]he person files [his] FBAR and properly reports the previously unreported account[s]"). To be clear, his accounts were considered previously unreported after the June 30th filing deadline for each year in issue, and when he filed his delinquent FBARs, he did not properly list the accounts holding the aggregate offshore account balance as required by reg. 1010.350(g). Consequently, Bittner will not be able avoid non-willful penalties for his delinquency violations under the reasonable cause exception per se.

Had the IRS assessed non-willful penalties for Bittner's accuracy violations, assuming he could have established reasonable cause for those accuracy violations, and he properly reported his previously unreported accounts in his amended FBAR, it would appear to be patently unfair that a penalty waiver would not be granted as to his delinquency violations as well because the very reason he failed to satisfy the second prong of the reasonable cause exception was excused in defense of the accuracy violation. Not so. The statute is brilliantly designed to accommodate this <u>uncommon</u> dilemma in that the penalty for filing violations is <u>discretionary</u>. If the examiner did not waive the delinquency violation under those circumstances, the U.S. person could challenge that determination in court for abusing her discretion in applying a penalty for his delinquency violations. In the instant case, if Bittner can demonstrate what is tantamount to reasonable cause for the omitted accounts, the IRS would be hard pressed to convince this Court that Bittner be held to pay any penalties at all.

In *U.S. v. Boyd*, 2019 WL 1976472 (C.D. Cal. Apr. 23, 2019), counsel for Ms. Boyd offered the following hypothetical on brief, never addressed by that Court, which coincidentally sets forth the unusual fact pattern in the instant case.

> The more interesting issue, one that the Court need not resolve here, is whether there can be two $10,000 non-willful penalties for a given year when there is a non-willful failure to timely file the FBAR for that year, followed by the untimely filing of an FBAR that has material inaccuracies, i.e., whether a total non-willful

penalty for a given year can ever exceed $10,000.

*Boyd*, Motion for Summary Judgment, ECF # 36, pg. 4. The Patels have proffered this hypothetical before the Ninth Circuit as Amici in Ms. Boyd's appeal.[3] An analysis of the hypothetical reveals that two report-filing violations of the Secretary's implementing regulations occurred as in the instant case. The first was filing the FBAR late, in violation of reg. 1010.306(c). The second was filing the delinquent FBAR containing a material omission or misstatement, in violation of regs. 1010.350(a) and 1010.306(d). Section 5321(a)(5)(A) authorizes the Secretary to "impose a civil money penalty on any person who violates ... <u>any provision</u> of section 5314" as implemented in his regulations. Two of the three provisions of section 5314 subject to penalties were violated, to which a maximum discretionary penalty of $10,000 may attach. Thus, a total non-willful penalty for a given year can exceed $10,000. However, a complete failure to file the FBAR will cap the potential non-willful penalty for a particular year at $10,000 because the other two potential report-filing violations of the Secretary's regulations to which penalties may attach—delinquency and accuracy—require an actual filing of the report. Penalties attach to report-filing violations, not accounts.

. . . . . . . . .

The United States also proposed hypotheticals in its response motion that Bittner wholly ignored in his reply. Those hypotheticals are IDENTICAL to those proffered by the United States on brief to the Ninth Circuit, *U.S. v. Boyd*, No. 19-55585, ECF # 33, pgs. 51-55, which are specifically designed to upend the Patels' detailed examples on the operation of reasonable cause and the calculation of willful penalties. Amended Amicus Brief, ECF # 34, pgs. 24-30. The

---

[3] The fact pattern has also been critically examined in *Tax Notes Federal*. See David Michaels, *FBAR Penalties, The IRS's Crumbling Case for a Per-Account Interpretation*, Tax Notes Federal, Vol. 164, No. 10, Sept. 2, 2019, pgs. 1586-1587.

United States will invariably raise those hypotheticals again with the Fifth Circuit, and the Patels offer comprehensive responses in their proposed amicus reply brief, as they will with the Ninth Circuit in their amicus reply brief there. Below is a snippet from the proposed amicus reply brief addressing a proffered hypothetical that will greatly assist this Court in understanding how the willful calculation provisions of section 5321(a)(5) are designed to operate.

