UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 4:19-cv-00415 |
| ALEXANDRU BITTNER, | ) | |
| Defendant. | ) | |
| | ) | |

**AMICUS REPLY BRIEF IN SUPPORT OF ALEXANDRU BITTNER'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.      The Ugly Truth—Filing an Inaccurate Delinquent FBAR Forecloses Relief
        from Penalties Under Section 5321(a)(5)'s Reasonable Cause Exception....................1

II.     Section 5314 Does Not Direct the Secretary to Require a Separate Title 31
        Report to Be Filed for Each Bank Account....................................................4

III.    Reg. 1010.350(a) -- the IRS Doubles Down on It's Specious Read.............................7

IV.     The IRS's Hypotheticals.................................................................12

        A.  The IRS's Reasonable Cause Example................................................13

            1.  Jaxon's Potential Penalty Exposure.........................................14

            2.  Jaxon Must Show Reasonable Cause for His Accuracy Violation.................15

        B.  The IRS's Willful Example.........................................................17

            1.  Jaxon's Potential Penalty Exposure.........................................18

            2.  The Willful Penalty Calculation............................................19

V.      Consent to the Filing of this Amicus Reply Brief.......................................20

        A.  The IRS's Position................................................................20

            1.  The Patels' Amicus Reply Brief is Timely...................................20

            2.  The Amicus Reply Brief Addresses IRS Arguments Not Addressed
                by Bittner and Provides Coverage Necessary for Understanding the
                Application of the Reasonable Cause Exception..............................21

        B.  Bittner...........................................................................21

            1.  The Patels' Amicus Filings Are Useful......................................21

            2.  The Patels' Amicus Filings Are Appropriate.................................22

VI.     Conclusion.............................................................................22

The Patels respectfully submit this amicus reply brief to assist this Court in navigating the complexities of the Bank Secrecy ("BSA") by offering further information, not previously provided by either party, that is wholly necessary for the Court to consider before rendering its decision.[1]  The information contained herein relates to the issue of whether penalties for violations of the reporting requirements of section 5314 as implemented in the Secretary's regulations apply to report-filing violations, or per-account.

I.     **The Ugly Truth—Filing an Inaccurate Delinquent FBAR Forecloses Relief from Penalties Under Section 5321(a)(5)'s Reasonable Cause Exception**

On May 21, 2012, Bittner filed his FBARs for each of years 2007 through 2010 late. Agent's Report, ECF # 29-37, at DOJ 000246.  He committed one delinquency violation per year.  Reg. 1010.306(c).  Bittner's delinquent FBARs were also inaccurate.[2]  Specifically, he listed on his delinquent FBARs that he had maintained his aggregate account balance in just one account for years 2007, 2008, 2010, and 2011, and 2 accounts in year 2009.  *Id*. at DOJ 000247. In other words, Bittner filed inaccurate FBARs for each of years 2007 through 2010 as well.  He committed one accuracy violation per year.  Regs. 1010.350(a) & (g)(1), 1010.306(d).  On September 17, 2013, Bittner filed amended FBARs for each year in issue, disclosing that he had maintained numerous accounts for each year in issue, i.e., 61, 51, 53, and 53, for years 2007-2010, respectively.  *Id.* at DOJ 000247.  The IRS assessed penalties for each of years 2007-2010

---

[1] Amici Curiae certify this amicus reply brief was not written in whole or in part by counsel for any party, and no person or entity other than Amici Curiae and their counsel has made a monetary contribution to the preparation and submission of this amicus reply brief.

[2] Amici note that in their Amended Amicus Brief they inadvertently erred in stating that "Bittner non-willfully filed *accurate* FBARs late for years 2007-2010" in discussing the proper application of penalties.  Amended Amicus Brief, ECF # 34, pg. 20.  Amici have opted not to file a second amended amicus brief to correct the error.  In any event, the text should read "Bittner non-willfully filed FBARs late for years 2007-2010."

against Bittner only for filing his FBARs late.  Reg. 1010.306(c).  See Complaint, ECF #1, pgs. 20-21, paras. 26-29.  <u>The IRS did not assess any penalty for his accuracy violations</u>.

From the briefing put forth thus far, the distinctions made in the previous paragraph would be very difficult for this Court to decipher.  Indeed, the IRS erroneously proffers that Bittner "file[d] untimely but accurate FBARs . . ."  U.S. Response Motion, ECF # 42, pg. 14. That is not true, but it does not affect the analysis as to the proper application of penalties for the actual delinquency violations committed.  In short, the IRS opted not to, or did not understand, that they could have assessed penalties for Bittner's accuracy violations as well.

The takeaway here, which will not be well received by Bittner, is that by filing his delinquent FBARs with material inaccuracies, he cannot raise the reasonable cause defense for those violations.  Specifically, Bittner runs afoul of the second prong of section 5321(a)(5)(B)(ii) because he did not properly report his previously unreported accounts in his delinquent FBARs. Section 5321(a)(5)(B)(ii)(II) provides that no penalty shall be imposed with respect to any non-willful violation "if—(II) the [] balance in the account[s] at the time of the transaction [were] properly reported."  As set forth in great detail in the Amended Amicus Brief, ECF #34, pgs. 22-27, if a U.S. person can establish reasonable cause for a delinquency violation, no penalty will be assessed for that violation <u>if</u> he files his delinquent FBAR and the aggregate "balance in the account[s] at the time of [delinquent filing] was properly reported."  For Bittner, reg. 1010.350(g) exempted him from having to report "the balance[s] in [all of his] accounts" (the aggregate account balance) in his delinquent report.  Reg. 1010.350(g).  Nonetheless, his delinquent FBARs did not properly report his previously unreported accounts—he listed only one account for three years and only two for another.  See IRM 4.26.16.6.4(2)(a) & (b) ("non-willful penalty should not be imposed if:  a. [t]he violation was due to reasonable cause, and b.

