UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-81147-BLOOM/Reinhart

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ISAC SCHWARZBAUM,

    Defendant.

_____/

## ORDER ASSESSING PENALTIES

**THIS CAUSE** is before the Court following the Court's Findings of Fact and Conclusions of Law, ECF No. [92] ("Decision"). The parties have filed supplemental briefing regarding the proposed amount of penalties to be assessed against Defendant Isac Schwarzbaum ("Defendant" or "Schwarzbaum") for a non-willful FBAR violation in tax year 2006, and willful FBAR violations for tax years 2007, 2008, and 2009. The Court has carefully considered the United States of America's ("USA" or "Plaintiff") Supplemental Post-Trial Brief, ECF No. [93] ("USA's Brief"), Schwarzbaum's Supplemental Brief, ECF No. [94] ("Schwarzbaum's Brief"), the record in this case and the applicable law, and is otherwise fully advised. For the reasons set forth below, the Court will assess **$12,907,952.00** in penalties against Schwarzbaum for willful violations of the FBAR filing requirements for tax years 2007, 2008, and 2009.

In its Decision, the Court determined that Schwarzbaum's violation of the FBAR reporting requirement for tax year 2006 was non-willful, and that the subsequent FBAR violations for tax years 2007, 2008, and 2009 were willful. *See*, ECF No. [92]. However, based upon the evidence presented at trial, the Court also concluded that the penalty assessed by the USA did not conform

Case 4:19-cv-00415-ALM Document 63-1 Filed 05/18/20 Page 2 of 17 PageID #: 1973
Case 9:18-cv-81147-BB Document 98 Entered on FLSD Docket 05/16/2020 Page 2 of 17

Case No. 18-cv-81147-BLOOM/Reinhart

with 31 U.S.C. § 5321, because rather than utilizing 50% of the balance in each account at the time of the violation (which was the deadline to file the FBAR or June 30 of each year), the USA used the highest aggregate balance in each of the accounts for each year as reported by Schwarzbaum on a penalty calculation worksheet provided in connection with his OVDI disclosures. *Id*. As a result, the Court concluded that the IRS used the incorrect base amounts to calculate the FBAR penalties in this case. *Id*.

At the outset, the Court notes that despite its request that the parties submit additional briefing only with respect to the proposed amount of penalties to be assessed based upon the findings in its Decision, Schwarzbaum's Brief nevertheless presents a host of arguments that are inappropriate given the narrow scope of the Court's request. Moreover, those arguments are being raised for the first time in this case and, in any event, lack merit.

## I. Additional arguments

### A. Schwarzbaum's arguments

First, Schwarzbaum argues that the Court should set aside the 2007-2009 penalty assessments because the IRS did not follow the statute with respect to the base amounts used to calculate such penalties. The argument is unnecessary, as the Court in its Decision expressly found that the IRS used the incorrect base amounts to calculate the FBAR penalties, and for that very reason, directed the parties to provide the Court with the correct amount of penalties in keeping with the findings in its Decision. As such, it appears that Schwarzbaum is asking the Court to do what it has already done.

Second, Schwarzbaum argues that this case must be remanded back to the IRS for further action, and that the IRS upon remand is time-barred from assessing FBAR penalties. This is the

2

Case 4:19-cv-00415-ALM Document 63-1 Filed 05/18/20 Page 3 of 17 PageID #: 1974
Case 9:18-cv-81147-BB Document 98 Entered on FLSD Docket 05/16/2020 Page 3 of 17

Case No. 18-cv-81147-BLOOM/Reinhart

first time that Schwarzbaum has argued for remand of this case to the IRS. As such, the argument has not been properly raised and the Court will not consider it at this late stage.

