**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
| Plaintiff,   ) | |
| ) | Case No. 4:19-cv-00415 |
| v.   ) | |
| ) | Filed Electronically |
| ALEXANDRU BITTNER,   ) | |
| Defendant.   ) | |

**DEFENDANT ALEXANDRU BITTNER'S**
**MOTION TO COMPEL DISCOVERY RESPONSES**

Defendant, Alexandru Bittner, by his undersigned counsel, respectfully moves the Court to compel responses to discovery from Plaintiff, the United States of America, and in support thereof, states:

**CERTIFICATE OF CONFERENCE**

Counsel for Defendant has conferred with counsel for Plaintiff regarding the issues present in this Motion.  The Parties participated in a telephonic hearing before the Court as required by the scheduling order.  The Parties now engage in this motion practice at the Court's invitation.

**MOTION TO COMPEL**

Defendant respectfully moves to compel Plaintiff to: (1) fully respond to Defendant's requests for admission; and (2), fully respond to Defendant's interrogatories—both as further identified herein.  Copies of: United States' Response to Defendant's First Request for Admissions, The United States' Response to Defendant's Second Set of Interrogatories, and United States' Response to Defendant's Supplemental Interrogatories and Requests for Admissions are attached as Exhibits A, B, and C, respectively.

**I.       Introduction**

This case arises from the government's assessment of $2,700,000 in non-willful FBAR penalties against Mr. Bittner for not timely filing an annual *Report of Foreign Bank and Financial*

*Accounts* ("FBAR" or "FBAR form") for the years 2007-2011. As defenses to Plaintiff's allegations, Mr. Bittner asserts, among other defenses, that: Plaintiff failed to treat Mr. Bittner fairly and consistently with other similarly-situated taxpayers;  that Plaintiff acted arbitrarily and capriciously in assessing FBAR penalties; that Plaintiff's impositions of FBAR penalties violated the relevant provisions of the Administrative Procedures Act (the "APA"); and that the FBAR penalties imposed by Plaintiff violates the Excessive Fines Clause of the Eight Amendment to the United States Constitution. These defenses are central to the resolution of the matter before the Court. Mr. Bittner is entitled to discoverable information to support his defenses.

Specifically, the majority of the discovery requests at issue deal with the Internal Revenue Service's ("IRS") procedures, policies, and programs related to dual citizens, residing abroad, who have foreign financial interests and income, and who non-willfully failed to timely or accurately report those items to the government—a small subset of taxpayers uniquely similarly situated to Mr. Bittner. Instead of responding, Plaintiff has repeatedly lodged meritless and unfounded objections to Mr. Bitter's appropriate discovery requests, essentially identifying the discovery requests that would harm its case and then working backwards to manufacture baseless objections and refuse to provide responses.

## II.    Plaintiff Failed to Respond to Mr. Bittner's Requests for Admission

Under Federal Rule of Civil Procedure 36, a party may serve on any other party a written request to admit the truth of any matter within the scope of Rule 26(b)(1) that relates to the facts, application of law to fact, or opinions about either; and the genuineness of any described documents. Fed. R. Civ. P. 36(a)(1). "If the answering party does not admit the matter included in the request, it must specifically 'deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter." *Matter of AET, Inc.*, 2018 WL 4201264, at *3 (E.D. Tex. June 8, 2018) (citing Fed. R. Civ. P. 36(a)(4)). A requesting party

2

may move to determine the sufficiency of an answer or objection. Fed. R. Civ. P. 36(a)(6). "Unless the court finds the objection justified, it must order than an answer be served." *Id.*

Mr. Bittner requests that this Court overrule Plaintiff's objections and order it to respond to Defendant's Requests for Admission 16, 17, 26, 27, 29, 30, 31, 32, 33, 35, 42, 43, 52, 53, 83, 95, 96, 97, 98, and 99.

### Requests for Admission 16 and 17

In December 2011, the IRS released FS-2011-13 (the "Fact Sheet"), an official IRS publication titled "Information for U.S. Citizens or Dual Citizens Residing Outside the U.S." A true and correct copy of this publication is attached hereto as Exhibit D.  The Fact Sheet begins:

> The IRS is aware that some taxpayers who are dual citizens of the United States and a foreign county may have failed to timely file United States federal income tax returns or Reports of Foreign Bank and Financial Accounts (FBARs), despite being required to do so. Some of those taxpayers are now aware of their filing obligations and seek to come into compliance with the law.

