**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | |
| v. | ) | Case No. 4:19-cv-00415 |
| ALEXANDRU BITTNER, Defendant. | ) | |

**UNITED STATES' MOTION *IN LIMINE***

The United States seeks to reduce to judgment the FBAR penalties assessed by the IRS against Defendant Alexandru Bittner for his non-willful failure to report his interest in numerous foreign financial accounts in timely-filed FBARs for 2007 through 2011, which total $2,720,000, plus statutory additions. *ECF # 1*.[1] Bitter asserts several defenses to support his claim that he is not liable for the FBAR penalties. *ECF # 13*. The parties have stipulated which defenses may be tried to a jury[2] and which must be decided by the Court.[3]

---

[1] The Court determined that the maximum non-willful penalty amount under 31 U.S.C. § 5321 is limited to $10,000 per year. Accordingly, the amount at issue is now $50,000. *See ECF #75*.

[2] The parties stipulated that a jury may decide whether Bitter failed to comply with his FBAR reporting obligations and whether such failure was due to reasonable cause. ECF Nos. 35, 67. The Court determined that Bittner lacked reasonable cause for 2007 through 2010. *ECF #75*. The jury will decide whether Bittner had reasonable cause for 2011.

[3] The parties stipulated that the Court must decide Bittner's remaining defenses; *i.e.*, whether the FBAR penalties exceed the statutory cap (Second Defense), whether the IRS acted in an arbitrary and capricious manner in assessing the FBAR penalties (Third Defense), whether the IRS's calculation and assessment of the FBAR penalties violated the Administrative Procedures Act (Fourth Defense), whether the FBAR penalties violate the Excessive Fines Clause of the Eighth Amendment to the Constitution (Fifth Defense), whether the FBAR penalties constitute an improper criminal sanction (Sixth Defense), and whether the FBAR penalties constitute unconscionable punishment (Seventh Defense). ECF Nos. 35, 67. The Court decided the Second Defense in favor of Bittner (*i.e.*, that the statute caps the non-willful penalty at $10,000 per FBAR versus per unreported account) and further decided that Bittner's Fifth Defense is moot. *ECF #75*.

The United States moves *in limine* to exclude from the jury any argument or evidence regarding the amount of the FBAR penalties assessed against Bittner; the IRS's actions and decisions during the FBAR examination, the income tax examination, and the Form 5471 examination; the Tax Court proceedings regarding the income tax examination; settlement discussions between the IRS and Bittner; and Bittner's Third, Fourth, Sixth, and Seventh Defenses. As detailed more fully below, such evidence is as irrelevant under Fed. R. Evid. 401 and 402, or, in the alternative, is unfairly prejudicial, confuses the issues, or poses a serious risk of misleading the jury under Fed. R. Evid. 403.

Finally, to the extent the Court denies the United States' pending motion to strike the testimony of Bittner's expert witness (*ECF #20*), the United States moves *in limine* to preclude the expert from testifying before the jury. The expert witness's proposed testimony is irrelevant to the issues before the jury and therefore inadmissible under Fed. R. Evid. 401 and 402.

## ARGUMENT

### A. Argument, testimony, or other evidence regarding the amount of the FBAR penalties assessed against Bittner should not be presented to the jury.

The jury will decide *de novo* whether Bittner failed to comply with his FBAR reporting requirements for 2011 for all his foreign accounts and, if so, whether his failure is excused by reasonable cause for the 2011 year.[4] The amount of the penalty assessments is not relevant to these issues. Relevant evidence is evidence that has "any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining

[4] The Court ruled that Bittner did not have reasonable cause for the 2007-2010 years. *See ECF #75*.

the action." Fed. R. Evid. 401; *see also* Fed. F. Evid. 402 ("Irrelevant evidence is not admissible."). The amount of the penalty assessments in this case does not make it more or less probable whether Bittner failed to comply with his FBAR reporting requirements or whether his failures were due to reasonable cause. Accordingly, Bittner should be prohibited from discussing, arguing, presenting evidence of, or otherwise mentioning to the jury the amount of the penalties assessed against him.[5]

Even if the amount of the penalties is potentially relevant to whether Bittner failed to comply with his FBAR reporting requirements or the issue of reasonable cause (it is not), any probative value of the evidence is substantially outweighed by the dangers of unfair prejudice, confusing the issues, and misleading the jury. "Evidence is unfairly prejudicial if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established proposition in the case." *United States v. Thompson*, 359 F.3d 470, 479 (7th Cir. 2004) (internal quotation marks omitted).