. . . . . . . . .

>   B.  The IRS's Willful Example
>
> Bittner's position also does not provide a resolution when an FBAR presents both willful and non-willful noncompliance with *reporting requirements*. For example, suppose [Jaxon] files a timely FBAR accurately reporting one account, non-willfully omitting a different second account for which he was not able to show reasonable cause, and willfully omitting a third account he wanted to conceal. If a violation of Section 5314 and its implementing regulations were related to the FBAR form itself, instead of to each account required to be reported on it, then it is unclear which penalty – and therefore which statutory maximum – would apply in that scenario. Bittner's per form approach creates an unworkable interpretation of section 5321(a)(5). U.S. Response Brief, ECF # 42, pg. 17.

Absolutely nothing is unclear as to how section 5321(a) would operate under those circumstances. The starting point is identifying the actual report-filing violation committed. And the IRS gets one thing right—the violations to which penalties may attach (failure-to-file, filing late, or filing an inaccurate report) are the same whether the conduct in violating the implementing regulations was willful or not. IRS Motion for Partial Summary Judgment, ECF # 29, pg. 22. Jaxon timely filed his FBAR, but he omitted material information required to be supplied in his filed report. He committed one violation, he filed an FBAR containing a material omission or misstatement, regs. 1010.350(a) and 1010.306(c) (**accuracy violation**).

The next query is always the same—did the U.S. person willfully fail to file the FBAR, file it late, or omit material information in his filed report? If the answer is yes, as here, section 5321(a)(5) provides for a penalty calculation mechanism designed to ensure the penalty is

commensurate with the U.S. person's conduct and the amount of the concealed bank assets. Jaxon willfully concealed an item of information required to be listed on his filed FBAR, a bank account and information related thereto. His accuracy violation was willful. That forecloses the availability of the reasonable cause exception because the exception is unavailable for U.S. persons who willfully violate the provisions of section 5314 (to have a penalty waived under the exception, the failure to provide "[a]ll information called for in" an FBAR must stem from non-willful behavior in toto, such that a U.S. person could cure his violation by filing an amended FBAR, accurately listing the balances in the accounts of the previously omitted accounts). Sec. 5321(a)(5)(C)(ii). The IRS's contention that Jaxon would be able to raise a reasonable cause defense at all for an individual account is nonsensical, and is again borne out of its erroneous contention that a separate Title 31 report is filed for each account.

1. **Jaxon's Potential Penalty Exposure**

Section 5321(a)(5)(A) authorizes the Secretary to impose a civil money penalty on any person "who violates ... any provision of section 5314" as implemented in his regulations. Section 5321(a)(5)(B)(i) provides that "[e]xcept as provided in subparagraph (C), the amount of any civil penalty imposed under subparagraph (A) shall not exceed $10,000." Section 5321(a)(5)(C) provides that "in the case of any person willfully violating, or willfully causing any violation of, any provision of section 5314, the maximum penalty under subparagraph (B)(i) shall be increased [from $10,000] to the greater of $100,000, or 50 percent of the amount determined under subparagraph (D). Section 5321(a)(5)(D)(ii) provides that "the amount determined under this subparagraph is—in the case of a violation involving a failure to report the existence of an account or any identifying information required to be provided with respect to an account, the balance in the account at the time of the violation."

7

### 2. The Willful Penalty Calculation

Let's assume that Jaxon held his aggregate offshore account balance of $750,000 equally in his three accounts. Jaxon's willful behavior has opened the door to a potential penalty, at a minimum, of 10 times that of a non-willful accuracy violation. The potential penalty ceiling could be much higher, however, if half the balance in the account or accounts[4] "involv[ed]" in his willful violation exceeds $100,000. To be clear, this is a penalty statute which seeks to set a discretionary ceiling commensurate with the conduct of the offender, willful or not. It does not create a new report-filing violation penalty that renders each account a separate violation of the Secretary's implementing regulations. In any event, Jaxon's willful accuracy violation "involv[ed] the failure to report the existence of [his third account]," the balance of which was $250,000. Half that number is $125,000, which is greater than the $100,000 minimum discretionary penalty ceiling for a willful violation. As such, Jaxon could be facing a $125,000 penalty for filing his FBAR containing a material omission or misstatement. Regs. 1010.350(a) & 1010.306(c) (**accuracy violation**). Plain and simple.