[t]he person files [his] FBAR and properly reports the previously unreported account[s]").  To be clear, his accounts were considered previously unreported after the June 30[th] filing deadline for each year in issue, and when he filed his delinquent FBARs, he did not properly list the accounts holding the aggregate offshore account balance as required by reg. 1010.350(g).  Consequently, Bittner will not be able avoid non-willful penalties for his delinquency violations under the reasonable cause exception per se.

Had the IRS assessed non-willful penalties for Bittner's accuracy violations, assuming he could have established reasonable cause for those accuracy violations, and he properly reported his previously unreported accounts in his amended FBAR, it would appear to be patently unfair that a penalty waiver would not be granted as to his delinquency violations as well because the very reason he failed to satisfy the second prong of the reasonable cause exception was excused in defense of the accuracy violation.  Not so.  The statute is brilliantly designed to accommodate this <u>uncommon</u> dilemma in that the penalty for filing violations is <u>discretionary</u>.  If the examiner did not waive the delinquency violation under those circumstances, the U.S. person could challenge that determination in court for abusing her discretion in applying a penalty for his delinquency violations.  In the instant case, if Bittner can demonstrate what is tantamount to reasonable cause for the omitted accounts, the IRS would be hard pressed to convince this Court that Bittner be held to pay any penalties at all.

In *U.S. v. Boyd*, 2019 WL 1976472 (C.D. Cal. Apr. 23, 2019), counsel for Ms. Boyd offered the following hypothetical on brief, never addressed by that Court, which coincidentally sets forth the unusual fact pattern in the instant case.

> The more interesting issue, one that the Court need not resolve here, is whether there can be two $10,000 non-willful penalties for a given year when there is a non-willful failure to timely file the FBAR for that year, followed by the untimely filing of an FBAR that has material inaccuracies, i.e., whether a total non-willful

penalty for a given year can ever exceed $10,000.

*Boyd*, Motion for Summary Judgment, ECF # 36, pg. 4.  The Patels have proffered this hypothetical before the Ninth Circuit as Amici in Ms. Boyd's appeal.[3]  An analysis of the hypothetical reveals that two report-filing violations of the Secretary's implementing regulations occurred as in the instant case.  The first was filing the FBAR late, in violation of reg. 1010.306(c).  The second was filing the delinquent FBAR containing a material omission or misstatement, in violation of regs. 1010.350(a) and 1010.306(d).  Section 5321(a)(5)(A) authorizes the Secretary to "impose a civil money penalty on any person who violates ... <u>any provision</u> of section 5314" as implemented in his regulations.  Two of the three provisions of section 5314 subject to penalties were violated, to which a maximum discretionary penalty of $10,000 may attach.  Thus, a total non-willful penalty for a given year can exceed $10,000.  However, a complete failure to file the FBAR will cap the potential non-willful penalty for a particular year at $10,000 because the other two potential report-filing violations of the Secretary's regulations to which penalties may attach—delinquency and accuracy—require an actual filing of the report.  Penalties attach to report-filing violations, not accounts.

## II.     Section 5314 Does Not Direct the Secretary to Require a Separate Title 31 Report to Be Filed for Each Bank Account

The IRS continues its attempt to steer this Court away from what the Secretary actually requires U.S. persons to do under the broad authority Congress conferred upon him in section 5314, i.e., file a single Title 31 report per calendar year, the FBAR, if the person holds an aggregate balance in foreign banks exceeding $10,000.  The IRS glosses over the fact that

---

[3] The fact pattern has also been critically examined in *Tax Notes Federal*.  See David Michaels, *FBAR Penalties, The IRS's Crumbling Case for a Per-Account Interpretation*, Tax Notes Federal, Vol. 164, No. 10, Sept. 2, 2019, pgs. 1586-1587.

section 5314 is not self-executing, *see California Bankers Association v. Shultz*, 416 U.S. 21, 64

(1974), and that compliance with the provisions of section 5314 necessarily means compliance

with the Secretary's implementing regulations.  The IRS proffers as follows:

> Although Congress granted the Secretary broad authority to determine how a
> U.S. person must comply with the reporting obligation set forth in section 5314,
> it indicated that reporting of foreign accounts (i.e., relations) is to occur on an
> account-by-account basis. . . . Compliance with Congress's directive could not
> occur except by reporting the required information on a per-account basis."  U.S.
> Response to Bittner's Motion for Partial Summary Judgment ("U.S. Response
> Brief"), ECF # 42, pg. 12.

Section 5314 explicitly directs the Secretary to require U.S. persons to "*file reports*"

when that individual maintains a foreign bank account, and to provide certain information in

those reports when filed.  In exercising that "impressive sweep of [] authority" to implement

section 5314 as he saw fit, *Shultz*, 416 U.S. at 30, the Secretary DID NOT REQUIRE A U.S.

PERSON TO FILE A SEPARATE TITLE 31 REPORT FOR EACH BANK ACCOUNT.

Instead, the Secretary required U.S. persons who maintain an aggregate offshore account balance

greater than $10,000 to file ONE annual Title 31 report, *Report of Foreign Bank and Financial

Accounts*, by June 30th of the following year.  "The question is not what sort of reporting

requirements might have been imposed by the Secretary under the broad authority given him in

the Act, but rather what sort of reporting requirements he did in fact impose under that

authority".  *Id.* at 64.  The IRS chooses to "sweep" *Shultz* under the rug.