Third, Schwarzbaum argues that, because the Court found that the penalties assessed for the 2007-2009 tax years were not in accordance with law, such penalties are invalid, and the USA may not now provide new reasons or explanations in an attempt to validate unlawful penalty assessments. Schwarzbaum's argument lacks merit. The Court found upon a *de novo* review that Schwarzbaum's violations of the FBAR reporting requirement were willful for tax years 2007-2009 for the reasons set forth in the Decision. Therefore, the Court ordered the parties to submit additional briefing with respect to the amount of proposed penalties based upon utilizing what the Court determined to be the proper base amounts—the account balances in each account as of June 30 of each year. The USA fully complied with the Court's directive in the USA's Brief, while Schwarzbaum has not.

Finally, Schwarzbaum argues that the applicable statute should be interpreted to apply penalties per FBAR, rather than per unreported account, claiming that there this is an unsettled issue of law regarding whether the flat statutory penalty amounts apply per account or per FBAR. Therefore, Schwarzbaum reasons further that the penalties assessed against him should be capped at $100,000.00 per tax year. However, Schwarzbaum has failed to cite any case in which a court has interpreted the statute in the manner he now urges. In addition, upon review, the Court finds that the plain meaning of the statute does not support Schwarzbaum's interpretation.

With any question of statutory interpretation, the Court presumes that Congress "says in a statute what it means and means in a statute what it says there." *Conn. Nat. Bank v. Germain,* 503 U.S. 249, 254 (1992) (citing *United States v. Ron Pair Enterps., Inc.,* 489 U.S. 235, 241-42 (1989)) (further citations omitted). "The first rule in statutory construction is to determine whether the

3

Case 4:19-cv-00415-ALM Document 63-1 Filed 05/18/20 Page 4 of 17 PageID #: 1975
Case 9:18-cv-81147-BB Document 98 Entered on FLSD Docket 05/16/2019 Page 4 of 17

Case No. 18-cv-81147-BLOOM/Reinhart

language at issue has a plain and unambiguous meaning with regard to the particular dispute. If the statute's meaning is plain and unambiguous, there is no need for further inquiry." *U.S. v. Silva*, 443 F.3d 795, 797-98 (11th Cir. 2006) (internal quotations omitted); *see Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (where "the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (internal quotation and citation omitted). "This is so because '[t]he plain language is presumed to express congressional intent and will control a court's interpretation.'" *Moss v. GreenTree-Al, LLC*, 378 B.R. 655, 658 (S.D. Ala. 2007) (quoting *U.S. v. Fisher*, 289 F.3d 1329, 1338 (11th Cir. 2002)) (alterations in the original). It is a court's duty "to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (citations omitted). And, "[w]hen interpreting a statute, words must be given their 'ordinary or natural' meaning[.]" *Leocal v. Ashcroft*, 543 U.S. 1, 8 (2004) (citation omitted). In any event, "[a] court 'should not interpret a statute in a manner inconsistent with the plain language of the statute, unless doing so would lead to an absurd result.'" *Moss*, 378 B.R. at 658 (quoting *Silva*, 443 F.3d at 798).

The statute at issue in this case states as follows:

(C) Willful violations.—In the case of any person willfully violating, or willfully causing any violation of, any provision of section 5314—
    (i) the maximum penalty . . . shall be increased to the greater of—
        (I)    $100,000, or
        (II)   50 percent of the amount determined under subparagraph (D),
                        [. . .]
(D) Amount.—The amount determined under this subparagraph is—
                        [. . .]
(ii) in the case of a violation involving a failure to report the existence of an account or any identifying information required to be provided with respect to an account, the balance in the account at the time of the violation.

4

Case 4:19-cv-00415-ALM Document 63-1 Filed 05/18/20 Page 5 of 17 PageID #: 1976
Case 9:18-cv-81147-BB Document 98 Entered on FLSD Docket 05/16/2019 Page 5 of 17

Case No. 18-cv-81147-BLOOM/Reinhart

31 U.S.C. § 5321(a)(5). Contrary to Schwarzbaum's contention, the language of the statute is clear—in the event of a willful violation, the maximum penalty to be assessed is the greater of $100,000 or 50% of the balance in the account at the time of the violation. The statute does not anchor the assessment of the penalty specifically to the FBAR, but rather, to an account. To interpret the statute in the manner Schwarzbaum urges would render subsection (D)(ii) meaningless, or its application illogical.