*See id.*

Mr. Bittner is, of course, a dual citizen of the United States and Romania who did not timely file FBARs or income tax returns (reporting his Romanian income), became aware in 2011 of his obligation to do so, and sought to come into compliance with the law. Accordingly, Bittner asked Plaintiff to admit some basic aspects of the Fact Sheet.

Requests 16 and 17 sought Plaintiff to admit that hundred or thousands of taxpayers for who the fact sheet was specifically designed to target—dual citizens living abroad, who were unaware of their filing obligations, who wanted to come into compliance by filing delinquent FBARS and income tax returns, and who were non-willful and had reasonable cause—were indeed not assessed penalties in accordance with the IRS policy set forth in the Fact Sheet. The Government refused to answer either Request, instead inserting a litany of objections. *See* Exhibit A at P. 5-6.  Each will be addressed in turn.

### 1.  The Government's Relevancy Objection is Without Merit

First, the Government objected to both Requests on the basis that the information was not relevant.  To the contrary, "[r]elevant information includes any matter that bears on, or that could reasonably lead to other matter that could bear on, any issue that is or may be in the case." *Park Bd. Ltd. v. State Auto. Mut. Ins. Co.*, 2019 WL 7067135, at *2 (E.D. Tex. Dec. 23, 2019) (Mazzant, J.) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "Consequently, [u]nless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request for discovery should be allowed." *Id.* (internal quotations and citations omitted).

Further, Eastern District of Texas Local Rule CV-26(d) offers the following guidance to determine whether information is relevant to any party's claim or defense:

> (1) it includes information that would not support the disclosing parties' contentions;
> (2) it includes those persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties;
> (3) it is information that is likely to have an influence on or affect the outcome of a claim or defense;
> (4) it is information that deserves to be considered in the preparation, evaluation, or trial of a claim or defense; and
> (5) it is information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense.

Plainly, the requested information is likely to have an influence on this case as it bears directly on Mr. Bittner's defenses. *See supra* p. 2, ¶ 1; *Defendants First Amended Answer*, at p. 14–20, ECF; Eastern District of Texas Local Rule CV-26(d).

### 2.  The Requests are Proportional Needs of the Case

The Government includes the boilerplate objection that Requests are "not proportional to the needs of the case." Here, the Government assessed nearly three million of penalties against Mr. Bittner – for innocent conduct – yet it cannot be bothered to spend some time and energy to provide relevant information. It would prefer that Mr. Bittner stop his squawking and just pay up, thank you.  Importantly, the government does not detail why the various requests are not

proportional. Instead, it asserts the general objection and refuses provide an answer. Objecting in

the fashion is impermissible.  *See Henson v. Gen. Motors,* 2014 WL 11515721, at *1 (N.D. Tex. Dec.

22, 2014) ("Broad-based non-specific objections are almost impossible to assess on their merits, and

fall woefully short of the burden that must be borne by a party making an objection . . .") (internal

quotations and citations omitted).

Rule 26 provides the following guidelines to determine whether a request is proportionate to

the needs of the case: "the importance of the issues at stake in the action, the amount in

controversy, the parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or expense of the

proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, the issues at stake

are extremely important; indeed, they involve Mr. Bittner's constitutional rights. Further, the amount

in controversy is nearly $3 million dollars. The government can and should be required to expend

time and energy to properly answer the requests. Moreover, the government has itself recognized

the importance of discovering this information to resolve the issues in this case. *See Motion to Strike*,

at p.10–11, ECF. No. 20.

In short, the burden or expense of the discovery in no way outweighs its benefit, and, in any

event, the government has provided no explanation as to the burden it would allegedly cause them.

Indeed, the requests seek only relevant information that bears directly on Mr. Bittner's defenses in

this case.

### 3.  The Requests are Neither Vague nor Ambiguous

The Government next asserts that Requests 16 and 17 are vague and ambiguous because

"delinquency penalties" is plural and undefined.  *See* Exhibit A at P. 5-6. Again, the Government's

position is indefensible.  "Delinquency penalties" is a term used only in Request 16.

The Fact Sheet is five pages long. *See* Exhibit D. In it, the Fact Sheet discusses a handful of

B6544\A63010\4813-6671-7121.v1

penalties that can be imposed upon taxpayers. Some penalties addressed in the Fact Sheet relate to the delinquent filing of tax returns and FBARs. *See id.* These penalties are commonly referred to as "failure to file" or "delinquency penalties." The Government does not need a definition to understand the term "delinquency penalties" when the Request specifically identifies the filing of delinquent tax returns and FBARs in relation such "delinquency penalties" and also references a published IRS document wherein the IRS describes the availability of relief from "failure to file" penalties for taxpayers who later come into filing compliance. In this context, the meaning of "delinquency penalties" is clear in the context of the entire sentence.*" In re Katrina Canal Breaches Consol. Litig.*, 2007 WL 1959193, at *3 (E.D. La. June 27, 2007).