The only reason Bitter seeks to disclose the amount of the FBAR penalty assessments to the jury is to garner sympathy by suggesting that Bittner's conduct does not justify the amount of the penalty assessment. Indeed, Bittner's central argument throughout this litigation has been that the penalties are too high. Whether the amount of the penalties is appropriate is not up to the jury. Congress created a statutory cap for the penalty of non-willfully failing to report an interest in a foreign bank account in a timely-filed FBAR and delegated to the Secretary of the Treasury

---

[5] The amount of the penalty assessments is relevant if the jury returns a verdict in favor of the United States for the 2011 year. The Court will consider the penalty amounts and decide whether the IRS abused its discretion in calculating the penalty amount. The parties should be required to submit two versions of any exhibits offered at trial that reference the amount of the penalties: (1) an unredacted version for the Court to consider after the jury trial; and (2) a redacted version to submit to the jury that redacts the amount of the penalties.

the discretion to decide the amount of the penalty to assess in each case (subject to the cap). The jury may not substitute its judgment for the IRS as to the amount of the penalty. If the jury is made aware of the amount of the penalties assessed against Bittner, such information will confuse the issues and the jury may decide this case on an improper basis. For example, even though the jury may find that Bittner failed to comply with his FBAR reporting obligations and that such failures were not due to reasonable cause, it may still return a verdict in favor of Bittner for one or more years to the extent it disagrees with the amount of the penalty assessments. Accordingly, the jury should not be informed of the consequences that Bittner may face if the jury returns a verdict in favor of the United States.

**B. Argument, testimony, or other evidence regarding Bittner's Form 5471 penalty assessments as well as his income tax examination and related Tax Court proceeding should not be presented to the jury.**

Bittner has also been assessed other penalties under 26 U.S.C. 6038 for failing to timely file or failing to file substantial complete Forms 5471 regarding reporting foreign entities (Form 5471 penalties). The Form 5471 penalties are not at issue in this case and the administrative appeal of these penalties is pending with the IRS Appeals Office. Thus, the amounts, assessment and pending appeal of the Form 5471 penalties against Bittner are irrelevant to this case. The only reason Bitter would seeks to disclose the assessment and the amount of the Form 5471 assessments to the jury or this Court is to garner sympathy by suggesting that his conduct does not justify all the penalties assessed against him. This evidence would be introduced for the sole purpose to prejudice the fact finder as it is irrelevant to this case. Whether the assessment and amount of the Form 5471 penalties is appropriate is not up to this jury or the Court to decide. Accordingly, any evidence regarding the amounts, assessment, and pending appeal of the Form 5471 penalties against Mr. Bittner should be excluded from the jury and court in this case.

Similarly, evidence regarding Bittner' income tax examination and U.S. Tax Court case regarding his income taxes including any math error assessments, abatements, Exam Agent's reports, Forms 4549, Statutory Notices of Deficiency, Tax Court petition and Settled issues in the Tax Court case are irrelevant to the issues before the jury or even to the Court. The only purpose to introduce such evidence would be to prejudice the fact finder.

**C. Argument, testimony, or other evidence regarding settlement negotiations between the IRS and Bittner should not be presented to the jury or considered by this Court.**

Evidence regarding settlement discussions, meetings, memorandums of, and any documents used in such meetings between the IRS, Bittner and Bittner's representatives should be excluded from the jury and the Court. Such evidence is irrelevant and would be offered only to prejudice the factfinder. Accordingly, it should be excluded under Fed. R. Evid. 401 and 402. The evidence regarding settlement discussions, meetings, memorandums of, and any documents used in such meetings should also be excluded under Fed. R. Evid. 408, as evidence in settlement negotiations, from the jury and the court. Rule 408(a)(2), prohibits the introduction of conduct or statements made during settlement negotiations to establish the validity of a disputed claim or to impeach or contradict a witness. Accordingly, any evidence regarding settlement negotiations between the IRS and Bittner should be excluded from the jury and court. Furthermore, any settlement discussions regarding defendant's income taxes and Form 5471 penalties are not be relevant to this FBAR case and should be excluded under Fed. R. Evid. 401 through 403.