It is important to note here that the statute works as intended in any factual situation only when report-filing violations of the Secretary's implementing regulations to which penalties may attach are respected. Congress anticipated Jaxon's predicament, calling only for the balances of those accounts "involv[ed]" in the willful violation to be used in determining the maximum penalty for that violation. The willful statute has what can be loosely described as a "quasi-reasonable cause" exception in calculating the maximum discretionary penalty ceiling for willful

---

[4] The application of the singular-plural rule was amply addressed in the Amended Amicus Brief, which necessarily applies because the Secretary determined that a single Title 31 report be filed per calendar year, which invariably will lead to violations "involving the failure to report the existence of account(s).") Amended Amicus Brief, ECF # 34, at pgs. 21-30 (willful discussion at pgs. 27-30).

violations. If the examiner is persuaded that an account or information related thereto was non-willfully omitted, or the U.S. person persuades the trier of fact that his willful behavior involved certain omissions and not others, he can limit his potential exposure to a number that is commensurate with his behavior. Congress has indeed crafted a well-oiled machine in calculating penalties.[5]

. . . . . . . . .

The remainder of the proposed amicus reply brief provides equally useful information that is wholly missing in the parties' briefing thus far, and exposes the fatally flawed position the government takes, from its strained read of reg. 1010.350(a) to its erroneous contention that section 5314 itself required the Secretary to require a separate Title 31 report be filed for each account.

## II. DISTRICT COURTS HAVE AUTHORITY TO ACCEPT AMICUS REPLY BRIEFS

Federal district courts possess the inherent authority to accept amicus briefs. Unlike the Supreme Court Rules and the Federal Rules of Appellate Procedure, the Federal Rules of Civil Procedure do not specifically provide for the filing of amicus curiae briefs at the district court level. Nevertheless, "district courts possess the inherent authority to appoint 'friends of the court' to assist in their proceedings." *In re Bayshore Ford Truck Sales, Inc.*, 471 F.3d 1233, 1249 n.34 (11th Cir. 2006); *United States ex rel. Gudur v. Deloitte Consulting LLP*, 512 F. Supp. 2d 920, 927 (S.D. Tex. 2007) ("The extent to which the court permits or denies amicus briefing

---

[5] There may be circumstances under which a U.S. person may be subject to non-willful and willful violations with a single filing. For instance, if the person negligently ("non-willfully") filed his FBAR late and he intentionally omitted 2 accounts in his delinquent FBAR, he would be subject to a maximum non-willful delinquency violation of $10,000 and a willful penalty of $100,000 or half the balance of the omitted accounts, whichever is greater, for his willful accuracy violation.

lies solely within the court's discretion."). "No statute, rule, or controlling case defines a federal district court's power to grant or deny leave to file an amicus brief, . . . and in the absence of controlling authority, district courts commonly refer to [Federal Rule of Appellate Procedure] 29 for guidance." *Gudur*, 512 F. Supp. 2d at 927. "Factors relevant to the determination of whether amicus briefing should be allowed include whether the proffered information is 'timely and useful' or otherwise necessary to the administration of justice." *Id*. Amici's role is to assist the court "in cases of general public interest by making suggestions to the court, by providing supplementary assistance to existing counsel, and by insuring a complete and plenary presentation of difficult issues so that the court may reach a proper decision." *Town of Harrison*, 940 F.2d at 808. This authority supports the Court's exercise of its discretion to accept this proposed amicus reply brief.