The *Shultz* Court highlighted another example of the Secretary's sweeping exercise of

authority under the BSA that is instructive here.  Section 5313(a) provides that when a domestic

financial institution is involved in a transaction for the payment, receipt, or transfer of United

States coins or currency, in an amount the Secretary prescribes by regulation, the institution and

any other participant in the transaction "shall *file a report* on the transaction at the time and in

the way the Secretary prescribes."  Despite that directive, the *Shultz* Court noted that the

Secretary's implementing regulations . . .

> require only that the financial institutions make the report to the Internal Revenue
> Service; he has not required any report from the individual parties to domestic
> financial transactions.  The applicable regulation, [reg. 1010.311], requires the
> financial institution to '*file a report* of each deposit, withdrawal, exchange of
> currency or other payment or transfer by, through, or to such financial institution,
> which involves a transaction in currency of more than $10,000.'  The regulation
> exempts certain types of currency transactions from this *reporting requirement* . . .

*Id*. at 58-59.[4]  See also *Ratzlaf v. U.S.*, 510 U.S. 135, 139 fn. 3 (1994) ("By regulation, the

Secretary ordered reporting of 'transaction[s] in currency of more than $10,000.'  [Reg.

1010.311, titled "*Filing obligations* for reports of transactions in currency"].  Although the

Secretary could have imposed a *report-filing requirement* on 'any ... participant in the

transaction,' 31 U.S.C. § 5313(a), the Secretary chose to require reporting by the financial

institution but not by any customer.  [*Id*.]"), *U.S. v. Varbel*, 780 F.2d 758, 762 (9th Cir. 1986)

("31 U.S.C. 5313(a) extends its coverage to financial institutions and any other participant in the

transaction.  The Secretary could have required participants other than financial institutions to

*file a report*; however, [reg. 1010.311] limits the *reporting requirement* to financial institutions

only.  [*Citing Shultz* at 58.]"), and *U.S. v. Shearson Lehman Bros., Inc.*, 650 F.Supp. 490, 497

(E.D. Penn. 1986) ("My starting point is the plain language of the statute and regulation.  In 31

---

[4] The emphasis to the quoted text is to highlight, as done in great detail in the Amended Amicus
Brief, ECF # 34, pg. 15 "The Meaning of the Phrase 'Reporting Requirements,'" that the phrase
"*reporting requirement*" in the context of the BSA refers to the *filing* of requisite Title 31 reports
in accordance with the Secretary's implementing regulations.  As set forth more fully below, the
IRS erroneously contends, using the Title 26 language of reg. 1010.350(a), that "Section 5314
and 31 C.F.R. § 1010.350(a) [] create a substantive *reporting requirement* with respect to each
foreign account."  U.S. Response Brief, ECF # 42, pg. 13.  Put another way, the IRS incorrectly
maintains that a separate Title 31 report is required to be filed for each bank account.  The IRS
examiner makes that very clear, erroneously concluding that "[f]or tax years 2007 through 2011,
Bittner was required *to file* FBARs for all foreign financial accounts."  IRS Motion for Summary
Judgment, ECF # 29-37, at DOJ 000262.

U.S.C. § 5313, Congress authorized the Secretary of the Treasury to enact regulations specifying when [currency transaction reports] are required.  Pursuant to this delegation, the Secretary of the Treasury, in [reg. 1010.311], required banks to *file reports* on <u>every transaction</u> exceeding $10,000.*"*).

The Secretary, in implementing section 5314, "could have imposed a report-filing requirement on" each bank account.  *Ratzlaf*, 510 U.S. at 139 fn. 3.  He did not.  Instead, he chose to require a U.S. person *to file* only ONE Title 31 report per calendar year, reg. 1010.350(a), and only if an aggregate offshore account balance exceeding $10,000 was maintained, reg. 1010.306(c).  The IRS's position—that "[c]ompliance with Congress's directive could not occur except by reporting the required information on a per-account basis," U.S. Response Brief, ECF # 42, pg. 12, is misplaced.  As made irrefutably clear by the Supreme Court in *Shultz*, a case the IRS continues to ignore, and Bittner has not discussed, the BSA "is not self-executing, and were the Secretary to take no action whatsoever under his authority there would be no possibility of criminal or civil sanctions being imposed on anyone . . ."  *Id*. at 64.  In other words, a U.S. person must <u>comply with the Secretary's implementing regulations</u> to avoid penalties for report-filing violations, i.e., **failure-to-file** (regs. 1010.350(a) (Title 31 report "prescribed under 31 U.S.C. 5314 to be filed . . . is the Report of Foreign Bank and Financial Accounts") and 1010.306(c) (if the aggregate balance exceeds $10,000)), **delinquency** (reg. 1010.306(c) (Title 31 report due to be filed June 30th of the following year), and **accuracy** (regs. 1010.350(a) ("shall provide such information as shall be specified" in the FBAR, and 1010.306(d) ("All information called for in [the FBAR] shall be furnished" in the filed report)).