For example, in the case of an individual who willfully failed to file a FBAR for a single tax year disclosing one foreign bank account containing $12,000.00 at the time of violation, the maximum penalty under the statute is $100,000.00 (because it is greater than 50% of the balance in the account, which would total $6,000.00). Schwarzbaum urges the same result. However, this interpretation ignores the fact that for tax year 2008 alone, Schwarzbaum willfully failed to report eleven (11) foreign bank accounts with balances totaling at least $17,450,000.00 on the date of violation. Such an outcome leads to an absurd result, and one which does not fit with the purpose of the statute, which is "to require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings, or in the conduct of intelligence or counterintelligence activities, including analysis, to protect against international terrorism." 31 U.S.C. § 5311.

Because the Court finds that the plain language of the statute is dispositive, it need not delve into Congress's intent. *See Birnholz v. 44 Wall St. Fund, Inc.*, 880 F.2d 335, 341 (11th Cir. 1989), *certified question answered*, 559 So. 2d 1128 (Fla. 1990) ("Thus, the cardinal rule of statutory construction is that '[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.'")

5

Case 4:19-cv-00415-ALM Document 63-1 Filed 05/18/20 Page 6 of 17 PageID #: 1977
Case 9:18-cv-81147-BB Document 98 Entered on FLSD Docket 05/16/2020 Page 6 of 17

Case No. 18-cv-81147-BLOOM/Reinhart

(quoting *Streeter v. Sullivan*, 509 So. 2d 268, 271 (Fla. 1987) (quoting *A.R. Douglass, Inc. v. McRainey*, 137 So. 157, 159 (1931))).

### B. The USA's harmless error argument

The USA asserts that the recalculations undertaken per the Court's Decision do not reduce the amounts of the penalties assessed for 2007-2009, and that in any event, the originally assessed resulting penalties were below the statutory maximum authorized, and therefore any error in the IRS's method of calculation was harmless. Thus, the USA argues that the Court should sustain the previously assessed penalties for 2007 through 2009 in full. Schwarzbaum argues in response that the USA's failure to calculate the penalties on a yearly basis using the June 30 account balances substantively impacted the assessed amounts.

Upon review, the Court determines that the USA's arguments lack merit. First, as reflected by the recalculated mitigated penalties that follow, utilizing the account balances in each account on June 30 of each year, the resulting assessed penalty is indeed lower than the penalty initially assessed by the USA—$13,729,591.00. Second, a court employs a harmless error analysis when "a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of decision reached." *Salmeron-Salmeron v. Spivey*, 926 F.3d 1283, 1286 (11th Cir. 2019) (quoting *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1224 n.13 (11th Cir. 2015) (citations omitted).

Here, instead of following the statute, the USA utilized the highest aggregate balance in each account for each year to arrive at a mitigated willful FBAR penalty amount of $35,729,591.00, despite making representations that it had used the balance in each account as of June 30 of each relevant tax year. *See* ECF No. [92] at 25. The IRS then considered that this amount was excessive, and further reduced the mitigated penalty to $13,729,591.00, which represents the

6

Case 4:19-cv-00415-ALM Document 63-1 Filed 05/18/20 Page 7 of 17 PageID #: 1978
Case 9:18-cv-81147-BB Document 98 Entered on FLSD Docket 05/16/2020 Page 7 of 17

Case No. 18-cv-81147-BLOOM/Reinhart

maximum penalty for 2008 divided and spread over the years 2006 through 2009. *Id*. Indeed, using the highest aggregate balance in each bank account predictably resulted in a significantly higher penalty than results when utilizing the account balances as of June 30, as illustrated in the following section. The initial mitigated penalty based on the highest aggregate account balances far exceeds that amount, even allowing the USA to utilize estimated account balances on June 30 of each year—which results in a maximum penalty of $23,826,738.00 (as opposed to $35,729,591.00). *See* ECF No. [93] at 6-10. As such, the USA fails to show that the IRS's mistake in methodology clearly had no bearing on the procedure used or the substance of the decision reached.