### 4. The Requests do not Require the Government to Respond to Compound or Multiple Questions

The Government objects to Requests 16 and 17 on the basis that they refer to "'hundreds or thousands' and 'delinquency penalties' which are multiple requests."

First, "hundreds or thousands" is a class of persons and "delinquency penalties" are what were imposed on a class of persons.  And, "delinquency penalties" only appears in Request 16, despite the Government's objection to both Requests.  This is one request, requesting that the Government admit that a significant, specific number of people had a significant, specific outcome.

Further, even were it a compound question, the Government would be obligated to answer it.  *See Matter of AET*, 2018 WL 4201264, at *7 (holding that the compound nature of requests for admission did not excuse the party's obligation to respond to them); *Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 247 F.R.D. 198, 203 (D.D.C. 2008) ("Compound requests that are capable of separation into distinct components and that follow a logical or chronological order . . . should be denied or admitted in sequence with the appropriate designation or qualification.") (internal quotations and citations omitted).

**Requests for Admission 26, 27, 29 and 30**

In 2012, the IRS announced Streamlined Filing Compliance Procedure ("the Streamlined Program") specifically designed for nonresident taxpayers who non-willfully failed to report foreign financial assets and pay all tax due with respect to those assets. IR-2012-65, attached hereto as Exhibit E. In 2014, the Streamlined Program (the "2014 Streamlined Program") "expanded and modified to accommodate a broader group of U.S. taxpayers[,]" including U.S. taxpayers residing in the U.S. at the time of their noncompliance. *See* IR-2014-73, attached hereto as Exhibit F; *see also* Streamlined Filing Compliance Procedures *available at*

https://www.irs.gov/individuals/international-taxpayers/streamlined-filing-compliance-procedures

(last visited May 28, 2020), attached hereto as Exhibit G. Both iterations of the Streamlined Program had eligibility criteria. For example, "[I]f the IRS has initiated a civil examination of taxpayer's returns for any taxable year, regardless of whether the examination relates to undisclosed foreign financial assets, the taxpayer will not be eligible to use the streamlined procedures." *See* Exhibit G. But, "[t]axpayers under examination [were advised that they] may consult with their agent." *Id.* On information and belief, taxpayers under examination receive treatment substantially consistent with the relief they would have been afforded under the Streamlined Program, i.e. no penalties or almost no penalties, provided their conduct qualified as non-willful.

For all but one of the years at issue Mr. Bittner was, of course, an individual residing outside of the United States who had not filed income tax returns or FBARs—placing him directly in the class of individuals the program was designed for. Because of this, and in accordance with advice from the Taxpayer Advocate Service, Mr. Bittner formally requested to be treated in accordance with the Streamlined Program. Mr. Bittner was denied entry into this program, even though other similarly-situated taxpayers were admitted. This discordant treatment is directly relevant to multiple of Mr. Bittner's defenses.

This program is directly relevant to Mr. Bittner and this case. As such, Mr. Bittner

propounded discovery on the issue, specifically requesting as follows. Request for Admission 26

states:

> In 2012, the IRS announced a Streamlined Filing Compliance Procedure for individuals residing outside of the United States who had not filed income tax returns or FBARs.

Request for Admission 27 states:

> A genuine copy of IRS documents explaining the Streamlined Filing Compliance Procedure is attached as Exhibit F.

Request for Admission 29 states:

> The IRS has permitted individuals to participate in the Streamlined Filing Compliance Procedure even though they were technically under examination.

And, Request for Admission 30 states:

> The IRS has permitted individuals to participate in the Streamlined Filing Compliance Procedure even though they technically did not meet all eligibility provisions of the program such as filing [sic] to file all returns.

## 1.   These Requests are Directly Relevant

The Government objected to these Requests on the basis of relevance. (And the

Government further denied that the IRS's documentation was, in fact, the IRS's documentation.)

The Streamlined Filing Compliance Procedure was created for taxpayers with the same

characteristics as Mr. Bittner. He affirmatively requested treatment in accordance with the program.

His request was arbitrarily denied, a disparate outcome compared to similarly situated taxpayers.