**D. Argument, testimony, or other evidence regarding Bittner's Third, Fourth, Sixth, and Seventh Defenses should not be presented to the jury.**

The parties stipulated that Bittner is not entitled to a jury trial on the Third, Fourth, Sixth, and Seventh Defenses. Accordingly, evidence regarding those defenses is not relevant to the issues before the jury and should be excluded pursuant to Fed. R. Evid. 401 and 402. Indeed, the

Sixth and Seventh Defenses concern whether the amount of the penalties assessed by the IRS constitute an improper criminal sanction or unconscionable punishment. As detailed above, the amount of the assessment is irrelevant to the issues before the jury. Even if such evidence is potentially relevant to the jury issues (it is not), argument, testimony, or other evidence intended to show that the penalties violate the law is substantially outweighed by unfair prejudice, confusion of the issues, and the potential to mislead to the jury. The Court will decide these defenses, not the jury.

The Third and Fourth Defenses seek to shift the focus from Bittner's failure to report his interest in numerous foreign accounts for many years (which accounts had aggregate balances in the millions) to the IRS's purported failures in calculating and assessing the FBAR penalties against Bittner. As detailed above, Bittner already stipulated that he is not entitled to a jury trial on these defenses, which establishes that evidence of these defenses is not relevant to the issues to be decided by the jury.

Indeed, the IRS is not on trial. Nor is the IRS's income tax examination of Mr. Bittner on trial. The jury will decide whether Bittner failed to comply with his foreign account reporting obligation for 2011 and, if so, whether his failure was due to reasonable cause. How the IRS conducted its FBAR investigation and why the IRS determined administratively that Bittner was liable for the FBAR penalties (and the appropriate amount of the penalties) does not make Bittner's FBAR reporting obligations and whether he had reasonable cause defense more or less probable. Any argument, testimony, or other evidence regarding the actions of the IRS or the merits of its FBAR examination or assessment is irrelevant under Rule 401 to the jury's

determination and should be excluded.[6] Likewise, any evidence regarding the IRS's income tax examination should be excluded.

Even if this Court finds that evidence of the IRS's findings and actions during the FBAR examination are relevant—it is not—evidence on the topic should be excluded under Rule 403. Evidence of the IRS's procedures, analyses, deliberations, or conclusions has a strong potential to confuse the issue before the jury. *See Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995) (finding a district court properly excluded an administrative document where admission would "shift the jury's focus from deciding the ultimate issue in the case" to resolving conflicting administrative findings). It risks putting the IRS, not Bittner, on trial. *See Paolitto v. John Brown E. & C., Inc.*, 151 F.3d 60, 65 (2d Cir. 1998) (keeping out agency determination due to potential to confuse or mislead jury and result in undue waste of time).

In addition to distracting from the triable issues of this case, the admission of such evidence has the potential to incite the jury to reach its decision on an improper basis in

[6] Indeed, the jury will determine *de novo* whether Bittner failed to comply with his FBAR reporting obligations for 2011 and whether such failure was due to reasonable cause, as opposed to whether the actions that IRS personnel took in making those determinations were right or wrong. The jury's *de novo* determination will be "based on the merits of the case and not on any record developed at the administrative level." *United States v. Williams*, No. 09-437, 2010 WL 3473311, at *1 (E.D. Va. Sep. 1, 2010), *rev'd on other grounds*, 489 Fed. Appx. 655 (4th Cir. 2012), *quoting*, *Eren v. Comm'r*, 180 F.3d 594, 597-598 (4th Cir. 1999). *Accord*, *United States v. Markus*, No. 16-2133, 2018 WL 3435068, at *4 (D.N.J. Jul. 17, 2018); *Bedrosian v. United States*, No. 15-05853, 2017 WL 3887520, at *1 (E.D. Pa. Sep. 5, 2017), *rev'd on other grounds*, 912 F.3d 144 (3d Cir. 2018); *United States v. Bohanec*, 263 F. Supp. 3d 881, 889-90 (C.D. Cal. 2016); *United States v. McBride*, 908 F. Supp. 2d 1186, 1201 (D. Utah 2012). As the court explained in *Williams*, applying a *de novo* standard of review in FBAR cases is consistent with other contexts in which the government seeks to enforce a civil penalty. *Williams*, 2010 WL 3473311 at *1; *see also United States v. Schwarzbaum*, No. 18-81147, 2020 WL 1316232, at *12 (S.D. Fla. Mar. 20, 2020) (concluding that a *de novo* determination of whether a person willfully violated his FBAR reporting requirements is made "without regard to the factual and legal analysis used by the IRS at the administrative level").