### III. THE PATELS' PROPOSED AMICUS REPLY BRIEF IS TIMELY

Pursuant to the Federal Rules of Appellate Procedure, an "amicus curiae must file its brief, accompanied by a motion for filing when necessary, no later than 7 days after the principal brief of the party being supported is filed." Rule 29(a)(6). The rules provide no date certain as to when an amicus reply brief should be filed. Notably, Rule 29(a)(7) requires the permission of the Court before an amicus reply brief is filed, even if the parties to the lawsuit consent to its filing. In any event, Bittner filed his reply on April 24, 2020. The Patels' motion for leave to file an amicus reply brief in support of Bittner and their proposed amicus reply brief were filed on May 1, 2020, 7 days after Bittner's motion was filed. See accord, L.R. 7(f) (providing for 7 days to file a reply). On May 4, 2020, the docket room determined this motion and the proposed amicus reply brief were "filed using the wrong docket event." The Patels cured their filing error the same day.

### IV.  MOTION FOR LEAVE TO EXCEED PAGE LIMITS

Federal Rule of Appellate Procedure 29(a)(5) provides that an amicus brief is to be no longer than one-half the length of the principal brief.  Local Civil Rule 7(a)(2) limits a reply brief for a non-dispositive motion to 5 pages, which, if using Fed. R. App. Proc. 29 as a guide, would limit an amicus reply brief to 2.5 pages.  This issue of first impression requires far more coverage than proffered by the parties to assist this Court in reaching an informed and proper decision.  The Patels request that this Court accept their proposed amicus reply brief in its entirety.

### V. CONCLUSION

For the foregoing reasons, the Patels respectfully request that this Court grant leave to file their proposed amicus reply brief in its entirety.

Respectfully submitted,

/s/  David Michaels
DAVID MICHAELS
Ca. Bar. No. 235985
*Admitted in E.D. Texas
310 Maui Drive
Placentia, CA 92870
Phone:  (714) 742-9561
Fax:  (714) 985-0564
dmichaels0867@hotmail.com

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing Motion was made on May 4, 2020, by the Clerk's ECF filing system to:

| | |
|---|---|
| CLARK HILL STRASBURGER | Herbert W. Linder |
| Farley P. Katz | Attorney, Tax Division |
| Rachael Rubenstein | U.S. Dept. of Justice |
| 2301 Broadway St. | 717 N. Harwood, Suite 400 |
| San Antonio, Texas 78209 | Dallas, Texas 75201 |

                                   /s/ David Michaels
                              DAVID MICHAELS

## CERTIFICATE OF CONFERENCE

Counsel for the Patels has complied with the meet and confer requirement in Local Rule 7(h).

  A.  **The Government**

On April 28, 2020, Counsel contacted Herbert Linder to discuss the Patels' intent to file an amicus reply brief. Mr. Linder objected on the grounds that the proposed amicus reply brief would be untimely, and that "there is plenty of coverage without the Patels' position." Counsel explained that the brief is timely in that the Patels had to wait for Bittner to file his reply so as to ensure that no material offered in their proposed amicus reply brief was duplicative. Counsel further explained that the Federal Rules of Appellate Procedure, which district court's use as guidance, provides that amicus briefing be complete within seven days of the principal brief being supported. As to the coverage argument, Counsel informed Mr. Linder that the Patels will provide no duplicative matter, and that the information proffered will greatly assist this Court in reaching an informed decision.

  B.  **Mr. Bittner**

On April 23, 2020, Counsel contacted Rachael Rubenstein via telephone to discuss the

Patels' desire to file an amicus reply brief. She objected on the grounds that the Patels are not before this Court and that she "feels it is not appropriate." We had a detailed discussion of the issues that concerned the Patels, namely, the hypotheticals in the government's response brief, the bifurcated analysis of reg. 1010.350(a), and relevant Supreme Court precedent. Ms. Rubenstein did not object as to the substance of the Patels' intended coverage or provide any indication that she was concerned the Patels were providing duplicative information of any kind.

  From the foregoing, it is clear that discussions have ended in an impasse, leaving an open issue for this Court to resolve. The Patels have incurred significant expense in bringing the contents of their proposed amicus reply brief before this Court so as to provide this Court with a complete and comprehensive presentation of the material necessary in this highly specialized area of law to resolve this issue of first impression properly.

        <u>/s/  David Michaels</u>
        DAVID MICHAELS