### III.    Reg. 1010.350(a) – the IRS Doubles Down on It's Specious Read

The IRS also inaccurately claims that the "regulations promulgated by the Secretary also

implement Congress's directive that reporting occur on an account-by-account basis."  U.S.
Response Brief, ECF # 42, pg. 13.  Specifically, the IRS contends that "Section 5314 and 31
C.F.R. § 1010.350(a) [] create a substantive *reporting requirement* with respect to each foreign
account.  Necessarily, then, a violation of the *reporting requirements* in Section 5314 and its
implementing regulations relates to a single account and not to the annual FBAR form as a
whole."  *Id*.  The justification for this flawed position, the IRS inexplicably maintains, is reg.
1010.350(a)'s Title 26 language:

> The regulations provide[] that "[e]ach United States person having a financial
> interest in, or signature authority over, a bank, securities, or other financial account
> in a foreign country shall report such relationship to the Commissioner of Internal
> Revenue for each year such relationship exists and shall provide such information as
> shall be specified in a reporting form prescribed under 31 U.S.C. 5314 [i.e., the FBAR]
> to be filed by such persons."  31 U.S.C. [sic] § 1010.350(a) (emphasis added).  Thus,
> the regulations make explicit what was implicit in Section 5314(a), that is, that the
> "relationship" (id.) pertains to each foreign account with respect to which the U.S.
> person has the requisite financial interest or authority. . . .  *Id*.

Not so.  Section 5314(a) <u>explicitly</u> sets forth what the Secretary was required to
implement—regulations requiring U.S. persons *to file* reports when they maintain foreign bank
accounts.  Congress left the *reporting requirement* details, i.e., whether a separate report be filed
for each account, or each deposit or withdrawal, or whether one report be filed per calendar year,
to the Secretary.  The Secretary's regulations <u>explicitly</u> require ONE Title 31 report be *filed* per
calendar year by June 30th of the following year if an aggregate foreign account balance greater
than $10,000 was maintained, and *if filed*, the Secretary mandates that the FBAR be in all ways
materially accurate.  The IRS admitted same in *Patel*.  See Amended Amicus Brief, ECF # 34,
pg. 11.

That said, the IRS continues to attempt to sell this Court the same bill of goods it did in
*Boyd*, that reg. 1010.350(a) sets forth a Title 31 requirement to file a separate Title 31 report for

*each* bank account.[5]  As set forth in the Amended Amicus Brief, ECF # 34, pgs. 16-19, reg.

1010.350(a) plainly sets forth both the Title 26 requirement to report offshore relationships to the

Commissioner of Internal Revenue on Schedule B of yearly federal income tax returns, as well

as the Title 31 *reporting requirement to file the FBAR*.  ECF # 34, pgs. 13-16.  The Supreme

Court agrees.

> The regulations require each person subject to the jurisdiction of the [U.S.] to
> make a report <u>on yearly tax returns</u> of any "financial interest in ... a bank ...
> account in a foreign country." 31 CFR s 103.24.[6] [**Title 26**] Violations of the
> reporting requirement(s) of [section 5314] as implemented by the regulations
> are also subject to civil and criminal penalties. [**Title 31**]  (Text, emphasis added).

It is by no mistake that the Court injected reg. 1010.350(a) immediately after the first sentence of

the excerpt because the Court recognized, in construing the plain language of the regulation, that

the Secretary was highlighting in reg. 1010.350(a) the Title 26 requirement to report offshore

bank relationships to the Commissioner of Internal Revenue on "yearly tax returns."  The Patels

have offered irrefutable evidence that the Secretary recognizes reg. 1010.350's Title 26 mandate,

including FinCEN's proposed change to the Title 26 language (adding "on a return"), the

Secretary's explanation of the dual nature of the regulation in his 2002 report,[7] and statements on

the IRS website and admissions made in *Patel* relating thereto.  Amended Amicus Brief, ECF #

34, pgs. 18-19.

The legislative history sheds a great deal of light on this issue.  "In statutory

interpretation disputes . . . it is inappropriate to resort to legislative history before consulting the

---

[5] The bifurcated nature of reg. 1010.350(a) was not brought to the attention of the district court
in *Boyd*.  For the industry's only comprehensive discussion of the dual nature of reg.
1010.350(a), see Michaels, *FBAR Penalties,* supra note 3, pgs. 1581-1583.
[6] "31 CFR s 103.24" is now reg. 1010.350(a).
[7] Treasury, *A Report to Congress in Accordance with Sec. 361(b) of the Uniting and
Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct
Terrorism Act of 2001* (April 26, 2002), at 5.

statute's text and structure." *Food Marketing Institute v. Argus Leader Media*, 139 S.Ct. 2356, 2364 (2019).  See also *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989) (Statutory language "cannot be construed in a vacuum.  It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.").  That said, it is important to note that the legislative history, reproduced in relevant part below, presents section 5314, sans the burden provision, and section 5321(a)(5) prior to its amendment, without a discussion of (1) the fact that section 5314 is not self-executing, (2) how the Secretary exercised his "sweeping authority" in implementing section 5314, i.e, one Title 31 report filed per calendar year, not a separate filing for *each* bank account, and only if an aggregate balance greater than $10,000 is maintained, (3) that the statutory and regulatory scheme as a whole requires the filing of requisite Title 31 reports, by fixed due dates, and only if transactions exceed a $10,000 threshold, or (4) the necessity for applying the singular plural rule in applying penalties to ensure that all terms in the statutory scheme matter, i.e., the terms "violation," "violating," and "violates" in section 5321(a)(5) are not rendered meaningless. Moreover, the House Bill inaccurately states what became the second prong of the reasonable cause exception, providing that the "penalty may be waived if any income from the account was properly reported on the income tax return . . ."  That language ultimately was changed to require that "the amount of the transaction or the balance in the account at the time of the transaction was properly reported."  Section 5321(a)(5)(B)(ii)(II).

After summarizing section 5314 as it appears in the BSA, Congress offers a couple of invaluable nuggets—a summary of the bifurcated nature of reg. 1010.350(a), underscored below, and the use of familiar phrasing, "reporting requirements" and "failure to report," which in the context of the BSA refer to failures to file reports or filing same containing material omissions or

misstatements.  The history also references the 2002 Report, which Congress reviewed and relied

upon in drafting the non-willful penalty provision and increasing willful penalty exposure for

violations of the Secretary's implementing regulations.