As a result, the Court will proceed to recalculate the penalty to be assessed in this case.

## II. Penalty Assessment

### A. Tax year 2006

In the Decision, the Court determined that Schwarzbaum's violation for tax year 2006 was non-willful. In its Brief, the USA concedes that it is not seeking a reduced penalty for Schwarzbaum's FBAR violation in 2006, which based upon the Court's Decision should be zero. As such, the Court will assess no penalty for Schwarzbaum's non-willful FBAR violation for tax year 2006.

### B. Tax years 2007-2009

With respect to tax years 2007-2009, the USA has provided charts detailing different amounts resulting from the calculation of penalties. These calculations are based upon the account balances in each account as of June 30 of the relevant year where the balances are known, and utilizing estimated account balances on June 30 of each reporting year where the balances are

7

Case 4:19-cv-00415-ALM Document 63-1 Filed 05/18/20 Page 8 of 17 PageID #: 1979
Case 9:18-cv-81147-BB Document 98 Entered on FLSD Docket 05/16/2020 Page 8 of 17

Case No. 18-cv-81147-BLOOM/Reinhart

unknown.[1] Because the IRS applied the mitigation guidelines to the initial penalties assessed, the Court finds that the recalculated penalties should also be mitigated.

In addition, in its Brief, the USA provides two different mitigated penalty calculations, both using a June 30 balance where it is known; and where the balance is unknown or zero, one calculation using an estimated balance on June 30, and the other imposing up to a $100,000.00 penalty. The USA argues that it should be permitted to rely on the best available information in determining an estimated June 30 balance and that the Court should permit the USA to rely on estimated account balances provided by Schwarzbaum (which he provided in the course of his OVDI disclosures). Otherwise, the USA contends, individuals would be motivated to withhold accurate account balance information. However, the Court determined in its Decision, and the statute makes clear, that the relevant time for purposes of the penalty is the date of violation—in this case, the date that Schwarzbaum failed to timely file his FBARs, i.e. June 30. Thus, it was incumbent upon the USA to obtain the necessary information prior to assessing the penalties in this case. That the USA did not obtain the account balances on the relevant date of violation does not permit the USA to now substitute estimated account balances in its proposed recalculations, even if those estimates were provided by Schwarzbaum. As such, the Court will utilize the proposed mitigated penalty amounts that do not rely on the USA's estimates of an account balance as of June 30 in accounts with unknown balances.

Accordingly, the penalties to be assessed against Schwarzbaum for each tax year are as follows:

---

[1] For the accounts in which the balance is not known or is zero on June 30, the USA proposes a maximum penalty of $100,000.00 per account. The Court agrees that $100,000.00 per account is correct for these accounts, as Schwarzbaum has not disputed that such accounts were reportable, and per the statute, $100,000.00 would be the greater amount, even assuming the balance in such an account was zero on the date of violation.

8

Case 4:19-cv-00415-ALM Document 63-1 Filed 05/18/20 Page 9 of 17 PageID #: 1980
Case 9:18-cv-81147-BB Document 98 Entered on FLSD Docket 03/16/2020 Page 9 of 17

Case No. 18-cv-81147-BLOOM/Reinhart

**2007**

| Account | Balance on 6/30/08 | New Mitigated Penalty |
|---|---|---|
| Aargauische | $12,034.00 | $5,000.00 |
| UBS 6308 | $8,615,602.00 | $4,307,801.00 |
| UBS 9250 | $5,571.00 | $100,000.00 |
| UMB 4201 | Only estimated balance provided | $67,218.00 |
| CR 0588 | Unknown | $18,467.00 |
| **TOTAL:** | | **$4,498,486.00** |