The Government's relevance objection is unsupportable. These Requests are directly

relevant to both the facts surrounding Mr. Bittner's treatment by the IRS and his defenses in this

case.

### 2.   Requests 29 and 30 are Neither Vague nor Ambiguous

The Government further objects on the basis that Requests for Admission 29 and 30 are vague and ambiguous.  Both objections fail.

First, in Request 29, the Government objects to the fact that "technically under examination" is undefined. This objection shows either a lack of familiarity with the subject matter of this lawsuit or a disingenuous approach to the discovery process.

Similarly, in Request 30, the Government objects to the lack of definition of the terms "technically did not meet all of the eligibility provisions of the program" and "all returns" were undefined. One of the requirements of the Streamlined Filing Compliance Procedure was that participants in the program could not be currently under IRS examination. However, a significant number of taxpayers were afforded treatment as if they were admitted to the program and were subjected to reduced or no penalties—even though, as a technical matter, they did not qualify. Therefore, some taxpayers were treated comparably to the  program even though they were "technically under examination" and did not meet all of the technical criteria of the program. However, despite these requirements, many taxpayers given comparable treatment to the program even though they "technically did not meet all eligibility provisions" and even when the particular unsatisfied eligibly provision dealt with having failed to file "all returns." The Government's excerpted quotations are neither vague nor ambiguous. The Government's objections on this front are baseless.

### b.   Requests for Admission 31, 32, 33 and 35

On June 18, 2014, the IRS announced "major changes in its offshore voluntary compliance programs, providing new options to help both taxpayers residing overseas and those residing in the United States. The changes are anticipated to provide thousands of people a new avenue to come

into compliance with their U.S. tax obligations." *See* the first two sentences of IR-2014-73, attached hereto as Exhibit F. The IRS then specifically identifies the steps it is taking to expand the Streamlined Filing Compliance Procedures and to help taxpayers become compliant with their filing obligations. *See id.* As a part of this announcement (and one of the "major changes"), the IRS promulgated updated rules that created two different "sub-programs"—one for U.S. residents and one for nonresidents. Mr. Bitter, as a nonresident for the reporting years at issue, would have been governed by a document entitled "U.S. Taxpayers Residing Outside the United States." A true and correct copy is attached hereto as Exhibit H.

Once the expanded 2014 Streamlined Filing Compliance Procedures were announced, Mr. Bittner again sought admission to this (now expanded) program. On September 24, 2014, he submitted a Certification Statement to the IRS to formally request this treatment. The IRS has admitted receipt. *See* Exhibit A at Request 45 and 46. Mr. Bittner, however, never received a response to his request, nor did he ever receive an explanation as to why he never received a response to his request—despite repeated inquiries. Mr. Bittner served discovery related to this issue. Request for Admission 31 states:

> In June of 2014, the IRS introduced a variety of changes to the Streamlined Filing Compliance Procedure, to ease burdens and help more taxpayers come into compliance, including expanded Streamlined Filing Compliance Procedures (IR-2014-73) (the "2014 Streamlined Filing Compliance Procedures").

Of note, the Request even specifically identified the IRS pronouncement setting forth this information. Request for Admission 32 states:

> A genuine copy of IR-2014-73 is attached as Exhibit G.

Request for Admission 33 states:

> The 2014 Streamlined Filing Compliance Procedures expanded the procedures effective July 1, 2014 to accommodate U.S. taxpayers (residents and nonresidents) who did not need protection from criminal prosecution offered by the OVDP and who acted non-willfully.

And Request for Admission 35 states:

> The rules governing this procedure are set forth in a document entitled "U.S. Taxpayers Residing Outside the United States" (the "2014 Streamlined Non-Resident Procedure"), a genuine copy of which is attached as Exhibit H.

The Government objects to these Requests on the basis that they are not relevant and further objects to Request 31 on the basis that it is vague and ambiguous. (And, again, the Government denies that an IRS document is an IRS document in response to Request 32.) The objections are unfounded.

## 1.   Request 31 is Neither Vague or Ambiguous

The claims that the term "variety of changes" is undefined and is therefore vague and ambiguous. Again, this contention is meritless. The Request directly references IR-2014-73, an official IRS pronouncement. The literal first sentence of this document contains the statement that the IRS was announcing "major changes in its offshore voluntary compliance programs" and then the remainder of the document goes on to outline those various changes. Quite simply, Plaintiff is fully aware that IRS introduced changes to the Streamlined Filing Compliance Procedure in June of 2014 and the well-publicized reasons for those changes.