prejudice to the United States. Consideration of what the IRS did, did not do, or allegedly should have done may encourage the jury to make an irrational and emotional decision—based on Bittner's denigration of the IRS rather than on the relevant evidence—that the FBAR penalties should not have been assessed against him. *See United States v. Saintil*, 753 F.2d 984, 989 n.7 (11th Cir. 1985) (noting that under Rule 403, prejudice "relates to the likelihood of inciting the jury to an irrational decision based on an improper basis"). Accordingly, even if relevant, such evidence should be excluded under Rule 403 of the Federal Rules of Evidence.

**E. Even though the Court will decide the Third and Fourth Defenses, evidence concerning those defenses should be limited to whether the IRS abused its discretion in calculating the amount of the penalties.**

After the jury trial, the Court will be required to decide Bittner's Third and Fourth Defenses (whether through further briefing by the parties, review of the administrative record, and/or a bench trial). The United States moves *in limine* to limit the evidence that Bittner may offer to support those defenses in such a bench trial, and most certainly in any jury trial. Specifically, the United States requests that the Court preclude Bitter from citing to the Internal Revenue Manual or other discretionary programs or guidelines as the basis for his claim that the IRS's assessment and calculation of the non-willful penalties against him was arbitrary and capricious or otherwise violated the Administrative Procedures Act ("APA").

Bittner cannot escape liability for the FBAR penalties by putting the IRS's actions and decisions during the FBAR examination on trial. In his Third and Fourth Defenses, Bitter argues the same thing; *i.e.*, that the IRS acted in an arbitrary and capricious manner or abused its discretion under the APA in calculating and assessing the FBAR penalties against him. The APA allows courts to set aside executive agency action that is arbitrary, capricious, or an abuse of discretion. *See* 5 U.S.C. § 706(2)(A). Judicial review under the APA is unavailable when

"agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see also Gulf Restoration Network v. McCarthy*, 783 F.3d 227, 233 (5th Cir. 2015) (noting that § 701(a)(2) is a "very narrow exception" to the "principle of judicial review of administrative action"). Even if agency action is reviewable, "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Bittner complains that the IRS's assessment and calculation of penalties was arbitrary, capricious, or an abuse of discretion for three reasons. First, Bittner claims that the IRS failed to apply the IRS Streamlined Foreign Offshore Procedures ("SFOP") to his case. ECF No. 13 at ¶ 59. Second, Bittner complains that the IRS assessed $10,000 per unreported account per year instead of $10,000 per year even though the Internal Revenue Manual—which contains the internal operating procedures for the IRS—recognizes that in "in most cases, examiners will recommend one penalty per open year [of $10,000], regardless of the number of unreported foreign accounts." IRM § 4.26.16.6.4.1(1) (Nov. 6, 2015); *but see* IRM § 4.26.16.6.4.1(3) (recognizing that for some cases "the facts and circumstances (considering the conduct of the person required to file and the aggregate balance of the unreported foreign financial accounts) may indicate that asserting a separate nonwillful penalty for each unreported foreign financial account, and for each year, is warranted").[7] Third, Bittner complains that the IRS did not apply the nonbinding mitigation guidelines in the IRM. None of these purported actions serves as a basis for conducting an APA review of the assessment and calculation of the FBAR penalties.

[7] Defendant's Second argument now appears to be moot based upon the Court's ruling that the non-willful penalty is limited to $10,000 per year. See ECF #75. However, this evidence in the IRS regarding the penalty calculations should still be excluded.