11. Penalty on failure to report interests in foreign financial accounts (sec. 621 of the
House bill, sec. 412 of the Senate amendment, and sec. 5321 of Title 31, United
States Code)[8]

### PRESENT LAW

The Secretary must require citizens, residents, or persons doing business in the
United States to keep records and *file reports* when that person makes a transaction
or maintains an account with a foreign financial entity.  In general, <u>individuals
must fulfill this requirement by answering questions regarding foreign accounts
or foreign trusts that are contained in Part III of Schedule B of the IRS Form 1040.
Taxpayers who answer "yes" in response to the question regarding foreign accounts
**must then *file*** </u> Treasury Department Form TD F 90.22.1 [the FBAR].  This form must
be filed with the Department of the Treasury, and not as part of the tax return that is
filed with the IRS.
.  .  .  .  .

On April 26, 2002, the Secretary submitted to the Congress a report on these
*reporting requirements*.

After stating that an individual must first report interests on a tax return (Title 26),

Congress then makes clear in the very next sentence that a U.S. person must then *file the FBAR*

(Title 31).  Immediately thereafter, Congress explained that "[t]he Secretary may impose a civil

penalty on any person who willfully violates this *reporting requirement* (i.e., "must then file the

[FBAR]"), a phrase synonymous with failures to file requisite Title 31 reports or filing same

containing material omissions or misstatements.  Amended Amicus Brief, ECF # 34, pg. 15.

Along those lines, the House Bill provides another invaluable nugget.

[]. . . The penalty may be waived if any income from the account was properly
reported on the income tax return and there was reasonable cause for the *failure
to report*.

---

[8] American Jobs Creation Act of 2004, Pub. L. No. 108-357, 118 Stat. 1418 (2004).

"*Failure to report*" in the context of the BSA refers to violations of the *reporting requirements* of the Big Four (sections 5313, 5314, 5316, and 5331).  The IRS agrees.  "[F]ailure to report, not only includes a complete failure to file a report, it also includes a failure to timely file a report and filing a report with material false statements or omissions."  IRM 4.26.5.4(5).  That said, the House's language, in stating that the "penalty may be waived . . . if there was reasonable cause for the *failure to report*," is wholly consistent with the plain language of the statutory and regulatory scheme, construed under the singular plural rule, that penalties attach to filing violations of the Secretary's implementing regulations, not accounts.

## IV.    The IRS's Hypotheticals

The IRS erroneously claims that Bittner's position that violations of the *reporting requirements* of section 5314 as implemented in the Secretary's regulations, namely, the failure-to-file the FBAR, filing the Title 31 report late, or filing same containing a material omission or misstatement, cannot be reconciled with the operation of the reasonable cause exception or the willful penalty calculation provisions of section 5321(a)(5).  The IRS proffers two hypotheticals, not addressed by Bittner, that bludgeon the statutory and regulatory scheme, rendering the terms "violation," "violating," and "violates" as they appear in section 5321(a)(5) meaningless.  In regards to reasonable cause, the IRS specifically contends that the "reasonable cause exception in Section 5321(a)(5)(B)(ii) . . . applies on a per-account basis because a violation of Section 5314 relates to one account."  U.S. Response Motion, ECF # 42, pg. 17.

As noted above, the Examiner in the instant case makes very clear that the IRS has usurped the Secretary's broad authority in implementing the *reporting requirements* of section 5314.  Specifically, the IRS takes the incredulous position that Bittner was not required to file a single FBAR per calendar year, but instead, "[f]or tax years 2007 through 2011, Bittner was

required *to file* FBARs <u>for all foreign financial accounts</u>."  IRS Motion for Summary Judgment,

ECF # 29-37, at DOJ 000262.  And the IRS takes this position despite the fact that the Secretary

explained to Congress that (1) the "FBAR is a Title 31 report," 2002 Report at 4, fn. 4, and (2)

that the FBAR is the single "*report filed* with the Secretary stating that the person filing has a

financial interest in, or signature authority over, foreign financial *accounts* in a foreign country

with an aggregate value exceeding $10,000 at any time during the calendar year."  *Id*. at 5.

Moreover, the IRS acknowledges the Secretary's explanation, stating that an FBAR "must be

*filed* for each year that the person has a financial interest in ... foreign financial *account(s)* whose

aggregate balance exceeds the $10,000 threshold at any time during the year."  IRM

4.26.16.4(2).  Importantly, the IRS admitted in *Patel* that the FBAR is a Title 31 report, that U.S.

persons who maintain the requisite offshore account balance in multiple accounts are required to

sign and file ONE FBAR per calendar year, see Amended Amicus Brief, ECF # 34, pg. 14, and

that the failure to accurately list all accounts in a filed FBAR would be a violation of the

provisions of section 5314, namely, regs. 1010.350(a) and 1010.306(d) (**accuracy violation**).

*Id*., pg. 11.  If a separate FBAR were to be filed for each account, as the IRS would have it, every

filing would result in an accuracy violation because each Title 31 report would omit material

information required to be supplied in the filed report—all bank accounts and related

information.  The IRS's position cannot be reconciled with the informational mandates of regs.

1010.350(a), 1010.350(g),  and 1010.306(d).

## A.      The IRS's Reasonable Cause Example

[S]uppose U.S. person [Jaxon] timely files a FBAR reporting one foreign account
accurately, but non-willfully omitting three foreign accounts. For the omitted accounts,
suppose that [Jaxon] did not know that [he] was a co-owner of the first account, that
[his] accountant advised [him he] did not have to report the second account, and that
he did not tell his accountant about the third account because it generated no income
and [he] mistakenly believed that such accounts did not have to be reported. . .  It is

clear . . . that [Jaxon] in that scenario would have to prove reasonable cause separately with respect to each of the three omitted accounts because satisfying reasonable cause for one of the omitted accounts would not satisfy reasonable cause with respect to the other two omitted accounts.  U.S. Response Brief, ECF # 42, pg. 16.