**2008**

| Account | Balance on 6/30/09 | New Mitigated Penalty |
|---|---|---|
| Aargauische | $10,940.00 | $5,000.00 |
| UBS 6308 | $0 | $100,000.00 |
| UBS 9250 | $0 | $100,000.00 |
| UMB 4201 | Only estimated balance provided | $67,219.00 |
| CR 0588 | Unknown | $18,722.00 |
| CR 1472 | | |
| Clariden Leu | $4,106,132.00 | $2,053,066.00 |
| Raiffeisen | $3,137,728.00 | $1,568,864.00 |
| Bank Linth | Only estimated balance provided | $100,000.00 |
| BSI | Only estimated balance provided | $100,000.00 |
| St. Galler | Only estimated balance provided | $100,000.00 |
| **TOTAL:** | | **$4,212,871.00** |

9

Case 4:19-cv-00415-ALM Document 63-1 Filed 05/18/20 Page 10 of 17 PageID #: 1981
Case 9:18-cv-81147-BB Document 98 Entered on FLSD Docket 05/18/2020 Page 10 of 17

Case No. 18-cv-81147-BLOOM/Reinhart

**2009**

| Account | Balance on 6/30/10 | New Mitigated Penalty |
| --- | --- | --- |
| Aargauische | $11,515.00 | $5,000.00 |
| Clariden Leu | $4,504,701.00 | $2,252,350.00 |
| Raiffeisen | $0 | $100,000.00 |
| Bank Linth | Only estimated balance provided | $100,000.00 |
| BSI | Only estimated balance provided | $100,000.00 |
| St. Galler | Only estimated balance provided | $100,000.00 |
| Banca Arner | $3,078,492.00 | $1,539,245.00 |
| **TOTAL:** | | **$4,196,595.00** |

Thus, the total recalculated penalty to be assessed for Schwarzbaum's willful FBAR violations for tax years 2007, 2008, and 2009 is **$12,907,952.00**.

### III. The FBAR penalties are not subject to the Eighth Amendment

Schwarzbaum has argued that the FBAR penalties in this case violate the Eighth Amendment. Although the Court did not address this argument in its Decision, the Court recognized the eventual need to consider it upon recalculation of the penalties. *See* ECF No. [92] at 26. While Schwarzbaum contends that it is not "the statute itself [31 U.S.C. §5321(a)(5)] that must be struck down as unconstitutional," he argues that "the IRS's interpretation and application of the statute, and the resulting $15.6 million assessment"[2] in this case violate the Eighth Amendment. *See* ECF No. [83] at 49. The USA argues that FBAR penalties are not "fines" subject to the Eighth Amendment, and that in any event, Schwarzbaum fails to meet his burden of showing that the penalties are unconstitutionally excessive.

---

[2] The penalty originally assessed by the USA was $13,729,591.00. The $15.6 million Schwarzbaum refers to is the penalty amount including interest and late payment penalties.

10

Case 4:19-cv-00415-ALM Document 63-1 Filed 05/18/20 Page 11 of 17 PageID #: 1982
Case 9:18-cv-81147-BB Document 98 Entered on FLSD Docket 05/18/2020 Page 11 of 17

Case No. 18-cv-81147-BLOOM/Reinhart

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. In order to evaluate whether a penalty violates the Eighth Amendment, the Court must first determine whether the penalty is a "fine" subject to the Eighth Amendment, before deciding whether it is excessive.

In arguing that the FBAR penalties are subject to the Eighth Amendment, Schwarzbaum contends that the penalties serve primarily punitive, retributive, or deterrent purposes, rather than being remedial, relying on *United States v. Bajakajian*, 524 U.S. 321 (1998), *Austin v. United States*, 509 U.S. 602 (1993), and *Kokesh v. Securities and Exchange Commission*, 137 S. Ct. 1635 (2017). As such, Schwarzbaum argues that because FBAR penalties are not solely remedial, they are subject to the Eighth Amendment. *See Austin*, 509 U.S. at 610 ("a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment") (citation omitted); *see also Bajakajian*, 524 U.S. at 328 ("The Excessive Fines Clause thus limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense.") (quoting *Austin*, 509 U.S. at 609-10) (quotations omitted). Upon review, however, the Court is not persuaded that these cases are particularly helpful with respect to FBAR penalties and concludes that extending such reasoning to civil FBAR penalties is not warranted and would be ill-advised. *See McNichols v. Comm'r of Internal Revenue*, 13 F.3d 432, 434 (1st Cir. 1993) (characterizing proposed extension of rule from *Austin* to tax penalties as a "giant leap" the court was unwilling to make).