## 2.   Requests 31, 32, 33 and 35 are Directly Relevant

Mr. Bittner sought admission to the 2014 Streamline Filing Compliance Procedures. The Government admits that it received his request. The Government then never responded, never identified why it never responded, and has refused to provide Mr. Bittner any information on this decision throughout this entire proceeding, despite the fact that this program was created for taxpayers such as Mr. Bittner and that that taxpayers similarly-situated to Mr. Bittner were admitted to this program. The Government's relevance objections should be overruled. In fact, as the government implicitly recognized in its Motion to Strike the Expert Testimony and Report of Scott D. Michel ("Motion to Strike"), the requested data is relevant and essential to Defendant's argument

that he was treated different than other similarly situated taxpayers and that the penalties assessed are unconstitutionally disproportionate to his conduct. *See Motion to Strike*, at p.10–12, ECF. No. 20. Significantly, the government moved to exclude Michel's report not because it was irrelevant – it plainly is relevant – but because he supposedly does not have sufficient knowledge of how the IRS has treated other taxpayers. If Mr. Michel does not have this information, the government clearly does. Yet when Defendant seeks the government to provide this information, it claims the information is irrelevant and cannot be discovered. This is disingenuous and untrue.

### c.  Requests for Admission 42, 43, 52, and 53

These Requests for Admission are similar to Requests 16, 17, 29, and 30, only dealing with the 2014 Streamlined Non-Resident Procedure rather than the guidance issued in Fact Sheet 2011-13 (for Requests 16 and 17) or the original Streamlined Filing Compliance Procedure (Requests 29 and 30).  The Government relied upon the same baseless objections to these Requests as it did to Requests 16, 17, 29, and 30—that they were vague, ambiguous, compound, and irrelevant. All of these contentions fail for the same reasons stated above.

### d.  Request for Admission 83

The Government is seeking $2.7 million in FBAR penalties from Mr. Bittner. It is believed to be—both by the undersigned and the practitioners in this area—far and away, the largest, non-willful FBAR penalty ever assessed. Because of this, Mr. Bittner asked the Government to admit this fact—the proportionality, excessiveness of which go directly to several of Mr. Bittner's defenses. There is little doubt that IRS personnel in charge of these programs know the answer to this question without researching it.  Indeed, in Interrogatory 17, see below, Defendant requests the government to identify just such persons, but it refuses to do so based on a erroneous count of Defendant's interrogatories.

12

In response, the Government asserted boilerplate objections stating that it objected on the basis that the Request was vague, ambiguous, compound, and irrelevant. No explanation was provided for any objection. All of the Government's objections to this Request are baseless and should be overruled.

### e.   Requests for Admission 95, 96, and 97

Requests for Admission 95, 96, and 97 deal with "reasonable cause" as the IRS has applied it to dual citizens.  Whether or not Mr. Bittner had reasonable cause for his failure to timely make his IRS filings is central to this case and, of course, Mr. Bittner is a dual citizen. Because of this, Mr. Bittner asked several questions about reasonable cause as it would apply to taxpayers such as himself. The Government refused to answer these Requests and instead inserted mostly boilerplate objections and one substantive objection.  Each will be addressed in turn.

### 1.   These Requests are Relevant to an Issue that Would Resolve the Entire Case

The Government's claim that whether the IRS has found reasonable cause in scenarios involving dual citizens with fact patterns similar to Mr. Bitter's is irrelevant is preposterous.  In fact, if the issue of reasonable cause is resolved in Mr. Bittner's favor, it resolves the entire case.  What's more, in its Motion for Partial Summary Judgment (the "Government's MSJ"), one of the issues for which the Government sought summary judgment is on the issue of reasonable cause.  *See* Dkt. 29 at 13.

In the Government's MSJ, it argues that ignorance of the law is not a defense and that "[f]ailing to seek professional advice and take steps to learn about the requirement to report financial accounts …" prevents a finding of reasonable cause.  Dkt. 29 at 14.

To underscore this misrepresentation, Mr. Bitter asked the Government (in Request 95) to admit that the IRS has found reasonable cause with respect to this exact group of taxpayers when a

taxpayer failed to seek professional advice.  Mr. Bitter asked the Government to admit (in Requests 96 and 97) that the IRS has found reasonable cause with respect to this exact group of taxpayers in their ignorance of the law—and even went so far as to reference a relevant citation to the Internal Revenue Manual (IRM) for the Government's benefit.