The Court may conduct an APA review as to whether the IRS's calculation of the FBAR penalty assessments complies with 31 U.S.C. § 5321. Courts have found the IRS's calculation of FBAR penalties to be arbitrary and capricious in very narrow circumstances, based solely on the IRS's failure to comply with the *statute*. For example, in *Schwarzbaum,* the court determined that the IRS's calculation of the FBAR penalties was arbitrary and capricious because "the IRS used the incorrect base amounts to calculate the FBAR penalties" in contravention of the statute. *Schwarzbaum,* 2020 WL 1316232 at *13; *see also id.* ("The statute is clear that the amount to be assessed is 50% of the balance in the account at the time of the violation. The evidence in this case reflects that the IRS used the highest aggregate balance for each account as reported by Schwarzbaum on his OVDI penalty worksheet, instead of determining the balance in each account at the time of the FBAR violation, as required by statute."); *Jones v. United States*, No. 19-04950, 2020 WL 2803353, at *8 (C.D. Cal. May 11, 2020) (concluding that the IRS's calculation of the FBAR penalty was arbitrary and capricious because the penalty was based on balance information for a year not at issue even though the statute requires the IRS to consider the balance in the account "at the time of the violation"). Even though the *Schwarzbaum* Court determined that the IRS abused its discretion in calculating the penalties, the court entered judgment in favor of the United States in the amount of the penalties that it believed to be authorized by statute based on the record evidence. *See United States v. Schwarzbaum,* 18-81147, 2020 WL 2526500 (S.D. Fla. May 18, 2020). Based on the Court's Memorandum and Opinion, ECF # 75, the Court should reduce the amount of the assessments to $10,000 per year instead of simply voiding the assessments.

Here, Bittner's Third and Fourth Defenses are not based on the IRS's alleged failure to comply with the statute or regulations in assessing and calculating the penalties. Instead, the

defenses are based on the IRS's purported failure to apply the SFOP to Bittner or to apply discretionary guidelines in the IRM related to the calculation of penalties. These purported failures do not warrant a review under the APA.[8]

The SFOP is an IRS program where the IRS **may** consider the mitigation of certain non-filing penalties including FBARs, for taxpayers who met certain eligibility requirements. The SFOP is not a procedure established by statute or regulation and it is not relevant to the validity of the FBAR assessments. Even if Bittner was eligible for the SFOP (he was not), the fact that the IRS declined to apply the SFOP to his case does not entitle him to judicial review of that action and it certainly does not constitute a defense to the FBAR penalties.

Second, with regard to Bittner's Second Defense, the Court has already determined as a matter of law that the statutory cap on the non-willful penalty was different than the larger amount assessed by the IRS under its interpretation of the statute. However, such a finding does not invalidate the assessment or liability for the reduced amount of the penalty as capped under the Court's interpretation. See *United States v. Dominique Colliot*, No. 16-cv-1281, Dkt. #72, (W.D. Tex. August 16, 2018), *United States v Bussell*, 2015 WL 9957826 (C.D. Ca. December 8, 2015) aff'd. 699 Fed. Appx 695 (9th Cir. 2017), cert denied 138 S.Ct.1697, 2018). Therefore,

[8] To the extent that Bitter alleges that the IRS's selection of the penalty amount assessed against him was arbitrary, capricious, or an abuse of discretion, the Court may review the administrative record to determine whether the IRS "articulated a rational connection between the facts found and the decision made." *ExxonMobil Pipeline Co. v. U.S. Dep't of Transp.*, 867 F.3d 564, 571 (5th Cir. 2017) (quoting authority omitted). *See, e.g.*, *United States v. Rum*, No. 17-826, 2019 WL 3943250, at *14 (M.D. Fla. Aug. 2, 2019), *adopted by*, 2019 WL 5188325 (M.D. Fla. Sept. 26, 2019) *appeal filed*, No. 19-14464 (11th Cir. Nov. 7, 2019) (concluding that the administrative record provided sufficient explanation as to the basis for the IRS's selection of the amount of the FBAR penalty); *United States v. Williams*, No. 09-437, 2014 WL 3746497, at *2 (E.D. Va. June 26, 2014) (noting that the Court "cannot simply substitute its judgment for that of the agency" and a review of the administrative record demonstrated that the IRS made "a reasoned decision" in assessing the maximum FBAR penalties against the defendant).