U.S. person Jaxon, who maintained an aggregate offshore account balance greater than $10,000, was required to file a single Title 31 Report, the FBAR, by June 30th of the following year.  Jaxon timely filed his FBAR.  The Title 31 report, however, was inaccurate—three offshore accounts, and information relating thereto, i.e., bank names, bank addresses, bank account numbers, bank account balances, co-owners, etc., were not listed in his filed report.  Jaxon had non-willfully violated the *reporting requirements* of section 5314 and its implementing regulations in *filing a report containing a material omission or misstatement*.[9]  He then filed an amended FBAR,[10] accurately reporting the omitted information, including a proper reporting of the balances in his accounts, hoping to be granted relief from penalty exposure for his singular accuracy violation under the reasonable cause exception.

### 1.     Jaxon's Potential Penalty Exposure

Section 5321(a)(5)(A) authorizes the Secretary to impose a civil money penalty on any person "who violates ... any provision of section 5314" as implemented in his regulations.  Section 5321(a)(5)(B)(i) provides that "the amount of any civil penalty imposed under subparagraph (A) shall not exceed $10,000."  *Shultz* makes clear that "[v]iolations of the

---

[9] As set forth above, the IRS admitted in *Patel* that the accurate listing of accounts holding the aggregate offshore account balance is part of the information required to be provided in a filed FBAR; the failure to satisfy that reporting requirement is a violation of the provisions of section 5314, namely regs. 1010.350(a) and 1010.306(d) (**accuracy violation**).  Amended Amicus Brief, ECF #34, pg. 11.

[10] The hypothetical omits this crucial step a U.S. person must take to seek relief from penalties for an accuracy violation under the reasonable cause exception.  A U.S. person must file an amended report properly reporting the balances in all of his previously omitted accounts before relief is granted.  Sec. 5321(a)(5)(B)(ii)(II).  See Amended Amicus Brief, ECF #34, pgs. 22-27.

reporting requirement[s] of [section 5314] as implemented by the regulations are...subject to...penalties." 416 U.S. at 37.   In implementing the provisions of section 5314, the Secretary requires a U.S. person who maintains an aggregate offshore account balance greater than $10,000 at any time during a calendar year to file ONE Title 31 report, the FBAR, by June 30th of the following year.   The Secretary further mandates that all information specified in the FBAR be furnished when the report is filed.   The Secretary, in exercising his sweeping authority, does not require, as the IRS erroneously maintains, a separate report-filing requirement for each bank account.   Thus, the failure to comply with any of those provisions of section 5314—failure to file the FBAR at all, regs. 1010.350(a) and 1010.306(c) (**failure-to-file violation**), filing the FBAR late, reg. 1010.306(c) (**delinquency violation**), or filing the FBAR containing a material omission or misstatement, regs. 1010.350(a) and 1010.306(d) (**accuracy violation**) —subjects a U.S. person to a potential non-willful penalty of $10,000.

Jaxon non-willfully filed a timely but inaccurate FBAR (regs. 1010.350(a) and 1010.306(d)) (**accuracy violation**).   He committed one report-filing violation of the Secretary's regulations (i.e., the provisions of section 5314).   Congress plainly authorized the Secretary to impose a maximum discretionary penalty of $10,000 to attach to that accuracy violation.   Sections 5321(a)(5)(A) & (B).   Plain and simple.

## 2.      Jaxon Must Show Reasonable Cause for His Accuracy Violation

Section 5321(a)(5)(B)(ii) provides that "[n]o penalty shall be imposed...with respect to any violation [failure-to-file, delinquency, or, as here, **accuracy**] if...(I) such [**accuracy**] violation was due to reasonable cause *([Jaxon] did not know that [he] was a co-owner of the first account, that [his] accountant advised [him he] did not have to report the second account, and that he did not tell his accountant about the third account because it generated no income and*

15

*[he] mistakenly believed that such accounts did not have to be reported*), and (II)...the balance in

the account[s] at the time of the transaction[s] [were] properly reported (*Jaxon filed an accurate,*

*amended FBAR properly listing the balances in his offshore accounts in response to questions*

*posed in the report*).  If Jaxon did not properly "cure" his accuracy violation by accurately listing

all of his "account balances" in his amended report, he would not qualify for the reasonable

cause exception.[11]

The IRS's contention that "Jaxon [has] to prove reasonable cause separately with respect

to each of the three omitted accounts because satisfying reasonable cause for one of the omitted

accounts would not satisfy reasonable cause with respect to the other two omitted accounts" has

its basis in the IRS's fatally flawed reasoning that "Section 5321(a)(5)(B)(ii) . . . applies on a

per-account basis because a violation of Section 5314 relates to one account."  U.S. Response to

Motion, ECF # 42, pg. 17.  Again, the IRS seeks to remove the implementing piece to the puzzle,

failing to acknowledge the actual filing violation committed to which a penalty may attach.[12]

Jaxon was required to provide "[a]ll information called for" in his filed report.  Reg.