The cases relied upon by Schwarzbaum are inapposite to this case. In *Bajakajian*, the respondent failed to report all money in excess of $10,000.00 in his possession upon traveling to a destination outside of the United States, and the question raised was whether forfeiture of the entire sum of money that the respondent failed to declare violated the Eighth Amendment. 524

11

Case 4:19-cv-00415-ALM Document 63-1 Filed 05/18/20 Page 12 of 17 PageID #: 1983
Case 9:18-cv-81147-BB Document 98 Entered on FLSD Docket 05/18/2020 Page 12 of 17

Case No. 18-cv-81147-BLOOM/Reinhart

U.S. at 325-25. Similarly, in *Austin*, the Supreme Court was tasked with determining whether the Eighth Amendment applies to forfeitures of property arising from convictions for violations of drug laws. 509 U.S. at 604-05. In *Kokesh*, the Supreme Court examined whether disgorgement under securities laws is subject to the same statute of limitations as a fine, penalty, or forfeiture. 137 S. Ct. at 1642-43. In contrast, the FBAR penalties in this case cannot be properly characterized as forfeitures, as in *Bajakajian* and *Austin*, or disgorgement, as in *Kokesh*.[3] Importantly, none of these cases relied upon by Schwarzbaum suggest either explicitly or impliedly that their holdings should apply outside of the contexts in which they were decided.[4] *See, e.g. Cole v. United States Dep't of Agric., A.S.C.S.*, 133 F.3d 803, 807 (11th Cir. 1998) (recognizing that there is no "comprehensive test to determine whether an *in personam* civil penalty violates the . . . Eighth Amendment" although *Austin* "did articulate a bright line rule in one category of cases: a fine that serves purely remedial purposes cannot be considered excessive in any event.") (citations and internal quotations omitted).

Tax penalties traditionally have been held to fulfill remedial purposes, as opposed to punitive purposes relevant in the Eighth Amendment. Indeed, the Supreme Court recognized as early as 82 years ago, specifically in the tax context, that "[t]he remedial character of sanctions imposing additions to a tax has been made clear by this Court in passing upon similar legislation. They are provided primarily as a safeguard for the protection of the revenue and to reimburse the

---

[3] "[D]isgorgement is a form of restitution measured by the defendant's wrongful gain." *Kokesh*, 137 S. Ct. at 1640 (citation and quotations omitted).

[4] In addition, the cases in which Schwarzbaum maintains that the Eighth Amendment was discussed specifically in the FBAR context simply assumed that FBAR penalties are fines within the meaning of the Eighth Amendment. *See United States v. Garrity*, No. 3:15-CV-243(MPS), 2019 WL 1004584, at *6 n.7 (D. Conn. Feb. 28, 2019); *Moore v. United States*, No. C13-2063RAJ, 2015 WL 1510007, at *12 (W.D. Wash. Apr. 1, 2015); *United States v. Bussell*, No. CV 15-02034 SJO(VBK), 2015 WL 9957826, at *7 (C.D. Cal. Dec. 8, 2015).