The Government refused to answer all the Requests on a relevance objection.  So, the Government's position is that these underlying facts are so relevant that it should be granted summary judgment on them, but they are also so irrelevant, Mr. Bittner is not entitled to discovery on them.  This position is clearly untenable.

## 2.   The Requests are not Vague, Ambiguous, or Compound[1]

The Government further objects to the Requests on the basis they are vague, ambiguous, and compound.  For all the reasons already stated, the Government's unsubstantiated and prohibited boilerplate objections should be overruled.

## 3.   The Requests are Proportional to the Needs of the Case

The Government further objects that Requests 95 and 97 are not proportional to the needs of the case. The Government's position is that the data requested is not readily available through its various databases and that more legwork would be necessary to obtain the information to answer the questions asked.  While this might carry the day in a smaller case, the Government is currently seeking nearly $3 million from an individual taxpayer.

However, Mr. Bittner believes the issue to now be moot.  Through the meet and confer process, Mr. Bitter has offered to replace "dual citizen"—which the Government says it does not track—with "United States Person" which is tracked.  For purposes of this motion, Mr. Bittner remains agreeable to that compromise.

---

[1] The Government further objects to Request 96 on the basis that it "does not accurately state FS2011-13."  At no point does Request 96 quote FS2011-13 or purport to do so.  This objection is also baseless.

### 4.   The Government's Disclosure Objections are Irrelevant

Plaintiff further asserts objections to Requests 95 and 97 based upon "26 U.S.C. § 6103 or the Privacy Act, 5 U.S.C. § 552a."  These objections are misplaced. Section 6103 deals with the tax returns and related information of individual taxpayers and protects two kinds of information: tax returns themselves and "return information" as defined therein. *See* 26 U.S.C. § 6103. Specifically, the definition of "return information" explicitly carves out the type of information Mr. Bitner is requesting, stating that return information "does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer."  26 U.S.C. § 6103(a)(2).

Similarly, section 552a deals with records maintained on individuals and—like § 6103—deals with personally identifiable information and is not applicable in the context before the Court.  *See, generally*, 5 U.S.C. § 552a (both in the structure of the statute and defining record to require the inclusion of an individual's "name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.")

Quite simply: at no point does Mr. Bittner request any information governed by the statutes. Mr. Bittner only ever requested amalgamated data that could not ever be associated with or otherwise identify a particular taxpayer.  Plaintiff's objections in this vein have no merit.

### f.   Requests for Admission 98 and 99

In the Government's MSJ, it makes the argument that, in the civil context, a taxpayer is charged with knowledge of the law and that ignorance of the law is, therefore, not a basis for reasonable cause.  *See* Dkt. 29 at 14.  Even in the more straightforward context of delinquency penalties imposed under the Internal Revenue Code for not timely filing tax or various information reporting returns, the IRS has long recognized and directed its employees that "**reasonable cause may be established if the taxpayer shows ignorance of the law in conjunction with other facts and**

circumstances."  Plaintiff acknowledges that the topic of "ignorance of the law" is relevant in

evaluating the issue of reasonable cause, and thus Plaintiff should admit to any pertinent IRS

polices or procedures, irrespective of whether the court is deciding the issue de novo.

**1.   The Requests are Relevant to an Issue that Would Resolve the Entire Case**

Requests 98 and 99 continue to address the issue of reasonable cause—the central issue to

the case.  In the Government's MSJ it makes an affirmative statement regarding ignorance of the law

and seek summary judgment on that issue.  As stated above, that is an inaccurate statement of the

law. Requests 98 and 99 are drafted to clear up that misstatement of the law. Again, this fact is

relevant enough to the Government to be included in its MSJ, but too irrelevant for the

Government to respond to discovery.

**2.   The Requests are not vague, ambiguous, or compound[2]**

The Government objects to Requests 98 and 99 on the basis that they purport to be vague,

ambiguous, and compound.  The only lip service the Government pays to these objections are to

claim that "information returns" in Request 98 and "civil penalty relief" in Request 99 are undefined.

In response to Request 98, the Government claims that "information returns" could apply

to a "different number of types of returns." Bittner agrees, and his request should be read broadly to

include various types of information reporting returns (forms) required to be filed, with assessable

penalties provided under the Code for not filing timely or correctly. The term "information return"

is an umbrella term understood in common IRS procedural parlance to include all types section of

the IRM.  *See* IRM 4.19.25.7(8).  If the Government were trying to answer this Request in good

faith, it would have realized that the cited section of the IRM is literally titled "Information Return

Penalty (IRP) Procedures." *See id.*

---

[2] The Government also objects to Request 98 on the basis that "this [Request for Admission] does not accurately state IRM 4.19.25.7(8)."  At no point does Request 98 quote IRM 4.19.25.7(8) or purport to do so.