any further argument that the IRS failed to follow its own internal guidelines on assessing the larger amount is also moot. And even if the IRS failed to follow its own internal guidance – which it did not – the IRM, IRS Interim guidance on FBARs, the 2014 IRS Streamlined Procedures, IRS News releases, and IRS FS-2011-13 should also be excluded because they are not law and confer no legal rights upon the taxpayer. For example, the fact that the IRM provides that "in most cases" the nonwillful penalty will be limited to $10,000 per year regardless of the number of unreported foreign accounts is irrelevant to whether Bittner is liable for the FBAR penalty assessments. As recognized by the Fifth Circuit, the IRM "is not legally binding and does not create rights in the taxpayer." *Estate of Duncan v. Comm'r of Internal Revenue*, 890 F.3d 192, 200 (5th Cir. 2018); *see also Norman v. United States*, 942 F.3d 1111, 1116 (Fed. Cir. 2019) ("It is well settled . . . that the IRM is not legally binding on courts."). It is also well established that "general statements of policy and rules governing internal agency operations or 'housekeeping' matters, which do not have the force and effect of law, are not binding on the agency issuing them and do not create substantive rights in the public." *Capitol Fed. Sav. & Loan Ass'n v. Commissioner*, 96 T.C. 204, 216-17, 1991 WL 16490 (1991) (citing *United States v. Will*, 671 F.2d 963, 967 (6th Cir. 1982) (Internal Revenue Manual), *Einhorn v. DeWitt*, 618 F.2d 347, 349-350 (5th Cir. 1980) (Statement of Procedural Rules), and *Smith v. United States*, 478 F.2d 398 (5th Cir. 1973) (Statement of Procedural Rules)).

Although "courts can draw on IRM guidelines as factors to assess the propriety of IRS actions" (*Estate of Duncan*, 890 F.3d at 200), the IRM does not create rights for Bittner and it does not limit the amount of penalties that can be assessed against him. Even the IRM recognizes that IRS may exercise its discretion and assess the statutory cap against a non-willful FBAR filer if warranted based on the facts and circumstances of the case. IRM § 4.26.16.6.4.1(3). Here, the

IRS exercised its discretion and assessed penalties against Bittner in accordance with the statutory cap.

Accordingly, the United States requests that in both the bench trial on these issues and in any jury trial, the Court limit the scope of review of the Third and Fourth Defense to whether the IRS's calculation of the penalties complied with 31 U.S.C. § 5321 and, to the extent Bittner alleges the IRS's selection of the FBAR penalties amount was arbitrary, capricious or an abuse of discretion, whether the administrative record demonstrates that the IRS made a reasoned decision in selecting the FBAR penalties.

**F. Bittner's expert witness should not be permitted to testify before the jury.**

The United States has filed a motion to strike the testimony of Bittner's Expert witness, which is pending. *See ECF #20.* If the Court allows Bittner's expert to testify, he should not be allowed to testify or be mentioned in front of the jury. Bittner's expert asserts that he is opining on whether the IRS followed its own procedures and if the IRS treated Bittner similar to un-named or identified similar matters observed in his law practice. Bittner's expert testimony opines on defendant's defenses not on the jury issues of whether Bittner had to report certain foreign accounts or his reasonable cause defense. *See ECF #20-1 at pg. 3.* Accordingly, while the United States maintains that Bittner's expert testimony should be struck, it is certainly not proper testimony for the jury to hear.

## I. CONCLUSION

For the foregoing reasons, the United States requests that the Court grant its motion *in limine*.

Dated: July 8, 2020

Respectfully submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

/s/ Herbert W. Linder
HERBERT W. LINDER
Ohio Bar No. 0065446
Attorney, Tax Division
U.S. Department of Justice
717 N. Harwood St., Suite 400
Dallas, Texas 75201
Phone: (214) 880-9754
Fax (214) 880-9741
herbert.w.linder@usdoj.gov

ATTORNEYS FOR UNITED STATES

**CERTIFICATE OF CONFERENCE**

I have complied with the meet and confer requirement pursuant to Local Rule CV-7(h) and this Motion is opposed.

On June 29, 2020, I conferred by email. On July 2, 2020, I conferred with Farley P. Katz and Rachael Rubenstein counsel for Defendant, Alexandru Bittner, by telephone regarding this Motion. Both attorneys stated that they oppose the relief sought in this Motion. I told opposing counsel why the United States was filing the Motion based on the stipulations as to jury and non-jury issues, along with what the United States' belief as the relevant evidence for APA review. Opposing counsel replied as to why they were seeking to use the evidence. After a brief discussion it was determined that we could not reach an agreement as to the relevant and proper evidence for the jury and the court. Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve. Therefore, I am presenting this Motion to the Court for determination.

/s/ Herbert W. Linder
HERBERT W. LINDER

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that service of the foregoing document was made on July 8, 2020, by the Clerk's ECF filing system to:

CLARK HILL STRASBURGER
Farley P. Katz
Rachael Rubenstein
2301 Broadway St.
San Antonio, Texas 78209

/s/ Herbert W. Linder
HERBERT W. LINDER