1010.306(d); *accord* reg. 1010.350(a) (person filing the FBAR "shall provide such information

as shall be specified in" the Title 31 report).  He did not.  To get relief from penalty exposure for

that singular accuracy violation, he has to offer a reasonable explanation as to why "all

---

[11] The application of the singular-plural rule was comprehensively addressed in the Amended Amicus Brief, ECF #34, pgs. 23-30, a requisite construction rule that ensures the Secretary's implementing regulations remain operative and work with contextual flexibility as intended.
[12] The IRS's patently specious reasoning was exposed in *Patel*, in which the IRS admitted that filing a report containing a material omission, i.e., failing to accurately list the accounts in which the aggregate foreign account balance is maintained, as in the instant hypothetical, is a violation of the provisions of section 5314.  Amended Amicus Brief, ECF #34, pg. 11.  Moreover, the IRS specifically acknowledges Bittner's position, that the potential filing violations to which penalties may attach in section 5314 "not only include[] a complete failure to file a report, [they] also include[] a failure to timely file a report and filing a report with material false statements or omissions.").  IRM 4.26.5.4(5).

information called for" in the FBAR was not provided.  Whether there is a different proffered

explanation as to why multiple items of material information were omitted is of no consequence.

If any of Jaxon's omissions are not considered to be reasonably justified by the examiner, i.e.,

the omission of one of the three accounts from his filed report was not reasonably explained, the

reasonable cause exception will be unavailable and Jaxon will have potential penalty exposure of

$10,000 for filing his FBAR containing a material omission or misstatement.

### B.  The IRS's Willful Example

> Bittner's position also does not provide a resolution when an FBAR presents both
> willful and non-willful noncompliance with *reporting requirements*.  For example,
> suppose [Jaxon] files a timely FBAR accurately reporting one account, non-willfully
> omitting a different second account for which he was not able to show reasonable cause,
> and willfully omitting a third account he wanted to conceal.  If a violation of Section
> 5314 and its implementing regulations were related to the FBAR form itself, instead
> of to each account required to be reported on it, then it is unclear which penalty – and
> therefore which statutory maximum – would apply in that scenario.  Bittner's per form
> approach creates an unworkable interpretation of section 5321(a)(5).  U.S. Response
> Brief, ECF # 42, pg. 17.

Absolutely nothing is unclear as to how section 5321(a) would operate under those

circumstances.  The starting point is identifying the actual report-filing violation committed.

And the IRS gets one thing right—the violations to which penalties may attach (failure-to-file,

filing late, or filing an inaccurate report) are the same whether the conduct in violating the

implementing regulations was willful or not.  IRS Motion for Partial Summary Judgment, ECF #

29, pg. 22.  Jaxon timely filed his FBAR, but he omitted material information required to be

supplied in his filed report.  He committed one violation, he filed an FBAR containing a material

omission or misstatement, regs. 1010.350(a) and 1010.306(c) (**accuracy violation**).

The next query is always the same—did the U.S. person willfully fail to file the FBAR,

file it late, or omit material information in his filed report?  If the answer is yes, as here, section

5321(a)(5) provides for a penalty calculation mechanism designed to ensure the penalty is

commensurate with the U.S. person's conduct and the amount of the concealed bank assets. Jaxon willfully concealed an item of information required to be listed on his filed FBAR, a bank account and information related thereto.  His accuracy violation was willful.  That forecloses the availability of the reasonable cause exception because the exception is unavailable for U.S. persons who willfully violate the provisions of section 5314 (to have a penalty waived under the exception, the failure to provide "[a]ll information called for in" an FBAR must stem from non-willful behavior in toto, such that a U.S. person could cure his violation by filing an amended FBAR, accurately listing the balances in the accounts of the previously omitted accounts).  Sec. 5321(a)(5)(C)(ii).  The IRS's contention that Jaxon would be able to raise a reasonable cause defense at all for an individual account is nonsensical, and is again borne out of its erroneous contention that a separate Title 31 report is filed for each account.

### 1.  Jaxon's Potential Penalty Exposure

Section 5321(a)(5)(A) authorizes the Secretary to impose a civil money penalty on any person "who violates ... any provision of section 5314" as implemented in his regulations. Section 5321(a)(5)(B)(i) provides that "[e]xcept as provided in subparagraph (C), the amount of any civil penalty imposed under subparagraph (A) shall not exceed $10,000."  Section 5321(a)(5)(C) provides that "in the case of any person willfully violating, or willfully causing any violation of, any provision of section 5314, the maximum penalty under subparagraph (B)(i) shall be increased [from $10,000] to the greater of $100,000, or 50 percent of the amount determined under subparagraph (D).  Section 5321(a)(5)(D)(ii) provides that "the amount determined under this subparagraph is—in the case of a violation involving a failure to report the existence of an account or any identifying information required to be provided with respect to an account, the balance in the account at the time of the violation."

18

### 2.   The Willful Penalty Calculation

Let's assume that Jaxon held his aggregate offshore account balance of $750,000 equally in his three accounts.  Jaxon's willful behavior has opened the door to a potential penalty, at a minimum, of 10 times that of a non-willful accuracy violation.  The potential penalty ceiling could be much higher, however, if half the balance in the account or accounts[13] "involv[ed]" in his willful violation exceeds $100,000.  To be clear, this is a penalty statute which seeks to set a discretionary ceiling commensurate with the conduct of the offender, willful or not.  It does not create a new report-filing violation penalty that renders each account a separate violation of the Secretary's implementing regulations.  In any event, Jaxon's willful accuracy violation "involv[ed] the failure to report the existence of [his third account]," the balance of which was $250,000.  Half that number is $125,000, which is greater than the $100,000 minimum discretionary penalty ceiling for a willful violation.  As such, Jaxon could be facing a $125,000 penalty for filing his FBAR containing a material omission or misstatement.  Regs. 1010.350(a) & 1010.306(c) (**accuracy violation**).  Plain and simple.