12

Case 4:19-cv-00415-ALM Document 63-1 Filed 05/18/20 Page 13 of 17 PageID #: 1984
Case 9:18-cv-81147-BB Document 98 Entered on FLSD Docket 05/18/2020 Page 13 of 17

Case No. 18-cv-81147-BLOOM/Reinhart

Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." *Helvering v. Mitchell*, 303 U.S. 391, 401 (1938); *see also Dewees v. United States*, 272 F. Supp. 3d 96, 101 (D.D.C. 2017) (collecting additional cases in which lower courts "have erected 'an insurmountable wall of tax cases' to support this proposition."). Indeed, "the payment of fixed or variable sums of money are other sanctions which have been recognized as enforceable by civil proceedings since the original revenue law of 1789." *Helvering*, 303 U.S. at 400.

Moreover, a finding that the FBAR penalty does not fall within the purview of the Eighth Amendment is consistent with the purpose for the FBAR. *See Dewees*, 272 F. Supp. 3d at 101 (penalty for failure to file Form 5471 disclosing certain ownership and financial information about a foreign corporation authorized by Congress for a legitimate remedial purpose and not a "fine"). "The purpose of the FBAR is to identify persons who may be using foreign financial accounts to circumvent United States law and to identify or trace funds used for illicit purposes or to identify unreported income maintained or generated abroad." *United States v. Estate of Schoenfeld*, 344 F. Supp. 3d 1354, 1372 (M.D. Fla. 2018) (citations and quotations omitted).

Indeed, Congress enacted the Currency and Foreign Transactions Reporting Act, referred to as the Bank Secrecy Act (BSA), 31 U.S.C. §§ 5311, *et seq*. *See* Pub. L. No. 91-508, 84 Stat. 1114 (1970). The primary purpose of the BSA was to require the making of certain reports that "have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings." *Id*. § 202. In enacting the BSA, Congress noted the following:

> Secret foreign bank accounts and secret foreign financial institutions have permitted proliferation of 'white collar' crime; have served as the financial underpinning of organized criminal operations in the United States; have been utilized by Americans to evade income taxes, conceal assets illegally and purchase gold; have allowed Americans and others to avoid the law and regulations governing securities and exchanges; have served as essential ingredients in frauds including schemes to defraud the United States . . . ; and have served as the cleansing agent for hot or illegally obtained monies.

13

Case 4:19-cv-00415-ALM Document 63-1 Filed 05/18/20 Page 14 of 17 PageID #: 1985
Case 9:18-cv-81147-BB Document 98 Entered on FLSD Docket 05/18/2020 Page 14 of 17

Case No. 18-cv-81147-BLOOM/Reinhart

> [. . .]
>
> The debilitating effects of the use of these secret institutions on Americans and the American economy are vast. It has been estimated that hundreds of millions in tax revenues have been lost.
>
> [. . .]
>
> One of the most damaging effects of an American's use of secret foreign financial facilities is its undermining of the fairness of our tax laws. Secret foreign financial facilities, particularly in Switzerland, are available only to the wealthy. To open a secret Swiss account normally requires a substantial deposit, but such an account offers a convenient means of evading U.S. taxes. In these days when the citizens of this country are crying out for tax reform and relief, it is grossly unfair to leave the secret foreign bank account open as a convenient avenue of tax evasion. The former U.S. Attorney for the Southern District of New York has characterized the secret foreign bank account as the largest single tax loophole permitted by American law.

H.R. Rep. No. 91-975, at 4397-98 (1970). Congress also recognized the cost to law enforcement—

"[m]any of the cases have been in the investigative stage for years. United States law enforcement agencies are often delayed or totally frustrated when wrongdoers cloak their activities in the shield of foreign financial secrecy." *Id*. at 4397.

> When law enforcement personnel are confronted with the secret foreign bank account or the secret financial institution they are placed in an impossible position. In order to receive evidence and testimony regarding activities in the secrecy jurisdiction they must subject themselves to a time consuming and oftimes fruitless foreign legal process. Even when procedural obstacles are overcome, the foreign jurisdictions rigidly enforce their secrecy law against their own domestic institutions and employees.

*Id*.