Further, the Government's objection proves Mr. Bittner's point.  The IRS recognizes that ignorance of the law is a factor that can support reasonable cause across the entire universe of information returns.

The Government then objects to Request 99 on the basis that "civil penalty relief" is undefined and it could apply to any number of the "civil penalty provisions."  Again, simply reading the identified section of the IRM would have made clear the unfounded nature of the objection. The term that the Government objects to as undefined is literally defined in the cited IRM section that the Request references, IRM 20.1.1.1.

### III.     Plaintiff Failed to Respond to Mr. Bitter's Interrogatories

Under Federal Rule of Civil Procedure 33, a party may serve on any other party an interrogatory relating to any matter within the scope of Rule 26(b).  Fed. R. Civ. P. 33(a)(2).  Rule 26(b) provides, of course, that a party is entitled to enquire as to any nonprivileged matter relevant to a party's claim or defense.  Fed. R. Civ. P. 26(b)(1); *see also* Eastern District of Texas Local Rule CV-26(d). Plaintiff has asserted a litany of meritless objections to Defendant's discovery.  *See, generally,* Exhibits A, B, and C.  However, to preserve judicial resources and to expedite this process, Defendant only moves to compel responses to Defendant's Interrogatories 13 and 17.

#### a.  Interrogatories 13 and 17

Interrogatories 13 and 17 deal with the Streamlined Foreign Offshore Procedure discussed at length above.  Again, this program existed only for the narrow band of taxpayers – US persons (citizens and certain tax residents) who nonwillfully failed to timely disclosure foreign income on their U.S. tax returns as well as foreign assets on timely filed FBARs and various other information reporting returns such as Forms 8938, 5471, 3520.

Interrogatory 13 states:

> For each of the last 6 calendar years, state the number of individuals who participated in Streamlined Foreign Offshore Procedure and the average miscellaneous penalty imposed.

And Interrogatory 17 states:

> Identify by name, position, address, and telephone number, one or more government employees who are knowledgeable regarding statistics relating to the Streamlined Foreign Offshore Procedures as applied to dual citizens or US persons residing abroad, and for each such person describe their knowledge.

The Government refuses to respond to these requests.  It instead objects to Interrogatory 13 on the basis of: relevance, duration, and the fact that it purportedly requests protected information. Plaintiff objects to Interrogatory 17 on the basis of: relevance, duration, and its position that Defendant has exceeded the allowable number of interrogatories. Each of these contentions is baseless and will be addressed in turn.

### 1. Plaintiff's Relevance Objections to Interrogatories 13 and 17 are Improper and Should be Overruled

The treatment of Mr. Bittner in comparison to others similarly situated is a cornerstone of Mr. Bittner's defense. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1484 (5th Cir. 1990) (finding discovery requests relevant where they related to one of the defendant's "primary defenses").  In suggesting that this information is not relevant to any claim or defense, Plaintiff is intentionally ignoring Mr. Bittner's answer. *Defendants First Amended Answer*, at p. 14–20, ECF. No. 13; *see also de Leon v. Flavor & Fragrance Specialties, Inc.*, 2013 WL 12142574, at *3 (E.D. Tex. Sept. 30, 2013) (granting a motion to compel where the information sough "certainly [met] the low bar of relevance necessary to justify discovery").  Further, if allowed to avoid responding to the propounded discovery, Plaintiff's position would render the Eighth Amendment to the United States Constitution meaningless.

In an effort to avoid answering relevant discovery, the Government—in its response to Interrogatory 13—cites to two cases to support its refusal, both from the 1970s.  Neither are

relevant to this dispute.  In *Davis v. Commissioner*, the taxpayer never sought discovery—an issue the Court considered directly relevant to its ruling—making it an inapposite case to cite in a discovery objection.  *See* 65 T.C. 1014, (1976).  *In Sutton v. United States*, the taxpayers sought "all 'written determinations' and 'background file documents'" concerning the taxation of non-resident aliens.  *See* 1978 WL 4490 (E.D. Tenn. 1978).  Mr. Bittner is explicitly not seeking this type of information.  Instead, Mr. Bittner is seeking amalgamated data the IRS possesses.