It is important to note here that the statute works as intended in any factual situation only when report-filing violations of the Secretary's implementing regulations to which penalties may attach are respected.  Congress anticipated Jaxon's predicament, calling only for the balances of those accounts "involv[ed]" in the willful violation to be used in determining the maximum penalty for that violation.  The willful statute has what can be loosely described as a "quasi-reasonable cause" exception in calculating the maximum discretionary penalty ceiling for willful

---

[13] The application of the singular-plural rule was amply addressed in the Amended Amicus Brief, which necessarily applies because the Secretary determined that a single Title 31 report be filed per calendar year, which invariably will lead to violations "involving the failure to report the existence of account(s).")  Amended Amicus Brief, ECF # 34, at pgs. 21-30 (willful discussion at pgs. 27-30).

violations.  If the examiner is persuaded that an account or information related thereto was non-willfully omitted, or the U.S. person persuades the trier of fact that his willful behavior involved certain omissions and not others, he can limit his potential exposure to a number that is commensurate with his behavior.  Congress has indeed crafted a well-oiled machine in calculating penalties.[14]

## V.      Consent to the Filing of this Amicus Reply Brief

### A.  The IRS's Position

The IRS opposes the filing of this motion on two grounds:  (1) that it is untimely, and (2) that "there is plenty of coverage without further submission."

#### 1.   The Patels' Amicus Reply Brief Is Timely

The Federal Rules of Appellate Procedure do not specifically state when an amicus reply brief must be filed.  However, Rule 29(a)(6) provides that an "amicus curiae must file its brief, accompanied by a motion for filing when necessary, no later than 7 days after the principal brief of the party being supported is filed."  Bittner filed his Reply Brief on April 24, 2020.  The Patels' motion for leave to file a reply brief in support of Bittner and their proposed reply brief were filed May 1, 2020, 7 days after Bittner's motion was filed.  The Patels respectfully waited for Bittner to reply to the U.S.'s response to ensure that duplicative information would not be provided.  On May 4, 2020, the docket room determined this motion and the proposed amicus

---

[14] There may be circumstances under which a U.S. person may be subject to non-willful and willful violations with a single filing.  For instance, if the person negligently ("non-willfully") filed his FBAR late and he intentionally omitted 2 accounts in his delinquent FBAR, he would be subject to a maximum non-willful delinquency violation penalty of $10,000 and a willful penalty of $100,000 or half the balance of the omitted accounts, whichever is greater, for his willful accuracy violation.

reply brief were "filed using the wrong docket event."  The Patels cured their filing error the same day.

> **2.    The Amicus Reply Brief Addresses IRS Arguments Not Addressed by Bittner and Provides Coverage Necessary for Understanding the Application of the Reasonable Cause Exception**

Information provided here is not duplicative in any measurable way to that which was covered in the parties' respective briefs.  Indeed, this reply provides coverage highly relevant in assisting the government's case on the issue of reasonable cause, information it failed to proffer or seemingly understand.  Moreover, additional coverage on the bifurcated nature of the regulation, namely, the legislative history discussion, as well as the detailed analysis of the government's hypotheticals, wholly ignored by Bittner, will greatly assist this Court is digesting the nuances of Title 31.

### B.  Bittner

Bittner's counsel opposes on the ground that the Patels are not before this Court and that she "feels it is not appropriate."

> **1.    The Patels' Amicus Filings Are Useful**

The purpose of allowing amicus filings is for a Court to glean invaluable information from "friends of the court," individuals or entities not before the Court who add assistance in navigating complex and novel issues.  The Patels are doing just that, expending a significant amount of resources to assist this Court, while carefully crafting their filings so as not to duplicate that which has been proffered by the parties.  Bittner did not discuss the bifurcated nature of the regulation, an issue his representatives felt "too difficult to follow," or the IRS's hypotheticals which mirror those posed by the IRS in the Ninth Circuit, which are specifically

designed to try and upend the Patels' examples on the operation of the reasonable cause exception and the application of willful penalties.

## 2.   The Patels' Amicus Filings Are Appropriate

As to the appropriateness of the filing, it may very well be that Bittner was concerned from the outset, after reviewing the Patels' Ninth Circuit briefing, that injecting the Patels' comprehensive discussion on the application of reasonable cause would be detrimental to that defense.  While that is indeed the case, this Court must understand how the statutes work, as this issue will invariably arise in the Fifth Circuit, the Ninth Circuit, and ultimately the Supreme Court.

## VI.   Conclusion

For the foregoing reasons, the Patels respectfully request that this Court grant Bittner's Motion for Partial Summary Judgment, namely, that penalties for violations of section 5314 as implemented in Secretary's implementing regulations apply per report-filing violation, i.e., filing the FBAR late (reg. 1010.306(c)), not per-account.

Respectfully submitted,

/s/  David Michaels
DAVID MICHAELS
Ca. Bar. No. 235985
*Admitted in E.D. Texas
310 Maui Drive
Placentia, CA 92870
Phone:  (714) 742-9561
Fax:  (714) 985-0564
dmichaels0867@hotmail.com

## <u>CERTIFICATE OF SERVICE</u>

IT IS HEREBY CERTIFIED that service of the foregoing Amicus Reply Brief was made on May 4, 2020, by the Clerk's ECF filing system to:

CLARK HILL STRASBURGER                    Herbert W. Linder
Farley P. Katz                                          Attorney, Tax Division
Rachael Rubenstein                               U.S. Dept. of Justice
2301 Broadway St.                                717 N. Harwood, Suite 400
San Antonio, Texas 78209                    Dallas, Texas 75201

<u>/s/ David Michaels</u>
DAVID MICHAELS