Furthermore, the statute itself indicates that it should not be regarded primarily as punitive, and therefore considered a fine subject to the Eighth Amendment, in that the penalty provision is titled "Civil penalties." *See* 31 U.S.C. § 5321; *see also United States v. Ward*, 448 U.S. 242, 249 (1980) ("where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that

14

intention. . . . In regard to this latter inquiry, we have noted that 'only the clearest of proof could suffice to establish the unconstitutionality of a statute on such a ground.'") (citations omitted). Although the FBAR penalty provision undoubtedly promotes deterrence, the Supreme Court has recognized that "all civil penalties have some deterrent effect," such that none are "'solely' remedial (i.e., entirely nondeterrent)." *Hudson v. United States*, 522 U.S. 93, 102 (1997) (citations omitted). In fact, "the FBAR penalty serves the additional alternative purpose of reimbursing the Government for the cost of investigating and recovering the funds." *Estate of Schoenfeld*, 344 F. Supp. 3d at 1372. Thus, the assessment of the FBAR penalty, in addition to the collection of taxes owed, is properly viewed as compensating the Government for a loss.

> The direct result of a taxpayer's filing of a fraudulent income tax return which understates his true tax liability is to deprive the sovereign of money it is entitled to receive and obligated to collect. It also makes it necessary for the Government to expend other public funds in order to uncover the fraud and collect the proper amount of tax due. These are monetary losses. Consequently, we feel that the taxpayer's wrongful act is in the nature of an injury to the property of the United States.

*Reimer's Estate v. Comm'r of Internal Revenue*, 12 T.C. 913, 920-21 (1949). At least one other decision in this district has already taken this view. *See United States v. Green*, -- F. Supp. 3d ---, 2020 WL 1980859, at *6 (S.D. Fla. Apr. 27, 2020) (finding that FBAR penalty has a remedial purpose, recognizing that "the Government itself has suffered a monetary harm as a result of Defendants' conduct," and that "FBAR violations may deprive the Government of taxes on investment gains and the Government likely expends significant resources on investigating foreign accounts."). Thus, the statutory amounts of $100,000 or 50% of the account balance at the time of the FBAR violation were "selected to ensure that the Government would be made completely whole." *Id*. at *7. As a result, the Court determines that the FBAR penalty in this case is not a "fine" subject to the Eighth Amendment.

15

Case 4:19-cv-00415-ALM Document 63-1 Filed 05/18/20 Page 16 of 17 PageID #: 1987
Case 9:18-cv-81147-BB Document 98 Entered on FLSD Docket 05/18/2020 Page 16 of 17

Case No. 18-cv-81147-BLOOM/Reinhart

Finally, the Court notes in closing, that although Schwarzbaum contends not to be mounting a constitutional challenge to the statute itself, such a challenge would likely fail in any event. *See Crawford v. United States Dep't of the Treasury*, No. 3:15-cv-250, 2015 WL 5697552, at *16 (S.D. Ohio Sept. 29, 2015) (finding that facial challenge to willful FBAR penalty under Eighth Amendment fails). As the court in *Crawford* observed, "[s]etting the maximum willful penalty as a substantial proportion of the account ensures that the willful penalty is not merely a cost of doing business for tax evaders, terrorists, and organized criminals." *Id*. Thus, "[a] 50% willful FBAR penalty—the maximum permitted by statute—is severe. But given the ills it combats, it is an appropriate penalty in at least some circumstances." *Id*. Such is the case here, where Schwarzbaum willfully failed to report for multiple tax years the bulk of his wealth, which he held in numerous Swiss bank accounts.

Because the Court determines that the FBAR penalties are not subject to the Eighth Amendment, the Court does not evaluate whether the penalties are excessive.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Schwarzbaum is assessed **$12,907,952.00**, in addition to applicable interest and late payment penalties, for willful violations of the FBAR reporting requirements for tax years 2007, 2008, and 2009. The Court will enter judgment by separate order pursuant to Rule 58 of the Federal Rules of Civil Procedure. The Clerk of Court is directed to **CLOSE** this case.

16

Case No. 18-cv-81147-BLOOM/Reinhart

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 18, 2020.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

17