### 2.  Interrogatories 13 and 17 are not Overbroad as to Duration

The Government objects to Interrogatory 13 on the basis that it seeks "penalty information for the last six calendar years (*i.e.,* 2014 through 2019), but the IRS imposed the Title 31 FBAR penalties against Bittner on June 8, 2017."  The Government objection underscores the reasonableness of the request.  Mr. Bittner is asking about the year in which he was assessed FBAR penalties and the years closely surrounding that year.

The Government then objects to Interrogatory 17 on the basis that "it is not limited to the relevant time period."  The Streamlined Foreign Offshore Procedure has only existed since 2012.  The program's limited duration creates its own limited relevant time period.

Further, it's Mr. Bittner's understanding that the duration objections were dropped during the meet and confer process.  Mr. Bittner only references them in an abundance of caution.

### 3.  The Government Miscounts Interrogatories

Mr. Bittner served a total of 19 interrogatories in this case.  Two in its first set of interrogatories (one of which was later withdrawn); 17 in its second set of interrogatories (Exhibit B, hereto); and one in its combined, supplemental interrogatories and requests for admission (Exhibit C, hereto).

The Government, however, takes the position that Mr. Bittner's first interrogatory was actually two separate interrogatories and it answered them in distinct subparts.  *See* Exhibit B at fn. 1.

Even with this position taken by the Government, Interrogatory 17 (Exhibit B restated the numbering at 1) would have been Mr. Bittner's 19th interrogatory.  The Government treats it as Mr. Bittner's 28th.

To get to this point, the Government has taken the untenable position that Mr. Bittner's Interrogatory No. 16 is actually eleven separate interrogatories.  This is perhaps the most egregious example of gamesmanship in discovery responses rife with them.  Interrogatory 16 states:

> Identify by name, position, address, and telephone number, one or more government employees who are knowledgeable regarding the subject matter of Interrogatories Nos. 5 through 15 and for each such person describe their knowledge**.**

The Government's position might have merit if Interrogatories 5 through 15 dealt with varied subject matter.  They do not.  *See* Exhibit B.

Every single Interrogatory referenced by the Government relates to non-willful FBAR penalties.  The Government's position that Interrogatory 16 constitutes 11 separate, distinct interrogatories is both disingenuous and undercut by its own response.

By the Government's own logic, a "response to information sought by Interrogatory No. 16 as it relates to Interrogatory No. 15, would be a response to the 28th interrogatory."  *See* Exhibit B at 22.  Yet, what the Government considers Mr. Bittner's 28th interrogatory it directly answered.  The Government's objection on this basis has no merit.

### b.   The Court Should Overrule the Government's Objections and Order it to Respond to Discovery

In its interrogatory responses—much like its responses to Mr. Bittner's requests for admission—the Government takes a disingenuous approach to its discovery responses and fails to make a good-faith effort to provide discoverable information central to Mr. Bittner's case.  The Court should overrule all of the Government's objections and order it to respond to the propounded discovery.

### IV.   Attorneys' Fees

The Government has no substantial justification for its dismissive and disingenuous approach to its discovery responses in this case.  Mr. Bittner is entitled to an award of attorneys' fees pursuant to Federal Rule of Civil Procedure 37(a)(5)(A).

**V.     Prayer**

WHEREFORE, Defendant respectfully requests the Court to grant this Motion, overrule Plaintiff's objections as requested herein, and order Plaintiff to respond fully to Defendant's discovery as requested herein, and permit the continued deposition of the deponent as requested herein.

Dated: June 25, 2020                          Respectfully submitted,

                                              CLARK HILL STRASBURGER

                                              By:  /s/  Farley P. Katz
                                              FARLEY P. KATZ, LEAD ATTORNEY
                                              State Bar No. 11108790
                                              FKatz@clarkhill.com
                                              RACHAEL RUBENSTEIN
                                              State Bar No. 24073919

                                              FORREST M. "TEO" SEGER III
                                              State Bar No. 24070587
                                              TSeger@clarkhill.com

                                              CLARK HILL STRASBURGER
                                              2301 Broadway Street
                                              San Antonio, Texas 78215
                                              210-250-6006 Ph.
                                              210-258-2714 Fax

                                              ATTORNEYS FOR DEFENDANT

B6544\A63010\4813-6671-7121.v1

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 25, 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Herbert W. Linder
Mary E. Smith
Attorney, Tax Division
United States Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201
Herbert.W.Linder@usdoj.gov
Mary.E.Smith@usdoj.gov
*Attorneys for Plaintiff,*
*United States*

/s/Rachael Rubenstein
RACHAEL RUBENSTEIN

B6544\A63010\4813-6671-7121.v1